# Exhibit 1

S.B. No. 8

1                              AN ACT

2    relating to abortion, including abortions after detection of an

3    unborn child's heartbeat; authorizing a private civil right of

4    action.

5          BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

6          SECTION 1.  This Act shall be known as the Texas Heartbeat

7    Act.

8          SECTION 2.  The legislature finds that the State of Texas

9    never repealed, either expressly or by implication, the state

10   statutes enacted before the ruling in *Roe v. Wade*, 410 U.S. 113

11   (1973), that prohibit and criminalize abortion unless the mother's

12   life is in danger.

13         SECTION 3.  Chapter 171, Health and Safety Code, is amended

14   by adding Subchapter H to read as follows:

15               SUBCHAPTER H.  DETECTION OF FETAL HEARTBEAT

16         Sec. 171.201.  DEFINITIONS.  In this subchapter:

17               (1)  "Fetal heartbeat" means cardiac activity or the

18   steady and repetitive rhythmic contraction of the fetal heart

19   within the gestational sac.

20               (2)  "Gestational age" means the amount of time that

21   has elapsed from the first day of a woman's last menstrual period.

22               (3)  "Gestational sac" means the structure comprising

23   the extraembryonic membranes that envelop the unborn child and that

24   is typically visible by ultrasound after the fourth week of

S.B. No. 8

1  pregnancy.

2  (4)  "Physician" means an individual licensed to

3  practice medicine in this state, including a medical doctor and a

4  doctor of osteopathic medicine.

5  (5)  "Pregnancy" means the human female reproductive

6  condition that:

7  (A)  begins with fertilization;

8  (B)  occurs when the woman is carrying the

9  developing human offspring; and

10  (C)  is calculated from the first day of the

11  woman's last menstrual period.

12  (6)  "Standard medical practice" means the degree of

13  skill, care, and diligence that an obstetrician of ordinary

14  judgment, learning, and skill would employ in like circumstances.

15  (7)  "Unborn child" means a human fetus or embryo in any

16  stage of gestation from fertilization until birth.

17  Sec. 171.202.  LEGISLATIVE FINDINGS.  The legislature finds,

18  according to contemporary medical research, that:

19  (1)  fetal heartbeat has become a key medical predictor

20  that an unborn child will reach live birth;

21  (2)  cardiac activity begins at a biologically

22  identifiable moment in time, normally when the fetal heart is

23  formed in the gestational sac;

24  (3)  Texas has compelling interests from the outset of

25  a woman's pregnancy in protecting the health of the woman and the

26  life of the unborn child; and

27  (4)  to make an informed choice about whether to

2

S.B. No. 8

1 continue her pregnancy, the pregnant woman has a compelling
2 interest in knowing the likelihood of her unborn child surviving to
3 full-term birth based on the presence of cardiac activity.

4     Sec. 171.203.  DETERMINATION OF PRESENCE OF FETAL HEARTBEAT
5 REQUIRED; RECORD.  (a)  For the purposes of determining the
6 presence of a fetal heartbeat under this section, "standard medical
7 practice" includes employing the appropriate means of detecting the
8 heartbeat based on the estimated gestational age of the unborn
9 child and the condition of the woman and her pregnancy.

10     (b)  Except as provided by Section 171.205, a physician may
11 not knowingly perform or induce an abortion on a pregnant woman
12 unless the physician has determined, in accordance with this
13 section, whether the woman's unborn child has a detectable fetal
14 heartbeat.

15     (c)  In making a determination under Subsection (b), the
16 physician must use a test that is:

17     (1)  consistent with the physician's good faith and
18 reasonable understanding of standard medical practice; and

19     (2)  appropriate for the estimated gestational age of
20 the unborn child and the condition of the pregnant woman and her
21 pregnancy.

22     (d)  A physician making a determination under Subsection (b)
23 shall record in the pregnant woman's medical record:

24     (1)  the estimated gestational age of the unborn child;

25     (2)  the method used to estimate the gestational age;
26 and

27     (3)  the test used for detecting a fetal heartbeat,

3

1  including the date, time, and results of the test.

2      Sec. 171.204.  PROHIBITED ABORTION OF UNBORN CHILD WITH

3  DETECTABLE FETAL HEARTBEAT; EFFECT.  (a)  Except as provided by

4  Section 171.205, a physician may not knowingly perform or induce an

5  abortion on a pregnant woman if the physician detected a fetal

6  heartbeat for the unborn child as required by Section 171.203 or

7  failed to perform a test to detect a fetal heartbeat.

