**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| WHOLE WOMAN'S HEALTH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | CASE NO. 21-cv-00616-RP |
| AUSTIN REEVE JACKSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
**AND MEMORANDUM OF LAW IN SUPPORT**

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................5

    A.    Plaintiffs Are Committed to Ensuring Patients Can Access Abortion Amid a Hostile Climate................................................................................5

    B.    Section 3 of S.B. 8 Is a Flagrantly Unconstitutional Six-Week Abortion Ban with a Rigged Civil Enforcement Scheme ........................................7

        1.    S.B. 8 prohibits abortions beginning at approximately six weeks of pregnancy, roughly four months before viability .......................................7

        2.    The six-week ban is enforced through civil actions brought by the general public against abortion providers and those who support abortion patients..........................................................................................9

        3.    S.B. 8 creates huge incentives for enforcement actions to be brought, subjecting abortion providers and supporters to expensive, abusive litigation ...........................................................................................9

        4.    S.B. 8's enforcement actions are gamed against abortion providers and those supporting abortion patients ......................................................10

        5.    S.B. 8's enforcement actions are calculated to result in courts issuing injunctions to halt abortions after six weeks ...............................13

        6.    If enforced, S.B. 8 will bar most patients from accessing an abortion .............................................................................................14

    C.    Section 4 of S.B. 8 Also Creates New Attorney's-Fee Liability in Cases Challenging Abortion Restrictions ........................................................17

    D.    Defendants Have Authority to Directly or Indirectly Enforce the Six-Week Ban and Are Authorized to Seek Fees Under the Fee-Shifting Provision............18

        1.    Defendant classes of Texas state-court judges and clerks .........................18

        2.    Defendant Mark Lee Dickson................................................................19

        3.    Defendant state officials ........................................................................20

        4.    Potential liability to Defendants under the Section 4 fee-shifting provision ...............................................................................................21

# TABLE OF CONTENTS
(continued)

Page

ARGUMENT ...................................................................................................................22

I.    THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR PLAINTIFFS
      ON THEIR CLAIMS RELATING TO SECTION 3 OF S.B. 8, THE SIX-WEEK
      ABORTION BAN AND ENFORCEMENT PROVISIONS....................................22

      A.    The Six-Week Ban Violates Plaintiffs' Patients' Substantive-Due-Process
            Right to Pre-Viability Abortion ...............................................................22

      B.    S.B. 8's Enforcement Provisions Are Independently Unconstitutional.................26

            1.    The enforcement provisions are preempted by federal law .......................26

            2.    The enforcement provisions violate the constitutional guarantee of
                  equal protection...........................................................................28

                  a.    The enforcement provisions single out abortion providers
                        and supporters for discriminatory treatment ................................29

                  b.    The enforcement provisions violate equal protection, no
                        matter the level of scrutiny ...........................................................31

                  c.    The enforcement provisions are unconstitutionally vague ...........32

                  d.    The enforcement provisions fail to provide adequate notice ........32

                  e.    The enforcement provisions invite arbitrary enforcement............34

            3.    The enforcement provisions' creation of aiding-and-abetting
                  liability impermissibly interferes with Plaintiffs' First Amendment
                  rights ...........................................................................................35

                  a.    The aiding-and-abetting and provision is an improper
                        content-based and viewpoint-based speech restriction.................36

                  b.    The aiding-and-abetting provision violates the right to
                        petition the courts........................................................................38

                  c.    The aiding-and-abetting provision implicates Plaintiffs'
                        protected advocacy activities .......................................................39

                  d.    S.B. 8's savings clause provides insufficient protection...............41

## TABLE OF CONTENTS
(continued)

**Page**

II.     THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR PLAINTIFFS
        ON THEIR CLAIMS RELATING TO SECTION 4 OF S.B. 8, THE FEE-
        SHIFTING PROVISION FOR CHALLENGES TO TEXAS ABORTION
        RESTRICTIONS ........................................................................................................42

        A.     Section 4 Violates the First Amendment ..................................................42

               1.     Section 4 violates the First Amendment right to petition the courts..........42

               2.     Section 4 violates the First Amendment right to freedom of speech.........45

        B.     As Applied to Federal Civil-Rights Claims, Section 4 Is Preempted by
               Federal Law ...............................................................................................46

III.    THE COURT SHOULD AWARD DECLARATORY AND INJUNCTIVE
        RELIEF ...................................................................................................................49

CONCLUSION...................................................................................................................50

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Abbott*,
   956 F.3d 696 (5th Cir. 2020), *vacated by Planned Parenthood Ctr. for Choice
   v. Abbott*, 141 S. Ct. 1261 (2021) ..................................................................................5

*Abraham v. Alpha Chi Omega*, 708 F.3d 614 (5th Cir. 2013)......................................49

*Air Evac EMS, Inc. v. Texas*, 851 F.3d 507 (5th Cir. 2017) ........................................21

*Baggett v. Bullitt*, 377 U.S. 360 (1964)........................................................................34

*Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335 (2020) ...........................45

*Battle v. City of Seattle*, 89 F. Supp. 3d 1092 (W.D. Wash. 2015)..............................41

*Bellotti v. Baird*, 443 U.S. 622 (1979) .........................................................................39

*Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731 (1983)...........................................32

*Borough of Duryea v. Guarnieri*, 564 U.S. 379 (2011) ...............................................42

*Bryant v. Woodall*, 363 F. Supp. 3d 611 (M.D.N.C. 2019), *aff'd*, No. 19-1685,
   2021 WL 2446942 (4th Cir. June 23, 2021) ............................................................24

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*,
   532 U.S. 598 (2001)..................................................................................................47

*Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*,
   434 U.S. 412 (1978)..................................................................................................47

*CISPES (Comm. in Solidarity with the People of El Sal.) v. F.B.I.*,
   770 F.2d 468 (5th Cir. 1985) ....................................................................................41

*City of Chicago v. Morales*, 527 U.S. 41 (1999) .........................................................35

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)...................................28

*City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188 (2003)............42

*Cooper v. Aaron*, 358 U.S. 1 (1958).......................................................................26, 28

*Doe I v. Landry*, 909 F.3d 99 (5th Cir. 2018) ..............................................................38

*Dombrowski v. Pfister*, 380 U.S. 479 (1965) ...............................................................49

*Edwards v. Beck*, 786 F.3d 1113 (8th Cir. 2015).........................................................24

## TABLE OF AUTHORITIES

Page(s)

*Elrod v. Burns*, 427 U.S. 347 (1976) ............................................................49

*EMW Women's Surgical Ctr., P.S.C. v. Beshear*,
  No. 3:19-CV-178-DJH, 2019 WL 1233575 (W.D. Ky. Mar. 15, 2019)................24

*Felder v. Casey*, 487 U.S. 131 (1988)...........................................................47

*First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978)...............................49

*Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493 (5th Cir. 2001)....................32

*Fox v. Vice*, 563 U.S. 826 (2011).................................................................47

*Gallegos–Hernandez v. United States*, 688 F.3d 190 (5th Cir. 2012) ........................28

*Giaccio v. Pennsylvania*, 382 U.S. 399 (1966)..................................................35

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ....................................33, 34, 35

*Grisham v. City of Fort Worth*, 837 F.3d 564 (5th Cir. 2016)....................................46

*Grutter v. Bollinger*, 539 U.S. 306 (2003).......................................................31

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*,
  962 F.2d 1366 (9th Cir. 1992) ................................................................24

*Haywood v. Drown*, 556 U.S. 729 (2009)........................................................47

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .....................................................46

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) .......................................40

*Hubbard v. SoBreck, LLC*, 554 F.3d 742 (9th Cir. 2009)........................................48

*Hughes v. Rowe*, 449 U.S. 5 (1980)..............................................................46

*Isaacson v. Horne*, 716 F.3d 1213 (9th Cir. 2013) .............................................24

*Jackson Women's Health Org. v. Currier*, 760 F.3d 448 (5th Cir. 2014) .................27, 50

*Jackson Women's Health Org. v. Dobbs*,
  379 F. Supp. 3d 549 (S.D. Miss. 2019), *aff'd*, 951 F.3d 246 (5th Cir. 2020)........49

*Jackson Women's Health Org. v. Dobbs*, 945 F.3d 265 (5th Cir. 2019), *cert. granted*, No. 19-1392, 2021 WL 1951792 (U.S. May 17, 2021)................11, 22, 23

*Jackson Women's Health Org. v. Dobbs*, 951 F.3d 246 (5th Cir. 2020) ..............11, 23, 24

# TABLE OF AUTHORITIES

Page(s)

*Jane L. v. Bangerter*, 102 F.3d 1112 (10th Cir. 1996)....................................................24

*Johnson v. United States*, 576 U.S. 591 (2015) ...........................................................35

*June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103 (2020) ......................................23, 27

*KBG Invs., LLC v. Greenspoint Prop. Owners' Ass'n*,
    478 S.W.3d 111 (Tex. App. 2015).........................................................................29

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994)........................................................33

*Lefemine v. Wideman*, 568 U.S. 1 (2012) ....................................................................46

*Legal Servs. Corp. v. Velazquez*, 531 U.S. 533 (2001).......................................... *passim*

*Little Rock Fam. Plan. Servs. v. Rutledge*, 984 F.3d 682 (8th Cir. 2021), *pet. for
    cert. filed*, No. 20-1434 (U.S. Apr. 13, 2021) ............................................................24

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)........................................................20

*McCormack v. Herzog*, 788 F.3d 1017 (9th Cir. 2015) ...................................................24

*McCullen v. Coakley*, 573 U.S. 464 (2014) ...................................................................38

*McDonald v. Smith*, 472 U.S. 479 (1985)......................................................................38

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)............................................41

*Memphis Ctr. for Reprod. Health v. Slatery*,
    No. 3:20-CV-00501, 2020 WL 4274198 (M.D. Tenn. July 24, 2020), *appeal
    filed*, No. 20-5969 (6th Cir. Aug. 24, 2020) .............................................................24

*MKB Mgmt. Corp. v. Stenehjem*, 795 F.3d 768 (8th Cir. 2015) .....................................24

*NAACP v. Button*, 371 U.S. 415 (1963)................................................................. *passim*

*Nettles v. GTECH Corp.*, 606 S.W.3d 726 (Tex. 2020) ..................................................25

*New York v. Ferber*, 458 U.S. 747 (1982) .....................................................................34

*Nike, Inc. v. Kasky*, 539 U.S. 654 (2003)......................................................................35

*Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17 (2012) .........................................26, 28

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) .........................................................21

*Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021)........................43

# TABLE OF AUTHORITIES

Page(s)

*Planned Parenthood S. Atl. v. Wilson*,
   No. 3:21-00508-MGL, 2021 WL 672406 (D.S.C. Feb. 29, 2021), *appeal filed*,
   No. 21-1369 (4th Cir. Apr. 5, 2021) ................................................................23, 25

*Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992)............................................ *passim*

*PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011) ................................................46

*Police Dep't of Chicago v. Mosley*, 408 U.S. 92 (1972) ................................................36

*PPGTSHS v. City of Lubbock*,
   No. 5:21-CV-114-H, 2021 WL 2385110 (N.D. Tex. June 1, 2021), *mot. for
   reconsideration filed* (N.D. Tex. June 29, 2021), ECF No. 51 ................................19

*Preterm-Cleveland v. Yost*, 394 F. Supp. 3d 796 (S.D. Ohio 2019)................................................24

*In re Primus*, 436 U.S. 412 (1978)................................................38

*Pulliam v. Allen*, 466 U.S. 522 (1984)................................................18, 49

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) ................................................37

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ................................................36, 37, 45

*Reprod. Health Servs. of Planned Parenthood of St. Louis Region, Inc. v. Parson*,
   No. 19-2882, 2021 WL 2345256 (8th Cir. June 9, 2021), *pet. for cert. filed,*
   No. 21-3 (U.S. June 30, 2021), *vacated & reh'g en banc* granted (8th Cir. July
   13, 2021) (en banc) ................................................24

*Reprod. Health Servs. v. Strange*,
   No. 17-13561, 2021 WL 2678574 (11th Cir. June 30, 2021)................................................5

*Richard v. Hinson*, 70 F.3d 415 (5th Cir. 1995) ................................................28, 29, 31

*Rivers v. Roadway Express, Inc.*, 511 U.S. 298 (1994) ................................................26

*Robinson v. Marshall*, 415 F. Supp. 3d 1053 (M.D. Ala. 2019)................................................24

*Roe v. Wade*, 410 U.S. 113 (1973)........................................................ *passim*

*Romaguera v. Gegenheimer*, 162 F.3d 893 (5th Cir. 1998), *decision clarified on
   denial of reh'g*, 169 F.3d 223 (5th Cir. 1999)................................................48

*Romer v. Evans*, 517 U.S. 620 (1996)................................................31, 32

*Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459 (5th Cir. 2003) ................................................20

## TABLE OF AUTHORITIES

Page(s)

*Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995)......................................45

*S. Christian Leadership Conf. v. Sup. Ct. of La.*, 252 F.3d 781 (5th Cir. 2001)......................42, 43

*Scheideman v. City of Fort Worth*,
No. 017-316515-20 (Tarrant Cnty. Dist. Ct. *filed* Apr. 17, 2020)...........................................45

*Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001)................................................27

*SisterSong Women of Color Reprod. Justice Collective v. Kemp*,
472 F. Supp. 3d 1297 (N.D. Ga. 2020), *appeal filed*, No. 20-13024 (11th Cir.
Aug. 11, 2020) ...............................................................................................................24, 25

*Smith v. Allwright*, 321 U.S. 649 (1944)........................................................................................20

*Sojourner T. v. Edwards*, 974 F.2d 27 (5th Cir. 1992) ..................................................................24

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) ..........................................................................36

*State v. Golden's Concrete Co.*, 962 P.2d 919 (Colo. 1998) .........................................................48

*Steffel v. Thompson*, 415 U.S. 452 (1974) .....................................................................................19

*Terry v. Adams*, 345 U.S. 461 (1953) ............................................................................................28

*Tex. Health & Hum. Servs. Comm'n v. Planned Parenthood of Greater Tex. Fam.
Planning & Preventative Health Servs., Inc.*,
No. 03–12–00745–CV, 2014 WL 1432566 (Tex. Ct. App. Apr. 9, 2014) ............................43

*TransUnion LLC v. Ramirez*,
No. 20-297, 2021 WL 2599472 (U.S. June 25, 2021) ...........................................................34

*U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528 (1973) .............................................................32, 45

*United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762 (5th Cir. 1996)......................................48

*United States v. Alvarez*, 567 U.S. 709 (2012) ..............................................................................37

*United States v. Brock*, 863 F. Supp. 851 (E.D. Wis. 1994).........................................................41

*United States v. Escalante*, 239 F.3d 678 (5th Cir. 2001) ............................................................32

*United States v. Locke*, 529 U.S. 89 (2000) ..................................................................................46

*United States v. O'Brien*, 391 U.S. 367 (1968) .............................................................................38

