# Exhibit G

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| WHOLE WOMAN'S HEALTH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | CASE NO. _____ |
| AUSTIN REEVE JACKSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF AMY HAGSTROM MILLER IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

AMY HAGSTROM MILLER hereby declares under penalty of perjury that the following statements are true and correct:

1. I am the President and Chief Executive Officer ("CEO") of Whole Woman's Health Alliance ("WWHA"), a plaintiff in this case.

2. WWHA is a nonprofit organization incorporated under Texas law. Its mission is to provide abortion care in underserved communities and shift the stigma around abortion in our culture.

3. WWHA currently operates an abortion clinic in Austin, Texas (the "Austin clinic"), as well as abortion clinics in Indiana and Virginia. The Austin clinic opened in 2017 and is a licensed abortion facility.

4. As President and CEO of WWHA, I oversee all aspects of the organization's work.

5. I have been working in the abortion care field since 1989. Prior to my work at WWHA, I founded a consortium of limited liability companies involved in the provision of abortion care throughout the United States. These companies do business under the name

1

"Whole Woman's Health" ("WWH").  I continue to serve as President and CEO of WWH, which opened its first abortion clinic in 2003.

6.  I am thoroughly familiar with all aspects of abortion clinic operations and patient care.

7.  I provide the following testimony based on my personal knowledge and review of WWHA's business records.

### *Provision of Abortion Care at the Austin Clinic*

8.  The Austin clinic provides procedural abortions up to 17.6 weeks of pregnancy as measured from the first day of a patient's last menstrual period ("LMP").   Under Texas law, licensed abortion facilities are not permitted to provide procedural abortions beyond this gestational age. *See* Tex. Health & Safety Code § 171.004.

9.  The Austin clinic provides medication abortions up to 70 days LMP.  Under Texas law, medication abortions are prohibited after this gestational age.   *See* Tex. Health & Safety Code § 171.063(a)(2).

10. In a typical week, the Austin clinic provides abortions to approximately 60 patients.  Only around 10% of patients who seek care at the Austin clinic are under six weeks LMP.

11. Texas law requires abortion patients who reside within 100 miles of a licensed abortion clinic to make two separate visits to the clinic to obtain care, at least 24 hours apart.  *See* Tex. Health & Safety Code § 171.012(a)(4), (b).  During the first visit, we must provide the patient with certain state-mandated information and perform an ultrasound examination.  *See id.* During the second visit, we provide abortion care.  Most of our patients reside within 100 miles of the Austin clinic.

12. The Austin Clinic originally opened as a WWH clinic in 2003. It was shuttered by House Bill 2 of 2013 and was only able to reopen as a WWHA clinic in 2017 due to years of hard-

fought litigation, culminating in a victory at the U.S. Supreme Court in *Whole Woman's Health v. Hellerstedt*. Less than two years after reopening, we were forced to close again because an anti-abortion pregnancy crisis center, Austin LifeCare, bought out the lease for our existing building. The Austin Clinic had to find a new location and relocate our operations, reopening again in February 2019.

### *Senate Bill 8*

13. I understand that Texas Senate Bill 8 ('S.B. 8") requires physicians to determine if a "fetal heartbeat" is present before performing an abortion. *See* Tex. Health & Safety Code § 171.203(b). If the physician detects a "fetal heartbeat" or fails to test for it, they are prohibited from performing the abortion. *See* Tex. Health & Safety Code § 171.204(a).

14. Fetal or embryonic cardiac activity can be detected as early as six weeks LMP. By banning abortions at or after six weeks LMP, S.B. 8 bans approximately 90% of the abortions we perform at the Austin clinic.

15. I further understand that a private right of civil action can be brought by any person against a) someone who performs an abortion in violation of S.B. 8; b) someone who aids or abets the performance of an abortion in violation of S.B. 8; or c) someone who intends to engage in a) or b). *See* Tex. Health & Safety Code § 171.208(a). If the person suing is a Texas resident, they can file the case in a court in their home county. *See* Tex. Health & Safety Code § 171.210(a)(4).

16. I understand that if that individual wins their lawsuit under S.B. 8, they will be granted "injunctive relief sufficient to prevent the defendant" from violating S.B. 8; a monetary award of at least $10,000 per abortion; and costs and attorney's fees. *See* Tex. Health & Safety Code § 171.208(b).

***Impact of S.B. 8***

17. It is very difficult for patients to obtain an abortion before six weeks LMP.  Patients are already four weeks LMP when they miss their period, which is generally the first indication that the patient might be pregnant.  Many patients do not confirm pregnancy until many weeks later, particularly if they have irregular periods.  Under Texas law, our patients must come to the clinic for a mandatory ultrasound, wait 24 hours if they live less than 100 miles from the nearest abortion provider, and then come back to have an abortion from the same physician.  *See* Tex. Health & Safety Code § 171.012(a)(4).  Our patients have to rearrange their work or school schedules, arrange for childcare, and raise the money necessary to have an abortion, as insurance generally does not cover abortion in Texas.  It is extremely challenging for our patients to do all of this in a matter of days or weeks.

18. I further understand that under S.B. 8, any person can sue both our physicians for performing an abortion, as well as any person who "aids or abets" in the performance of an abortion, which could potentially include the Austin Clinic and our staff.

