IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WHOLE WOMAN'S HEALTH, et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Cause No. 1:21-cv-00616-RP |
| | § | |
| AUSTIN REEVE JACKSON, et al., | § | |
| | § | |
| *Defendants.* | § | |

## STATE AGENCY DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS

The State Agency Defendants[1] file this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). This Court should dismiss Plaintiffs' claims against the State Agency Defendants for lack of subject matter jurisdiction.

### INTRODUCTION

Plaintiffs are asking a federal district court to preemptively issue an advisory opinion on the constitutionality of a new Texas statute, without any live case or controversy before the Court. *See* Act of May 19, 2021, 87th Leg., R.S., S.B. 8, effective Sept. 1, 2021 ("S.B. 8"). Even though S.B. 8 expressly prohibits state actors from enforcing its provisions, Plaintiffs seek declaratory and injunctive relief against a cadre of state executive officers: the Executive Directors of the Texas Medical

---

[1]     Defendants Stephen Brint Carlton, Executive Director of the Texas Medical Board; Katherine A. Thomas, Executive Director of the Texas Board of Nursing; Cecile Erwin Young, Executive Commissioner of the Texas Health and Human Services Commission; Allison Vordenbaumen Benz, Executive Director of the Texas Board of Pharmacy; and Ken Paxton, Attorney General of Texas. Plaintiffs have sued the State Agency Defendants in their official capacities.

Board ("TMB"), Texas Board of Nursing, and Texas Board of Pharmacy, as well as the Commissioner of the Texas Health and Human Services Commission ("HHSC") and the Attorney General (collectively, the "State Agency Defendants"). Plaintiffs' claims against the State Agency Defendants fail for lack of jurisdiction because (1) they are barred by sovereign immunity and (2) Plaintiffs do not have standing.

First, Plaintiffs' claims against the State Agency Defendants are barred by sovereign immunity. "Although a court can enjoin state officials from enforcing statutes [found to violate the Constitution], such an injunction must be directed to those who have the authority to enforce those statutes." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 468 (5th Cir. 2020). The State Agency Defendants have no such authority. Indeed, they are prohibited by law from enforcing S.B. 8. That means this "is essentially a suit against the State," *id.* at 467, and it is thus barred by sovereign immunity. *See City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Because this Court lacks jurisdiction, it is "powerless to act except to say that [it] cannot act." *Okpalobi v. Foster*, 244 F.3d 405, 409 (5th Cir. 2001) (en banc).

Second, Plaintiffs lack standing because there is no case or controversy between Plaintiffs and the State Agency Defendants. Plaintiffs have not plausibly alleged they face an "actual or imminent" injury from S.B. 8. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Further, Plaintiffs fail to establish standing under the theories of organizational or third-party standing. Thus, Plaintiffs' claims independently fail for lack of standing.

# BACKGROUND

In enacting S.B. 8, the Texas Legislature found, among other things, that "to make an informed choice about whether to continue her pregnancy, [a] pregnant woman has a compelling interest in knowing the likelihood of her unborn child surviving to full-term birth based on the presence of cardiac activity." S.B. 8 § 3 (to be codified at Tex. Health & Safety Code § 171.202). Accordingly, the statute requires a physician to determine, using a method that is "consistent with the physician's good faith and reasonable understanding of standard medical practice," "whether the woman's unborn child has a detectable fetal heartbeat." S.B. 8 § 3 (to be codified at Tex. Health & Safety Code § 171.203). It further prohibits abortion after a fetal heartbeat is detected, unless that would constitute an undue burden on a woman seeking an abortion. *See* S.B. 8 § 3 (to be codified at Tex. Health & Safety Code §§ 171.204, 171.209).

Importantly, S.B. 8 expressly prohibits state executive and administrative officers from enforcing its requirements: "No enforcement of this subchapter . . . may be taken or threatened by this state . . . or an executive or administrative officer or employee of this state . . . ." S.B. 8 § 3 (to be codified at Tex. Health & Safety Code § 171.207(a)). Instead, S.B. 8's requirements are enforceable *exclusively* through the private civil action created under the statute. *See* S.B. 8 § 3 (to be codified at Tex. Health & Safety Code § 171.208(a)).

