UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **Whole Woman's Health**, et al., | |
| Plaintiffs, | |
| | Case No. 1:21-cv-00616-RP |
| v. | |
| **Austin Reeve Jackson**, et al., | |
| Defendants. | |

**DEFENDANT MARK LEE DICKSON'S MOTION TO DISMISS
FOR LACK OF SUBJECT-MATTER JURISDICTION**

# TABLE OF CONTENTS

Table of contents.................................................................................i

Table of authorities.............................................................................ii

I.    The provisions of Senate Bill 8 are severable, and the plaintiffs have failed to allege any injury from the provisions in Senate Bill 8 apart from sections 3 and 4 .............................................................................1

II.   The plaintiffs lack standing to sue Mr. Dickson over section 3 (Claims 1–5) because Mr. Dickson has no intention of suing them .........................4

III.  The plaintiffs lack standing to sue Mr. Dickson over section 3 (Claims 1–5) because the Court cannot redress their injuries, as other private litigants will sue the plaintiffs if Mr. Dickson is enjoined from doing so .........................................................................................................7

IV.   The plaintiffs lack standing to sue Mr. Dickson over section 4 (Claims 6–7) because Mr. Dickson has no intention of suing the plaintiffs under that provision...................................................................................8

V.    The claims brought against Judge Jackson and Ms. Clarkston must be dismissed for lack of subject-matter jurisdiction ........................................10

VI.   The claims against Judge Jackson and Ms. Clarkston are barred by sovereign immunity....................................................................................11

VII.  The plaintiffs lack standing to sue Judge Jackson and Ms. Clarkston because they have failed to allege that Mr. Dickson or any other litigant will sue them in the 114th District Court or in Smith County .................14

VIII. The plaintiffs lack standing to sue Judge Jackson and Ms. Clarkston because any "injury" will result from the independent actions of third parties not before the Court....................................................................15

IX.   The Court lacks subject-matter jurisdiction to consider a request for relief that would protect non-parties to this lawsuit ................................16

X.    This Court has no jurisdiction to "block," "invalidate," or "enjoin" Senate Bill 8; its relief can only prevent the named defendants from enforcing the law after it takes effect on September 1, 2021 ....................18

Conclusion...........................................................................................20

Certificate of service ..........................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Cooper,*
    140 S. Ct. 994 (2020).................................................................... 11

*Allen v. DeBello,*
    861 F.3d 433 (3d Cir. 2017)......................................................... 13

*American Civil Liberties Union of Mississippi, Inc. v. Finch,*
    638 F.2d 1336 (5th Cir. 1981)...................................................... 12

*Arizonans for Official English v. Arizona,*
    520 U.S. 43 (1997)........................................................................ 1

*Bauer v. Texas,*
    341 F.3d 352 (5th Cir. 2003)................................................... 10, 13

*Board of License Commissioners of Tiverton v. Pastore,*
    469 U.S. 238 (1985)....................................................................... 1

*Carmichael v. United Technologies Corp.,*
    835 F.2d 109 (5th Cir. 1988)......................................................... 4

*Carney v. Adams,*
    141 S. Ct. 493 (2020).................................................................... 6

*Chancery Clerk of Chickasaw County v. Wallace,*
    646 F.2d 151 (5th Cir. 1981)............................................. 10, 13, 14

*Christiansburg Garment Co. v. EEOC,*
    434 U.S. 412 (1978)....................................................................... 9

*Clapper v. Amnesty International USA,*
    568 U.S. 398 (2013)..................................................................... 15

*Clark v. Tarrant County,*
    798 F.2d 736 (5th Cir. 1986)....................................................... 11

*Davis v. Federal Election Commission,*
    554 U.S. 724 (2008)....................................................................... 2

*Davis v. Romney,*
    490 F.2d 1360 (3d Cir. 1974)....................................................... 18

*Dobbs v. Jackson Women's Health Organization,*
    No. 19-1392................................................................................... 5

*Doran v. Salem Inn, Inc.,*
    422 U.S. 922 (1975)..................................................................... 16

*Ex parte Young,*
    209 U.S. 123 (1908)..................................................................... 12

*Frazier v. King,*
    873 F.2d 820 (5th Cir. 1989)...................................................................... 12

*Gras v. Stevens,*
    415 F. Supp. 1148 (S.D.N.Y. 1976) ...................................................... 9

*Hans v. Louisiana,*
    134 U.S. 1 (1890)........................................................................................ 11

*Hollis v. Itawamba County Loans,*
    657 F.2d 746 (5th Cir. 1981)..................................................................... 9

*Hotze v. Burwell,*
    784 F.3d 984 (5th Cir. 2015)..................................................................... 16

*Howard Gault Co. v. Texas Rural Legal Aid, Inc.,*
    848 F.2d 544 (5th Cir. 1988)..................................................................... 9

*Idaho v. Coeur d'Alene Tribe of Idaho,*
    521 U.S. 261 (1997).................................................................................... 11

*In re Abbott,*
    954 F.3d 772 (5th Cir. 2020)..................................................................... 17

*In re Gee,*
    941 F.3d 153 (5th Cir. 2019)......................................................... 2, 3, 4, 10

*In re Justices of Supreme Court of Puerto Rico,*
    695 F.2d 17 (1st Cir. 1982) ...................................................................... 13

*Kentucky v. Graham,*
    473 U.S. 159 (1985).................................................................................... 11

*Lewis v. Casey,*
    518 U.S. 343 (1996).................................................................................... 2

*Little v. KPMG LLP,*
    575 F.3d 533 (5th Cir. 2009)..................................................................... 15

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)........................................................... 6, 9, 14, 15

*Massachusetts v. Mellon,*
    262 U.S. 447 (1923).................................................................................... 19

*McCartney v. First City Bank,*
    970 F.2d 45 (5th Cir. 1992)....................................................................... 9

*McKenzie v. City of Chicago,*
    118 F.3d 552 (7th Cir. 1997)..................................................................... 17

*Menchaca v. Chrysler Credit Corp.,*
    613 F.2d 507 (5th Cir. 1980)..................................................................... 4

*Mendez v. Heller*,
   530 F.2d 457 (2d Cir. 1976)............................................................ 14

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)....................................................................... 10

*Okpalobi v. Foster*,
   244 F.3d 405 (5th Cir. 2001) (en banc) ...................................... 3, 19

*Pennhurst State School & Hospital v. Halderman*,
   465 U.S. 89 (1984)..................................................................... 12, 14