8      (b)  A physician does not violate this section if the

9  physician performed a test for a fetal heartbeat as required by

10  Section 171.203 and did not detect a fetal heartbeat.

11      (c)  This section does not affect:

12          (1)  the provisions of this chapter that restrict or

13  regulate an abortion by a particular method or during a particular

14  stage of pregnancy; or

15          (2)  any other provision of state law that regulates or

16  prohibits abortion.

17      Sec. 171.205.  EXCEPTION FOR MEDICAL EMERGENCY; RECORDS.

18  (a)  Sections 171.203 and 171.204 do not apply if a physician

19  believes a medical emergency exists that prevents compliance with

20  this subchapter.

21      (b)  A physician who performs or induces an abortion under

22  circumstances described by Subsection (a) shall make written

23  notations in the pregnant woman's medical record of:

24          (1)  the physician's belief that a medical emergency

25  necessitated the abortion; and

26          (2)  the medical condition of the pregnant woman that

27  prevented compliance with this subchapter.

S.B. No. 8

1     (c)  A physician performing or inducing an abortion under

2 this section shall maintain in the physician's practice records a

3 copy of the notations made under Subsection (b).

4     Sec. 171.206.  CONSTRUCTION OF SUBCHAPTER.  (a)  This

5 subchapter does not create or recognize a right to abortion before a

6 fetal heartbeat is detected.

7     (b)  This subchapter may not be construed to:

8         (1)  authorize the initiation of a cause of action

9 against or the prosecution of a woman on whom an abortion is

10 performed or induced or attempted to be performed or induced in

11 violation of this subchapter;

12         (2)  wholly or partly repeal, either expressly or by

13 implication, any other statute that regulates or prohibits

14 abortion, including Chapter 6-1/2, Title 71, Revised Statutes; or

15         (3)  restrict a political subdivision from regulating

16 or prohibiting abortion in a manner that is at least as stringent as

17 the laws of this state.

18     Sec. 171.207.  LIMITATIONS ON PUBLIC ENFORCEMENT.

19 (a)  Notwithstanding Section 171.005 or any other law, the

20 requirements of this subchapter shall be enforced exclusively

21 through the private civil actions described in Section 171.208.  No

22 enforcement of this subchapter, and no enforcement of Chapters 19

23 and 22, Penal Code, in response to violations of this subchapter,

24 may be taken or threatened by this state, a political subdivision, a

25 district or county attorney, or an executive or administrative

26 officer or employee of this state or a political subdivision

27 against any person, except as provided in Section 171.208.

S.B. No. 8

1    (b)  Subsection (a) may not be construed to:

2         (1)  legalize the conduct prohibited by this subchapter

3    or by Chapter 6-1/2, Title 71, Revised Statutes;

4         (2)  limit in any way or affect the availability of a

5    remedy established by Section 171.208; or

6         (3)  limit the enforceability of any other laws that

7    regulate or prohibit abortion.

8    Sec. 171.208.  CIVIL LIABILITY FOR VIOLATION OR AIDING OR

9    ABETTING VIOLATION.  (a)  Any person, other than an officer or

10   employee of a state or local governmental entity in this state, may

11   bring a civil action against any person who:

12        (1)  performs or induces an abortion in violation of

13   this subchapter;

14        (2)  knowingly engages in conduct that aids or abets

15   the performance or inducement of an abortion, including paying for

16   or reimbursing the costs of an abortion through insurance or

17   otherwise, if the abortion is performed or induced in violation of

18   this subchapter, regardless of whether the person knew or should

19   have known that the abortion would be performed or induced in

20   violation of this subchapter; or

21        (3)  intends to engage in the conduct described by

22   Subdivision (1) or (2).

23   (b)  If a claimant prevails in an action brought under this

24   section, the court shall award:

25        (1)  injunctive relief sufficient to prevent the

26   defendant from violating this subchapter or engaging in acts that

27   aid or abet violations of this subchapter;

6

S.B. No. 8

1        (2) statutory damages in an amount of not less than

2    $10,000 for each abortion that the defendant performed or induced

3    in violation of this subchapter, and for each abortion performed or

4    induced in violation of this subchapter that the defendant aided or

5    abetted; and

6        (3) costs and attorney's fees.