*United States v. Peters*, 5 Cranch 115 (1803)...............................................................................26

# TABLE OF AUTHORITIES

Page(s)

*United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803 (2000) ....................................................45

*United States v. Ross*,
    948 F.3d 243 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 305 (2020)........................................35

*United States v. Zadeh*, 820 F.3d 746 (5th Cir. 2016) ...................................................................46

*United Transp. Union v. State Bar of Mich.*, 401 U.S. 576 (1971) ...............................................44

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests.*, 455 U.S. 489 (1982)........................................32

*W. Fork Advisors, LLC v. SunGard Consulting Servs., LLC*,
    437 S.W.3d 917 (Tex. App. 2014)...........................................................................................25

*Wal-Mart Stores, Inc. v. Forte*, 497 S.W.3d 460 (Tex. 2016) .......................................................29

*Whole Woman's Health All. v. Paxton*,
    No. 1:18-CV-00500-LY (W.D. Tex. June 14, 2018), ECF No. 1...............................17, 21, 45

*Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016) ..........................................5, 25, 27

*Whole Woman's Health v. Hellerstedt*,
    No. 1:14-cv-284-LY (W.D. Tex. Aug. 9, 2019), ECF No. 297....................................................43

*Whole Woman's Health v. Paxton*, 978 F.3d 896 (5th Cir. 2020) ..................................................21

*Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018) ....................................................21

*Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323 (2011) .....................................................46

*Women's Med. Ctr. of Nw. Houston v. Bell*, 248 F.3d 411 (5th Cir. 2001)..............................32, 33

*Ex Parte Young*, 209 U.S. 123 (1908) ............................................................................................21

*Zablocki v. Redhail*, 434 U.S. 374 (1978)......................................................................................31

## Constitution, Statutes, & Regulations

U.S. Const. amend. I .............................................................................................................. *passim*

U.S. Const. amend. XV........................................................................................................... *passim*

U.S. Const. art. VI, cl. 2 ..................................................................................................................26

42 U.S.C. § 1983.................................................................................................................... *passim*

42 U.S.C. § 1988.........................................................................................................17, 46, 47, 48

## TABLE OF AUTHORITIES

Page(s)

1 Tex. Admin. Code § 354.1167 ................................................................................15

Tex. Civ. Prac. & Rem. Code §§ 10.001–.002 ......................................................31

Tex. Civ. Prac. & Rem. Code § 15.002 ..................................................................12

Tex. Civ. Prac. & Rem. Code § 30.022 ...........................................17, 42, 45, 47, 48

Tex. Fam. Code §§ 33.001–.014 ............................................................................15

Tex. Health & Safety Code § 171.002 .....................................................................8

Tex. Health & Safety Code § 171.008 .....................................................................8

Tex. Health & Safety Code §§ 171.011-.016 ..........................................................6

Tex. Health & Safety Code § 171.201 .....................................................................8

Tex. Health & Safety Code § 171.203 .....................................................................8

Tex. Health & Safety Code §171.204 .......................................................................8

Tex. Health & Safety Code § 171.205 .....................................................................8

Tex. Health & Safety Code § 171.207 ...............................................................18, 20

Tex. Health & Safety Code § 171.208 ...........................................................*passim*

Tex. Health & Safety Code § 171.209 ...........................................11, 12, 28, 30

Tex. Health & Safety Code § 171.210 ...............................................................12, 30

Tex. Health & Safety Code § 171.212 ....................................................................26

Tex. Health & Safety Code § 245.011 ..................................................................8, 9

Tex. Ins. Code § 1696.002 ....................................................................................15

Tex. Ins. Code §§ 11218.001–.006 .......................................................................15

Tex. Occ. Code § 164.052 ....................................................................................20

Tex. Occ. Code § 164.053 ....................................................................................20

**Other Authorities**

Fed. R. Civ. P. 56 ..............................................................................................4, 22

# TABLE OF AUTHORITIES

Page(s)

Kari White et al., Letter: *Changes in Abortion in Texas Following an Executive Order Ban During the Coronavirus Pandemic*, 325 JAMA 691, 691 (2021) ..........................6

Kari White, et al., *Research Brief: Texas Senate Bill 8: Medical and Legal Implications*, Tex. Policy Evaluation Project (July 2021) ......................................................14

Letter from Hon. Steve Adler et al., to Tex. House of Representatives, *Open letter in opposition to HB 1515 and SB 8 from the Texas legal community* 2 (Apr. 28, 2021) ..........................................................................................................................2

Nelson S. Ebaugh, *The Liability: Why You Should Understand the Five Tests of Civil Aiding and Abetting in Texas*, 78 Tex. B.J. 362 (2015)...................................................33

Vinita Goyal et al., *Factors Associated with Abortion at 12 or More Weeks Gestation After Implementation of a Restrictive Texas Law*, 102 Contraception 314, 314–17 (2020)...............................................................................................................15

## INTRODUCTION

Senate Bill 8, 87th Leg., Reg. Sess. (Tex. 2021) ("S.B. 8") bans abortion in Texas starting at approximately six weeks of pregnancy—a point when many people do not even know they are pregnant.  Under nearly fifty years of unbroken precedent, "a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability."  *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 879 (1992).  Before that point in pregnancy, it is for the patient—not the State—to make that decision.  *Id.* at 872.  In flagrant defiance of that precedent, S.B. 8 bans abortion roughly *four months* before viability.  S.B. 8 is thus a blatant violation of Plaintiffs' patients' substantive-due-process rights.

In that respect, S.B. 8 is like other unconstitutional laws that states have enacted in recent years to ban abortions at gestational ages before viability—all of which have been blocked by federal courts when challenged.  But S.B. 8 differs from those other bans in that it bars government officials—such as the attorney general, local prosecutors, or the health department—from enforcing it directly.  Instead, S.B. 8 is enforceable through private civil actions that can be brought against anyone alleged to have (1) provided an abortion that violates the ban, (2) engaged in conduct that "aids or abets" an abortion that violates the ban, or (3) merely intended to do any of those things.  S.B. 8 purports to allow "any person" to bring enforcement actions, regardless of whether they were injured or connected to the abortion in any way.

If a violation is found, S.B. 8 directs state courts to issue an injunction to prevent any further abortions from being performed or aided in violation of the ban.  And S.B. 8 offers up a huge bounty to incentivize vigilantes to initiate enforcement actions:  if an action is successful, the person who initiated it gets a *minimum* reward (there is no express maximum) of $10,000 per abortion, payable by the person found to have violated the ban.  S.B. 8 thus encourages suits from anyone, whether motivated by opposition to abortion or just by the prospect of a financial windfall.

What is more, the rules in these enforcement actions are heavily skewed against abortion providers and others who are sued; the actions are designed to result in injunctions and liability. S.B. 8 "weaponizes the judicial system by exempting the newly created cause of action from the normal guardrails that protect Texans from abusive lawsuits and provide all litigants a fair and efficient process in our state courts."[1]  S.B. 8 purports to limit a person's ability to argue that this pre-viability ban violates the federal constitutional right to abortion.  It prohibits anyone who is sued from arguing that their conduct was legal at the time they engaged in it if the law on which they relied is later changed.  It breaks from normal venue rules, allowing anti-abortion activists to force abortion providers and others to defend themselves in any of Texas's 254 counties—in fact, in multiple venues simultaneously.  And, again departing from the normal rules, it has a one-way fee-shifting provision that allows successful vigilantes to recover their costs and attorney's fees, but forbids abortion providers and others sued under S.B. 8 from recovering their fees and costs in defending against this patently unconstitutional restriction.  S.B. 8's discriminatory enforcement scheme invites harassing, costly lawsuits as a penalty for providing or supporting abortions, in violation of Plaintiffs' rights under the Due Process Clause, the Equal Protection Clause, and the First Amendment.  And its attempts to override federal law are plainly preempted.

If S.B. 8 is not blocked before it takes effect, the result will be disastrous.  Abortion providers will be forced to either stop providing abortions beginning at about six weeks of pregnancy or defend themselves in expensive, prolonged state-court proceedings in which the deck is stacked against them and in which they face injunctions and ruinous monetary penalties.

---

[1] Letter from Hon. Steve Adler et al., to Tex. House of Representatives, *Open letter in opposition to HB 1515 and SB 8 from the Texas legal community* 2 (Apr. 28, 2021), https://documentcloud.adobe.com/link/review?uri=urn%3Aaaid%3Ascds%3AUS%3A38eff803-3fd3-498b-a6b4-658305bf6beb.

Nonprofit abortion funds that help low-income patients pay for an abortion will also be forced into the untenable choice between ceasing their critical services and facing devastating liability. Groups that provide patients with logistical support, clergy members who provide parishioners with emotional and spiritual support, and domestic-violence, rape, and genetics counselors who refer and assist with abortion services may also face abusive lawsuits.  Although patients themselves cannot be sued under S.B. 8, their family members who assist them could be sued by complete strangers accusing them of being aiders and abettors.  An abusive partner, family member, or hostile stranger who learns of a patient's abortion appointment could rush into court seeking to stop the abortion by accusing the provider of intending to violate the ban.

The threat of lawsuits and liability will inevitably chill the exercise of constitutional rights and decimate abortion access in Texas.  Many patients will be forced to carry unwanted pregnancies to term or try to travel out of state to access care, just as they were forced to do during Texas's month-long abortion ban last year during the early days of the pandemic.  Low-income Texans, communities of color, and young people in Texas, who already face inequities in access to medical care, will be hit hardest, and many will be unable to overcome the financial and logistical hurdles to accessing out-of-state care.  S.B. 8 will also add to the anguish of survivors of sexual assault, as well as patients and their families who receive a fetal diagnosis incompatible with life but who nonetheless would be forced to continue carrying the pregnancy.

In addition to the six-week ban and enforcement scheme described above, S.B. 8 also contains an extraordinary fee-shifting provision designed to deter anyone from challenging *any* Texas abortion restriction—not just S.B. 8.  Under this provision, if a person challenges a Texas abortion restriction in state or federal court and does not prevail on *every* claim they raise, they and their lawyers become liable for their opponents' attorney's fees—even if they successfully got

the restriction blocked.  This extreme fee-shifting provision violates Plaintiffs' First Amendment rights and is in direct conflict with rights provided to them under federal civil-rights law.

Plaintiffs urgently need this Court to intervene.  The constitutional rights of Plaintiffs and their patients can be vindicated through declaratory relief against the Texas state judges who would be conscripted into enforcing S.B. 8, as well as declaratory and injunctive relief against the court clerks who would be roped into participating in the enforcement.  All of them have been named here in putative defendant classes.  Declaratory and injunctive relief are also warranted against Defendant Mark Lee Dickson, an individual deputized by S.B. 8 to bring enforcement actions, who is highly likely to do so based on his public actions and statements.  If S.B. 8 is not blocked, Mr. Dickson may be the first, but certainly will not be the last, to seek its enforcement against Plaintiffs.  Plaintiffs also seek declaratory and injunctive relief against state licensing officials and the Attorney General, who—although they cannot enforce S.B. 8 directly—remain able to take enforcement actions against Plaintiffs under *other* laws if S.B. 8 is violated, and to seek costs and fees under S.B. 8's fee-shifting provision.

Because only declaratory relief is available at this time against the defendant class of judges (*see* 42 U.S.C. § 1983), and such relief is urgently needed to prevent S.B. 8's devastating consequences on September 1, 2021, Plaintiffs seek entry of summary judgment in their favor on all their claims at the commencement of this case.  *See* Fed. R. Civ. P. 56(b).  There are no genuine issues of material fact, and Plaintiffs are entitled to judgment as a matter of law because S.B. 8 is blatantly unconstitutional.  The Court should thus grant summary judgment and award a declaratory judgment that S.B. 8 is unconstitutional and unenforceable, as well as appropriate injunctive relief against the non-judge Defendants.

## BACKGROUND

### A.  Plaintiffs Are Committed to Ensuring Patients Can Access Abortion Amid a Hostile Climate

Legal abortion is one of the safest medical procedures in the United States.  It is also very common: approximately one in four women in the United States has an abortion by age forty-five.[2] Declaration of Allison Gilbert, M.D. ("Gilbert Decl.") (attached hereto as Pls.' Ex. A) ¶¶ 28–29; Declaration of Bhavik Kumar, M.D., M.P.H. ("Kumar Decl.") (attached hereto as Pls.' Ex. B) ¶ 7.

Nevertheless, abortion access has been under threat from the Texas Legislature and other Texas officials for years.  Barriers imposed by Texas law have dramatically reduced access to abortion in Texas, causing permanent harm even when the barriers were in place for just days or weeks.  For example, in 2013, Texas imposed burdensome, medically unnecessary requirements that abortion providers have hospital admitting privileges and that abortions be performed in surgical centers.  These barriers "led to the closure of half of Texas' clinics," which "meant fewer doctors, longer waiting times, and increased crowding."  *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2313 (2016).  Many of those clinics were unable to reopen after the laws were blocked as unconstitutional.  Declaration of Andrea Ferrigno ("Ferrigno Decl.") (attached hereto as Pls.' Ex. C) ¶ 18; Declaration of Jessica Klier ("Klier Decl.") (attached hereto as Pls.' Ex. D) ¶ 14.  Then, in the midst of the Covid-19 pandemic, Governor Abbott issued an executive order banning nearly all abortions in Texas for a month.  *See In re Abbott*, 956 F.3d 696, 704–06 (5th Cir. 2020), *vacated by Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021).

---

[2] References to "woman" or "women" in this brief are meant as shorthand for people who are or may become pregnant.  People with other gender identities, including transgender men and gender-diverse individuals, may also become pregnant and seek abortion services.  *Accord Reprod. Health Servs. v. Strange*, No. 17-13561, 2021 WL 2678574, at *1 n.2 (11th Cir. June 30, 2021) ("Although this opinion uses gendered terms, we recognize that not all persons who may become pregnant identify as female.").

Some patients were forced to delay care so long that their pregnancies were too far along to obtain an abortion in Texas after the order expired.  Kumar Decl. ¶ 31.  Others had to travel as far as Colorado or Georgia, during a crisis point of the pandemic, to obtain abortions.  Declaration of Ken Lambrecht ("Lambrecht Decl.") (attached hereto as Pls.' Ex. E) ¶ 25; Declaration of Melaney A. Linton ("Linton Decl.") (attached hereto as Pls.' Ex. F) ¶ 23; *see also* Kari White et al., Letter: *Changes in Abortion in Texas Following an Executive Order Ban During the Coronavirus Pandemic*, 325 JAMA 691, 691 (2021).

Texas also has numerous medically unnecessary, abortion-specific mandates that hamper access to care.  For example, Texas law requires patients living less than 100 miles from an abortion clinic to make an additional, unnecessary visit to receive state-mandated counseling and an ultrasound in person, and then delay at least 24 hours before making another trip to obtain the abortion.  Tex. Health & Safety Code §§ 171.011-.016.