19. I have no doubt that WWHA, our physicians, and possibly our staff will be targeted by individuals opposed to abortion who will file lawsuits under S.B. 8, including the protesters who frequently picket the Austin Clinic.  Indeed, the threat of lawsuits has already begun.

20. In late May, an individual sneaked into the Austin Clinic by following a patient through the front door to evade our security.  Once inside, the individual distributed a letter about S.B. 8 to our Austin Clinic staff and those present in the reception area.  This letter is attached as Exhibit 1 to my declaration.  The individual was asked to leave, but once outside, the individual was joined by another person and both individuals continued to distribute the letter to staff outside, still on the clinic's private property.  This letter informs staff that they can be sued for providing or

4

facilitating abortions after the detection of a "fetal heartbeat" and encourages them to report their colleagues to the letter's authors—"K+W Partnership."  The letter gives a phone number and email address for individuals to use to report violations of S.B. 8 and states: "please call or send us a text at any time."  If anti-abortion individuals would go to this length to encourage lawsuits several months before S.B. 8 is scheduled to take effect, I have no doubt that they will bring suits against us in September.

21. Even if there is no basis for these suits, our physicians and staff will be forced to travel to the claimant's home county, hire a lawyer, and spend months, if not years, defending themselves.  If the claimant is successful, our physicians and staff will be banned from providing abortions prohibited by S.B. 8 and subject to very serious financial penalties.  I also understand that they may be subject to disciplinary action by the Texas Medical and Nursing Boards.

22. This will be extremely burdensome to our physicians and staff—emotionally, logistically, and financially—and it will also have very serious impacts on the Austin Clinic.  Our physicians and staff will have to choose between subjecting themselves to these lawsuits or turning away the majority of our patients, putting us in an impossible situation.

23. S.B. 8 is designed to shut us down and stop us from providing needed care to Texans.  Indeed, afraid for job security given the impending effective date of S.B. 8, some staff at the Austin Clinic have started looking for other work, and some have already quit.  If S.B. 8 is not blocked from taking effect, the Austin Clinic will inevitably close.

24. Our patients will suffer if they cannot obtain abortion care in Texas after six weeks LMP.  S.B. 8 will also exacerbate the shame, stigma, and confusion surrounding abortion access in Texas, as patients are already regularly calling us to ask if abortion is still legal in the state.

25. Many of the patients who seek care at the Austin clinic have low incomes, and many are parents of dependent children.  The majority are uninsured.

26. Our patients seek abortion care for a variety of reasons.  Many do not have the resources to add an additional child to their family.   Some are students who want to complete their education before having children.  Some do not want to be tied financially or emotionally to the putative father, or fear abuse if their pregnancy is discovered.

27. Many of our patients will not be able to travel out of state to obtain an abortion due to their work, school, family, or childcare responsibilities and the high costs.

28. Some of our patients may be able to travel out of state but they will be delayed in obtaining care.

29. Being forced to delay a wanted abortion is nerve-wracking.  Patients who are delayed from accessing abortion must continue to cope with the physical symptoms of pregnancy, which for many include debilitating nausea and vomiting.  The longer a patient remains pregnant, the more likely it is that others will discover the pregnancy, including abusive partners or family members. The cost of abortion care (as well as the medical risks of pregnancy and abortion) increase significantly with gestational age.

30. Patients who are delayed from accessing abortion must also cope with the fear of not being able to obtain abortion care in time—and of the life-altering consequences of having to carry an unwanted pregnancy to term and go through childbirth against their will.

31. Inevitably, if S.B. 8 is not blocked, many Texans will be forced to carry pregnancies to term against their will.

### *S.B. 8's Fee Shifting Provision*

32.     I further understand that S.B. 8 makes parties and their attorneys liable to pay the costs and attorney's fees in cases challenging Texas laws that restrict abortion.

33.     WWHA has been involved in several cases challenging abortion restrictions in Texas, including: *Whole Woman's Health Alliance v. Paxton*, No. 1:18-CV-00500 (W.D. Tex.) (various laws regulating abortion); and *In re Abbot*, 954 F.3d 772 (5th Cir. 2020), *cert. granted, judgment vacated as moot by Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021) (mem.) (COVID abortion ban).

34.     Litigation is critical to our mission to provision abortion access to patients in Texas and reduce the shame and stigma associated with abortion.  I am concerned that the fee-shifting provision of S.B. 8 is intended to intimidate us and discourage us from using litigation to vindicate the constitutional rights of our patients and keep the doors of our clinic open.

Dated:

July 9, 2021

_____

AMY HAGSTROM MILLER

Exhibit 1

K+W PARTNERSHIP



(512) 366-2893 kwpartnership@protonmail.com

May 22, 2021

**To all employees both medical and clerical:**

The 'Heartbeat bill' has been signed into Texas law and will become effective September 1st 2021. Those who provide or facilitate abortions after a fetal heartbeat has been detected will be in violation of the law and are subject to private lawsuits. Fetal heartbeat can be detected as early as 3 weeks gestation and almost always by 6 ½ weeks. Please be aware that if you are involved in such an abortion one of your employees has the right to report you.

If you are aware of any babies in danger of being aborted at or around 6 weeks gestation, please call or send us a text at any time.

Thank you,

K+W Partnership
512-366-2893
kwpartnership@protonmail.com