Plaintiffs are various abortion clinics and abortion doctors, Compl. ¶¶ 24–35 (collectively "Abortion Providers"), as well as other organizations that advocate for

abortions and two individuals who allegedly provide spiritual care and counseling, Compl. ¶¶ 37–46 ("Abortion Advocates"). The Abortion Providers allege S.B. 8 harms them by prohibiting "the bulk of" the abortions they perform, Compl. ¶ 102, or, if they continue to perform such abortions, by exposing them to private lawsuits, Compl. ¶ 103. The Abortion Advocates allege they could likewise face private lawsuits and liability for aiding and abetting abortions prohibited by S.B. 8 and that they will have to shift resources if the abortion providers stop performing prohibited abortions. Compl. ¶¶ 111–13.

In addition to the State Agency Defendants (listed above), Plaintiffs have also sued a state district judge, a state district clerk, and a private citizen. This Motion to Dismiss is filed jointly by the State Agency Defendants. Plaintiffs recognize that these official heads of various state agencies lack authority to enforce the provisions of S.B. 8. *See* Compl. ¶¶ 76, 107. Nevertheless, Plaintiffs allege they are proper defendants because Plaintiffs believe these agencies might seek to enforce S.B. 8 against Plaintiffs through their general authority to enforce various health-related laws and regulations. *See* Compl. ¶¶ 51–55, 107. As explained below, Plaintiffs' contingent speculations fail to establish federal jurisdiction against the State Agency Defendants.

## ARGUMENT & AUTHORITIES

### I.   Sovereign immunity bars Plaintiffs' claims against the State Agency Defendants.

Sovereign immunity generally bars claims against the State and state officials in their official capacities. "The only way to bring an official-capacity claim against

an officer of the State is to do so under the equitable cause of action recognized in *Ex parte Young*." *Freedom From Religion Found., Inc. v. Mack*, No. 21-20279, 2021 WL 2887861, at *4 (5th Cir. July 9, 2021).[2] *Ex parte Young* "is a legal fiction that allows private parties to bring 'suits for injunctive or declaratory relief against individual state officials acting in violation of federal law.'" *City of Austin*, 943 F.3d at 997 (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013)).

"[A]n official-capacity equitable claim is cognizable under *Ex parte Young* only if . . . the defendant state officer bears a sufficiently close connection to the unlawful conduct that a district court can meaningfully redress that injury with an injunction against that officer." *Freedom from Religion Found.*, 2021 WL 2887861, at *4. To sue a state official under *Ex parte Young*, the plaintiff must show the defendant official has both "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014); *see also Okpalobi*, 244 F.3d at 421 (en banc) (plurality). Plaintiffs did not and cannot make either showing. The State Agency Defendants lack authority to enforce S.B. 8. And even if they could arguably do so tangentially through some sort of administrative action, Plaintiffs completely fail to allege how any State Agency Defendant has demonstrated any willingness to do so.

---

[2]    Plaintiffs cite only 42 U.S.C. § 1983, making no mention of *Ex parte Young*'s equitable cause of action. Even assuming Plaintiffs could cure this pleading defect, however, *Ex parte Young* does not apply to their claims against the State Agency Defendants.

### A.     The State Agency Defendants have no "particular duty" to enforce S.B. 8.

Plaintiffs cannot overcome sovereign immunity for the simple reason that S.B. 8 ***explicitly prohibits*** enforcement by the State Agency Defendants: "No enforcement of this subchapter . . . may be taken or threatened by this state . . . or an executive or administrative officer or employee of this state . . . ." S.B. 8 § 3 (to be codified at Tex. Health & Safety Code § 171.207(a)); *see also id.* § 6 (to be codified at Tex. Health & Safety Code § 171.005). Despite this plain statutory prohibition against state enforcement, Plaintiffs allege that relief against the State Agency Defendants is nevertheless proper because they have authority to enforce various health-related laws and regulations that Plaintiffs allege "could be triggered by a violation of S.B. 8." Compl. ¶ 107. Plaintiffs' creative attempt to establish federal jurisdiction through such a speculative set of contingencies falls far short of *Ex parte Young*'s requirement of a "particular duty to enforce the statute in question." *Morris*, 739 F.3d at 746.