*Pool v. City of Houston*,
   978 F.3d 307 (5th Cir. 2020).......................................................... 19

*Professional Association of College Educators v. El Paso County*
   *Community College District*, 730 F.2d 258 (5th Cir. 1984)............. 18

*Seila Law LLC v. Consumer Financial Protection Bureau*,
   140 S. Ct. 2183 (2020).................................................................... 19

*Seminole Tribe of Florida v. Florida*,
   517 U.S. 44 (1996)......................................................................... 11

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540, 1547 (2016)................................................. passim

*Superior MRI Services, Inc. v. Alliance Healthcare Services, Inc.*,
   778 F.3d 502 (5th Cir. 2015)............................................................ 4

*Texas v. United States*,
   945 F.3d 355 (5th Cir. 2019).......................................................... 19

*United States v. National Treasury Employees Union*,
   513 U.S. 454 (1995)....................................................................... 17

*Warth v. Seldin*,
   42 U.S. 490 (1975)........................................................................... 5

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990)......................................................................... 9

*Zepeda v. I.N.S.*,
   753 F.2d 719 (9th Cir. 1983).......................................................... 17

**Statutes**

42 U.S.C. § 1988(b) ........................................................................... 9

Senate Bill 8, 87th Leg., § 3 ............................................................... 2

Senate Bill 8, 87th Leg., § 6 ............................................................... 4

Senate Bill 8, 87th Leg., § 8 ............................................................... 4

Tex. Gov't Code § 311.032(a) ............................................................. 2

Tex. Gov't Code § 311.036(c) ............................................................... 2

Tex. Health & Safety Code § 171.208(a) ............................................ 7

Tex. Health & Safety Code § 171.208(c) ............................................ 7

Tex. Health & Safety Code § 171.208(j) ............................................. 7

**Constitutional Provisions**

U.S. Const. amend XI ........................................................................ 11

**Rules**

Fed. R. Civ. P. 12(b)(1) ..................................................................... 1

**Other Authorities**

Vikram David Amar, *How Much Protection Do Injunctions Against
    Enforcement of Allegedly Unconstitutional Statutes Provide?*,
    31 Ford. Urb. L.J. 657 (2004) ....................................................... 17

Richard H. Fallon, *Making Sense of Overbreadth*,
    100 Yale L.J. 853 (1991) ................................................................ 17

Bryan A. Garner, *A Dictionary of Modern Legal Usage* (2d ed. 1995) ..................... 6

John F. Manning, *The Eleventh Amendment and The Reading of
    Precise Constitutional Texts*, 113 Yale L.J. 1663 (2004) ..................................... 11

Defendant Mark Lee Dickson respectfully moves to dismiss the claims brought against him for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Mr. Dickson seeks a similar dismissal of the claims brought against Judge Jackson and Ms. Clarkston. Although these claims are nominally brought against Judge Jackson and Ms. Clarkston, Mr. Dickson is the real party in interest because these claims are attempting to strip Mr. Dickson (and other prospective plaintiffs in the civil-enforcement actions authorized by Senate Bill 8) of their state-law right to sue abortion providers and their enablers. It is therefore appropriate for Mr. Dickson to argue for the dismissal of those claims—and especially when the grounds for dismissal concern jurisdictional obstacles, which counsel for all parties are duty-bound to bring to the Court's attention. *See Board of License Commissioners of Tiverton v. Pastore*, 469 U.S. 238, 240 (1985) (per curiam); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 66 n.23 (1997).

There are ten separate and insurmountable jurisdictional defects with the claims that have been asserted against Mr. Dickson and his co-defendants. We will discuss each of these jurisdictional obstacles in turn.

## I.   THE PROVISIONS OF SENATE BILL 8 ARE SEVERABLE, AND THE PLAINTIFFS HAVE FAILED TO ALLEGE ANY INJURY FROM THE PROVISIONS IN SENATE BILL 8 APART FROM SECTIONS 3 AND 4

The plaintiffs are asking this Court to enter a judgment that declares Senate Bill 8 unconstitutional in its entirety and enjoins Mr. Dickson and his co-defendants "from enforcing Senate Bill 8 in any way." Complaint, ECF No. 1 at 46; Pls.' Mot. Summ. J., ECF No. 19 at 50. But the provisions of Senate Bill 8 are severable—and each discrete application of these provisions is severable as well. Section 10 of the Act says:

> Every provision in this Act and every application of the provision in this Act are severable from each other. If any provision or application of any provision in this Act to any person, group of persons, or circumstance is held by a court to be invalid, the invalidity does not affect the other provisions or applications of this Act.

Senate Bill 8, 87th Leg., § 10. Section 5 also amends the Code Construction Act to establish a new rule of construction for every Texas statute that regulates abortion, requiring courts not only to sever the statute's provisions and applications but also to construe the statute, as a matter of state law, as applying *only* in situations will not result in a violation of constitutional rights. *See* Senate Bill 8, 87th Leg., § 5 (to be codified at Tex. Gov't Code § 311.036(c)). And if that were not enough, section 3 of the Act adds an emphatic (and largely redundant) severability clause and saving-construction requirement that applies to each provision of Chapter 171 of the Texas Health and Safety Code. *See* Senate Bill 8, 87th Leg., § 3 (to be codified at Tex. Health & Safety Code § 171.212); *see also* Tex. Gov't Code § 311.032(a) ("If any statute contains a provision for severability, that provision prevails in interpreting that statute.").

Despite all of this, the plaintiffs refuse to acknowledge the severability requirements in Senate Bill 8 and the Code Construction Act. And they insist that the Court enter a judgment that declares the *entire statute* unconstitutional—and that treats the statute as non-severable despite the three separate and independent severability requirements in Senate Bill 8. But the statute *is* severable, and that means that the plaintiffs must establish Article III standing to sue over *each* provision of Senate Bill 8 that they seek to declare unconstitutional. *See In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019) ("It is now beyond cavil that plaintiffs must establish standing for each and every provision they challenge." (citing authorities)); *id.* at 161–62 ("[T]he district court must analyze Plaintiffs' standing to challenge each provision of law at issue."); *id.* at 162 n.4 ("Plaintiffs must demonstrate all the elements of standing for each provision they seek to challenge."); *see also Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross."); *Davis v. Federal Election Commission*, 554 U.S. 724, 733–34 (2008) (standing to challenge one statutory subsection does not confer standing to challenge a neighboring statutory subsection). And the plaintiffs'

request for relief must be limited to the discrete provisions of Senate Bill 8 that the plaintiffs have standing to challenge. *See Gee*, 941 F.3d at 160–62.