7        (c) Notwithstanding Subsection (b), a court may not award

8    relief under this section in response to a violation of Subsection

9    (a)(1) or (2) if the defendant demonstrates that the defendant

10   previously paid the full amount of statutory damages under

11   Subsection (b)(2) in a previous action for that particular abortion

12   performed or induced in violation of this subchapter, or for the

13   particular conduct that aided or abetted an abortion performed or

14   induced in violation of this subchapter.

15       (d) Notwithstanding Chapter 16, Civil Practice and Remedies

16   Code, or any other law, a person may bring an action under this

17   section not later than the fourth anniversary of the date the cause

18   of action accrues.

19       (e) Notwithstanding any other law, the following are not a

20   defense to an action brought under this section:

21       (1) ignorance or mistake of law;

22       (2) a defendant's belief that the requirements of this

23   subchapter are unconstitutional or were unconstitutional;

24       (3) a defendant's reliance on any court decision that

25   has been overruled on appeal or by a subsequent court, even if that

26   court decision had not been overruled when the defendant engaged in

27   conduct that violates this subchapter;

S.B. No. 8

1         (4)  a defendant's reliance on any state or federal
2 court decision that is not binding on the court in which the action
3 has been brought;

4         (5)  non-mutual issue preclusion or non-mutual claim
5 preclusion;

6         (6)  the consent of the unborn child's mother to the
7 abortion; or

8         (7)  any claim that the enforcement of this subchapter
9 or the imposition of civil liability against the defendant will
10 violate the constitutional rights of third parties, except as
11 provided by Section 171.209.

12     (f)  It is an affirmative defense if:

13         (1)  a person sued under Subsection (a)(2) reasonably
14 believed, after conducting a reasonable investigation, that the
15 physician performing or inducing the abortion had complied or would
16 comply with this subchapter; or

17         (2)  a person sued under Subsection (a)(3) reasonably
18 believed, after conducting a reasonable investigation, that the
19 physician performing or inducing the abortion will comply with this
20 subchapter.

21     (f-1)  The defendant has the burden of proving an affirmative
22 defense under Subsection (f)(1) or (2) by a preponderance of the
23 evidence.

24     (g)  This section may not be construed to impose liability on
25 any speech or conduct protected by the First Amendment of the United
26 States Constitution, as made applicable to the states through the
27 United States Supreme Court's interpretation of the Fourteenth

8

S.B. No. 8

1 Amendment of the United States Constitution, or by Section 8,

2 Article I, Texas Constitution.

3     (h)  Notwithstanding any other law, this state, a state

4 official, or a district or county attorney may not intervene in an

5 action brought under this section.  This subsection does not

6 prohibit a person described by this subsection from filing an

7 amicus curiae brief in the action.

8     (i)  Notwithstanding any other law, a court may not award

9 costs or attorney's fees under the Texas Rules of Civil Procedure or

10 any other rule adopted by the supreme court under Section 22.004,

11 Government Code, to a defendant in an action brought under this

12 section.

13     (j)  Notwithstanding any other law, a civil action under this

14 section may not be brought by a person who impregnated the abortion

15 patient through an act of rape, sexual assault, incest, or any other

16 act prohibited by Sections 22.011, 22.021, or 25.02, Penal Code.

17     Sec. 171.209.  CIVIL LIABILITY:   UNDUE BURDEN DEFENSE

18 LIMITATIONS.  (a)  A defendant against whom an action is brought

19 under Section 171.208 does not have standing to assert the rights of

20 women seeking an abortion as a defense to liability under that

21 section unless:

22     (1)  the United States Supreme Court holds that the

23 courts of this state must confer standing on that defendant to

24 assert the third-party rights of women seeking an abortion in state

25 court as a matter of federal constitutional law; or

26     (2)  the defendant has standing to assert the rights of

27 women seeking an abortion under the tests for third-party standing

S.B. No. 8

1   established by the United States Supreme Court.

2       (b)  A defendant in an action brought under Section 171.208

3   may assert an affirmative defense to liability under this section

4   if:

5           (1)  the  defendant  has  standing  to  assert  the

6   third-party rights of a woman or group of women seeking an abortion

7   in accordance with Subsection (a); and

8           (2)  the defendant demonstrates that the relief sought

9   by the claimant will impose an undue burden on that woman or that

10  group of women seeking an abortion.

11      (c)  A court may not find an undue burden under Subsection

12  (b) unless the defendant introduces evidence proving that:

13          (1)  an award of relief will prevent a woman or a group

14  of women from obtaining an abortion; or

15          (2)  an  award  of  relief  will  place  a  substantial

16  obstacle in the path of a woman or a group of women who are seeking

17  an abortion.