Despite this hostile climate, Plaintiffs are committed to ensuring that patients can access safe, common, and constitutionally protected health care.  Plaintiffs include health centers and physicians who provide high-quality health care, including abortions, to their patients, as well as a clinic staff member who oversees clinical operations at four Texas abortion clinics and is personally involved in patient care.  Gilbert Decl. ¶ 8; Kumar Decl. ¶ 4; Ferrigno Decl. ¶ 6; Klier Decl. ¶ 2; Lambrecht Decl. ¶¶ 6–7; Linton Decl. ¶ 6; Declaration of Amy Hagstrom Miller ("Hagstrom Miller Decl.") (attached hereto as Pls.' Ex. G) ¶¶ 8–9; Declaration of Alan Braid, M.D. ("Braid Decl.") (attached hereto as Pls.' Ex. H) ¶¶ 5–6; Declaration of Bernard Rosenfeld, M.D., Ph.D. ("Rosenfeld Decl.") (attached hereto as Pls.' Ex. I) ¶ 2; Declaration of Polin C. Barraza ("Barraza Decl.") (attached hereto as Pls.' Ex. J) ¶ 6; Declaration of Marva Sadler ("Sadler Decl.") (attached hereto as Pls.' Ex. K) ¶¶ 7, 16.

Plaintiffs also include organizations and individuals who support vulnerable patients by offering funding to defray the cost of abortion; assisting with transportation and other logistical support; providing spiritual and emotional counseling, as well as information about how to access abortion; and securing free legal representation for minor patients who need a court order to obtain care.  Declaration of Zaena Zamora ("Zamora Decl.") (attached hereto as Pls.' Ex. L) ¶¶ 1, 6–10; Declaration of Marsha Jones ("Jones Decl.") (attached hereto as Pls.' Ex. M) ¶¶ 8–11; Declaration of Anna Rupani ("Rupani Decl.") (attached hereto as Pls.' Ex. N) ¶¶ 1, 6–7; Declaration of Kamyon Conner ("Conner Decl.") (attached hereto as Pls.' Ex. O) ¶¶ 1, 6–9; Declaration of Amanda Beatriz Williams ("Williams Decl.") (attached hereto as Pls.' Ex. P) ¶¶ 1, 5–6; Declaration of Reverend Daniel Kanter ("Kanter Decl.") (attached hereto as Pls.' Ex. Q) ¶¶ 11, 17–19; Declaration of Reverend Erika Forbes ("Forbes Decl.") (attached hereto as Pls.' Ex. R) ¶¶ 5, 12; Declaration of Rosann Mariappuram ("Mariappuram Decl.") (attached hereto as Pls.' Ex. S) ¶¶ 1, 6–10.

**B.    Section 3 of S.B. 8 Is a Flagrantly Unconstitutional Six-Week Abortion Ban with a Rigged Civil Enforcement Scheme**

*1.    S.B. 8 prohibits abortions beginning at approximately six weeks of pregnancy, roughly four months before viability*

The Supreme Court has reiterated for nearly fifty years that "[b]efore viability, the State's interests are not strong enough to support a prohibition of abortion."  *Casey*, 505 U.S. at 846. Viability is generally understood as the point when a fetus, if born at that point in pregnancy, has a reasonable likelihood of sustained life after birth, with or without artificial support.  *Roe v. Wade*, 410 U.S. 113, 160 (1973); *see* Gilbert Decl. ¶ 20; Braid Decl. ¶ 8.  A full-term pregnancy is approximately 40 weeks, as measured from the first day of the patient's last menstrual period ("LMP").  Gilbert Decl. ¶ 17.  Viability is an individual medical determination, but it generally

does not occur until approximately 24 weeks LMP.  Gilbert Decl. ¶ 20; Braid Decl. ¶ 8; Rosenfeld Decl. ¶ 4.

Yet Section 3 of S.B. 8 prohibits abortion in Texas beginning at approximately six weeks LMP—roughly four months before viability.  Specifically, it requires physicians to perform an ultrasound before providing an abortion, and it prohibits the abortion if a "fetal heartbeat" is detected.  S.B. 8 § 3 (to be codified at Tex. Health & Safety Code §§ 171.203(b), 171.204(a)) (hereinafter S.B. 8 § 3 citations are to the newly created sections of Tex. Health & Safety Code only).  "Fetal heartbeat" is defined as "cardiac activity . . . within the gestational sac," S.B. 8 § 171.201(1), including in an embryo, *id.* § 171.201(7).  Cardiac activity is not a "heartbeat" in the lay sense; it includes early electrical impulses in embryonic cells well before the full development of the heart and cardiovascular system.  Gilbert Decl. ¶¶ 18–19.  Such activity is generally detectible in an embryo via ultrasound beginning at approximately six weeks LMP.  Gilbert Decl. ¶ 18; Rosenfeld Decl. ¶ 4; Braid Decl. ¶ 7; Kumar Decl. ¶ 9.

S.B. 8 has no exception if the pregnancy results from rape or incest, nor is there an exception for a fetal health condition that is incompatible with sustained life after birth.  There is only a narrow exception for a "medical emergency," S.B. 8 § 171.205(a), which requires "a life-threatening physical condition," Tex. Health & Safety Code § 171.002(3).  Sections 7 and 9 of S.B. 8, which are integrated with Section 3, impose additional reporting requirements on abortions exempt from the ban because of a medical emergency.  S.B. 8 § 7 (to be codified at Tex. Health & Safety Code § 171.008); S.B. 8 § 9 (to be codified at Tex. Health & Safety Code § 245.011(c)).

2. ***The six-week ban is enforced through civil actions brought by the general public against abortion providers and those who support abortion patients***

S.B. 8 enforcement actions can be brought by "[a]ny person" other than a state or local government official.  S.B. 8 § 171.208(a); *see also id.* § 171.208(j).  The person bringing the action need not have been harmed and need not have any connection whatsoever to the abortion.

Individuals can be sued under S.B. 8 for

- "perform[ing] or induc[ing] an abortion" that violates the six-week ban;

- "knowingly engag[ing] in conduct that aids or abets the performance or inducement of an abortion" that violates the six-week ban, "regardless of whether the person knew or should have known that the abortion would be performed or induced in violation" of the ban; or

- "intend[ing]" to provide or aid and abet an abortion that violates the ban.

*Id.* § 171.208(a).

"[A]ids or abets" is undefined except that it expressly includes "paying for or reimbursing the costs of an abortion through insurance or otherwise."  *Id.*  This provision is designed to prevent abortion patients from obtaining the emotional, financial, and logistical support they need to access care.  Abortion patients will run the risk that family, friends, or partners who support them in making and effectuating their decision could be brought into court to defend themselves against accusations by total strangers for "aid[ing] or abet[ting]" a prohibited abortion.

3. ***S.B. 8 creates huge incentives for enforcement actions to be brought, subjecting abortion providers and supporters to expensive, abusive litigation***

S.B. 8 creates enormous incentives for abortion opponents or windfall seekers to bring S.B. 8 enforcement actions.  If an action is successful, "the court shall award" not only injunctive relief, *id.* § 171.208(b)(1), but also massive monetary penalties described as "statutory damages in

an amount of not less than $10,000 for each abortion" performed, aided, or intended to be performed or aided in violation of the six-week ban, *id.* § 171.208(b)(2).

Prevailing claimants are also entitled to "costs and attorney's fees." *Id.* § 171.208(b)(3). By contrast, abortion providers and others sued under S.B. 8 are barred from recovering their costs and attorney's fees, *id.* § 171.208(i)—even though the action against them is to enforce a blatantly unconstitutional abortion ban, *supra* at 7–8.

S.B. 8 thus presents on its face a risk-free way for anti-abortion activists or other members of the public to intimidate and impose massive costs on abortion providers, their staff, and those who help vulnerable Texans access abortion care, regardless of the outcome of the suit. And if the S.B. 8 claimants are successful before any state-court judge, S.B. 8 promises them an enormous windfall and injunctive relief blocking the provision of constitutionally protected medical care.

4.    ***S.B. 8's enforcement actions are gamed against abortion providers and those supporting abortion patients***

S.B. 8 also stacks the deck against abortion providers and people supporting abortion patients so that they cannot predict what conduct will subject them to suit and cannot adequately defend themselves once enforcement proceedings have begun. S.B. 8 does so by creating special rules that, at every turn, are designed to chill the exercise of constitutional rights, to impose ruinous costs and uncertainty on people defending against S.B. 8 enforcement actions, and to eviscerate those individuals' otherwise meritorious federal constitutional defenses.

a.    S.B. 8 provides that people accused of violating the six-week ban or aiding and abetting a violation can be held liable retroactively for conduct that was perfectly legal at the time it was engaged in. It is "not a defense" that the person who is sued had relied on a court decision that was subsequently "overruled on appeal or by a subsequent court, even if that court decision

had not been overruled when the defendant engaged in the conduct." S.B. 8 § 171.208(e)(3). It also is "not a defense" that the abortion patient consented to the abortion. *Id.* § 171.208(e)(6).

      **b.**      S.B. 8 purports to limit the federal constitutional protections recognized by the Supreme Court. *Id.* § 171.209 (titled "Civil Liability: Undue Burden Defense *Limitations*" (emphasis added)). Under an "unbroken line" of Supreme Court cases stretching nearly fifty years, "[s]tates may *regulate* abortion procedures prior to viability so long as they do not impose an undue burden on the woman's right, but they may not ban abortions." *Jackson Women's Health Org. v. Dobbs* ("*Jackson Women's I*"), 945 F.3d 265, 269 (5th Cir. 2019), *cert. granted*, No. 19-1392, 2021 WL 1951792 (U.S. May 17, 2021). Where, as here, the challenged law is a pre-viability ban, "the State's interests cannot outweigh the woman's right to choose an abortion" because the Supreme Court "has already balanced the State's asserted interests and found them wanting." *Id.* at 273–74; *see also Jackson Women's Health Org. v. Dobbs* ("*Jackson Women's II*"), 951 F.3d 246, 248 (5th Cir. 2020) (per curiam) (holding Mississippi's six-week ban unconstitutional).

      S.B. 8 attempts to eviscerate this rule and impose a distorted version of the "undue burden" test. S.B. 8 forces people who are sued to demonstrate that the imposition of an injunction and monetary penalties against them will impose a substantial obstacle on patient access to care, and to do so without relying on the effect of "an award of relief against other defendants or other potential defendants." S.B. 8 § 171.209(d)(2). Courts are apparently supposed to pretend that S.B. 8's statewide six-week ban will not affect access at any other health centers. Under this mangled undue-burden test, an abortion provider who is sued would seemingly have to prove that traveling to another provider would constitute a substantial obstacle for their patients—all while ignoring the effect of any enforcement lawsuit against the other provider. S.B. 8 applies this

standard even though decades of settled precedent have already determined that the State may not

ban abortion at a point in pregnancy before viability.

Even this distorted undue-burden affirmative defense can be retroactively taken away: it

is "not available if the United States Supreme Court overrules *Roe v. Wade*, 410 U.S. 113 (1973)

or *Planned Parenthood v. Casey*, 505 U.S. 833 (1992), regardless of whether the conduct . . .

occurred before the Supreme Court overruled either of those decisions." *Id.* § 171.209(e).

   **c.**     S.B. 8 also creates new venue rules to maximize the burdens on people sued. Under

Texas's normal venue rules, venue is generally limited to where the events giving rise to the claim

took place or where the defendant resides, and the defendant can move to transfer the case to a

more convenient venue. *See* Tex. Civ. Prac. & Rem. Code § 15.002(a). In contrast, under S.B. 8,

any Texan can bring an enforcement action in their home county—even if the patient was not from

there and the abortion provider has never been there—and can unilaterally veto the transfer of the

case to a different venue. S.B. 8 § 171.210(a)(4), (b). This effectively means that anti-abortion

activists can force an abortion provider in Houston to defend themselves in El Paso, or force

someone from McAllen who aids an abortion to travel to Amarillo to mount a defense. Just one

abortion could spawn multiple, simultaneous enforcement actions in venues throughout the state,

brought by complete strangers who happen to live in different counties.

   The burden of defending suits across the state is exacerbated by an additional provision in

S.B. 8 stating that a person accused in an enforcement action cannot present a defense of "reliance

on any state or federal court decision that is not binding on the court in which the action has been

brought." *Id.* § 171.208(e)(4). Because a state appellate decision in Houston is not binding in El

Paso, for example, a Houston abortion provider could have an appellate decision in their favor at

home but still be dragged into a court potentially governed by conflicting rulings, the most restrictive of which will necessarily govern their conduct. *See id.* § 171.208(b)(1).

**d.**      Finally, as discussed *supra* at 3–4, S.B. 8 creates a one-way fee-shifting provision that benefits only the vigilantes who bring these enforcement actions. *Id.* § 171.208(b)(3). Abortion providers and others sued under S.B. 8 cannot be awarded fees or costs, *id.* § 171.208(i), even though they will have been forced to defend against a blatantly unconstitutional law.

### 5.      *S.B. 8's enforcement actions are calculated to result in courts issuing injunctions to halt abortions after six weeks*

S.B. 8's enormous monetary incentives and skewed rules are ends in themselves, guaranteeing that enforcement actions will be brought and that abortion clinics, physicians, staff, and other supporters of abortion patients will be forced to expend time and resources defending against burdensome, bad-faith lawsuits.   These effects alone will chill the exercise of the constitutional right to abortion.

But the financial incentives and skewed rules are also a means to achieve another end: having state courts enjoin all abortions after six weeks across the state.  If an enforcement action is brought (as guaranteed by the monetary incentives) and successful (as intended by the skewed rules), the court "shall award" "injunctive relief sufficient to prevent" further violations. *Id.* § 171.208(b)(1).  Thus, once *any* enforcement action against an abortion provider is successful, the court will seemingly be required to issue an injunction, enforceable through contempt, prohibiting the provider from providing abortions after six weeks.

This injunction provision poses an even more immediate threat to patients: that their decision to have an abortion could be effectively vetoed by anyone who knows about their plan. Such a person—be it a violent partner or a disapproving parent—could try to seek immediate injunctive relief to stop the abortion provider who "intends" to perform the abortion. *Id.*

§ 171.208(a).  Indeed, while S.B. 8 does not permit a patient's abuser to prevent the abortion of a pregnancy caused by rape or incest, *id.* § 171.208(j), anyone else could do so, including the abuser's family members or complete strangers.

### 6.     *If enforced, S.B. 8 will bar most patients from accessing an abortion*

If allowed to take effect, S.B. 8 will prohibit nearly all abortions in the State of Texas.  Its plain language prohibits abortion care at the earliest moments that a pregnancy can be detected and often before a patient has any reason to suspect that they may be pregnant.  Gilbert Decl. ¶¶ 21–25; Braid Decl. ¶ 13.  Although patients generally obtain an abortion as soon as they are able, approximately 85%-90% of patients who obtain abortions in Texas are unable to do so until at least six weeks LMP.  Barraza Decl. ¶ 8; Kumar Decl. ¶ 12; Linton Decl. ¶ 8; Lambrecht Decl. ¶ 9; Klier Decl. ¶ 12; Hagstrom Miller Decl. ¶ 10; Ferrigno Decl. ¶ 14; Gilbert Decl. ¶ 14; *see also* Kari White, et al., *Research Brief: Texas Senate Bill 8: Medical and Legal Implications*, Tex. Policy Evaluation Project (July 2021), *available at* http://sites.utexas.edu/txpep/files/2021/07/ TxPEP-research-brief-SB8.pdf.