It is not at all clear that S.B. 8's express prohibition against state administrative enforcement would permit state agencies to discipline or otherwise engage in administrative proceedings against Plaintiffs under general health enforcement laws where the underlying issue was an alleged violation of S.B. 8. That is a novel question of state law.[3] Fortunately, it is unnecessary for this Court to opine

---

[3]     It is far from clear that Plaintiffs' speculative theory of administrative enforcement is correct. For example, "one of the three golden rules of statutory construction" is that "a more specific statute will be given precedence over a more general one." *See El Paso County v. Trump*, 408 F. Supp. 3d 840, 857 (W.D. Tex. 2019)

on it. The mere existence of a novel question of state administrative law that may or may not permit a state agency to engage in administrative proceedings involving an underlying alleged violation of S.B. 8 is so far from constituting a "particular duty" of a state agency to enforce S.B. 8 as to require no further analysis. Unless and until state law is both interpreted and applied to impose a "particular duty" on any of the State Agency Defendants to enforce S.B. 8 via administrative enforcement actions, there is no jurisdictional basis for this Court to consider Plaintiffs' imaginative claims.[4]

> ### B. Plaintiffs have failed to show a "demonstrated willingness" by the State Agency Defendants to enforce S.B. 8.

Even if Plaintiffs could show a "particular duty" of the State Agency Defendants to enforce S.B. 8 (which they cannot), their claims would still fail to

---

(quoting *Nevada v. Dep't of Energy*, 400 F.3d 9, 16 (D.C. Cir. 2005)). Accordingly, S.B. 8's specific prohibition on state enforcement may arguably override the State Agency Defendants' general authority to discipline licensees.

[4]    Even if the possibility of administrative enforcement were enough to support an *Ex parte Young* injunction (or Article III standing, *see infra* section II.B.1), the Court should abstain under *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941). The Supreme Court has instructed federal courts to abstain where an antecedent question of state law would obviate the need to address a federal constitutional question, *id.* at 500, or "significantly modify" the federal analysis, *Lake Carriers Ass'n v. MacMullan*, 406 U.S. 498, 512 (1972); *see also Palmer v. Jackson*, 617 F.2d 424, 428 (5th Cir. 1980). If the State Agency Defendants lack the alleged enforcement authority as a matter of state law, "the constitutional issue does not arise." *Pullman*, 312 U.S. at 501. Abstention is particularly appropriate because the Supreme Court of Texas has never interpreted the scope of S.B. 8's prohibition on state enforcement. *See Lake Carriers Ass'n*, 406 U.S. at 511; *Reetz v. Bozanich*, 397 U.S. 82, 86 (1970). To avoid creating "needless friction with state policies," *id.* at 500, this Court should "decline to exercise jurisdiction altogether by . . . dismissing" Plaintiffs' claims against the State Agency Defendants, *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996).

satisfy *Ex parte Young*'s requirements because Plaintiffs have completely failed to allege or show a "demonstrated willingness" of any State Agency Defendant to enforce S.B. 8. *See Morris*, 739 F.3d at 746. Even where a defendant official "has the authority to enforce" a law, a plaintiff must further allege that the official "is likely to" enforce the law in a way that would "constrain" the plaintiff. *City of Austin*, 943 F.3d at 1001–02.

Plaintiffs simply cannot make such a showing. Indeed, their Complaint does not even attempt to do so. At most, Plaintiffs allege that "other statutes and regulations . . . *could* be triggered by a violation of S.B. 8." Compl. ¶ 107 (emphasis added). That is nowhere near a plausible allegation that any of the specific State Agency Defendants is "likely" to enforce S.B. 8 in any way.[5] Plaintiffs' allegations do not show the type of "ongoing" constitutional violation that is generally required to invoke *Ex parte Young*. *See, e.g.*, *Fontenot v. McCraw*, 777 F.3d 741, 752 (5th Cir. 2015) (explaining that the *Ex parte Young* doctrine applies where a plaintiff "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.").

---

[5]     Contrary to Plaintiffs' assertions, the State Agency Defendants are not obligated to discipline for violations of state law. For example, TMB "may"—not "must," *contra* Compl. ¶ 51—"impose an administrative penalty against [a licensed physician] who violates" certain governing laws. Tex. Occ. Code § 165.001; *see also id.* § 165.101 (attorney general may institute an action for civil penalties against a licensed physician for certain violations); *id.* § 301.501 (Board of Nursing "may impose an administrative penalty"); *id.* § 566.001(1) (same as to Board of Pharmacy); Tex. Health & Safety Code § 245.017 (HHSC "may assess an administrative penalty").