The plaintiffs have no standing to sue Mr. Dickson over provisions in Senate Bill 8 that cannot be enforced by private citizen-enforcement suits, because Mr. Dickson cannot possibly "enforce" those provisions against the plaintiffs. *See Okpalobi v. Foster*, 244 F.3d 405, 426–27 (5th Cir. 2001) (en banc). That includes sections 1 through 2 and sections 5 through 12, which do not authorize (or purport to authorize) any type of civil-enforcement lawsuits brought by private citizens. Only sections 3 and 4 of the statute can be "enforced" by private citizens such as Mr. Dickson in civil litigation—and those are the *only* provisions in Senate Bill 8 that the plaintiffs can conceivably challenge in a lawsuit against Mr. Dickson. The Court should dismiss the current claims against Mr. Dickson, which purport to challenge the entirety of Senate Bill 8, and instruct the plaintiffs to re-plead their claims in a manner that seeks relief only with respect to the discrete provisions in Senate Bill 8 that private citizens such as Mr. Dickson are capable of "enforcing."

The Court should also dismiss the claims that seek to enjoin the remaining defendants "from enforcing Senate Bill 8 in any way." Complaint, ECF No. 1 at 46. The plaintiffs lack standing to seek that remedy, as their complaint does not attempt to explain how the plaintiffs have standing to challenge any provision in Senate Bill 8 apart from sections 3 and 4. *See* Complaint, ECF No. 1 at ¶¶ 131–163 (listing seven "claims for relief," which purport to challenge only the constitutionality of sections 3 and 4). The Court should dismiss the claims against the remaining defendants and instruct the plaintiffs to re-plead those claims in a manner that seeks relief only with respect to the discrete provisions in Senate Bill 8 that the plaintiffs have standing to challenge. The plaintiffs cannot pretend that the statute is nonseverable and act as though they have standing to take out the statute in its entirety—especially when there are obvious provisions in Senate Bill 8 that do not injure them in the slightest.

*See, e.g.*, Senate Bill 8, 87th Leg., § 6 (prohibiting the Texas Health and Human Services Commission from enforcing the prohibition on post-heartbeat abortions); *id.* at § 8 (technical amendments to provisions in the Texas Health and Safety Code); *see also Gee*, 941 F.3d at 162–65.

## II. The Plaintiffs Lack Standing To Sue Mr. Dickson Over Section 3 (Claims 1–5) Because Mr. Dickson Has No Intention Of Suing Them

The plaintiffs have no standing to sue Mr. Dickson over section 3 (Claims 1–5) because Mr. Dickson has no intention of suing them (or anyone else) under Senate Bill 8's private civil-enforcement mechanism. *See* Declaration of Mark Lee Dickson ¶¶ 4–7 (attached as Exhibit 1). The plaintiffs allege that they face a "credible threat" that Mr. Dickson might sue them when Senate Bill 8 takes effect. *See* Complaint, ECF No. 1, at ¶¶ 17, 50. But Mr. Dickson has no intention of suing anyone under section 3 because he is expecting each of the plaintiffs to comply with the statute rather than expose themselves to private civil-enforcement lawsuits. *See* Declaration of Mark Lee Dickson ¶¶ 5, 7 (attached as Exhibit 1).[1] Earlier this year, when the city of Lubbock enacted a local abortion ban that authorized private civil-enforcement lawsuits, the city's sole abortion clinic chose to comply with city law rather than risk the lawsuits authorized by the ordinance. *See id.*; *see also* Complaint, ECF No. 1, at ¶¶ 29 n.3,

---

1. It is appropriate for a district court to consider affidavits or declarations when resolving a motion to dismiss under Rule 12(b)(1). *See Carmichael v. United Technologies Corp.*, 835 F.2d 109, 114 n.7 (5th Cir. 1988). When a defendant introduces affidavits or other evidence to contest the district court's subject-matter jurisdiction, it is considered a "factual attack" (rather than a "facial attack"), and the plaintiff "'must prove the existence of subject-matter jurisdiction by a preponderance of the evidence' and is 'obliged to submit facts through some evidentiary method to sustain his burden of proof.'" *Superior MRI Services, Inc. v. Alliance Healthcare Services, Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (quoting *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989)); *see also Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

106 (acknowledging that Planned Parenthood of Greater Texas Surgical Health Ser-
vices has chosen to comply with Lubbock's abortion ban rather than defy the ordi-
nance and expose itself to civil-enforcement lawsuits). Mr. Dickson expects the plain-
tiffs to respond in a similar manner when Senate Bill 8 takes effect; indeed, Mr. Dick-
son believes that no rational abortion provider would subject itself to the risk of pri-
vate civil liability under Senate Bill 8, especially at a time when the Supreme Court is
considering whether to overrule *Roe v. Wade. See Dobbs v. Jackson Women's Health
Organization*, No. 19-1392; Declaration of Mark Lee Dickson ¶ 7 (attached as Ex-
hibit 1). Because Mr. Dickson has no intention of suing the plaintiffs, there is no
"injury in fact" traceable to Mr. Dickson that can support Article III standing, and
there is no Article III "case or controversy" between the plaintiffs and Mr. Dickson.

The plaintiffs refuse to say whether they will defy or comply with Senate Bill 8
when it takes effect on September 1, 2021. *See* Complaint, ECF No. 1 at ¶¶ 102–
104. Yet the plaintiffs cannot establish standing to sue Mr. Dickson unless they intend
to violate the statute after it takes effect; otherwise there is no way for Mr. Dickson
to sue them. And the plaintiffs must *specifically allege* an intent to violate Senate Bill
8, because a complaint must allege all facts needed to establish the elements of Article
III standing—injury in fact, causation, and redressability. *See Spokeo, Inc. v. Robins*,
136 S. Ct. 1540, 1547 (2016) ("Where, as here, a case is at the pleading stage, the
plaintiff must 'clearly . . . allege facts demonstrating' each element [of Article III
standing.]" (citation omitted)); *Warth v. Seldin*, 42 U.S. 490, 518 (1975) ("It is the
responsibility of the complainant *clearly to allege facts demonstrating that* he is a proper
party to invoke judicial resolution of the dispute and the exercise of the court's reme-
dial powers." (emphasis added)). The plaintiffs cannot sue Mr. Dickson if they are
unwilling to allege that they intend to violate Senate Bill 8, because Mr. Dickson

cannot inflict Article III injury on the plaintiffs unless they violate the statute and expose themselves to private civil-enforcement lawsuits.[2]