18      (d)  A defendant may not establish an undue burden under this

19  section by:

20          (1)  merely demonstrating that an award of relief will

21  prevent women from obtaining support or assistance, financial or

22  otherwise, from others in their effort to obtain an abortion; or

23          (2)  arguing or attempting to demonstrate that an award

24  of relief against other defendants or other potential defendants

25  will impose an undue burden on women seeking an abortion.

26      (e)  The  affirmative  defense  under  Subsection  (b)  is  not

27  available if the United States Supreme Court overrules *Roe v. Wade*,

S.B. No. 8

1  410 U.S. 113 (1973) or *Planned Parenthood v. Casey*, 505 U.S. 833

2  (1992), regardless of whether the conduct on which the cause of

3  action is based under Section 171.208 occurred before the Supreme

4  Court overruled either of those decisions.

5       (f) Nothing in this section shall in any way limit or

6  preclude a defendant from asserting the defendant's personal

7  constitutional rights as a defense to liability under Section

8  171.208, and a court may not award relief under Section 171.208 if

9  the conduct for which the defendant has been sued was an exercise of

10  state or federal constitutional rights that personally belong to

11  the defendant.

12       Sec. 171.210.  CIVIL          LIABILITY:          VENUE.

13  (a) Notwithstanding any other law, including Section 15.002,

14  Civil Practice and Remedies Code, a civil action brought under

15  Section 171.208 shall be brought in:

16            (1) the county in which all or a substantial part of

17  the events or omissions giving rise to the claim occurred;

18            (2) the county of residence for any one of the natural

19  person defendants at the time the cause of action accrued;

20            (3) the county of the principal office in this state of

21  any one of the defendants that is not a natural person; or

22            (4) the county of residence for the claimant if the

23  claimant is a natural person residing in this state.

24       (b) If a civil action is brought under Section 171.208 in

25  any one of the venues described by Subsection (a), the action may

26  not be transferred to a different venue without the written consent

27  of all parties.

11

S.B. No. 8

1    Sec. 171.211.  SOVEREIGN,  GOVERNMENTAL,  AND  OFFICIAL

2   IMMUNITY  PRESERVED.   (a)  This  section  prevails  over  any

3   conflicting law, including:

4         (1)  the Uniform Declaratory Judgments Act; and

5         (2)  Chapter 37, Civil Practice and Remedies Code.

6    (b)  This  state  has  sovereign  immunity,  a  political

7   subdivision  has  governmental  immunity,  and  each  officer  and

8   employee  of  this  state  or  a  political  subdivision  has  official

9   immunity in any action, claim, or counterclaim or any type of legal

10  or equitable action that challenges the validity of any provision

11  or  application  of  this  chapter,  on  constitutional  grounds  or

12  otherwise.

13   (c)  A provision of state law may not be construed to waive or

14  abrogate  an  immunity  described  by  Subsection  (b)  unless  it

15  expressly waives immunity under this section.

16   Sec. 171.212.  SEVERABILITY.  (a)  Mindful  of  *Leavitt  v.*

17  *Jane L.*, 518 U.S. 137 (1996), in which in the context of determining

18  the severability of a state statute regulating abortion the United

19  States Supreme Court held that an explicit statement of legislative

20  intent  is  controlling,  it  is  the  intent  of  the  legislature  that

21  every provision, section, subsection, sentence, clause, phrase, or

22  word in this chapter, and every application of the provisions in

23  this chapter, are severable from each other.

24   (b)  If any application of any provision in this chapter to

25  any person, group of persons, or circumstances is found by a court

26  to be invalid or unconstitutional, the remaining applications of

27  that  provision  to  all  other  persons  and  circumstances  shall  be

S.B. No. 8

1  severed and may not be affected.  All constitutionally valid
2  applications of this chapter shall be severed from any applications
3  that a court finds to be invalid, leaving the valid applications in
4  force, because it is the legislature's intent and priority that the
5  valid applications be allowed to stand alone.  Even if a reviewing
6  court finds a provision of this chapter to impose an undue burden in
7  a large or substantial fraction of relevant cases, the applications
8  that do not present an undue burden shall be severed from the
9  remaining applications and shall remain in force, and shall be
10  treated as if the legislature had enacted a statute limited to the
11  persons, group of persons, or circumstances for which the statute's
12  application does not present an undue burden.