There are a variety of reasons for this.  Many patients—such as those with irregular menstrual cycles—do not realize they are pregnant until after six weeks LMP.  Braid Decl. ¶ 13; Gilbert Decl. ¶¶ 21–25; Hagstrom Miller Decl. ¶ 17.  Patients who do realize they may be pregnant before six weeks LMP usually do not suspect it until at least four weeks LMP, which is when a patient with a highly regular menstrual cycle would miss their period—generally the first clear indication of a possible pregnancy.  Braid Decl. ¶ 14; Gilbert Decl. ¶ 22; Hagstrom Miller Decl. ¶ 17.  At-home pregnancy tests are not generally effective until at least four weeks LMP.  Gilbert Decl. ¶ 23.  Thus, if the six-week ban were to take effect, the subset of patients who realize they are pregnant before six weeks LMP would have only a short window of time in which to decide

whether to keep or terminate the pregnancy, then seek and obtain an abortion before the six-week cutoff. Gilbert Decl. ¶ 26; Braid Decl. ¶ 15; Ferrigno Decl. ¶ 14; Hagstrom Miller Decl. ¶ 17.

Texas's existing legal barriers to abortion push most patients past six weeks LMP.  As discussed, many clinics closed permanently due to unconstitutional regulations enacted in 2013 and never reopened, reducing both the number and geographic distribution of providers.  *See supra* at 5.  Texas's mandatory 24-hour-delay and two-trip requirement easily pushes many patients past the point when cardiac activity can be detected.  Kumar Decl. ¶ 18; Hagstrom Miller Decl. ¶ 17; Ferrigno Decl. ¶ 14.  Moreover, Texas generally requires patients under eighteen to obtain written parental authorization for an abortion or get a court order to obtain care—a process that typically delays abortion care by ten days.  Tex. Fam. Code §§ 33.001–.014; Mariappuram Decl. ¶ 15; Kumar Decl. ¶ 19; Ferrigno Decl. ¶ 25.

Financial and logistical difficulties also prevent patients from obtaining an abortion before six weeks LMP.  Three out of four abortion patients are low-income or live in poverty.  Kumar Decl. ¶ 26.  The majority of Texas abortion patients identify as Black or Latina/Hispanic—communities that already face inequities in access to medical care.  Kumar Decl. ¶ 26; Jones Decl. ¶ 19; Conner Decl. ¶ 5; Mariappuram Decl. ¶ 14; *see also* Vinita Goyal et al., *Factors Associated with Abortion at 12 or More Weeks Gestation After Implementation of a Restrictive Texas Law*, 102 Contraception 314, 314–17 (2020).  And with very narrow exceptions, Texas bars coverage of abortion under its Medicaid program, 1 Tex. Admin. Code § 354.1167, health plans offered in the state health-insurance exchange, Tex. Ins. Code § 1696.002, and private insurance plans, *id.* §§ 1218.001–.006.  Patients often make difficult tradeoffs among other basic needs like food or rent to pay for their abortions.  Kumar Decl. ¶ 17; Zamora Decl. ¶ 19.  Many must seek financial assistance from extended family and friends or from local abortion funds to pay for care.  Kumar

Decl. ¶ 17; Ferrigno Decl. ¶ 22; Zamora Decl. ¶ 7; Jones Decl. ¶ 14; Rupani Decl. ¶ 10; Conner Decl. ¶ 7; Williams Decl. ¶ 6.   Moreover, many patients must navigate other logistics, such as inflexible or unpredictable work schedules, childcare, the need for safe accommodations, and transportation hurdles—each of which can require patients to gather additional resources and may delay them in obtaining an abortion.   Ferrigno Decl. ¶ 24; Hagstrom Miller Decl. ¶ 17; Kumar Decl. ¶ 17; Rupani Decl. ¶¶ 12–13.

Patients whose pregnancies are the result of sexual assault or who are experiencing interpersonal violence may need additional time to access abortion due to ongoing physical or emotional trauma or because of added challenges accessing abortion care without the knowledge of their abuser.   For such patients, obtaining an abortion before six weeks LMP is exceedingly difficult, if not impossible.   Kumar Decl. ¶ 21; Ferrigno Decl. ¶ 26; Rupani Decl. ¶ 13.

If abortion becomes largely inaccessible in Texas, patients who can scrape together the resources to do so will be forced to travel out of state for medical care.   Many of these patients will be delayed in ending their pregnancies, bearing the pains and risks of pregnancy for longer and the increased medical risks and costs of abortion at later gestational ages.   Kumar Decl. ¶¶ 24–25; Klier Decl. ¶ 13; Hagstrom Miller Decl. ¶¶ 28–30; Lambrecht Decl. ¶ 23; Ferrigno Decl. ¶ 27; Braid Decl. ¶¶ 16–17; Barraza Decl. ¶ 20; Zamora Decl. ¶ 15; Rupani Decl. ¶ 15; Conner Decl. ¶ 12; Williams Decl. ¶ 12; Linton Decl. ¶ 21.   Some who are unable to travel out of state will seek ways to end their pregnancies without access to accurate medical information.   Linton Decl. ¶¶ 5, 24; Lambrecht Decl. ¶ 5; Kumar Decl. ¶ 25; Barraza Decl. ¶ 5; Braid Decl. ¶ 18; Ferrigno Decl. ¶ 29; Zamora Decl. ¶ 17; Rupani Decl. ¶ 15.

S.B. 8 will force many Texans to carry pregnancies to term and undergo childbirth against their will.   Jones Decl. ¶ 26; Williams Decl. ¶¶ 12–13; Linton Decl. ¶¶ 5, 23; Lambrecht Decl. ¶¶

5, 25; Kumar Decl. ¶¶ 24, 31; Barraza Decl. ¶¶ 5, 20, 22; Zamora Decl. ¶ 17; Rupani Decl. ¶ 15; Conner Decl. ¶¶ 12–13; Mariappuram Decl. ¶¶ 17–18; Klier Decl. ¶ 13; Hagstrom Miller Decl. ¶ 30; Ferrigno Decl. ¶ 29; Sadler Decl. ¶ 14; Braid Decl. ¶ 19.   They will face increased mortality risk associated with full-term pregnancy and childbirth—14 times greater than that of abortion. Gilbert Decl. ¶¶ 30–31; Braid Decl. ¶ 17.   Patients and their families who receive fetal diagnoses that are incompatible with sustained life after birth will suffer the added anguish of being forced to continue a doomed pregnancy.  Kumar Decl. ¶ 28.  Patients with preexisting conditions will be forced to incur the heightened medical and mental health risks associated with continuing pregnancy unless their condition deteriorates so profoundly that they can satisfy S.B. 8's narrow "medical emergency" exception.  *Id.* ¶ 29; Gilbert Decl. ¶ 31; Braid Decl. ¶ 17.

> ### C.   Section 4 of S.B. 8 Also Creates New Attorney's-Fee Liability in Cases Challenging Abortion Restrictions

Separate from the fee-shifting provision in Section 3 of S.B. 8 (which governs the six-week ban enforcement actions), Section 4 of S.B. 8 creates another one-way fee-shifting provision designed to penalize and deter *all* state and federal challenges to *all* Texas abortion restrictions, not just challenges to S.B. 8 itself.   S.B. 8 § 4 (to be codified at Tex. Civ. Prac. & Rem. Code § 30.022) (applying to "any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts abortion or that limits taxpayer funding" for abortion) (hereinafter S.B. 8 § 4 citations are to newly created sections of Tex. Civ. Prac. & Rem. Code).   It makes no exception for federal civil-rights claims, including Section 1983 claims, that are already subject to a comprehensive fee-shifting regime under 42 U.S.C. § 1988.

Specifically, Section 4 purports to impose liability for an opponent's attorney's fees and costs whenever challengers to abortion restrictions obtain anything less than complete victory on all claims.  *See id.*  S.B. 8 would, for example, require challengers to pay fees if any of their claims

is dismissed as moot or if they plead claims in the alternative, even if they ultimately succeed in obtaining full relief against the challenged restriction. And unlike any other statute of which Plaintiffs are aware, S.B. 8's fee-shifting provision extends liability to the challengers' *attorneys* as well, even if the dismissed claims were non-frivolous and brought in good faith.

### D. Defendants Have Authority to Directly or Indirectly Enforce the Six-Week Ban and Are Authorized to Seek Fees Under the Fee-Shifting Provision

#### 1. *Defendant classes of Texas state-court judges and clerks*

The Texas Legislature chose to have S.B. 8's six-week ban directly enforced not by executive branch officials or prosecutors but rather through civil enforcement actions in Texas state courts. *Id.* §§ 171.207(a), 171.208(a). Because S.B. 8 conscripts Texas state-court judges and clerks into enforcing the six-week ban, Plaintiffs seek declaratory relief against all non-federal judges and clerks in Texas courts that will have jurisdiction over S.B. 8 lawsuits and the authority to impose injunctive relief, monetary penalties, and fees and costs. Plaintiffs intend to move to certify a defendant class of judges and a defendant class of clerks. The proposed defendant class representatives are Judge Austin Reeve Jackson of the 114th District Court and Penny Clarkston, District Clerk for Smith County.

As the Supreme Court has recognized, prospective equitable relief against judges sued in their official capacity may be "constitutionally required and necessary to prevent irreparable harm." *Pulliam v. Allen*, 466 U.S. 522, 539 (1984); *see id.* at 540 (Congress intended Section 1983 "to reach unconstitutional actions by all state actors, including judges"). Declaratory relief is expressly an appropriate remedy against judicial officers, and injunctive relief against judicial officers is available if "a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Because it ordinarily can be assumed that "issuance of declaratory judgments

of unconstitutionality . . . would be given effect by state authorities," *Steffel v. Thompson*, 415 U.S. 452, 469 (1974), Plaintiffs seek such relief before S.B. 8's effective date of September 1, 2021.

### 2.    *Defendant Mark Lee Dickson*

Defendant Mark Lee Dickson is one of the unlimited number of private individuals deputized to enforce S.B. 8 against Plaintiffs for providing prohibited abortions, aiding and abetting such abortions, or intending to do those things.  Dickson is the Director of Right to Life East Texas and has pushed for the adoption of state and local laws that impose liability on abortion providers and individuals who assist in the provision or obtainment of constitutionally protected abortion.  Conner Decl. ¶ 14; Williams Decl. ¶ 14.  Mr. Dickson has expressly threatened to sue Planned Parenthood Greater Texas Surgical Health Services (PPGTSHS) under a Lubbock ordinance that is functionally identical to S.B. 8, and he has taken deceptive steps to test PPGTSHS's compliance with that ordinance.  Lambrecht Decl. ¶ 14.  Due to these threats and others, PPGTSHS has been forced to stop providing abortions in Lubbock while it challenges the Lubbock ordinance in another federal lawsuit. *Id.* ¶ 15; *PPGTSHS v. City of Lubbock*, No. 5:21-CV-114-H, 2021 WL 2385110 (N.D. Tex. June 1, 2021) (dismissing case for lack of jurisdiction), *mot. for reconsideration filed* (N.D. Tex. June 29, 2021), ECF No. 51.

Additionally, Dickson has drafted local ordinances branding Plaintiffs The Afiya Center, Lilith Fund, and North Texas Equal Access Fund ("TEA Fund") as "criminal organizations" and seeking to bar them from operating in the towns that adopted the ordinances.  Conner Decl. ¶ 14; Jones Decl. ¶ 25; Williams Decl. ¶ 14.  Dickson has publicly stated that "Lilith Fund and other abortion-aiding organizations all take part in the murder of innocent unborn human beings," indicating that he views them as aiders and abettors under S.B. 8.  Conner Decl. ¶ 14, Williams Decl. ¶ 14.

Mr. Dickson has also openly called for people to sue their local abortion providers under S.B. 8 and has offered to connect interested claimants with attorneys.[3]  Plaintiffs face a credible threat that he will sue them under S.B. 8 if they perform or assist in the performance of abortions prohibited by the Act, or if they intend to do so.  Mr. Dickson is properly sued under Section 1983 as acting under color of state law.  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982); *Smith v. Allwright*, 321 U.S. 649, 662–65 (1944); *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 460 (5th Cir. 2003) (per curiam).

### 3.    *Defendant state officials*

Plaintiffs have also sued state licensing officials and the Attorney General of Texas in their official capacities.  These defendants cannot enforce the six-week ban directly because state and local officials are prohibited from taking or threatening any "enforcement of th[e] subchapter" in which S.B. 8 will be codified.  S.B. 8 § 171.207(a).  But S.B. 8 contemplates their enforcement of other laws "in response to violations of this subchapter."  *Id.*  While S.B. 8 rules out such indirect enforcement under two specific chapters of the penal code dealing with murder and assault, S.B. 8 contains no limitation on public officials' power to collaterally enforce other laws "in response to violations of this subchapter."  *Id.*  For example, under the Medical Practice Act, the Texas Medical Board may discipline a physician who violates any state law "connected with the physician's practice of medicine" because such violation constitutes "unprofessional or dishonorable conduct."  Tex. Occ. Code § 164.053(a)(1); *id.* § 164.052(a)(5); *see also* Compl. at ¶¶ 51–55 (describing the basis on which each state and local official retains authority to enforce other laws

---

[3] *See, e.g.*, Mark Lee Dickson, Facebook (Mar. 29, 2021, 11:15 PM), https://www. facebook.com/markleedickson/posts/10159115346774866 ("[B]ecause of [SB 8] you will be able to bring many lawsuits later this year against any abortionists who are in violation of this bill.  Let me know if you are looking for an attorney to represent you if you choose to do so.  Will be glad to recommend some.").

in response to violations of S.B. 8). Plaintiffs therefore seek summary judgment and declaratory and injunctive relief against officials with residual authority to enforce other laws against certain Plaintiffs based on violations of S.B. 8. *See Air Evac EMS, Inc. v. Texas*, 851 F.3d 507 (5th Cir. 2017) ("direct enforcement" of a statute "is not required" to sue a state official for injunctive relief).[4]

### 4. *Potential liability to Defendants under the Section 4 fee-shifting provision*

Section 4 of S.B. 8 purports to make Plaintiffs liable for attorney's fees and costs to Defendants, recoverable in a separate action filed in state court, if Plaintiffs do not prevail on each of their claims for relief in this case. *See supra* at 3–4. Additionally, all but one of the state official defendants are frequent litigants in challenges to abortion restrictions, including in currently pending cases involving some Plaintiffs. *See Whole Woman's Health v. Paxton*, 978 F.3d 896 (5th Cir. 2020) (suit involving Whole Woman's Health, PP Houston, PPGTSHS, PPST Surgical Center, Alamo, Southwestern and Dr. Kumar against Texas attorney general); *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018) (suit involving Whole Woman's Health, Austin Women's, Alamo, Whole Woman's Health Alliance, and Dr. Kumar against the Texas Health and Human Services Commissioner); Compl., *Whole Woman's Health All. v. Paxton*, No. 1:18-CV-00500-LY (W.D. Tex. June 14, 2018), ECF No. 1 (suit involving Whole Woman's Health Alliance, Fund Texas Choice, Lilith Fund, The Afiya Center, and Dr. Kumar against the Texas attorney general,

---

[4] Defendant Paxton is a proper defendant under Section 1983 and *Ex Parte Young*, 209 U.S. 123 (1908), based on his authority to enforce collateral statutes in response to S.B. 8 violations and to seek costs and fees under S.B. 8 Section 4. Plaintiffs further assert that they would have standing to sue Defendant Paxton and that he would be a proper defendant even in the absence of that collateral enforcement authority and Section 4's fee-shifting provision. This standing theory is currently foreclosed by the Fifth Circuit's decision in *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc), but Plaintiffs assert it here to preserve it for any appeal.

the Texas HSS Commissioner, and the interim executive director of the Texas Medical Board in their official capacities); *see generally* Lambrecht Decl. ¶ 28 (identifying additional cases).