## II.    Plaintiffs' claims against the State Agency Defendants alternatively fail for lack of standing.

While sovereign immunity completely bars Plaintiffs' claims against the State Agency Defendants, those claims also fail for lack of Article III standing. Plaintiffs cannot show the "irreducible constitutional minimum of standing": injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs bear the burden to "demonstrate all the elements of standing for each provision they seek to challenge." *In re Gee*, 941 F.3d 153, 162 & n.4 (5th Cir. 2019) (per curiam). And because Plaintiffs seek prospective relief, they must establish an "imminent" future injury. *Lujan*, 504 U.S. at 564. Plaintiffs cannot meet these requirements.

### A.    Each Plaintiff must establish standing as to each provision challenged.

Article III's case-or-controversy requirement must be satisfied for each provision challenged and each remedy sought. *See Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) ("For all relief sought, there must be a litigant with standing[.]"); *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) (rejecting the idea that "the right to complain of one administrative deficiency automatically confer[s] the right to complain of all administrative deficiencies"); *In re Gee*, 941 F.3d at 162 & n.4. The Court's "determination of standing is both plaintiff- and provision-specific" because the conclusion "[t]hat one plaintiff has standing to assert a particular claim does not mean that all of them do." *Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008); *see also Pagan v. Calderon*, 448 F.3d 16, 26 (1st Cir. 2006).

A "district court . . . lack[s] authority to enjoin enforcement of [a challenged law] as to anyone other than the named plaintiffs." *In re Abbott*, 954 F.3d 772, 786 n.19 (5th Cir. 2020), *vacated as moot sub nom. Planned Parenthood Center for Choice v. Abbott*, 141 S. Ct. 1261 (2021). That rule would be meaningless if anyone could be brought within the scope of relief by simply naming them as plaintiffs without establishing their individual standing.

Moreover, even if Article III did not require a particularized standing analysis, it would still be appropriate here. Although one plaintiff with standing is enough for purposes of appeal, "nothing in the cases addressing this principle suggests that a court must permit a plaintiff that lacks standing to remain in a case whenever it determines that a co-plaintiff has standing." *Thiebaut v. Colo. Springs Utilities*, 455 F. App'x 795, 802 (10th Cir. 2011). Here, multiple factors weigh in favor of fully considering standing: (1) any other approach "would not fully address [this] motion," (2) failing to decide standing "would leave at least some of the plaintiffs in a state of legal limbo," (3) "if one group of plaintiffs lack[s] standing, defendants would at least be entitled to partial dismissal," and (4) "judicial economy" supports streamlining the case. *We Are Am./ Somos Am., Coal. of Ariz. v. Maricopa Cty. Bd. of Supervisors*, 809 F. Supp. 2d 1084, 1092-93 (D. Ariz. 2011).

## B.    Plaintiffs' alleged injuries are not cognizable under Article III.

Plaintiffs generally proffer three injuries they contend support Article III standing. None suffices. First, Plaintiffs speculate that even though S.B. 8 prohibits government enforcement, the State Agency Defendants "could" take other disciplinary actions. As addressed above, such speculation is, to say the least, legally

conjectural and factually premature. This theory also relies on an unsettled question of Texas law that this Court should abstain from addressing in the first instance. *See supra* n.4. Second, Plaintiffs allege that the possibility of fee shifting causes them an injury in fact. That flatly fails Article III's requirement that future injury be imminent. Finally, Plaintiffs allege that they will be injured by private lawsuits under S.B. 8. Of course, even if such an alleged injury could otherwise satisfy Article III (which the State Agency Defendants deny), it is neither traceable to the State Agency Defendants nor redressable through an injunction against them.

1.     **Plaintiffs do not plausibly allege an imminent threat of any administrative enforcement by the State Agency Defendants.**

Plaintiffs first allege they have standing to sue the State Agency Defendants on the theory that they have authority to enforce "other statutes and regulations" that "could be triggered by a violation of S.B. 8." Compl. ¶ 107. As already discussed, this theory is purely speculative, with no clear law or facts to render it anything more than personal conjecture at this time. *See supra* sections I.A–B. To support Article III standing, a future injury must be "certainly impending." *Clapper*, 568 U.S. at 410. It must be "actual or imminent rather than conjectural or hypothetical." *Lujan*, 504 U.S. at 560. However, Plaintiffs have not plausibly alleged that any administrative enforcement of S.B. 8 by the State Agency Defendants is actual rather than merely conjectural, and they certainly have failed to show it is anywhere close to imminent. The most Plaintiffs allege is that such injury "could" occur. Compl. ¶ 107. Such a "theoretical possibilit[y]" is legally insufficient to establish standing. *In re Gee*, 941 F.3d at 164.