The plaintiffs seem to think that they can sue Mr. Dickson by complaining about injuries that arise from the mere *existence* of section 3, rather than any action that would be undertaken by Mr. Dickson. The plaintiffs, for example, complain that section 3 confronts them with a "Hobson's choice"[3]: They must either comply with the requirements of section 3 or else subject themselves and their employees to civil-enforcement lawsuits. *See* Complaint, ECF No. 1 at ¶ 102. But this "dilemma injury" cannot support Article III standing unless it is "fairly traceable" to Mr. Dickson. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." (cleaned up) (citation and internal quotation marks omitted)). And the undesirable choice that has been foisted upon the plaintiffs is not in any way "traceable" to Mr. Dickson; it was imposed by the legislature that enacted Senate Bill 8. The plaintiffs cannot suffer injury at the hand of Mr. Dickson unless they intend to violate section 3 and expose themselves to

---

2.  And because the plaintiffs bear the burden of pleading and proving the elements of Article III standing, it is the plaintiffs who must allege (and eventually prove) that they will violate the statute in a manner that will expose them to lawsuits from Mr. Dickson. *See Carney v. Adams*, 141 S. Ct. 493, 499 (2020) ("[P]laintiff bears the burden of proving standing" (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)); *Spokeo*, 136 S. Ct. at 1547 ("Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element [of Article III standing.]" (citation omitted)).

3.  The plaintiffs are misusing the phrase "Hobson's choice" by equating it with a decision that involves only undesirable choices. A "Hobson's choice" arises when one is given the option of taking the one thing offered or nothing at all.  See, *e.g.*, Bryan A. Garner, *A Dictionary of Modern Legal Usage* 404 (2d ed. 1995) ("Tradition has it that Thomas Hobson (1549–1631), a hostler in Cambridge, England, always gave his customers only one choice among his horses: whichever one was closest to the door."). The plaintiffs' predicament should be described as a "dilemma" rather than a "Hobson's choice."

private civil-enforcement lawsuits—and they cannot sue Mr. Dickson unless they allege (and prove) that they intend to violate the statute and open the door for Mr. Dickson to sue them.

### III.  The Plaintiffs Lack Standing To Sue Mr. Dickson Over Section 3 (Claims 1–5) Because The Court Cannot Redress Their Injuries, As Other Private Litigants Will Sue The Plaintiffs If Mr. Dickson Is Enjoined From Doing So

There is a separate and independent obstacle to the plaintiffs' standing to sue Mr. Dickson over section 3 (Claims 1–5). Even if the plaintiffs had alleged that they will violate Senate Bill 8 and that Mr. Dickson will sue them in response, the Court cannot "redress" that injury by enjoining Mr. Dickson from suing the plaintiffs under section 3. Senate Bill 8 allows anyone[4] to sue a person that performs or aids or abets a post-heartbeat abortion, or that intends to engage in such conduct. *See* Tex. Health & Safety Code § 171.208(a). And if Mr. Dickson is enjoined from suing, there are countless others that will sue to recover the $10,000 for each illegal abortion that the plaintiffs perform or assist. *See* Declaration of Mark Lee Dickson ¶ 8 (attached as Exhibit 1); Declaration of John Seago ¶¶ 5–6 (attached as Exhibit 2). An injunction that stops only Mr. Dickson from suing—while leaving the door open for every other person in the world to sue the plaintiffs for their violations of Senate Bill 8—does not redress any injury that the plaintiffs are suffering on account of the statute.

Senate Bill 8 allows only a single recovery of $10,000 for each post-heartbeat abortion that a defendant performs or assists,[5] so an injunction that prevents Mr.

---

4.  Other than Texas government officials and individuals who impregnated the mother of the fetus through rape or some other illegal act. *See* Tex. Health & Safety Code §§ 171.208(a); 171.208(j).

5.  *See* Tex. Health & Safety Code § 171.208(c) ("Notwithstanding Subsection (b), a court may not award relief under this section in response to a violation of Subsection (a)(1) or (2) if the defendant demonstrates that the defendant previously paid the full amount of statutory damages under Subsection (b)(2) in a previous

Dickson (and only Mr. Dickson) from suing does nothing to reduce the monetary exposure that the plaintiffs face under the statute. It also does nothing to reduce the deterrent effect of Senate Bill 8's private civil-enforcement regime. Someone will still sue the plaintiffs to collect the $10,000 per illegal abortion that the statute authorizes; taking Mr. Dickson out of the mix does nothing to eliminate (or even alleviate) the injuries described in the plaintiffs' complaint.

## IV. THE PLAINTIFFS LACK STANDING TO SUE MR. DICKSON OVER SECTION 4 (CLAIMS 6–7) BECAUSE MR. DICKSON HAS NO INTENTION OF SUING THE PLAINTIFFS UNDER THAT PROVISION

The plaintiffs have no standing to sue Mr. Dickson over section 4 because their complaint fails to allege any "injury in fact" traceable to Mr. Dickson—and no such injury is apparent. Mr. Dickson has no ability to sue the plaintiffs under section 4 because he has not been adjudged a "prevailing party" in any lawsuit that the plaintiffs have brought to prevent the enforcement of an abortion statute. *See* Declaration of Mark Lee Dickson ¶ 11 (attached as Exhibit 1). And the plaintiffs do not allege that Mr. Dickson will acquire "prevailing party" status in this litigation, as any such prediction would amount to a confession that their claims against Mr. Dickson should lose. Indeed, the complaint makes no allegations of *any* Article III injury traceable to Mr. Dickson, and is entirely bereft of factual allegations involving Mr. Dickson's role in "enforcing" this provision against the plaintiffs. That alone requires dismissal of the section 4 claims, because a complaint must "clearly . . . allege facts demonstrating" each element of Article III standing to survive a motion to dismiss. *Spokeo,* 136 S. Ct. at 1547 (citation and internal quotation marks omitted)).

Mr. Dickson currently has no intention of suing the plaintiffs under section 4 even if he prevails in this litigation, because he plans to seek recovery of his attorneys'

---

action for that particular abortion performed or induced in violation of this subchapter, or for the particular conduct that aided or abetted an abortion performed or induced in violation of this subchapter.").

fees from this Court under 42 U.S.C. § 1988(b). *See* Declaration of Mark Lee Dickson ¶ 9 (attached as Exhibit 1). The law of the Fifth Circuit is clear that a private litigant does not act "under color of state law" by filing a lawsuit authorized by a state statute,[6] and Mr. Dickson is confident that this binding Fifth Circuit precedent is enough to show that the claims against him are "unreasonable" and "without foundation." *See id.* (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 418 (1978)). Mr. Dickson has not yet decided, however, whether he will sue the plaintiffs under section 4 if he is unsuccessful in recovering fees under 42 U.S.C. § 1988(b). *See* Declaration of Mark Lee Dickson ¶ 10.