13      (b-1)  If any court declares or finds a provision of this
14  chapter facially unconstitutional, when discrete applications of
15  that provision can be enforced against a person, group of persons,
16  or circumstances without violating the United States Constitution
17  and Texas Constitution, those applications shall be severed from
18  all remaining applications of the provision, and the provision
19  shall be interpreted as if the legislature had enacted a provision
20  limited to the persons, group of persons, or circumstances for
21  which the provision's application will not violate the United
22  States Constitution and Texas Constitution.

23      (c)  The legislature further declares that it would have
24  enacted this chapter, and each provision, section, subsection,
25  sentence, clause, phrase, or word, and all constitutional
26  applications of this chapter, irrespective of the fact that any
27  provision, section, subsection, sentence, clause, phrase, or word,

13

S.B. No. 8

1  or applications of this chapter, were to be declared
2  unconstitutional or to represent an undue burden.

3      (d)  If any provision of this chapter is found by any court to
4  be unconstitutionally vague, then the applications of that
5  provision that do not present constitutional vagueness problems
6  shall be severed and remain in force.

7      (e)  No court may decline to enforce the severability
8  requirements of Subsections (a), (b), (b-1), (c), and (d) on the
9  ground that severance would rewrite the statute or involve the
10 court in legislative or lawmaking activity.  A court that declines
11 to enforce or enjoins a state official from enforcing a statutory
12 provision does not rewrite a statute, as the statute continues to
13 contain the same words as before the court's decision.  A judicial
14 injunction or declaration of unconstitutionality:

15     (1)  is nothing more than an edict prohibiting
16 enforcement that may subsequently be vacated by a later court if
17 that court has a different understanding of the requirements of the
18 Texas Constitution or United States Constitution;

19     (2)  is not a formal amendment of the language in a
20 statute; and

21     (3)  no more rewrites a statute than a decision by the
22 executive not to enforce a duly enacted statute in a limited and
23 defined set of circumstances.

24     SECTION 4.  Chapter 30, Civil Practice and Remedies Code, is
25 amended by adding Section 30.022 to read as follows:

26     Sec. 30.022.  AWARD OF ATTORNEY'S FEES IN ACTIONS
27 CHALLENGING ABORTION LAWS.  (a)  Notwithstanding any other law, any

S.B. No. 8

1  person, including an entity, attorney, or law firm, who seeks
2  declaratory or injunctive relief to prevent this state, a political
3  subdivision, any governmental entity or public official in this
4  state, or any person in this state from enforcing any statute,
5  ordinance, rule, regulation, or any other type of law that
6  regulates or restricts abortion or that limits taxpayer funding for
7  individuals or entities that perform or promote abortions, in any
8  state or federal court, or that represents any litigant seeking
9  such relief in any state or federal court, is jointly and severally
10  liable to pay the costs and attorney's fees of the prevailing party.
11      (b)  For purposes of this section, a party is considered a
12  prevailing party if a state or federal court:
13          (1)  dismisses any claim or cause of action brought
14  against the party that seeks the declaratory or injunctive relief
15  described by Subsection (a), regardless of the reason for the
16  dismissal; or
17          (2)  enters judgment in the party's favor on any such
18  claim or cause of action.
19      (c)  Regardless of whether a prevailing party sought to
20  recover costs or attorney's fees in the underlying action, a
21  prevailing party under this section may bring a civil action to
22  recover costs and attorney's fees against a person, including an
23  entity, attorney, or law firm, that sought declaratory or
24  injunctive relief described by Subsection (a) not later than the
25  third anniversary of the date on which, as applicable:
26          (1)  the dismissal or judgment described by Subsection
27  (b) becomes final on the conclusion of appellate review; or

S.B. No. 8

1       (2)  the time for seeking appellate review expires.

2     (d)  It is not a defense to an action brought under

3 Subsection (c) that:

4       (1)  a prevailing party under this section failed to

5 seek recovery of costs or attorney's fees in the underlying action;

6       (2)  the court in the underlying action declined to

7 recognize or enforce the requirements of this section; or

8       (3)  the court in the underlying action held that any

9 provisions of this section are invalid, unconstitutional, or

10 preempted by federal law, notwithstanding the doctrines of issue or

11 claim preclusion.