Plaintiffs therefore seek declaratory relief against all Defendants that they are not entitled to seek or obtain costs and attorney's fees under Section 4 of S.B. 8 in this or any other case. They also seek injunctive relief against Defendant Dickson and the State Official Defendants preventing them from doing so in this or any other case.

## ARGUMENT

I.   **THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR PLAINTIFFS ON THEIR CLAIMS RELATING TO SECTION 3 OF S.B. 8, THE SIX-WEEK ABORTION BAN AND ENFORCEMENT PROVISIONS**

Section 3 of S.B. 8, which creates the six-week ban and the scheme for enforcing it, unconstitutionally infringes the right to abortion, violates Plaintiffs' equal-protection, due-process, and First Amendment rights, and impinges on federal rights conferred to Plaintiffs under federal law.  There is no "genuine dispute as to any material fact," and under clear precedent, Plaintiffs are "entitled to judgment as a matter of law" on all their claims.  Fed. R. Civ. P. 56(a); *see* Fed. R. Civ. P. 56(b) ("[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery."); *see also* Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment (Rule 56 "allows a motion for summary judgment to be filed at the commencement of an action").

### A.   **The Six-Week Ban Violates Plaintiffs' Patients' Substantive-Due-Process Right to Pre-Viability Abortion**

"In an unbroken line dating to *Roe v. Wade*, the Supreme Court's abortion cases have established (and affirmed, and re-affirmed) a woman's right to choose an abortion before viability." *Jackson Women's I*, 945 F.3d at 269.  In *Roe*, the Supreme Court held that a Texas abortion ban was unconstitutional, concluding that the Fourteenth Amendment right to substantive

due process is "broad enough to encompass a woman's decision whether or not to terminate her pregnancy." 410 U.S. at 153. Twenty years later, in *Casey*, the Court reaffirmed *Roe*'s "essential holding" that, "[b]efore viability, the State's interests are not strong enough to support a prohibition of abortion." 505 U.S. at 846. The Supreme Court again reaffirmed this core principle as recently as last year. *See June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2135 (2020) (Roberts, C.J., concurring); *id.* at 2120 (plurality opinion).

Applying that precedent, the Fifth Circuit held in *Jackson Women's I* that a Mississippi law prohibiting abortions after 15 weeks LMP was an unconstitutional ban on pre-viability abortions. 945 F.3d at 272–74. The court explained that "[p]rohibitions on pre-viability abortions . . . are unconstitutional regardless of the State's interests." *Id.* at 273. "Until viability, it is for the woman, not the state, to weigh any risks to maternal health and to consider personal values and beliefs in deciding whether to have an abortion." *Id.* at 274. Simply put, if a law "is a ban on certain pre-viability abortions, . . . *Casey* does not tolerate" it. *Id.*

The Fifth Circuit later struck down a Mississippi six-week abortion ban for the same reason. *Jackson Women's II*, 951 F.3d at 248. Like S.B. 8, the second Mississippi law prohibited abortion after a "fetal heartbeat has been detected," and it defined "fetal heartbeat" as "cardiac activity or the steady and repetitive rhythmic contraction of the fetal heart within the gestational sac." *Id.* The court explained that "cardiac activity can be detected well before the fetus is viable." *Id.* That alone "dooms the law." *Id.*

Like the Fifth Circuit, other "courts have 'universally' invalidated laws that ban abortions beginning at a gestational age prior to viability." *Planned Parenthood S. Atl. v. Wilson*, No. 3:21-

00508-MGL, 2021 WL 672406, at *2 (D.S.C. Feb. 29, 2021) (preliminary injunction of South Carolina six-week ban), *appeal filed*, No. 21-1369 (4th Cir. Apr. 5, 2021).[5]

S.B. 8 directly contravenes this binding precedent.  The only question material to the constitutional analysis is whether a prohibition on abortion after detection of a "fetal heartbeat," as defined in S.B. 8, is a pre-viability ban, and there can be no genuine dispute that the answer is yes.  *See supra* at 7–8; *see also MKB Mgm't Corp. v. Stenehjem*, 795 F.3d 768, 773 (8th Cir. 2015) (affirming grant of summary judgment because "there is no genuine dispute that [a six-week ban] generally prohibits abortions before viability").  S.B. 8 is an unconstitutional "ban" on abortion "well before the fetus is viable," and no assertion of state interests or purported factual disputes can alter that.  *Jackson Women's II*, 951 F.3d at 248.

---

[5] *See Reprod. Health Servs. of Planned Parenthood of St. Louis Region, Inc. v. Parson*, No. 19-2882, 2021 WL 2345256, at *3 (8th Cir. June 9, 2021) (Missouri eight-week ban), *pet. for cert. filed*, No. 21-3 (U.S. June 30, 2021), *vacated & reh'g en banc granted* (8th Cir. July 13, 2021) (en banc); *Little Rock Fam. Plan. Servs. v. Rutledge*, 984 F.3d 682, 687 (8th Cir. 2021) (Arkansas 18-week ban), *pet. for cert. filed*, No. 20-1434 (U.S. Apr. 13, 2021); *McCormack v. Herzog*, 788 F.3d 1017, 1029 (9th Cir. 2015) (Idaho equivalent of 22-week ban); *MKB Mgmt. Corp. v. Stenehjem*, 795 F.3d 768, 776 (8th Cir. 2015) (North Dakota six-week ban); *Edwards v. Beck*, 786 F.3d 1113, 1115 (8th Cir. 2015) (Arkansas 12-week ban); *Isaacson v. Horne*, 716 F.3d 1213, 1217, 1231 (9th Cir. 2013) (Arizona 20-week ban); *Jane L. v. Bangerter*, 102 F.3d 1112, 1117–18 (10th Cir. 1996) (Utah equivalent of 22-week ban); *Sojourner T. v. Edwards*, 974 F.2d 27, 29, 31 (5th Cir. 1992) (Louisiana ban at all gestational ages); *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366, 1368–69 (9th Cir. 1992) (Guam ban at all gestational ages); *SisterSong Women of Color Reprod. Justice Collective v. Kemp*, 472 F. Supp. 3d 1297, 1312 (N.D. Ga. 2020) (Georgia six-week ban), *appeal filed*, No. 20-13024 (11th Cir. Aug. 11, 2020); *Memphis Ctr. for Reprod. Health v. Slatery*, No. 3:20-CV-00501, 2020 WL 4274198, at *2 (M.D. Tenn. July 24, 2020) (preliminary injunction of Tennessee six-week ban), *appeal filed*, No. 20-5969 (6th Cir. Aug. 24, 2020); *Robinson v. Marshall*, 415 F. Supp. 3d 1053, 1059 (M.D. Ala. 2019) (preliminary injunction of Alabama ban at all gestational ages); *Preterm-Cleveland v. Yost*, 394 F. Supp. 3d 796, 804 (S.D. Ohio 2019) (preliminary injunction of Ohio six-week ban); *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, No. 3:19-CV-178-DJH, 2019 WL 1233575, at *2 (W.D. Ky. Mar. 15, 2019) (temporary restraining order of Kentucky six-week ban); *Bryant v. Woodall*, 363 F. Supp. 3d 611, 630 (M.D.N.C. 2019) (North Carolina 20-week ban), *aff'd*, No. 19-1685, 2021 WL 2446942 (4th Cir. June 23, 2021).

Once this Court concludes that the ban on providing abortions beyond six weeks of pregnancy is unconstitutional, the remainder of Section 3 and the related mandates in Sections 7 and 9 and the conforming amendment in Section 6 are also invalid—including the provisions requiring a test to detect a "fetal heartbeat," creating aiding-and-abetting liability, establishing the private enforcement cause of action, and imposing reporting obligations to facilitate the six-week ban. The Court need not examine S.B. 8 "in piecemeal fashion" when it finds "the statutory provisions at issue facially unconstitutional." *Whole Woman's Health*, 136 S. Ct. at 2318–20 (holding that the entirety of a Texas act regulating abortion was facially invalid). Regardless, the "heartbeat" test serves no purpose beyond facilitating this unconstitutional ban. *See, e.g.*, *Planned Parenthood S. Atl.*, 2021 WL 672406, at *1 (enjoining ultrasound requirement that served only to facilitate a six-week ban); *SisterSong*, 472 F. Supp. 3d at 1324–26. And without a prohibited abortion, there is nothing wrongful under S.B. 8 that can be aided or abetted. *See* S.B. 8 § 171.208(a)(2) (limiting liability to those who aid or abet an abortion "performed or induced in violation of" S.B. 8); *see also Nettles v. GTECH Corp.*, 606 S.W.3d 726, 738 (Tex. 2020) ("Aiding and abetting and conspiracy are theories of derivative or vicarious liability" that "depend upon liability for an underlying tort, and they survive or fail alongside that tort."); *W. Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, 437 S.W.3d 917, 921 (Tex. App. 2014) ("[W]hen an underlying tort fails," there can be no "aiding and abetting claim related to that failed tort."). Because there is no remaining prohibited conduct, Section 3's creation of an enforcement scheme is entirely superfluous. And, similarly, the reporting requirements in Sections 7 and 9 are inextricably linked to the six-week ban and serve no purpose once it falls. *See, e.g.*, *Planned Parenthood S. Atl.*, 2021 WL 672406, at *1 (enjoining reporting requirements facilitating six-week

ban enforcement). Sections 3, 6, 7, and 9 should be declared invalid in their entirety, and their enforcement should be enjoined.

### B.   S.B. 8's Enforcement Provisions Are Independently Unconstitutional

Section 3's six-week ban and private enforcement scheme fall together.  But even if the enforcement provisions are examined separately, they are independently unconstitutional in multiple ways.

### 1.   *The enforcement provisions are preempted by federal law*

The Supremacy Clause establishes that federal law is "the supreme Law of the Land," U.S. Const. art. VI, cl. 2, and it is the Supreme Court's "responsibility to say what" a federal statute or constitutional provision "means." *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 21 (2012) (per curiam) (quoting *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312 (1994)).  Federal rights declared by the Supreme Court "can neither be nullified openly and directly by state legislators or state executive or judicial officers, nor nullified indirectly by them through evasive schemes." *Cooper v. Aaron*, 358 U.S. 1, 17 (1958).  And for good reason: as Chief Justice Marshall explained, "If the legislatures of the several states may, at will, annul the judgments of the courts of the United States, and destroy the rights acquired under those judgments, the constitution itself becomes a solemn mockery . . . .'" *Id.* at 18 (quoting *United States v. Peters*, 5 Cranch 115, 136 (1803)).

In violation of these bedrock principles, S.B. 8 imposes rules for enforcement actions that defy federal law and its clear protections for Plaintiffs.  First, S.B. 8 effectively directs judges in enforcement actions to ignore declaratory judgments and injunctions issued by federal courts.  *See* S.B. 8 § 171.212(e) (directing that a "judicial injunction or declaration of unconstitutionality . . . is nothing more than an edict" that can be vacated by a court that "has a different understanding of the requirements of the . . . United States Constitution"); *see also id.* § 171.208(e)(4), (5) (prohibiting reliance on non-mutual issue or claim preclusion, or reliance as a defense on any other

"state or federal court decision that is not binding on the court in which the action" was brought). The clear import of these provisions is to cast a pall on constitutionally protected activity, force abortion providers and those who assist them to defend themselves repeatedly, and hamstring their defense.   But states cannot simply give federal-court judgments in federal-question cases "whatever effect they would give their own judgments"; instead, states "must accord them the effect" that federal law provides. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507 (2001) (U.S. Supreme Court "has the last word on the claim-preclusive effect of *all* federal judgments").

Second, S.B. 8 purports to override the binding federal law that would apply in the state enforcement proceedings by severely impeding one's ability to demonstrate an undue burden. S.B. 8 states that an undue burden cannot be shown by "arguing or attempting to demonstrate that an award of relief against other defendants or other potential defendants will impose an undue burden on women seeking an abortion."   S.B. 8 § 171.208(d)(2).   This means that judges are supposed to close their eyes to the statewide impact of the law and instead look only to the burden created by an award of relief against the particular person sued in that particular case.   But far from imposing such blinders, the Supreme Court's decisions mandate consideration of the real-world effect of statewide abortion restrictions, including on entities in the state not before the court in a given case. *See Whole Woman's Health*, 136 S. Ct. at 2313 (applying undue-burden test to facially invalidate statewide abortion regulation that "led to the closure of half of Texas' clinics"); *see also June Med. Servs.*, 140 S. Ct. at 2140 (Roberts, C.J., concurring) (citing with approval this aspect of *Whole Woman's Health*'s analysis and noting that Louisiana law would similarly cause "a drastic reduction in the number and geographic distribution of abortion providers" (citation omitted)); *Jackson Women's Health Org. v. Currier,* 760 F.3d 448, 458 (5th Cir. 2014) (courts are

bound to accept the "factual context in which the law operates").  It is the Supreme Court's responsibility to say what the federal Constitution means, and the Texas legislature is powerless to interpose these "limitations," S.B. 8 § 171.209, on federal constitutional protections.  *Nitro-Lift Techs.*, 568 U.S. at 21; *Cooper*, 358 U.S. at 17.