Indeed, the theoretical possibility of administrative enforcement rests on the sort of "chain of contingencies," *Clapper*, 568 U.S. at 410, that cannot satisfy Article III. To suffer an injury traceable to TMB Director Carlton, for example, a licensed physician would first have to commit a prohibited abortion; then a citizen would have to report the physician to TMB; then TMB would have to decide whether to investigate the allegations; then, if TMB decided to investigate, it would have to decide whether to impose any disciplinary measures on that physician.[6] Any threat of disciplinary proceedings brought by the other State Agency Defendants against licensed nurses, pharmacists, or abortion clinics, respectively, is just as conjectural. Such a lengthy, fragile "chain of contingencies," *Clapper*, 568 U.S. at 410, cannot bear Plaintiffs' legal burden to establish an actual or imminent injury in fact.

These observations also mean that Plaintiffs' claims simultaneously fail for lack of ripeness, a doctrine related to standing. *See Texas v. United States*, 497 F.3d 491, 496 (5th Cir. 2007) (noting that "the [standing and ripeness] doctrines often overlap in practice, particularly in an examination of whether a plaintiff has suffered a concrete injury"). "Ripeness is a component of subject matter jurisdiction, because a court has no power to decide disputes that are not yet justiciable." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). "If the purported injury is 'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all,' the claim is not ripe for adjudication." *Id.* at 342 (alteration in original) (quoting

---

[6]     Of course, any discipline imposed by TMB would be subject to further review as provided by the applicable statutes and regulations governing TMB disciplinary proceedings.

*Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). Because Plaintiffs' purported injury is contingent on multiple future events, some or all of which may never occur, their claim is not ripe.

Further, this conjectural theory of standing does not even apply on its face to the Abortion Advocates. Those Plaintiffs do not allege to hold any licenses from the State Agency Defendants, nor do they allege how any of the State Agency Defendants could possibly initiate any administrative proceedings against them. Accordingly, the Abortion Advocates cannot utilize Plaintiffs' specter-of-administrative-enforcement theory to show their own individual standing to sue the State Agency Defendants.

### 2.    Fee-shifting provisions do not establish standing.

Second, Plaintiffs allege they are injured by S.B. 8's attorney's fees provisions because they might have to pay attorney's fees based on unsuccessful challenges to Texas's abortion regulations. Compl. ¶¶ 51–55. At most, that could provide standing to challenge S.B. 8's attorney's fees provisions, but not the entirety of S.B. 8. *See In re Gee*, 941 F.3d at 160–61. But, as with Plaintiffs' first theory, this alleged injury does not suffice because it is not "actual or imminent rather than conjectural or hypothetical." *Lujan*, 504 U.S. at 560.

Plaintiffs have not plausibly alleged an imminent future injury arising from S.B. 8's attorney's fees provision. No State Agency Defendant has sought an award of attorney's fees under S.B. 8's provisions, and the theoretical possibility one of them might do so someday does not suffice. The Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and

that [a]llegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (internal quotation marks omitted).

Of course, to the extent Plaintiffs seek to base standing on the possibility of an attorney's fees award in this very case, such an argument fails. *See Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("[A]n interest that is merely a 'byproduct' of the suit itself cannot give rise to a cognizable injury in fact for Article III standing purposes."); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit."); *Diamond v. Charles*, 476 U.S. 54, 69–71 (1986) (assessment of attorney's fees against a party does not confer standing to pursue the action on appeal).

> ### 3. Possible lawsuits by private parties do not create standing to sue the State Agency Defendants.

Plaintiffs repeatedly emphasize the possibility that private citizens may sue them under S.B. 8's private cause of action. *See, e.g.*, Compl. ¶¶ 8, 104, 111–12. However, such an allegation cannot establish standing against the State Agency Defendants. Aside from the fact that Plaintiffs fail to plausibly show how any such lawsuits are imminent, this argument also fails to satisfy the constitutional requirements of traceability and redressability. Article III requires an injury to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. Plaintiffs allege no causal link between private lawsuits that may be filed by private citizens under S.B. 8 and any of the State Agency Defendants.