The plaintiffs have no standing to sue Mr. Dickson under these circumstances. Any possibility that Mr. Dickson might someday sue them under section 4 is "conjectural" and "hypothetical"—and speculative injuries of that sort are insufficient to confer Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (holding that an injury in fact must be "actual or imminent, not conjectural or hypothetical" (citation and internal quotation marks omitted)); *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Article III" because "[a] threatened injury must be 'certainly impending' to constitute injury in fact."); *O'Shea v. Littleton*, 414 U.S. 488, 494

---

6. *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992) ("If a state merely allows private litigants to use its courts, there is no state action within the meaning of § 1983 unless 'there is corruption of judicial power by the private litigant.'" (quoting *Earnest v. Lowentritt*, 690 F.2d 1198, 1200 (5th Cir. 1982)); *Howard Gault Co. v. Texas Rural Legal Aid, Inc.*, 848 F.2d 544, 555 (5th Cir. 1988) ("The growers cannot be held liable in a § 1983 suit simply because they filed suit under Texas statutes and obtained a temporary restraining order."); *Hollis v. Itawamba County Loans*, 657 F.2d 746, 749 (5th Cir. 1981) ("[N]o state action is involved when the state merely opens its tribunals to private litigants."); *Gras v. Stevens*, 415 F. Supp. 1148, 1152 (S.D.N.Y. 1976) (Friendly, J.) ("[W]e know of no authority that one private person, by asking a state court to make an award against another which is claimed to be unconstitutional, is violating 42 U.S.C. § 1983.").

(1974) ("It must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct. The injury or threat of injury must be both real and immediate, not conjectural or hypothetical." (citations and internal quotation marks omitted)); *Gee*, 941 F.3d at 164 ("Article III requires more than theoretical possibilities."). And the complaint has not even *alleged* the facts needed to establish Article III standing to sue Mr. Dickson over section 4, which is fatal to their claims. *See Spokeo,* 136 S. Ct. at 1547.

## V.   THE CLAIMS BROUGHT AGAINST JUDGE JACKSON AND MS. CLARKSTON MUST BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION

The Court also lacks subject-matter jurisdiction to consider the claims brought against Judge Jackson and Judge Clarkston. The law of the Fifth Circuit makes abundantly clear that Article III does not allow a plaintiff to sue a state-court judge to prevent him from adjudicating cases brought under an allegedly unconstitutional statute. In *Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003), the Court wrote:

> The requirement of a justiciable controversy is not satisfied where a judge acts in his adjudicatory capacity. Similarly, a section 1983 due process claim is not actionable against a state judge acting purely in his adjudicative capacity because he is not a proper party in a section 1983 action challenging the constitutionality of a state statute.

*Id*. at 359. The Fifth Circuit has also held that plaintiffs cannot sue state judges *or court clerks* who act in a judicial capacity when challenging the constitutionality of a statute:

> Because of the judicial nature of their responsibility, the chancery clerks and judges do not have a sufficiently "personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues on which the court so largely depends for illumination of difficult constitutional questions."

*Chancery Clerk of Chickasaw County v. Wallace*, 646 F.2d 151, 160 (5th Cir. 1981). The holdings of *Bauer* and *Wallace* are binding on this Court, and they compel an

immediate jurisdictional dismissal of the claims brought against Judge Jackson and Ms. Clarkston.

## VI.   The Claims Against Judge Jackson And Ms. Clarkston Are Barred By Sovereign Immunity

The plaintiffs' claims against Judge Jackson and Ms. Clarkson must be dismissed for a separate and independent reason: The Eleventh Amendment[7] forbids courts to assert jurisdiction over claims brought against non-consenting state officers sued in their official capacity, unless the claim fits within the *Ex parte Young* exception to sovereign immunity. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269–70 (1997); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").[8] But the *Ex parte Young* exception does not authorize lawsuits to prevent a state's *judicial* officers from adjudicating and deciding cases brought before them. We know that because *Ex parte Young* says so:

> [T]he right to enjoin an individual, even though a state official, from commencing suits . . . does not include the power to restrain a court from acting in any case brought before it, either of a civil or criminal nature. . . . [A]n injunction against a state court would be a violation of the whole scheme of our government. . . . The difference between the power to enjoin an individual from doing certain things, and the

---

7.   We will use the phrase "Eleventh Amendment" as shorthand to refer to the constitutional sovereign immunity recognized in *Hans v. Louisiana*, 134 U.S. 1, 15–16 (1890), and *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). The Eleventh Amendment itself applies only to lawsuits "commenced or prosecuted against a [State] by Citizens of another State, or by Citizens or Subjects of any Foreign State," which is not the situation here. *See* U.S. Const. amend XI; *Allen v. Cooper*, 140 S. Ct. 994, 1000 (2020) ("The text of the Eleventh Amendment . . . applies only if the plaintiff is not a citizen of the defendant State."); John F. Manning, *The Eleventh Amendment and The Reading of Precise Constitutional Texts*, 113 Yale L.J. 1663 (2004).

8.   A state district judge in Texas is a state officer and shares in the sovereign immunity of the state. *See Clark v. Tarrant County*, 798 F.2d 736, 744 (5th Cir. 1986) (holding that district judges in Texas "are undeniably elected state officials" for purposes of the Eleventh Amendment).

> power to enjoin courts from proceeding in their own way to exercise jurisdiction, is plain, and no power to do the latter exists because of a power to do the former.

*Ex parte Young*, 209 U.S. 123, 163 (1908).

And even apart from *Ex parte Young*'s categorical prohibition on lawsuits to enjoin state courts from adjudicating cases, the plaintiffs face yet another insurmountable Eleventh Amendment obstacle. The *Ex parte Young* exception authorizes lawsuits only against a state officer who is violating or intends to violate federal law; that is what "strips" the officer of his sovereign authority and allows him to be sued as a rogue individual rather than as a component of a sovereign entity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 (1984) ("[A]n official *who acts unconstitutionally* is 'stripped of his official or representative character'" (emphasis added) (quoting *Young*, 209 U.S. at 60 (1908)); *Frazier v. King*, 873 F.2d 820, 827 (5th Cir. 1989) ("Under *Young, when a state officer acts unconstitutionally*, he is acting outside his authority and is 'stripped of his official or representative character.'" (emphasis added) (citations omitted)); *American Civil Liberties Union of Mississippi, Inc. v. Finch*, 638 F.2d 1336, 1340 (5th Cir. 1981) ("[A]n official *who acts unlawfully* may not claim the immunity of his sovereign" (emphasis added)). That means the *Ex parte Young* exception can be used only to sue a federal lawbreaker or would-be lawbreaker; a state officer who is not violating federal law (and has no plans to do so) retains his sovereign immunity and cannot be subjected to suit.