12     SECTION 5.  Subchapter C, Chapter 311, Government Code, is

13 amended by adding Section 311.036 to read as follows:

14     Sec. 311.036.  CONSTRUCTION OF ABORTION STATUTES.  (a)  A

15 statute that regulates or prohibits abortion may not be construed

16 to repeal any other statute that regulates or prohibits abortion,

17 either wholly or partly, unless the repealing statute explicitly

18 states that it is repealing the other statute.

19     (b)  A statute may not be construed to restrict a political

20 subdivision from regulating or prohibiting abortion in a manner

21 that is at least as stringent as the laws of this state unless the

22 statute explicitly states that political subdivisions are

23 prohibited from regulating or prohibiting abortion in the manner

24 described by the statute.

25     (c)  Every statute that regulates or prohibits abortion is

26 severable in each of its applications to every person and

27 circumstance.  If any statute that regulates or prohibits abortion

16

S.B. No. 8

1   is found by any court to be unconstitutional, either on its face or

2   as applied, then all applications of that statute that do not

3   violate the United States Constitution and Texas Constitution shall

4   be severed from the unconstitutional applications and shall remain

5   enforceable, notwithstanding any other law, and the statute shall

6   be interpreted as if containing language limiting the statute's

7   application to the persons, group of persons, or circumstances for

8   which the statute's application will not violate the United States

9   Constitution and Texas Constitution.

10          SECTION 6.  Section 171.005, Health and Safety Code, is

11  amended to read as follows:

12          Sec. 171.005.  COMMISSION   [DEPARTMENT]   TO   ENFORCE;

13  EXCEPTION.  The commission [department] shall enforce this chapter

14  except for Subchapter H, which shall be enforced exclusively

15  through the private civil enforcement actions described by Section

16  171.208 and may not be enforced by the commission.

17          SECTION 7.  Subchapter A, Chapter 171, Health and Safety

18  Code, is amended by adding Section 171.008 to read as follows:

19          Sec. 171.008.  REQUIRED DOCUMENTATION.  (a)  If an abortion

20  is performed or induced on a pregnant woman because of a medical

21  emergency, the physician who performs or induces the abortion shall

22  execute a written document that certifies the abortion is necessary

23  due to a medical emergency and specifies the woman's medical

24  condition requiring the abortion.

25          (b)  A physician shall:

26          (1)  place the document described by Subsection (a) in

27  the pregnant woman's medical record; and

S.B. No. 8

1          (2)  maintain  a  copy  of  the  document  described  by

2  Subsection (a) in the physician's practice records.

3          (c)  A physician who performs or induces an abortion on a

4  pregnant woman shall:

5               (1)  if  the  abortion  is  performed  or  induced  to

6  preserve  the  health  of  the  pregnant  woman,  execute  a  written

7  document that:

8                    (A)  specifies the medical condition the abortion

9  is asserted to address; and

10                    (B)  provides  the  medical  rationale  for  the

11  physician's conclusion that the abortion is necessary to address

12  the medical condition; or

13               (2)  for an abortion other than an abortion described

14  by Subdivision (1), specify in a written document that maternal

15  health is not a purpose of the abortion.

16          (d)  The  physician  shall  maintain  a  copy  of  a  document

17  described by Subsection (c) in the physician's practice records.

18          SECTION 8.  Section 171.012(a), Health and Safety Code, is

19  amended to read as follows:

20          (a)  Consent to an abortion is voluntary and informed only

21  if:

22               (1)  the  physician  who  is  to  perform  or induce  the

23  abortion informs the pregnant woman on whom the abortion is to be

24  performed or induced of:

25                    (A)  the physician's name;

26                    (B)  the  particular  medical  risks  associated  with

27  the particular abortion procedure to be employed, including, when

18

S.B. No. 8

1    medically accurate:

2                         (i)   the risks of infection and hemorrhage;

3                         (ii)   the potential danger to a subsequent
4    pregnancy and of infertility; and

5                         (iii)   the possibility of increased risk of
6    breast cancer following an induced abortion and the natural
7    protective effect of a completed pregnancy in avoiding breast
8    cancer;

9                    (C)   the probable gestational age of the unborn
10   child at the time the abortion is to be performed or induced; and

11                   (D)   the medical risks associated with carrying
12   the child to term;

13               (2)   the physician who is to perform or induce the
14   abortion or the physician's agent informs the pregnant woman that:

15                   (A)   medical assistance benefits may be available
16   for prenatal care, childbirth, and neonatal care;