Indeed, S.B. 8's entire scheme of pairing a patently unconstitutional prohibition with private, civil enforcement is designed to evade federal-court review and defy federal law.  Texas has adopted a law that sets about to "do precisely that which the [Constitution] forbids."  *Terry v. Adams*, 345 U.S. 461, 469–70 (1953).  If successful, S.B. 8 would set a dangerous precedent that states and municipalities hostile to federal constitutional rights would be sure to follow.  Today, it is abortion providers and those who assist them.  Tomorrow, it might be gun buyers who face private, civil liability for every firearm purchase.  Churches and religious leaders could be hauled into far-flung courts to defend their religious practices because someone somewhere disagrees with them.  Same-sex couples could be sued by neighbors because they obtained a marriage license.  This is a recipe for destroying individual constitutional rights and turning the Constitution into "a solemn mockery."  *Cooper*, 358 U.S. at 18.

### 2.    *The enforcement provisions violate the constitutional guarantee of equal protection*

The Equal Protection Clause of the Fourteenth Amendment directs "that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Under the equal-protection analysis, if similarly situated persons are treated differently, then the court determines the appropriate level of scrutiny.  *Gallegos–Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012).  "Strict scrutiny is required if the legislative classification operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution."  *Richard v. Hinson*, 70 F.3d 415, 417

(5th Cir. 1995).  If neither a suspect class nor a fundamental right is implicated, the classification must bear a rational relation to a legitimate governmental purpose.  *Id*.

S.B. 8's enforcement provisions violate the Equal Protection Clause by singling out those who provide or assist with abortions and subjecting them to lawsuits in which the deck is stacked heavily against them.  These suits are fueled by the promise of massive bounties for claimants who need have no connection to the alleged violation, while abortion providers and those who assist them are deprived of the ability to mount a fair defense.  No other civil litigant in Texas is subject to such a hostile legal framework full of unique rules designed to harass litigants and doom defenses.

a.  <u>The enforcement provisions single out abortion providers and supporters for discriminatory treatment</u>

S.B. 8's enforcement provisions single out and discriminate against people who provide abortions or assist patients in accessing abortion.

As an initial matter, S.B. 8 provides that abortion providers and those who assist abortions be forced to pay a *minimum* of $10,000 per abortion to "[a]ny person" who sues, even if that person is not connected to the abortion and has not been harmed in any way.  S.B. 8 § 171.208(a).  Plaintiffs are aware of no other statute in Texas that purports to allow complete strangers to obtain seemingly unlimited damages without any connection to the alleged violation.  Indeed, Texas courts examining statutes that imposed a civil penalty or statutory damages designed to penalize conduct have held that those penalties were actually punitive damages, which cannot be awarded to a private claimant unless the claimant recovers other damages.  *Wal-Mart Stores, Inc. v. Forte*, 497 S.W.3d 460, 464–67 (Tex. 2016); *KBG Invs., LLC v. Greenspoint Prop. Owners' Ass'n*, 478 S.W.3d 111, 116–23 (Tex. App. 2015).

29

But that is just the start.  S.B. 8 then departs dramatically from generally applicable rules to maximize the burden on abortion providers and supporters.  Any Texan who sues can do so in their home county and can unilaterally veto a transfer of venue to a more appropriate and convenient forum. S.B. 8 § 171.210(a)(4), (b).  Because "any person" can sue, this allows abortion providers to be sued multiple times for the same abortion by people in counties across the state. S.B. 8 also purports to require courts to retry identical cases against abortion providers and those who assist them, so long as a different stranger files suit each time.  *See id.* § 171.208(e)(5) (precluding defense of "non-mutual issue preclusion or non-mutual claim preclusion").  And people sued under S.B. 8 cannot rely "on any state or federal court decision that is not binding on the court in which the action has been brought." *Id.* § 171.208(e)(4).  These provisions conspire to create a grave risk of inconsistent results, imposing injunctions and monetary penalties onto abortion providers and supporters once a single court rules against them—even if they have overcome the Texas Legislature's scheme and prevailed in other suits about the same abortion. No one else in Texas must run this legal gauntlet.

Next, S.B. 8 purports to limit the substantive defenses available in enforcement actions. As discussed above, it tries to disallow those sued from relying on the clear unconstitutionality of pre-viability abortion bans, and it mangles the undue-burden test by requiring courts to blind themselves to the ban's statewide impact.  *See supra* at 10–12; S.B. 8 § 171.209(c), (d).  S.B. 8 also tries to make abortion providers and supporters retroactively liable for conduct that was plainly lawful and constitutionally protected at the time of the conduct, barring reliance "on any court decision that has been overruled on appeal or by a subsequent court, even if that court decision had not been overruled when the defendant engaged in" the conduct.   S.B. 8 § 171.208(e)(3).

Finally, S.B. 8 awards costs and fees to prevailing claimants, even though every case they bring would seek enforcement of a patently unconstitutional law, but it prohibits abortion providers and supporters from recouping the same if they successfully counter these abusive vigilante claims. *Id.* § 171.208(b)(3), (i).  This sharply departs from the generally applicable Texas rule allowing a prevailing defendant in a frivolous lawsuit, or a lawsuit brought to harass, to recover fees and costs incurred in opposing the litigation.  *See* Tex. Civ. Prac. & Rem. Code §§ 10.001–.002.

> b.   The enforcement provisions violate equal protection, no matter the
>      level of scrutiny

A challenged classification is subject to strict scrutiny if it burdens a fundamental right, meaning "one that is explicitly or implicitly protected by the Constitution."  *Richard*, 70 F.3d at 417; *see Zablocki v. Redhail*, 434 U.S. 374, 388 (1978).  S.B. 8's enforcement provisions burden fundamental First Amendment rights, *infra* at 35–42, and the fundamental right to abortion, *supra* at 22–24.  Thus, strict scrutiny applies, and the state must have a compelling interest and demonstrate that the statutory classification "fit[s] the compelling goal so closely that there is little or no possibility that the motive for the classification was illegitimate."  *Grutter v. Bollinger*, 539 U.S. 306, 333 (2003) (internal quotation marks omitted).  Even under rational-basis review, a law that is plainly "drawn for the purpose of disadvantaging" a disfavored class is unconstitutional.  *Romer v. Evans*, 517 U.S. 620, 633 (1996).

S.B. 8's enforcement scheme cannot survive any level of review because its transparent purpose is to suppress the exercise of protected constitutional rights.  The State cannot possibly explain why subjecting abortion providers and those who assist abortions to uniquely burdensome lawsuits governed by gamed rules is necessary to achieve a legitimate, much less compelling, interest.  "[I]f the constitutional conception of equal protection of the laws means anything, it must at the very least mean that a bare [legislative] desire to harm a politically unpopular group cannot

constitute a legitimate governmental interest." *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973); *see also Romer*, 517 U.S. at 632 (striking down constitutional amendment because "its sheer breadth [wa]s so discontinuous with the reasons offered for it that the amendment seems inexplicable by anything but animus toward the class it affects; it lacks a rational relationship to legitimate state interests"); *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 743–44 (1983) (holding in right-to-petition challenge that states "have only a negligible interest, if any, in having insubstantial claims adjudicated by their courts, particularly in the face of the strong federal interest in vindicating" rights protected by federal law).

c.  The enforcement provisions are unconstitutionally vague

Under the Fourteenth Amendment's guarantee of due process, a law may be void for vagueness "for either of two independent reasons.  First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement."  *United States v. Escalante*, 239 F.3d 678, 680 (5th Cir. 2001) (quoting *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (plurality)).  This standard applies to "[c]ivil statutes . . . that contain quasi-criminal penalties," as S.B. 8 does.  *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 508 (5th Cir. 2001); *see Women's Med. Ctr. of Nw. Houston v. Bell*, 248 F.3d 411, 422 (5th Cir. 2001) (abortion regulations with "potentially significant civil and administrative penalties" were quasi-criminal and void for vagueness).  And it is applied "stringent[ly]" where, as here, a challenged law "threatens to inhibit the exercise of constitutionally protected rights."  *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests.*, 455 U.S. 489, 499 (1982).  S.B. 8's enforcement provisions fail both vagueness prongs.

d.  The enforcement provisions fail to provide adequate notice

With respect to abortion providers, S.B. 8 affirmatively deprives them of the notice necessary to determine when they are violating the law and may be liable for providing an abortion.

32

They cannot rely on binding Supreme Court precedent or any other court decision in place at the time of their conduct if that decision is later overruled. S.B. 8 § 171.208(e)(3). "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly . . . ." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). Yet S.B. 8 forces abortion providers to try to guess the future. And if they guess incorrectly, their "belief that [S.B. 8's requirements] are unconstitutional or were unconstitutional" is also not a defense. S.B. 8 § 171.208(e)(2). This forced guessing game will unquestionably inhibit the exercise of constitutionally protected rights. It is the opposite of "fair warning" with "explicit standards." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

As to those who assist with abortions, S.B. 8 fails to adequately inform them of when they may be liable for aiding and abetting. As an initial matter, not only does the aiding-and-abetting provision suffer from the same retroactivity concern just discussed, "aids and abets" is undefined in the statute and has no uniform definition under Texas law. *See* Nelson S. Ebaugh, *The Liability*: *Why You Should Understand the Five Tests of Civil Aiding and Abetting in Texas*, 78 Tex. B.J. 362 (2015). Moreover, unlike any other aiding-and-abetting liability of which Plaintiffs are aware, S.B. 8 purports to impose such liability regardless of whether a person knew that a critical element of the offense was present. Specifically, whether conduct "aids and abets" a prohibited abortion turns on whether the physician detects a "fetal heartbeat" before performing the abortion. Such detection often would happen *later*, after the alleged aiding-and-abetting conduct occurred, and thus may not be knowable to a person at risk of being sued. Yet S.B. 8 imposes liability "regardless of whether the person knew or should have known that the abortion would be performed or induced in violation" of the ban. S.B. 8 § 171.208(a)(2); *see Women's Med. Ctr.*, 248 F.3d at 422 (abortion

regulation "is unconstitutionally vague on its face because it impermissibly subjects physicians to sanctions based not on their own objective behavior, but on the subjective viewpoints of others").

S.B. 8 therefore creates the "hazard of being prosecuted for knowing but guiltless behavior." *Baggett v. Bullitt*, 377 U.S. 360, 373 (1964). The only way to ensure no penalty for aiding and abetting an abortion is to avoid assisting *any* abortion, even ones that are not prohibited. Due process does not permit such uncertainty, particularly where, as here, it will "lead citizens to steer far wider of the unlawful zone" to avoid S.B. 8's draconian penalties. *Grayned*, 408 U.S. at 109 (citations and internal quotation marks omitted); *see New York v. Ferber*, 458 U.S. 747, 768 (1982) ("[P]ersons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression[.]" (citations omitted)).

e.    The enforcement provisions invite arbitrary enforcement

Additionally, S.B. 8's enforcement provisions empower precisely the kind of "arbitrary and discriminatory enforcement" that the vagueness doctrine guards against. *Grayned*, 408 U.S. at 108. By "freely authoriz[ing] *unharmed* plaintiffs to" bring enforcement actions, S.B. 8 takes discretionary decisions such as "how to prioritize and how aggressively to pursue legal actions against defendants who violate the law" away from public officials and hands that discretion to ideologically motivated plaintiffs who "are not accountable to the people and are not charged with pursuing the public interest." *TransUnion LLC v. Ramirez*, No. 20-297, 2021 WL 2599472, at *9 (U.S. June 25, 2021). Under S.B. 8, any anti-abortion activist can drag an abortion provider or supporter into a costly enforcement action by accusing them of doing nothing more than "inten[ding]" to violate the law. S.B. 8 § 171.208(a)(3). S.B. 8 thus permits and encourages activists to arbitrarily police their political and ideological opponents, and it allows them to "do so unencumbered by the legal and practical checks that tend to keep the energies of public

enforcement agencies focused upon more" concrete harms.  *Nike, Inc. v. Kasky*, 539 U.S. 654, 679–80 (2003) (Breyer, J., dissenting from dismissal of cert. as improvidently granted) (discussing the dangers of the "delegation of state authority" to "a purely ideological plaintiff").

S.B. 8 also fails to "provide standards to govern" the amount of liability.  *United States v. Ross*, 948 F.3d 243, 247 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 305 (2020).  S.B. 8 purports to make abortion providers and those who assist with prohibited abortions liable for seemingly limitless penalties to individuals to whom they have no connection, have never owed a duty, and have never caused any harm—making both the amount of the penalty and the person to whom it would have to be paid completely unforeseeable and standardless.  *Cf. Grayned*, 408 U.S. at 113–14 (statute's harm requirement, "demonstrated causality," and requirement that acts be "'willfully' done" inform the due-process inquiry).  This standardless penalty provision unconstitutionally invites arbitrary and discriminatory enforcement in determining the amount of the penalty.  *See Johnson v. United States*, 576 U.S. 591, 597 (2015) (statute's indeterminacy held to "invite[] arbitrary enforcement by judges" when determining a defendant's sentence); *City of Chicago v. Morales*, 527 U.S. 41, 61 (1999) (plurality opinion) (loitering statute vague where it provides absolute discretion to police officers to decide what loitering is); *Giaccio v. Pennsylvania*, 382 U.S. 399, 403 (1966) (statute void for vagueness where it did not "place any conditions of any kind upon the jury's power to impose costs"); *Ross*, 948 F.3d at 247 (arbitrariness test requires standards for statutes fixing penalties).

### 3. The enforcement provisions' creation of aiding-and-abetting liability impermissibly interferes with Plaintiffs' First Amendment rights

S.B. 8's imposition of liability for "conduct that aids or abets" a prohibited abortion, S.B. 8 § 171.208(a)(2)-(3), violates Plaintiffs' First Amendment rights.  The Court should declare that Plaintiffs' protected speech and conduct cannot subject them to liability because (1) they fall

within the scope of S.B. 8's savings clause, S.B. 8 § 171.208(g), or (2) the broad imposition of liability on those activities is unconstitutional.

        a.      The aiding-and-abetting and provision is an improper content-based and viewpoint-based speech restriction

"[A]bove all else," the First Amendment forbids "restrict[ing] expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972); *see Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571 (2011). The Supreme Court has emphasized that laws that force speakers to alter the content of their speech are inherently dangerous and "presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

S.B. 8's aiding-and-abetting provision restricts or at least chills Plaintiffs' speech. It infringes on the counseling and spiritual guidance provided to abortion patients by Rev. Daniel Kantor and Rev. Erika Forbes (collectively, the "Clergy Plaintiffs"). Both of these ordained ministers provide counseling to pregnant individuals considering abortion as well as pastoral care to those who have decided to have an abortion. Forbes Decl. ¶¶ 5, 12; Kanter Decl. ¶¶ 11, 18–19. In addition, Rev. Kantor serves as an abortion clinic chaplain, providing both counseling and spiritual guidance to abortion patients during their clinic visits. Kanter. Decl. ¶¶ 18–19. Similarly, the aiding-and-abetting provision impinges on the speech of the other Advocate Plaintiffs, the Provider Plaintiffs, and any number of other religious, spiritual, domestic violence, rape, and genetics counselors who refer and provide information about abortion services and patient-support services.[6] Zamora Decl. ¶ 10; Jones Decl. ¶¶ 7, 11; Rupani Decl. ¶¶ 6–7, Williams Decl. ¶ 9;

---

[6] The Advocate Plaintiffs are The Afiya Center, Frontera Fund, Fund Texas Choice, Jane's Due Process, Lilith Fund, TEA Fund, Marva Sadler, Rev. Daniel Kanter, and Rev. Erika Forbes. The Provider Plaintiffs are Whole Woman's Health; Alamo Women's Reproductive Services; Austin Women's Health Center; Houston Women's Clinic; Houston Women's Reproductive

Conner Decl. ¶¶ 8–9; Mariappuram Decl. ¶¶ 9–10; Linton Decl. ¶ 24; Lambrecht Decl. ¶ 25; Barraza Decl. ¶ 22.