Indeed, such a causal connection is difficult to imagine, given S.B. 8's strict prohibition against government enforcement of S.B. 8's requirements and its express bar against government intervention in private lawsuits under S.B. 8. *See* S.B. 8 § 3 (to be codified at Tex. Health & Safety Code §§ 171.207(a), 171.208(h)). The possibility of private lawsuits has no connection to the State Agency Defendants, and therefore it cannot establish standing to sue them.

### C.  Plaintiffs' organizational and third-party standing theories fail as a matter of law.

Plaintiffs apparently believe that some of their number can show standing based on the theories of organizational or third-party standing. They cannot.

### 1.  The Abortion Advocates fail to establish organizational standing based on diversion of resources.

As already noted, the Abortion Advocates do not and cannot plausibly allege how the State Agency Defendants could possibly take any administrative action against them. The Abortion Advocates do not even allege that the State Agency Defendants have the authority to regulate or discipline them. Consequently, the Abortion Advocates apparently rely on the theory of organizational standing based on alleged diversion of resources.

An organization generally has two options to establish Article III standing: associational standing, which is based on the standing of a member, or organizational standing, which is based on an injury to the organization itself. *See NAACP v. City of Kyle*, 626 F.3d 233, 237–38 (5th Cir. 2010). The Abortion Advocates

do not attempt to show associational standing.[7] Rather, they rely solely on organizational standing, which requires each Plaintiff to show injury, causation, and redressability in its own right. *See id.*

The Abortion Advocates rely on a diversion of resources theory for organizational standing. Compl. ¶ 110. Though the diversion of resources can constitute a requisite injury under certain circumstances, "[n]ot every diversion of resources to counteract [a] defendant's conduct . . . establishes an injury in fact." *City of Kyle*, 626 F.3d at 238. "The change in plans must still be in response to a reasonably certain injury imposed by the challenged law." *Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018). Speculation as to how abortion providers may react to the change in the law—indeed, the Abortion Providers do not say how they will react to S.B. 8—cannot support organizational standing.

Even if it could, "an organizational plaintiff must explain how the activities it undertakes in response to the defendant's conduct differ from its 'routine [] activities,'" and must "identify 'specific projects that [it] had to put on hold or otherwise curtail in order to respond to' the defendant's conduct." *Def. Distributed v. U.S. Dep't of State*, No. 1:15-cv-372, 2018 WL 3614221, at *4 (W.D. Tex. July 27,

---

[7]    Associational standing requires "members" within the meaning of *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 344 (1977). The plaintiff organization must show it has members who "elect leadership, serve as the organization's leadership, and finance the organization's activities, including the case's litigation costs." *Tex. Indigenous Council v. Simpkins*, No. 5:11-cv-315, 2014 WL 252024, at *3 (W.D. Tex. Jan. 22, 2014); *see also Ass'n for Retarded Citizens of Dall. v. Dall. Cty. Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994). None of the Abortion Advocates make such allegations.

2018) (quoting *City of Kyle*, 626 F.3d at 238). Plaintiffs cannot satisfy either requirement.

First, funding travel does not meaningfully differ from the organizations' "day-to-day operations." *ACORN v. Fowler*, 178 F.3d 350, 359 (5th Cir. 1999). Providing "financial, practical, and logistical support" for women seeking abortions is precisely what the Abortion Advocacy Organizations already do. Compl. ¶ 38 ("The Afiya Center provides financial, practical, and emotional support for abortion patients and advocates for abortion access."); *see also* ¶¶ 37, 39–42. "Plaintiffs have not explained how" their anticipated reactions "differ from [their] routine . . . activities." *City of Kyle*, 626 F.3d at 238.

Second, the Abortion Advocacy Organizations "have not identified any specific projects" they will have to "put on hold or otherwise curtail in order to respond to" S.B. 8. *Id.* They have "only conjectured that the resources" they say they may have to divert "could have been spent on other unspecified activities." *Id.* at 239. That, however, is legally insufficient to establish organizational standing. *Def. Distributed*, 2018 WL 3614221, at *4 (ruling that projects must be described with "sufficient specificity to constitute an injury in fact").

## 2. Plaintiffs lack third-party standing.

There are two groups of Plaintiffs seeking to invoke third-party standing. Both of them fail to do so.