It is preposterous to claim that Judge Jackson is violating the Constitution—and has forfeited his sovereign immunity—by sitting in his office waiting to see if someone files a lawsuit under Senate Bill 8 that winds up getting assigned to him. There is not even an allegation (let alone evidence) that any resident of Smith County plans to sue any of the plaintiffs when Senate Bill 8 takes effect on September 1, so it is nothing but rank speculation to assert that Judge Jackson is about to violate federal law. And

even if the plaintiffs could prove that someone is about to file a Senate Bill 8 enforce-ment action in the 114th District Court, a state judge does not violate the Constitu-tion merely by presiding over a lawsuit between private litigants—even if the lawsuit is brought under an allegedly unconstitutional statute. A judge that adjudicates a case does not become a federal lawbreaker unless and until he enters an actual ruling that violates someone's federally protected rights. Then—and only then—can a state judge be stripped of his sovereign character and regarded as a rogue individual actor.

It is even more untenable to claim that Ms. Clarkston would be breaking federal law by accepting petitions or documents for filing. A court clerk is not responsible for judging the merits of a lawsuit, and must file documents submitted by litigants even when the filing is frivolous, malicious, or based on an unconstitutional statute. It is the responsibility of the litigant—not the court clerk—to ensure that his court filings respect the constitutional rights of an opposing party. And it is the responsibility of the judge (not the clerk) to evaluate the merits of a legal filing and dispose of it in accordance with law. The clerk does nothing wrong—and certainly nothing illegal—by accepting a court filing that seeks to enforce an unconstitutional statute, no matter how unconstitutional the underlying statute may be.

There is no authority supporting the idea that a state judge forfeits his sovereign immunity whenever a private litigant *might* file a lawsuit in his courtroom that seeks to enforce an allegedly an unconstitutional statute. On the contrary, existing law makes abundantly clear that state-court judges are *not* permissible defendants in this situation. *See Bauer*, 341 F.3d at 357; *Wallace*, 646 F.2d at 160; *Allen v. DeBello*, 861 F.3d 433, 440 (3d Cir. 2017) ("[A] judge who acts as a neutral and impartial arbiter of a statute is not a proper defendant to a Section 1983 suit challenging the constitu-tionality of the statute."); *In re Justices of Supreme Court of Puerto Rico*, 695 F.2d 17, 22 (1st Cir. 1982) (Breyer, J.) ("[J]udges are not proper party defendants in § 1983 actions challenging the constitutionality of state statutes. In short, § 1983 does not

provide relief against judges acting purely in their adjudicative capacity, any more than, say, a typical state's libel law imposes liability on a postal carrier or telephone company for simply conveying a libelous message."). There is also nothing in existing law to support the idea that a state-court clerk is "stripped" of her sovereign immunity or violates 42 U.S.C. § 1983 by accepting filings from private litigants who seek to enforce an unconstitutional statute. *See Wallace*, 646 F.2d at 160; *Mendez v. Heller*, 530 F.2d 457 (2d Cir. 1976) (state court judges and clerks could not be sued as defendants in a lawsuit challenging New York's durational residence requirement for divorce). And the plaintiffs' filings do not present any argument for extending *Ex parte Young* to these situations. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 114 n.25 (1984) ("The authority-stripping theory of *Young* is a fiction that has been narrowly construed.").

## VII.   The Plaintiffs Lack Standing To Sue Judge Jackson And Ms. Clarkston Because They Have Failed To Allege That Mr. Dickson Or Any Other Litigant Will Sue Them In The 114th District Court Or In Smith County

There is yet another insurmountable jurisdictional obstacle to the plaintiffs' claims against Judge Jackson and Ms. Clarkston: The complaint never alleges that anyone will sue or intends to sue the plaintiffs in the 114th District Court or in Smith County. Mark Lee Dickson, the only person from whom they allege a "credible threat" of suit, resides in Gregg County, not Smith County, and he is incapable of suing the plaintiffs in Judge Jackson's court or in any court where Ms. Clarkston serves as the clerk. *See* Declaration of Mark Lee Dickson ¶ 13 (attached as Exhibit 1). So the plaintiffs have failed to allege or describe *any* injury that they will suffer at the hands of Judge Jackson or Ms. Clarkston. *See Spokeo*, 136 S. Ct. at 1547 ("Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element [of Article III standing.]" (citation omitted)). And any such injury that they might try to allege would rest on nothing but rank speculation. *See Lujan*, 504 U.S. at 560

(holding that an injury in fact must be "actual or imminent, not conjectural or hypo-thetical" (citation and internal quotation marks omitted)).

Indeed, the plaintiffs have not even alleged that they intend to violate Senate Bill 8 and expose themselves to private civil-enforcement lawsuits when the statute takes effect on September 1. *See supra* at 4–7. And if the so-called "Hobson's choice"[9] of which the plaintiffs complain leads them to comply with Senate Bill 8, then there is *no* possibility of injury traceable to Judge Jackson or Ms. Clarkston, because no one will sue (or threaten to sue) the plaintiffs in Smith County or anywhere else. Yet the plaintiffs refuse to say whether they intend to flout Senate Bill 8 and open the door for litigants to sue them, and they cannot possibly attribute an "injury" to Judge Jackson or Ms. Clarkston unless they intend to violate the statute in a manner that exposes them to lawsuits.