17                   (B)   the father is liable for assistance in the
18   support of the child without regard to whether the father has
19   offered to pay for the abortion; and

20                   (C)   public   and   private   agencies   provide
21   pregnancy   prevention   counseling   and   medical   referrals   for
22   obtaining pregnancy prevention medications or devices, including
23   emergency contraception for victims of rape or incest;

24               (3)   the physician who is to perform or induce the
25   abortion or the physician's agent:

26                   (A)   provides the pregnant woman with the printed
27   materials described by Section 171.014; and

19

S.B. No. 8

1          (B)  informs  the  pregnant  woman  that  those

2   materials:

3          (i)  have  been  provided  by  the  <u>commission</u>

4   [~~Department of State Health Services~~];

5          (ii)  are  accessible  on  an  Internet  website

6   sponsored by the <u>commission</u> [~~department~~];

7          (iii)  describe  the  unborn  child  and  list

8   agencies that offer alternatives to abortion; and

9          (iv)  include a list of agencies that offer

10  sonogram services at no cost to the pregnant woman;

11          (4)  before any sedative or anesthesia is administered

12  to the pregnant woman and at least 24 hours before the abortion or

13  at least two hours before the abortion if the pregnant woman waives

14  this requirement by certifying that she currently lives 100 miles

15  or more from the nearest abortion provider that is a facility

16  licensed under Chapter 245 or a facility that performs more than 50

17  abortions in any 12-month period:

18          (A)  the physician who is to perform <u>or induce</u> the

19  abortion or an agent of the physician who is also a sonographer

20  certified by a national registry of medical sonographers performs a

21  sonogram on the pregnant woman on whom the abortion is to be

22  performed <u>or induced</u>;

23          (B)  the physician who is to perform <u>or induce</u> the

24  abortion displays the sonogram images in a quality consistent with

25  current medical practice in a manner that the pregnant woman may

26  view them;

27          (C)  the physician who is to perform <u>or induce</u> the

20

S.B. No. 8

1  abortion provides, in a manner understandable to a layperson, a
2  verbal explanation of the results of the sonogram images, including
3  a medical description of the dimensions of the embryo or fetus, the
4  presence of cardiac activity, and the presence of external members
5  and internal organs; and

6            (D)  the physician who is to perform or induce the
7  abortion or an agent of the physician who is also a sonographer
8  certified by a national registry of medical sonographers makes
9  audible the heart auscultation for the pregnant woman to hear, if
10 present, in a quality consistent with current medical practice and
11 provides, in a manner understandable to a layperson, a simultaneous
12 verbal explanation of the heart auscultation;

13            (5)  before receiving a sonogram under Subdivision
14 (4)(A) and before the abortion is performed or induced and before
15 any sedative or anesthesia is administered, the pregnant woman
16 completes and certifies with her signature an election form that
17 states as follows:

18            "ABORTION AND SONOGRAM ELECTION

19            (1)  THE INFORMATION AND PRINTED MATERIALS DESCRIBED BY
20 SECTIONS 171.012(a)(1)-(3), TEXAS HEALTH AND SAFETY CODE, HAVE BEEN
21 PROVIDED AND EXPLAINED TO ME.

22            (2)  I UNDERSTAND THE NATURE AND CONSEQUENCES OF AN
23 ABORTION.

24            (3)  TEXAS LAW REQUIRES THAT I RECEIVE A SONOGRAM PRIOR
25 TO RECEIVING AN ABORTION.

26            (4)  I UNDERSTAND THAT I HAVE THE OPTION TO VIEW THE
27 SONOGRAM IMAGES.

21

S.B. No. 8

1         (5)  I UNDERSTAND THAT I HAVE THE OPTION TO HEAR THE
2 HEARTBEAT.

3         (6)  I UNDERSTAND THAT I AM REQUIRED BY LAW TO HEAR AN
4 EXPLANATION OF THE SONOGRAM IMAGES UNLESS I CERTIFY IN WRITING TO
5 ONE OF THE FOLLOWING:

6         ____ I AM PREGNANT AS A RESULT OF A SEXUAL ASSAULT,
7 INCEST, OR OTHER VIOLATION OF THE TEXAS PENAL CODE THAT HAS BEEN
8 REPORTED TO LAW ENFORCEMENT AUTHORITIES OR THAT HAS NOT BEEN
9 REPORTED BECAUSE I REASONABLY BELIEVE THAT DOING SO WOULD PUT ME AT
10 RISK OF RETALIATION RESULTING IN SERIOUS BODILY INJURY.