S.B. 8's aiding-and-abetting provision targets this speech because of its content and viewpoint. For example, the Clergy Plaintiffs may counsel worshippers about any topic other than abortion, and they may counsel worshippers *against* having an abortion, but they may not provide information or guidance that aids or abets the performance of a prohibited abortion. S.B. 8 § 171.208(a)(2)–(3); *cf. R.A.V. v. City of St. Paul*, 505 U.S. 377, 391 (1992) ("In its practical operation, . . . the ordinance goes even beyond mere content discrimination to actual viewpoint discrimination.").

Accordingly, the aiding-and-abetting provision is presumptively invalid as applied to Plaintiffs' speech and "may be justified only if the government proves" that the restriction is "narrowly tailored" and necessary "to serve compelling state interests." *Reed*, 576 U.S. at 163; *see also United States v. Alvarez*, 567 U.S. 709, 715–17 (2012); *R.A.V.*, 505 U.S. at 382 ("The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed." (citations omitted)). The Act fails strict scrutiny because the State lacks a compelling interest in suppressing speech that promotes abortion access. Although Texas may have a valid interest in promoting potential life, that interest does not extend to prohibiting Plaintiffs from facilitating access to constitutionally protected abortion care. *See Casey*, 505 U.S. at 877. The Supreme Court has expressly held that "the means chosen by the State to further the interest in potential life must be calculated to inform the woman's free

---

Services; Planned Parenthood of Greater Texas Surgical Health Services; Planned Parenthood South Texas Surgical Center; Planned Parenthood Center for Choice; Southwestern Women's Surgery Center; Whole Woman's Health Alliance; Dr. Allison Gilbert; and Dr. Bhavik Kumar.

choice, not hinder it." *Id.* The imposition of civil liability on people who assist abortion patients in accessing care falls on the wrong side of that divide.[7]

> b.     The aiding-and-abetting provision violates the right to petition the courts

The First Amendment guarantees the right "to petition the Government for a redress of grievances." U.S. Const. amend. I. This "right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression" that includes good-faith court litigation. *McDonald v. Smith*, 472 U.S. 479, 482 (1985); *see also In re Primus*, 436 U.S. 412, 426, 432 (1978). Indeed, it is well-settled that public-interest litigation is a form of protected First Amendment activity. *See Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 548 (2001); *In re Primus*, 436 U.S. at 428; *NAACP v. Button*, 371 U.S. 415, 430 (1963); *see also McDonald*, 472 U.S. at 484 ("[F]iling a complaint in court is a form of petitioning activity.").

S.B. 8's aiding-and-abetting provision implicates the legal assistance that Plaintiff Jane's Due Process provides to Texas minors who seek a judicial bypass of Texas's parental-consent requirement so they can access abortion. Mariappuram Decl. ¶ 6. Jane's Due Process recruits and trains qualified attorneys to represent minors pro bono in bypass cases and connects them to minors who need counsel. *Id.* Jane's Due Process risks being sued for aiding-and-abetting liability for filing judicial bypass petitions, thus impinging on Jane's Due Process's right to access the courts to vindicate the fundamental right to a pre-viability abortion for Texas minors. *See id.* ¶¶ 19–21;

---

[7] Even if the aiding-and-abetting provision were treated as a regulation of conduct that only incidentally burdens speech, it would still fail First Amendment scrutiny under *United States v. O'Brien*, 391 U.S. 367, 377 (1968). *See Doe I v. Landry*, 909 F.3d 99, 108 (5th Cir. 2018). S.B. 8 is not within the constitutional power of the State to adopt, *see Casey*, 505 U.S. at 851–53, it does not further any government interest that might be deemed important, and its broad imposition of potential liability on those who aid and abet an abortion or intend to do so is far from narrowly tailored because the State "has available to it a variety of approaches that appear capable of serving its interests" short of effectively prohibiting speech and expressive conduct that facilitates abortion access, *McCullen v. Coakley*, 573 U.S. 464, 494 (2014).

*Bellotti v. Baird*, 443 U.S. 622, 643 (1979) (clarifying that minors have a fundamental right to pre-viability abortion); *Button*, 371 U.S. at 442 (noting that the litigation at issue "employ[ed] constitutionally privileged means of expression to secure constitutionally guaranteed civil rights"). This burden is unjustified because Texas lacks a valid interest in excluding its residents from avenues for legal advocacy intended to ensure safe abortion access, particularly for minors subject to parental-consent requirements. *See Bellotti*, 443 U.S. at 643 ("If the State decides to require a pregnant minor to obtain one or both parents' consent to an abortion, it also must provide an alternative procedure whereby authorization for the abortion can be obtained.").

c.   The aiding-and-abetting provision implicates Plaintiffs' protected advocacy activities

S.B. 8's aiding-and-abetting provision similarly implicates Plaintiffs' protected advocacy activities. In *Button*, the Supreme Court held that certain Virginia laws regulating the conduct of attorneys were unconstitutional as applied to the NAACP because the activities of that organization, taken as a whole, constituted "modes of expression and association protected by the First and Fourteenth Amendments." 371 U.S. at 428–29. The Court explained that First Amendment protections do not extend only to "abstract discussion"; to the contrary, "the First Amendment also protects vigorous advocacy, certainly of lawful ends, against governmental intrusion." *Id.* at 429. Because the NAACP's activities were in service of its core mission to promote equality for African Americans, the Court held that they were collectively "a form of political expression" subject to the highest level of First Amendment protection. *Id.* at 429–30 ("We need not, in order to find constitutional protection for the kind of cooperative, organizational activity disclosed by this record . . . subsume such activity under a narrow, literal conception of freedom of speech, petition or assembly. For there is no longer any doubt that the First and Fourteenth Amendments protect certain forms of orderly group activity.").

Here, Plaintiffs Lilith Fund, TEA Fund, Frontera Fund, Fund Texas Choice, Jane's Due Process, and The Afiya Center are nonprofit organizations with missions to ensure that all Texas residents have access to safe abortion care regardless of their financial means or other sociodemographic characteristics (a mission also shared by other Plaintiffs). To serve this end, they engage in public education, organizing, and lobbying activities. Zamora Decl. ¶ 10; Jones Decl. ¶ 7; Rupani Decl. ¶ 9; Williams Decl. ¶ 9; Conner Decl. ¶ 9; Mariappuram Decl. ¶ 10. The Provider Plaintiffs may likewise provide information about where and how to access abortion, as well as financial and other resources. Williams Decl. ¶ 5; Conner Decl. ¶ 5; Linton Decl. ¶ 24; Lambrecht Decl. ¶ 25; Barraza Decl. ¶ 22. The patients served typically face multiple, intersecting barriers to accessing abortion care, including limited financial resources, systemic racism, dependent children who require their care, and domestic abuse. Zamora Decl. ¶¶ 12–13; Jones Decl. ¶¶ 7, 17–19; Rupani Decl. ¶¶ 12–13; Williams Decl. ¶ 7; Conner Decl. ¶¶ 5, 8; Mariappuram Decl. ¶¶ 13–15. Because this speech and advocacy serve Plaintiffs' core mission to ensure Texans' access to safe abortion care regardless of their circumstances, Zamora Decl. ¶ 2; Jones Decl. ¶ 13; Rupani Decl. ¶ 2; Williams Decl. ¶ 10; Conner Decl. ¶¶ 1, 10; Mariappuram Decl. ¶¶ 2, 11, they constitute political expression subject to the highest level of First Amendment protection, *see Button*, 371 U.S. at 429; *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 27–28 (2010) (explaining that although the material-support statute "*generally* functions as a regulation of conduct . . . the conduct triggering coverage under the statute consists of communicating a message" and the Court [must] apply a more demanding standard than [intermediate scrutiny]." (quotation marks omitted)). As explained above, the Act's aiding-and-abetting provision cannot survive strict scrutiny.

d.    S.B. 8's savings clause provides insufficient protection

Although S.B. 8 contains a provision stating that it "may not be construed to impose liability on any speech or conduct protected by the First Amendment," S.B. 8 § 171.208(g), "such a provision cannot substantively operate to save an otherwise invalid statute, since it is a mere restatement of well-settled constitutional restrictions on the construction of statutory enactments," *CISPES (Comm. in Solidarity with the People of El Sal.) v. F.B.I.*, 770 F.2d 468, 474 (5th Cir. 1985); *see also Battle v. City of Seattle*, 89 F. Supp. 3d 1092, 1105 (W.D. Wash. 2015) (holding that a First Amendment savings clause "contains an illusory mandate that does not generally (if ever) displace [the defendant's] undue discretion to deny permit applications for expressive conduct"); *United States v. Brock*, 863 F. Supp. 851, 859 n.13 (E.D. Wis. 1994) ("Although [First Amendment savings] clauses may be helpful in determining legislative intent, using them to decide whether any particular activity is entitled to First Amendment protections would appear to be a rather circular approach.").   Indeed, while this provision purports to carve out protected speech and conduct, other provisions deprive Plaintiffs of any assurance that speech and conduct recognized by courts as protected would fall outside the scope of aiding-and-abetting liability.  *See* S.B. 8 § 171.208(e)(3)–(5) (precluding reliance on any non-binding court decisions or on "non-mutual issue or non-mutual claim preclusion," and permitting retroactive liability where a court decision is subsequently overruled).

Absent a declaration from this Court, the only way for Plaintiffs to get a definitive ruling on the scope of their potential liability under the Act would be to engage in speech or expressive conduct that potentially constitutes aiding or abetting, then await institution of civil enforcement proceedings.  Yet it is well-established that a plaintiff need not "expose himself to liability before bringing suit to challenge . . . the constitutionality of a law threatened to be enforced." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007).  Plaintiffs are therefore entitled

to a declaratory judgment that their activities discussed above do not fall within the scope of S.B. 8's aiding-and-abetting provision or, in the alternative, that the provision is an unconstitutional violation of the First Amendment.

II.   **THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR PLAINTIFFS ON THEIR CLAIMS RELATING TO SECTION 4 OF S.B. 8, THE FEE-SHIFTING PROVISION FOR CHALLENGES TO TEXAS ABORTION RESTRICTIONS**

Section 4 of S.B. 8 creates a standalone, one-way fee-shifting provision that is designed to deter and penalize anyone who challenges any Texas abortion restriction in state or federal court. S.B. 8 § 30.022.  This deterrence scheme violates Plaintiffs' First Amendment rights to freedom of speech and to petition the courts, and it conflicts with and is preempted by federal law that confers rights on Plaintiffs.  Plaintiffs request declaratory and injunctive relief blocking Section 4.

A.   **Section 4 Violates the First Amendment**

1.   *Section 4 violates the First Amendment right to petition the courts*

As discussed *supra* at 38–39, the First Amendment guarantees the right to petition the courts for redress of grievances.  "Petitions to the government assume an added dimension when they seek to advance political, social, or other ideas of interest to the community as a whole." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 395 (2011).  Accordingly, a state may not restrict the right to petition based on the content or viewpoint of a petitioner, *see City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 196 (2003); *S. Christian Leadership Conf. v. Sup. Ct. of La.*, 252 F.3d 781, 792 (5th Cir. 2001), or to insulate an unconstitutional act from review, *Velazquez*, 531 U.S. at 548.

For example, in *Velazquez*, the Supreme Court invalidated a law that restricted the types of advice and argumentation available to attorneys who represented indigent clients under a government-funded legal-services program.  531 U.S. at 548.  The funding limitation prohibited attorneys and their clients from raising challenges to existing welfare law.  *Id.* at 538–39.  The

Court concluded that such legal services were "constitutionally protected expression," *id.* at 548, and it held that the government cannot impose "rules and conditions which in effect insulate its own laws from legitimate judicial challenge," *id.* (concluding that the Constitution "does not permit the Government to confine litigants and their attorneys" by "exclud[ing] certain vital theories and ideas" available to them); *accord S. Christian Leadership Conf.*, 252 F.3d at 791; *cf. Button*, 371 U.S. at 429, 434 (recognizing that public-interest litigation "is a means for achieving . . . lawful objective[s]" that serves as "a form of political expression" and may not be curtailed to "smother[] all discussion looking to the eventual institution of litigation on behalf of the rights of members of an unpopular minority").

Here, Section 4 of S.B. 8 is designed to insulate all Texas abortion restrictions from judicial challenge by deterring even meritorious lawsuits. Under Section 4, if someone challenges a Texas abortion restriction and does not prevail on *any one* of their claims, their opponent is deemed the "prevailing" party entitled to have their attorney's fees paid. This means that successful challengers could still be forced to pay fees even when they obtain full relief against an unconstitutional restriction, simply because one claim was dismissed. That occurs frequently, such as when claims become moot due to circumstance. *Cf. Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021) (mem.) (vacating decisions regarding Covid-related abortion ban after challenged executive order expired); *Tex. Health & Hum. Servs. Comm'n v. Planned Parenthood of Greater Tex. Fam. Planning & Preventative Health Servs., Inc.*, No. 03–12–00745–CV, 2014 WL 1432566 (Tex. Ct. App. Apr. 9, 2014) (dismissing as moot a challenge to Planned Parenthood affiliates' exclusion from state Women's Health Program once the program expired).

Abortion-rights litigation in Texas is hard fought, can involve thousands of hours in attorney time, and often extends for years. *See, e.g.*, Order on Mots. for Att'ys Fees, *Whole*

*Woman's Health v. Hellerstedt*, No. 1:14-cv-284-LY (W.D. Tex. Aug. 9, 2019), ECF No. 297 (granting Whole Woman's Health nearly $2.3 million from the State in attorney's fees in litigation that spanned several years and included a Supreme Court decision).  As a result, if Section 4 is not blocked, Plaintiffs and their lawyers would "understandably hesitate" to engage even in good-faith, well-founded litigation—precisely the improper but intended effect. *Button*, 371 U.S. at 434. Section 4 would chill health clinics; individual doctors, staff, and patients; non-profit community organizations; and pro bono law firms and local counsel in their efforts to effectively vindicate constitutional rights.  Barraza Decl. ¶¶ 24–25; Braid Decl. ¶ 21; Ferrigno Decl. ¶ 33; Gilbert Decl. ¶ 38; Hagstrom Miller Decl. ¶ 34; Klier Decl. ¶ 18; Lambrecht Decl. ¶¶ 29–31; Linton Decl. ¶¶ 28–29; Rosenfeld Decl. ¶¶ 10–11; Sadler Decl. ¶ 18; *see also United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 585–86 (1971) (holding "that collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment" and this right "would be a hollow promise if courts could deny associations of [people] the means of enabling their members to meet the costs of legal representation").