First, the Abortion Providers (excluding the two physicians) purport to bring suit "on behalf of" their "physicians, nurses, [and] other staff." Compl. ¶¶ 24-33. But they have not pleaded why third-party standing is permissible. Ordinarily, a plaintiff

"must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). A limited exception applies when "the party asserting the right has a 'close' relationship with the person who possesses the right" and "there is a 'hindrance' to the possessor's ability to protect his own interests." *Kowalski*, 543 U.S. at 130.

Even assuming a close relationship exists, the Abortion Providers have not pleaded why their employees (physicians, nurses, and staff) are hindered from bringing their own claims. Indeed, courts have rejected employers' attempts to assert third-party standing on behalf of their employees for this very reason. *See, e.g.*, *MD II Entm't, Inc. v. City of Dallas*, 28 F.3d 492, 497 (5th Cir. 1994); *ESI/Employee Sols., L.P. v. City of Dallas*, 450 F. Supp. 3d 700, 717-18 (E.D. Tex. 2020); *One Thousand Friends of Iowa v. Mineta*, 250 F. Supp. 2d 1064, 1068 (S.D. Iowa 2002). There is simply no basis for the Abortion Providers to seek relief on behalf of an untold number of individuals who are perfectly able to bring their own lawsuits.[8]

Second, the Abortion Advocates presume to have third-party standing to sue on behalf of their clients. This is equally meritless. Giving financial or logistical support to an unidentified person at some unidentified future date does not establish

---

[8]    No Plaintiff is alleged to be a nurse or pharmacist regulated by the Board of Nursing or Board of Pharmacy. Thus, standing to sue those Defendants depends entirely on third-party standing. Because the Abortion Providers lack standing to sue on behalf of their employees—and because there is no allegation they employ pharmacists in any event—the claims against Director Thomas and Director Benz must be dismissed.

the requisite "close relationship" required under the third-party standing doctrine. *Kowalski*, 543 U.S. at 130, 134 (denying third-party standing for attorneys on behalf of unknown, future clients). The circumstances in which the Supreme Court has recognized a "close relationship" include the relationship between doctors and patients, *Singleton*, 428 U.S. at 117; attorneys and existing clients, *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989); *U.S. Dep't of Labor v. Triplett*, 494 U.S. 715 (1990); and family members, *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017). In stark contrast, the Abortion Advocates have a transitory, non-professional, non-familial relationship with women to whom they give financial support for an abortion.

## CONCLUSION & PRAYER

This Court lacks jurisdiction to grant any relief against the State Agency Defendants because they are protected by sovereign immunity and because Plaintiffs' claims alternatively fail for lack of Article III standing. Accordingly, this Court should dismiss Plaintiffs' claims against the State Agency Defendants without subjecting them to any further burdens of litigation.

Of course, if Plaintiffs are concerned with the overall constitutionality of S.B. 8, they are certainly not without recourse. Texas courts are well-equipped to adjudicate constitutional challenges to state laws. Plaintiffs have brazenly requested this Court to tell all Texas courts how to decide the cases before them. This Court should firmly decline to do so. After all, courts "do not, or should not, sally forth each day looking for wrongs to right." *Greenlaw v. United States*, 554 U.S. 237, 244 (2008).

Rather, consistent with fundamental jurisdictional principles, they "wait for cases to come to [them]." *Id.*; *see also Valley Forge Christian Coll.* v. *Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 489 (1982) (noting that the absence of a party with standing to sue "is not a reason to find standing"). Simply put, Plaintiffs' fear of having to litigate their contentions in state court does not establish federal jurisdiction.

For all the foregoing reasons, the State Agency Defendants—Director Carlton, Director Thomas, Commissioner Young, Director Benz, and Attorney General Paxton—respectfully request this Court to dismiss all claims against them for lack of jurisdiction.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

**THOMAS A. ALBRIGHT**
Chief - General Litigation Division

*/s/ Benjamin S. Walton*
**BENJAMIN S. WALTON**
Texas Bar No. 24075241
Benjamin.Walton@oag.texas.gov
**CHRISTOPHER D. HILTON**
Texas Bar No. 24087727
Christopher.Hilton@oag.texas.gov
**HALIE DANIELS**
Texas Bar No. 24100169
Halie.Daniels@oag.texas.gov
Assistant Attorneys General
General Litigation Division