## VIII. The Plaintiffs Lack Standing To Sue Judge Jackson And Ms. Clarkston Because Any "Injury" Will Result From The Independent Actions Of Third Parties Not Before The Court

The plaintiffs also lack standing to sue Judge Jackson and Ms. Clarkston because any "injury" will result from the independent actions of third parties not before the Court, and a litigant cannot establish Article III standing when the alleged injury rests entirely on the conduct of independent third-party actors. *See Lujan*, 504 U.S. at 560 ("[T]he injury has to be fairly . . . traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." (cleaned up) (citation and internal quotation marks omitted)); *Clapper v. Amnesty International USA*, 568 U.S. 398, 414 (2013) ("We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors."); *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009)

---

9.   Complaint, ECF No. 1 at ¶ 102.

("A claim of injury generally is too conjectural or hypothetical to confer standing when the injury's existence depends on the decisions of third parties not before the court."); *Hotze v. Burwell*, 784 F.3d 984, 995 (5th Cir. 2015) (denying standing because "[s]peculation about a decision made by a third party . . . constitutes an essential link in this chain of causation."). The *only* people who might sue the plaintiffs in Smith County are "third parties not before the court," as Mr. Dickson is legally incapable of suing the plaintiffs in Smith County. So the plaintiffs' theory of standing rests on speculation that some independent actor—who is not before the court—will not only choose to sue the defendants, but will choose to sue the defendants *in Smith County*. That injury is not "fairly traceable" to Judge Jackson or Ms. Clarkston, because it cannot exist unless an independent third-party actor chooses to sue the plaintiffs in Smith County.

## IX. THE COURT LACKS SUBJECT-MATTER JURISDICTION TO CONSIDER A REQUEST FOR RELIEF THAT WOULD PROTECT NON-PARTIES TO THIS LAWSUIT

The plaintiffs seek to prevent Mr. Dickson from suing *anyone* under section 3 or section 4 of Senate Bill 8—even if the person or entity that Mr. Dickson sues is not a party to this case. The plaintiffs also seek to prevent the remaining defendants from enforcing Senate Bill 8 against anyone, regardless of whether those individuals or entities joined this lawsuit. But the plaintiffs have no standing to seek relief that prevents the defendants from enforcing Senate Bill 8 against non-parties to this litigation, absent allegations and evidence that the enforcement of Senate Bill 8 against those non-parties will inflict "injury in fact" on the named plaintiffs. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("[N]either declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute."); *United States v. National Treasury Employees Union,* 513

U.S. 454, 477–78 (1995) (limiting relief to the parties before the Court and noting "we neither want nor need to provide relief to nonparties when a narrower remedy will fully protect the litigants"); *In re Abbott*, 954 F.3d 772, 786 n.19 (5th Cir. 2020), *vacated on other grounds by Planned Parenthood Center for Choice v. Abbott*, 141 S. Ct. 1261 (2021) ("[T]he district court purported to enjoin GA-09 as to *all* abortion providers in Texas. But Respondents are only a subset of Texas abortion providers and did not sue as class representatives. The district court lacked authority to enjoin enforcement of GA-09 as to anyone other than the named plaintiffs. The district court should be mindful of this limitation on federal jurisdiction at the preliminary injunction stage." (citation omitted)).[10]

The plaintiffs have not asked this Court to certify them as class representatives; they have sued only as individual litigants. Yet the plaintiffs somehow think that the Court can treat this case as a de facto class action and allow them to seek relief that protects *every* individual or entity that might conceivably be sued under Senate Bill 8—regardless of whether those individuals or entities are plaintiffs to this lawsuit. But the judicial power extends only to resolving cases or controversies between parties, and the Court's relief may extend only to the named litigants, or to classes that have been certified consistent with the requirements of Rule 23. The only time that a court

---

10. *See also McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997) ("[T]he question at issue [is] whether a court may grant relief to non-parties. The right answer is no."); *Zepeda v. I.N.S.*, 753 F.2d 719, 727–28 (9th Cir. 1983) ("[An] injunction must be limited to apply only to the individual plaintiffs unless the district judge certifies a class of plaintiffs."); Richard H. Fallon, *Making Sense of Overbreadth*, 100 Yale L.J. 853, 854 (1991) ("[T]he binding effect of the federal judgment extends no further than the parties to the lawsuit. Against nonparties, the state remains free to lodge criminal prosecutions."); Vikram David Amar, *How Much Protection Do Injunctions Against Enforcement of Allegedly Unconstitutional Statutes Provide?*, 31 Ford. Urb. L.J. 657, 663 (2004) ("All injunctive relief, of course, including preliminary injunctions, binds only the defendants before the court, and applies only to protect the specific plaintiffs who have brought the suit.").

may issue relief that extends beyond the named litigants or a certified class is when such a remedy is needed to ensure that the prevailing parties obtain the relief to which they are entitled. *See Professional Association of College Educators v. El Paso County Community College District*, 730 F.2d 258, 273–74 (5th Cir. 1984). But that allowance is not applicable here. The only relief to which the plaintiffs might be entitled is a declaration or an injunction that shields *them* from private civil-enforcement lawsuits brought under section 3, and that shields *them* from attorney-fee-collection lawsuits brought under section 4. The plaintiffs have not alleged that they will suffer Article III injury from lawsuits or other enforcement actions brought against nonparties to this litigation, and they have no standing to assert the rights or interests of non-parties in the absence of a certified class. *See Davis v. Romney,* 490 F.2d 1360, 1366 (3d Cir. 1974) ("Relief cannot be granted to a class before an order has been entered determining that class treatment is proper."). So the Court must, at the very least, dismiss the plaintiffs' claims to the extent that they seek to block the enforcement of Senate Bill 8 against non-parties to this lawsuit.

## X. THIS COURT HAS NO JURISDICTION TO "BLOCK," "INVALIDATE," OR "ENJOIN" SENATE BILL 8; ITS RELIEF CAN ONLY PREVENT THE NAMED DEFENDANTS FROM ENFORCING THE LAW AFTER IT TAKES EFFECT ON SEPTEMBER 1, 2021

The plaintiffs' complaint repeatedly speaks as though this Court can somehow "invalidate" or "enjoin" the statute itself or "block" Senate Bill 8 from taking effect. *See, e.g.*, Complaint, ECF No. 1 at ¶ 1 ("S.B. 8 must be declared unconstitutional and enjoined."); *id*. at ¶ 3 ("Courts have uniformly invalidated every state law banning abortion at a point before viability."); *id*. at ¶ 6 ("The transparent purpose of S.B. 8's enforcement scheme was to make it so that abortion providers . . . could not sue government officials for an injunction to block the law before it takes effect."); *id*. at ¶ 8 ("If not blocked, S.B. 8 will force abortion providers and others who are sued to spend massive amounts of time and money.").