11         ____ I AM A MINOR AND OBTAINING AN ABORTION IN ACCORDANCE
12 WITH JUDICIAL BYPASS PROCEDURES UNDER CHAPTER 33, TEXAS FAMILY
13 CODE.

14         ____ MY <u>UNBORN CHILD</u> [~~FETUS~~] HAS AN IRREVERSIBLE MEDICAL
15 CONDITION OR ABNORMALITY, AS IDENTIFIED BY RELIABLE DIAGNOSTIC
16 PROCEDURES AND DOCUMENTED IN MY MEDICAL FILE.

17         (7)  I AM MAKING THIS ELECTION OF MY OWN FREE WILL AND
18 WITHOUT COERCION.

19         (8)  FOR A WOMAN WHO LIVES 100 MILES OR MORE FROM THE
20 NEAREST ABORTION PROVIDER THAT IS A FACILITY LICENSED UNDER CHAPTER
21 245, <u>TEXAS HEALTH AND SAFETY CODE,</u> OR A FACILITY THAT PERFORMS MORE
22 THAN 50 ABORTIONS IN ANY 12-MONTH PERIOD ONLY:

23         I CERTIFY THAT, BECAUSE I CURRENTLY LIVE 100 MILES OR
24 MORE FROM THE NEAREST ABORTION PROVIDER THAT IS A FACILITY LICENSED
25 UNDER CHAPTER 245 OR A FACILITY THAT PERFORMS MORE THAN 50 ABORTIONS
26 IN ANY 12-MONTH PERIOD, I WAIVE THE REQUIREMENT TO WAIT 24 HOURS
27 AFTER THE SONOGRAM IS PERFORMED BEFORE RECEIVING THE ABORTION

S.B. No. 8

1  PROCEDURE. MY PLACE OF RESIDENCE IS:_____.

2  _____          _____

3  SIGNATURE                       DATE";

4         (6)  before the abortion is performed <u>or induced</u>, the
5  physician who is to perform <u>or induce</u> the abortion receives a copy
6  of the signed, written certification required by Subdivision (5);
7  and

8         (7)  the pregnant woman is provided the name of each
9  person who provides or explains the information required under this
10  subsection.

11     SECTION 9.  Section 245.011(c), Health and Safety Code, is
12  amended to read as follows:

13     (c)  The report must include:

14         (1)  whether  the  abortion  facility  at  which  the
15  abortion is performed is licensed under this chapter;

16         (2)  the patient's year of birth, race, marital status,
17  and state and county of residence;

18         (3)  the type of abortion procedure;

19         (4)  the date the abortion was performed;

20         (5)  whether the patient survived the abortion, and if
21  the patient did not survive, the cause of death;

22         (6)  the probable post-fertilization age of the unborn
23  child based on the best medical judgment of the attending physician
24  at the time of the procedure;

25         (7)  the date, if known, of the patient's last menstrual
26  cycle;

27         (8)  the number of previous live births of the patient;

S.B. No. 8

1  [and]

2          (9)   the number of previous induced abortions of the

3  patient;

4          (10)  whether the abortion was performed or induced

5  because of a medical emergency and any medical condition of the

6  pregnant woman that required the abortion; and

7          (11)  the  information  required  under  Sections

8  171.008(a) and (c).

9          SECTION 10.  Every  provision  in  this  Act  and  every

10 application of the provision in this Act are severable from each

11 other.  If any provision or application of any provision in this Act

12 to any person, group of persons, or circumstance is held by a court

13 to be invalid, the invalidity does not affect the other provisions

14 or applications of this Act.

15         SECTION 11.  The change in law made by this Act applies only

16 to an abortion performed or induced on or after the effective date

17 of this Act.

18         SECTION 12.  This Act takes effect September 1, 2021.

24

S.B. No. 8

_____     _____
    President of the Senate                Speaker of the House

    I hereby certify that S.B. No. 8 passed the Senate on March 30, 2021, by the following vote: Yeas 19, Nays 12; and that the Senate concurred in House amendments on May 13, 2021, by the following vote: Yeas 18, Nays 12.

                                          _____
                                          Secretary of the Senate

    I hereby certify that S.B. No. 8 passed the House, with amendments, on May 6, 2021, by the following vote:  Yeas 83, Nays 64, one present not voting.

                                          _____
                                          Chief Clerk of the House

Approved:

_____
                Date

_____
                Governor