Section 4 would also impermissibly chill civil-rights plaintiffs with respect to the arguments that they make in abortion-rights cases.  *See* Barraza Decl. ¶¶ 24–25; Braid Decl. ¶ 21; Ferrigno Decl. ¶ 33; Gilbert Decl. ¶ 38; Hagstrom Miller Decl. ¶ 34; Klier Decl. ¶ 18; Lambrecht Decl. ¶¶ 29–31; Linton Decl. ¶¶ 28–29; Rosenfeld Decl. ¶¶ 10–11; Sadler Decl. ¶ 18.  For example, because a failure to prevail on any one claim makes the defendant the "prevailing" party entitled to fees, Section 4 would effectively guarantee that if claims are pleaded in the alternative, the civil-rights plaintiff would be forced to pay their opponents' fees.  The Constitution does not permit the State's attempt to constrain non-frivolous legal theories and claims available to civil-rights litigants.  *Velazquez*, 531 U.S. at 548.

44

### 2.     *Section 4 violates the First Amendment right to freedom of speech*

Section 4 also violates the First Amendment's Free Speech Clause and is subject to strict scrutiny because it is about as viewpoint- and "content-based as it gets." *Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2346 (2020); *see also Reed*, 576 U.S. at 164; *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828–29 (1995). S.B. 8 punishes litigants motivated to block the enforcement of laws that "regulate[] or restrict[] abortion" or laws that provide funding to entities who "perform or promote" abortion because of the content of their advocacy. S.B. 8 § 30.022. In contrast, S.B. 8 does not impose a penalty on litigants whose goal is to uphold such laws or to restrict access to abortion. *Cf.* Compl., *Davenport v. City of Fort Worth*, No. 4:20-cv-00379 (N.D. Tex. Apr. 23, 2020), ECF No. 1 (seeking declaratory and injunctive relief against abortion providers and the municipality to prevent abortion during the Covid-19 pandemic); *Scheideman v. City of Fort Worth*, No. 017-316515-20 (Tarrant Cnty. Dist. Ct. *filed* Apr. 17, 2020) (same). Ultimately, S.B. 8 seeks to suppress views that the Texas Legislature deems unpopular and to prevent scrutiny of the state's attempt to eviscerate abortion rights.

As discussed *supra* at 36–37, strict scrutiny applies, and Section 4 necessarily fails that review. Texas has no valid interest in insulating its unconstitutional laws from judicial review. *Velazquez*, 531 U.S. at 545. Nor does the State have a legitimate, much less compelling, interest in punishing advocates with whom it disagrees. *Moreno*, 413 U.S. at 534. Additionally, the fee-shifting provision's broad sweep—purporting to apply in state and federal court, and forcing even litigants who obtain their requested relief to pay their opponents' fees—is antithetical to narrow tailoring. *See United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000) (where a "less restrictive alternative would serve the Government's purpose" in adopting a content-based restriction on speech, "the legislature must use that alternative").

## B.     As Applied to Federal Civil-Rights Claims, Section 4 Is Preempted by Federal Law

Under the Supremacy Clause, when "state and federal law directly conflict, state law must give way." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617–18 (2011) (citation and internal quotation marks omitted).  Such conflict occurs "when compliance with both state and federal law is impossible, or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress.'" *United States v. Locke*, 529 U.S. 89, 109 (2000); *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 330 (2011); *see also United States v. Zadeh*, 820 F.3d 746, 751 (5th Cir. 2016).

In 42 U.S.C. § 1988, Congress carefully determined how attorney's fees are to be allocated in federal civil-rights actions, regardless of whether those claims are raised in state or federal court.  Section 1988 provides that in "any action" to enforce Section 1983 and other covered civil rights statutes, the court "may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  As the Supreme Court has held, this provision grants a right to a prevailing plaintiff to "ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *see also Lefemine v. Wideman*, 568 U.S. 1, 5 (2012) (per curiam); *Grisham v. City of Fort Worth*, 837 F.3d 564, 568 (5th Cir. 2016).  But a prevailing defendant in a Section 1983 case may recover attorney's fees from the plaintiff "only if the district court finds that the plaintiff's action was frivolous, unreasonable, or without foundation."  *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (per curiam). In all other circumstances, a non-prevailing plaintiff has a right to bring their civil-rights claims without fear of incurring the other side's fees and costs.

Section 4 of S.B. 8 directly conflicts with, and must give way to, Section 1988.  Section 4 allows a defendant who loses an abortion-related Section 1983 case and is permanently enjoined

from enforcing a challenged statute to still recover fees from a civil-rights plaintiff. *See* S.B. 8 § 30.022(b). That cannot be reconciled with Section 1988, which permits a defendant in a covered civil-rights case to "recover reasonable attorney's fees" only where the defendant truly prevails, and where such fees are "incurred because of," and "only because of, a frivolous claim" by the civil-rights plaintiff. *Fox v. Vice*, 563 U.S. 826, 836 (2011). Section 4's definition of "prevailing party," S.B. 8 § 30.022(b), also directly conflicts with federal law. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603–05 (2001) ("prevailing party" is a "term of art" and requires at least some "alteration in the legal relationship of the parties").

S.B. 8 Section 4 would also stand as a substantial obstacle to Congress's goals in adopting Section 1988. It would create massive disincentives for the vindication of constitutional rights and allow even defendants found to have violated federal law to recover fees, contrary to Congress's objectives. *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 418 (1978). Section 4 would also vastly expand the circumstances under which defendants in civil-rights cases may recover fees and costs, and it would do so "for a reason manifestly inconsistent with the purposes" of Section 1988. *Felder v. Casey*, 487 U.S. 131, 141–42 (1988) (holding that a state notice-of-claim requirement was preempted as applied to Section 1983 claims because it aimed "to minimize governmental liability," thus undermining Section 1983's "uniquely federal remedy"); *see also Haywood v. Drown*, 556 U.S. 729, 733–34 (2009) (holding that a state correctional law was preempted where the state "strip[ped] its courts of jurisdiction" over Section 1983 damages claims and instead forced plaintiffs to sue the state directly in a court of claims without access to "the same relief, or the same procedural protections," as would otherwise apply in a Section 1983 case).

Other aspects of Section 4 likewise conflict with Section 1988's fee regime. Section 1988 instructs that a request for attorney's fees must be made in the "action or proceeding to enforce" a federal civil rights statute, including Section 1983, and that the fees, where assessed, are allowed only "as part of the costs." 42 U.S.C. § 1988(b). A motion for fees and costs must be filed within 14 days of the judgment, or it is waived. *Romaguera v. Gegenheimer*, 162 F.3d 893, 895 (5th Cir. 1998), *decision clarified on denial of reh'g*, 169 F.3d 223 (5th Cir. 1999); *United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 766 (5th Cir. 1996). In contrast, S.B. 8's cause of action for fees and costs may be brought in an entirely new proceeding before a different judge within three years of any substantive claim resolution. S.B. 8 § 30.022(c). In that collateral lawsuit, it would "not [be] a defense" that the party filing the lawsuit did not "seek recovery of costs or attorney's fees in the underlying action" giving rise to the fee liability, or that the court in the underlying action held Section 4 "invalid, unconstitutional, or preempted by federal law, notwithstanding the doctrines of issue or claim preclusion." *Id.* § 30.022(d).

Courts considering other state laws that govern the imposition of attorney's fees and costs in favor of prevailing defendants have likewise held those laws preempted by Section 1988 or analogous federal fee-shifting provisions. *See, e.g.*, *State v. Golden's Concrete Co.*, 962 P.2d 919, 926 (Colo. 1998) (en banc) (involving the interplay between a Section 1983 claim and a state rule that permitted a prevailing defendant to recoup fees in circumstances other than where the plaintiff's action was "frivolous, unreasonable or without foundation" (citation omitted)); *Hubbard v. SoBreck, LLC*, 554 F.3d 742, 746–47 (9th Cir. 2009) (holding that a mandatory award of fees to prevailing defendants under the California Disabled Persons Act was inconsistent with, and therefore preempted by, the fee-shifting standard applicable to the Americans with Disabilities Act). The Court should do the same here.

48

III.     **THE COURT SHOULD AWARD DECLARATORY AND INJUNCTIVE RELIEF**

Declaratory relief is appropriate against the class of judicial defendants.  *See Pulliam*, 466 U.S. at 539–40; 42 U.S.C. § 1983.  Plaintiffs' injuries may be remedied by a declaratory judgment that S.B. 8 is unconstitutional and invalid; that the judicial defendants must not accept or entertain any enforcement action brought under Section 3 of S.B. 8; and, should Plaintiffs not prevail on any claim in this case against the judicial defendant class, that the class has no claim against Plaintiffs for costs and attorney's fees under Section 4 of S.B. 8.

Both declaratory and injunctive relief are warranted against the class of clerk defendants, Defendant Dickson and the State Official Defendants.  A permanent injunction is appropriate where a plaintiff has demonstrated "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).  Here, first, constitutional injuries alone suffice to establish irreparable harm.  *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  Second, the burdens to Plaintiffs' patients' constitutional rights, along with the costs and burdens of defending against S.B. 8 lawsuits, cannot be remedied through money damages.  *See* S.B. 8 § 171.208(i); *see also First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 785 n.21 (1978) ("In addition, the burden and expense of litigating the issue . . . would unduly impinge on the exercise of the constitutional right."); *Dombrowski v. Pfister*, 380 U.S. 479, 490 (1965) (possibility of successfully defending in state-court action does not "alter the impropriety of . . . invoking the statute in bad faith" to initiate proceedings in the first place).  Third, these injuries outweigh any interest the State might have in enforcing an unconstitutional law.  *Jackson Women's Health Org. v. Dobbs*, 379 F. Supp. 3d 549,

553 (S.D. Miss. 2019), *aff'd,* 951 F.3d 246 (5th Cir. 2020).  And fourth, the public interest is served by an injunction preventing constitutional deprivations.  *Jackson Women's Health Org.*, 760 F.3d at 458 n.9.

Accordingly, Plaintiffs request an injunction that (1) restrains the class of clerk defendants, their officers, agents, servants, employees, attorneys, and any persons in active concert or participation with them from participating in the enforcement of S.B. 8 in any way, including by accepting for filing or taking any other action in the initiation of a lawsuit brought under S.B. 8; (2) restrains Defendant Dickson, his agents, servants, employees, attorneys, and any persons in active concert or participation with him from enforcing S.B. 8 in any way; and (3) restrains the State Official Defendants, their officers, agents, servants, employees, attorneys, and any persons in active concert or participation with them, from enforcing S.B. 8 in any way, including by applying S.B. 8 as a basis for enforcement of other laws or regulations that are in their charge.

## CONCLUSION

For the foregoing reasons, summary judgment should be entered for Plaintiffs.  The Court should award declaratory relief that S.B. 8 is unconstitutional and cannot lawfully be enforced, and it should permanently enjoin the class of clerk defendants, Defendant Dickson, and the State Official Defendants from seeking to enforce or participating in the enforcement of S.B. 8 directly or indirectly and from seeking costs and attorney's fees under Section 4 of S.B. 8 with respect to any covered claim brought by Plaintiffs in this or other litigation.

Dated:  July 13, 2021

Respectfully submitted,

*/s/ Christen Mason Hebert*
Christen Mason Hebert
(Texas Bar No. 24099898)
Johns & Hebert PLLC
2028 East Ben White Blvd
Suite 240-1000
Austin, TX 78741
(512) 399-3150
chebert@johnshebert.com

*Attorney for all Plaintiffs*

Marc Hearron (Texas Bar No. 24050739)*
Center for Reproductive Rights
1634 Eye St., NW, Suite 600
Washington, DC  20006
(202) 524-5539
mhearron@reprorights.org

Molly Duane*
Kirby Tyrrell*
Melanie Fontes*
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
(917) 637-3631
mduane@reprorights.org
ktyrrell@reprorights.org
mfontes@reprorights.org

Jamie A. Levitt*
J. Alexander Lawrence*
Morrison & Foerster LLP
250 W. 55th Street
New York, NY 10019
(212) 468-8000
jlevitt@mofo.com
alawrence@mofo.com

*Attorneys for Whole Woman's Health, Whole
Woman's Health Alliance, Marva Sadler,
Southwestern Women's Surgery Center, Allison
Gilbert, M.D., Brookside Women's Medical*

Julie Murray*
Richard Muniz*
Planned Parenthood Federation of America
1110 Vermont Ave., NW Ste. 300
Washington, DC 20005
(202) 973-4997
julie.murray@ppfa.org
richard.muniz@ppfa.org

*Attorneys for Planned Parenthood of
Greater Texas Surgical Health Services,
Planned Parenthood South Texas Surgical
Center, Planned Parenthood Center for
Choice, and Dr. Bhavik Kumar*

Julia Kaye*
Brigitte Amiri*
Chelsea Tejada*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2633
jkaye@aclu.org
bamiri@aclu.org
ctejada@aclu.org

Lorie Chaiten*
American Civil Liberties Union Foundation
1640 North Sedgwick Street
Chicago, IL 60614
(212) 549-2633
rfp_lc@aclu.org

Adriana Pinon (Texas Bar No. 24089768)
David Donatti (Texas Bar No. 24097612)
Andre Segura (Texas Bar No. 24107112)
ACLU Foundation of Texas, Inc.
5225 Katy Freeway, Suite 350
Houston, TX 77007
Tel. (713) 942-8146
Fax: (713) 942-8966
apinon@aclutx.org

*Center PA d/b/a Brookside Women's Health Center and Austin Women's Health Center, Alamo City Surgery Center PLLC d/b/a Alamo Women's Reproductive Services, Houston Women's Reproductive Services, Reverend Daniel Kanter, and Reverend Erika Forbes.*

*\*Pro hac vice applications forthcoming*

ddonatti@aclutx.org
asegura@aclutx.org

*Attorneys for Houston Women's Clinic*

Stephanie Toti
LAWYERING PROJECT
41 Schermerhorn Street #1056
Brooklyn, NY 11201
(646) 490-1083
stoti@lawyeringproject.org

Rupali Sharma*
LAWYERING PROJECT
197 Pine Street, Apt. 23
Portland, ME 04102
(908) 930-6445
rsharma@lawyeringproject.org

*Attorneys for The Afiya Center, Frontera Fund, Fund Texas Choice, Jane's Due Process, Lilith Fund for Reproductive Equity, North Texas Equal Access Fund*

**CERTIFICATE OF SERVICE**

I certify that, on the 13th day of July, 2021, I electronically filed a copy of the above document with the Clerk of the Court using the CM/ECF system, and personally served all Defendants.


 */s/ Christen Mason Hebert*_____
Christen Mason Hebert