**BETH KLUSMANN**
Texas Bar No. 24036918
Beth.Klusmann@oag.texas.gov
**NATALIE D. THOMPSON**
Texas Bar No. 24088529
Natalie.Thompson@oag.texas.gov
Assistant Solicitors General

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 – Phone
(512) 320-0667 – Fax

***Counsel for State Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2021, a true and correct copy of this document was electronically filed using the Court's CM/ECF system, which will send notification of such filing to the following counsel of record:

Christen Mason Hebert
Johns & Hebert PLLC
2028 East Ben White Blvd
Suite 240-1000
Austin, TX 78741
(512) 399-3150
chebert@johnshebert.com

*Attorney for all Plaintiffs*

Julie Murray
Richard Muniz
Planned Parenthood Federation of America
1110 Vermont Ave., NW Ste 300
Washington, DC 20005
(202) 973-4997
Julie.murray@ppfa.org
Richard.muniz@ppfa.org

*Attorneys for Planned Parenthood of Greater Texas Surgical Health Services, Planned Parenthood South Texas Surgical Center, Planned Parenthood Center for Choice, and Dr. Bhavik Kumar*

Stephanie Toti
LAWYERING PROJECT
41 Schermerhorn Street #1056
Brooklyn, NY 11201
(646) 490-1083
stoti@lawyeringproject.org

*Attorneys for The Afiya Center, Frontera Fund, Fund Texas Choice, Jane's Due Process, Lilith Fund for Reproductive Equity, North Texas Equal Access Fund*

Rupali Sharma
LAWYERING PROJECT
197 Pine Street, Apt. 23
Portland, ME 04102
(908) 930-6445
rsharma@lawyeringproject.org

*Attorneys for The Afiya Center, Frontera Fund, Fund Texas Choice, Jane's Due Process, Lilith Fund for Reproductive Equity, North Texas Equal Access Fund*

Molly Duane
Kirby Tyrrell
Melanie Fontes
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
(917) 637-3631
mduane@reprorights.org
ktyrrell@reprorights.org
mfontes@reprorights.org

Jamie A. Levitt
J. Alexander Lawrence
Morrison & Foerster LLP
250 W. 55th Street
New York, NY 10019
(212) 468-8000
jlevitt@mofo.com
alawrence@mofo.com

*Attorneys for*
*Whole Woman's Health,*
*Whole Woman's Health Alliance,*
*Marva Sadler, Southwestern*
*Women's Surgery Center,*
*Allison Gilbert, MD.,*
*Brookside Women's Medical*
*Center PA d/b/a Brookside*
*Women's Health Center and*
*Austin Women's Health Center,*
*Alamo City Surgery Center PLLC*
*d/b/a Alamo Women's*
*Reproductive Services,*
*Houston Women's Reproductive*
*Services, Reverend Daniel Kanter,*
*and Reverend Erika Forbes.*

Julia Kaye
Brigitte Amiri
Chelsea Tejada
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY I 0004
(212) 549-2633
jkaye@aclu.org
bamiri@aclu.org
ctejada@aclu.org

Lorie Chaiten
American Civil Liberties Union Foundation
1640 North Sedgwick Street
Chicago, IL 60614
(212) 549-2633
rfp_lc@aclu.org

Adriana Pinon
David Donatti
Andre Segura
ACLU Foundation of Texas, Inc.
5225 Katy Freeway, Suite 350
Houston, TX 77007
Tel. (713) 942-8146
Fax: (713) 942-8966
apinon @aclutx.org
ddonatti@aclutx.orgasegura@aclutx.org

*Attorneys for Houston Women's Clinic*

Hacker/Stephens LLP
Heather G. Hacker
Andrew B. Stephens
108 Wild Basin Rd. South
Suite 250
Austin, TX 78746
(512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

*Attorneys for Penny Clarkston*

M. Shane McGuire
THE MCGUIRE FIRM, PC
102 N College, Suite 301
Tyler, Texas 75702
(903) 630-7154 – Phone
(903) 630-7173 – Fax

*Additional attorney for Judge Austin
Reeve Jackson*

Mitchell Law PLLC
Jonathan F. Mitchell
111 Congress, Suite 400
Austin, TX 78701
(512) 686-3940
jonathan@mitchell.law

*Attorney for Mark Lee Dickson*

      */s/ Benjamin S. Walton*
**BENJAMIN S. WALTON**
Assistant Attorney General