But a federal court has no jurisdiction and no ability to "block" a statute or prevent it from taking effect. A court can only prevent the named defendants from *enforcing* a statutory provision for as long as the Court's injunction (or declaratory judgment) remains in effect. *See Okpalobi v. Foster*, 244 F.3d 405, 426 n.34 (5th Cir. 2001) (en banc) ("An injunction enjoins a defendant, not a statute."); *Texas v. United States*, 945 F.3d 355, 396 (5th Cir. 2019), *rev'd on other grounds*, *California v. Texas*, 141 S. Ct. 2104 (2021) ("The federal courts have no authority to erase a duly enacted law from the statute books, [but can only] decline to enforce a statute in a particular case or controversy." (citation and internal quotation marks omitted)); *Pool v. City of Houston*, 978 F.3d 307, 309 (5th Cir. 2020) ("It is often said that courts 'strike down' laws when ruling them unconstitutional. That's not quite right."); *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("If a case for preventive relief be presented, the court enjoins, in effect, not the execution of the statute, but the acts of the official, the statute notwithstanding."); *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183, 2220 (2020) (Thomas, J., concurring in part and dissenting in part) ("The Federal Judiciary does not have the power to excise, erase, alter, or otherwise strike down a statute.").

The plaintiffs' rhetoric reflects a commonly held but mistaken view of judicial authority: That federal courts wield a veto-like power over legislative enactments and can "strike down" statutes or "block" them from taking effect. But this Court's authority is limited to resolving "cases" or "controversies" between litigants, and it has no power to formally revoke legislation or delay its effective start date, even though an injunction that thwarts the enforcement of a statute may feel as though the statute itself is being cancelled or postponed. Senate Bill 8 *will* take effect on September 1, 2021, regardless of how this Court resolves the litigation—and it will remain in effect even if the defendants in this lawsuit are enjoined from enforcing it. The Court should

not emulate the plaintiffs' misleading nomenclature, and it should not subscribe to their unconstitutional descriptions of the judicial power.

## CONCLUSION

The claims against Mr. Dickson, as well the claims against Judge Jackson and Ms. Clarkson, should be dismissed for lack of subject-matter jurisdiction. The claims against the remaining defendants should be dismissed to the extent that they: (1) Seek to enjoin the enforcement of any provision of Senate Bill 8 apart from sections 3 and 4; or (2) Seek to enjoin the enforcement of Senate Bill 8 against anyone other than the named plaintiffs in this case.

Respectfully submitted.

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Defendant*
Dated: August 5, 2021                    *Mark Lee Dickson*

## CERTIFICATE OF SERVICE

I certify that on August 5, 2021, I served this document through CM/ECF upon:

CHRISTEN MASON HEBERT
Johns & Hebert PLLC
2028 East Ben White Blvd
Suite 240-1000
Austin, Texas 78741
(512) 399-3150
chebert@johnshebert.com

*Counsel for all Plaintiffs*

MARC HEARRON
Center for Reproductive Rights
1634 Eye Street, NW, Suite 600
Washington, DC 20006
(202) 524-5539
mhearron@reprorights.org

MOLLY DUANE
KIRBY TYRRELL
MELANIE FONTES
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, New York 10038
(917) 637-3631
mduane@reprorights.org
ktyrrell@reprorights.org
mfontes@reprorights.org

JAMIE A. LEVITT
J. ALEXANDER LAWRENCE
Morrison & Foerster LLP
250 West 55th Street
New York, New York 10019
(212) 468-8000
jlevitt@mofo.com
alawrence@mofo.com

*Counsel for Whole Woman's Health,*
*Whole Woman's Health Alliance, Marva*
*Sadler, Southwestern Women's Surgery*
*Center, Allison Gilbert, Brookside*

JULIE MURRAY
RICHARD MUNIZ
Planned Parenthood Federation of America
1110 Vermont Avenue, NW Suite 300
Washington, DC 20005
(202) 973-4997
julie.murray@ppfa.org
richard.muniz@ppfa.org

*Counsel for Planned Parenthood of*
*Greater Texas Surgical Health Services,*
*Planned Parenthood South Texas*
*Surgical Center, Planned Parenthood*
*Center for Choice, and Bhavik Kumar*

JULIA KAYE
BRIGITTE AMIRI
CHELSEA TEJADA
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2633
jkaye@aclu.org
bamiri@aclu.org
ctejada@aclu.org

LORIE CHAITEN
American Civil Liberties Union Foundation
1640 North Sedgwick Street
Chicago, Illinois 60614
(212) 549-2633
rfp_lc@aclu.org

ADRIANA PINON
DAVID DONATTI
ANDRE SEGURA
ACLU Foundation of Texas, Inc.
5225 Katy Freeway, Suite 350
Houston, TX 77007
(713) 942-8146 (phone)
(713) 942-8966 (fax)

<div style="display: flex;">
<div>

*Women's Medical Center PA d/b/a*
*Brookside Women's Health Center and*
*Austin Women's Health Center, Alamo*
*City Surgery Center PLLC d/b/a Alamo*
*Women's Reproductive Services, Houston*
*Women's Reproductive Services, Daniel*
*Kanter, and Erika Forbes*

STEPHANIE TOTI
Lawyering Project
41 Schermerhorn Street #1056
Brooklyn, New York 11201
(646) 490-1083
stoti@lawyeringproject.org

RUPALI SHARMA
Lawyering Project
197 Pine Street, Apt. 23
Portland, Maine 04102
(908) 930-6445
rsharma@lawyeringproject.org

*Counsel for The Afiya Center, Frontera*
*Fund, Fund Texas Choice, Jane's Due*
*Process, Lilith Fund for Reproductive*
*Equity, North Texas Equal Access Fund*

ANDREW B. STEPHENS
HEATHER GEBELIN HACKER
Hacker Stephens LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022 (phone)
andrew@hackerstephens.com
heather@hackerstephens.com

*Counsel for Defendant Penny Clarkston*

</div>
<div>

apinon@aclutx.org
ddonatti@aclutx.org
asegura@aclutx.org

*Counsel for Houston Women's Clinic*

BENJAMIN S. WALTON
CHRISTOPHER D. HILTON
HALIE DANIELS
Assistant Attorneys General
General Litigation Division
BETH KLUSMANN
Assistant Solicitor General
NATALIE THOMPSON
Assistant Solicitor General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 (phone)
(512) 320-0667 (fax)
benjamin.walton@oag.texas.gov
christopher.hilton@oag.texas.gov
halie.daniels@oag.texas.gov
beth.klusmann@oag.texas.gov
natalie.thompson@oag.texas.gov

*Counsel for State Defendants*

</div>
</div>

 /s/ Jonathan F. Mitchell 
JONATHAN F. MITCHELL
*Counsel for Defendant*
*Mark Lee Dickson*