**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| WHOLE WOMAN'S HEALTH, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 1:21-cv-00616-RP |
| AUSTIN REEVE JACKSON, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

---

**DEFENDANT PENNY CLARKSTON'S MOTION TO DISMISS**
**FOR LACK OF JURISDICTION**

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii

INTRODUCTION ......................................................................................... 1

FACTUAL BACKGROUND ............................................................................ 1

ARGUMENT ................................................................................................ 5

   I.   Plaintiffs' Claims Against Defendant Clarkston Fail to Satisfy Article III's
      Case-Or-Controversy Requirement According to Binding Fifth Circuit
      Precedent. ......................................................................................... 5

  II.  Plaintiffs Lack Standing to Sue Defendant Clarkston Under Binding Fifth
      Circuit Precedent. .............................................................................. 8

    A.   The Fifth Circuit dismissed a similar claim due to lack of imminent injury-
        in-fact and the prudential standing doctrine. ................................. 9

    B.   Plaintiffs lack standing because they cannot establish causation and
        redressability under Fifth Circuit precedent. ................................. 11

      1.   Defendant Clarkston has not, and will not, cause any constitutional harm
          to Plaintiffs. ................................................................................. 13

      2.   This Court cannot redress any alleged harm inflicted on Plaintiffs by
          Defendant Clarkston. ................................................................... 14

 III. Sovereign Immunity Bars Plaintiffs' Claims Against Defendant Clarkston... 17

CONCLUSION............................................................................................ 18

## TABLE OF AUTHORITIES

**Cases**

*Adams v. McIlhany,*
　764 F.2d 294 (5th Cir.1985) ....................................................................... 9

*Allen v. DeBello,*
　861 F.3d 433 (3d Cir. 2017)....................................................................... 5

*Baker v. Carr,*
　369 U.S. 186, 204 (1962) .......................................................................... 7

*Bauer v. Texas,*
　341 F.3d 352 (5th Cir. 2003) ............................................................. *passim*

*Brooks v. Walker Cty. Hosp. Dist.,*
　688 F.2d 334 (5th Cir. 1982) ................................................................... 16

*California v. Texas,*
　141 S. Ct. 2104 (2021) ............................................................................ 10

*Chancery Clerk of Chickasaw Cty. v. Wallace,*
　646 F.2d 151 (5th Cir.1981) .................................................................. 6, 7

*City of Austin v. Paxton,*
　943 F.3d 993 (5th Cir. 2019) ................................................................... 14

*Clapper v. Amnesty Int'l USA,*
　568 U.S. 398 (2013) ......................................................................... 8, 9, 10

*Echols v. Parker,*
　909 F.2d 795 (5th Cir. 1990) ................................................................... 17

*Glass v. Paxton,*
　900 F.3d 233 (5th Cir. 2018) ................................................................... 10

*Grant v. Johnson,*
　15 F.3d 146 (9th Cir. 1994) ...................................................................... 6

*In re Abbott,*
　956 F.3d 696 (5th Cir. 2021) ................................................................... 14

*In re Justices of The Supreme Court of Puerto Rico,*
　695 F.2d 17 (1st Cir.1982).................................................................... 5, 6

*K.P. v. LeBlanc,*
　729 F.3d 427 (5th Cir. 2013) ...................................................... 11, 12, 13

*Lujan v. Defs. of Wildlife,*
　504 U.S. 555 (1992) .............................................................................. 8, 13

*McClure v. Ashcroft,*
　335 F.3d 404 (5th Cir. 2003) ..................................................................... 8

*Mendez v. Heller,*
　530 F.2d 457 (2d Cir.1976)........................................................................ 7

*Moore v. Bryant,*
　853 F.3d 245 (5th Cir. 2017) ................................................................... 10

*Moore v. Hosemann,*
  591 F.3d 741 (5th Cir. 2009) ................................................................... 16

*O'Shea v. Littleton,*
  414 U.S. 488 (1974) ................................................................................ 9

*Pennhurst State Sch. & Hosp. v. Halderman,*
  465 U.S. 89 (1984) ............................................................................... 16

*Planned Parenthood Gulf Coast, Inc. v. Phillips,*
  No. 18-30699, 2021 WL 2980702 (5th Cir. July 15, 2021) ......................... 15, 16, 17

*Planned Parenthood of Greater Tex. Surg. Health Servs. v. City of Lubbock, Tex.,*
  No. 5:21-CV-114-H, 2021 WL 2385110 (N.D. Tex. June 1, 2021)................ 7, 11, 16

*Poe v. Ullman,*
  367 U.S. 497 (1961) .............................................................................. 10

*R.R. Comm'n of Tex. v. Pullman Co.,*
  312 U.S. 496 (1941) .............................................................................. 16

*Soc'y of Separationists, Inc. v. Herman,*
  959 F.2d 1283 (5th Cir.1992) ................................................................... 9

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016) ........................................................................... 10

*Tex. Democratic Party v. Abbott,*
  961 F.3d 389 (5th Cir. 2020) ................................................................... 16

*Whitmore v. Arkansas,*
  495 U.S. 149 (1990) ............................................................................ 9, 10

## Constitutional Provisions

Tex. Const. art. V, § 9 .................................................................... 1, 15, 17

## Statutes

Tex. Gov't Code § 22.004........................................................................ 2

Tex. Gov't Code § 51.303................................................................... 2, 15, 17

## Rules

Fed. R. Civ. P.
  4............................................................................................. 3
  12(b)(1) ....................................................................................... 1

Tex. R. Civ. P.
  3(a) ........................................................................................... 2
  22......................................................................................... 2, 15
  22–26........................................................................................ 15
  24............................................................................................. 2
  25............................................................................................. 2
  26............................................................................................. 2

99 ..................................................................................................................... 3

99(a) .............................................................................................................. 3

99(b) .............................................................................................................. 3

99(c) .............................................................................................................. 3

106 ................................................................................................................. 3

Local Smith Cty. R. of Civ. Trial ............................................................... 2

**Other Authorities**

Court Structure of Texas, Feb. 2021, https://www.txcourts.gov/
    media/1452084/court-structure-chart-february-2021.pdf ........................ 2

Funding of the Texas Judicial Branch, https://www.txcourts.gov
    /media/1437891/about-texas-courts-2016.pdf ..................................... 2

Tex. Senate Journal 1612 (Weds. May 19, 2021), https://journals.senate.
    texas.gov/sjrnl/87r/pdf/87RSJ05-19-F.PDF#page=23 ........................... 3

## INTRODUCTION

Writ large, Plaintiffs ask this Court for unprecedented relief: to commandeer the entire Texas judiciary so that Plaintiffs will not face even a threat of a private lawsuit. More specifically, Plaintiffs ask this Court to block Defendant Penny Clarkston, the Smith County District Clerk, from accepting for filing or taking any other action in the initiation of a private lawsuit brought under S.B. 8. But Plaintiffs' suit against Ms. Clarkston fails for multiple reasons. First, this Court lacks jurisdiction over the claims against Ms. Clarkston because there is no case-or-controversy between Plaintiffs and Ms. Clarkston pursuant to binding Fifth Circuit precedent. Second, Plaintiffs lack standing to sue Ms. Clarkston because controlling precedent holds that under these circumstances, Plaintiffs are not suffering an imminent injury-in-fact, and the prudential standing doctrine bars claims like Plaintiffs' against officers of the state judiciary. Third, Plaintiffs also lack standing because they cannot show that their alleged harm is traceable to Ms. Clarkston, and their alleged harm is not redressable by relief this Court can enter against Ms. Clarkston. Fourth, the Court lacks jurisdiction over the claims against Ms. Clarkston because they are barred by sovereign immunity. This Court should dismiss Plaintiffs' claims against Ms. Clarkston in their entirety for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

### A.    The Powers and Duties of the District Clerk

The position of the Clerk of each county's District Court is established by article V, section IX of the Texas Constitution. The District Clerk is elected by qualified voters of each county. Tex. Const. art. V, § 9. The District Clerk is a county

1

employee, as are all other staff of the District Courts, except for the District Judge.[1]
The Texas Government Code provides the duties of the District Clerk, which include
maintaining the records of the District Court, recording the acts of the court, and
entering judgments under the direction of the judge. Tex. Gov't Code § 51.303. The
District Clerk also acts under authority of the Texas Rules of Civil Procedure, which
are promulgated by the Texas Supreme Court. *See* Tex. Gov't Code § 22.004. The
District Clerk may also act under the local rules of the District Court, which are
promulgated by the judges of the District Court and the County Courts at Law and
approved by the Texas Supreme Court. *See* Tex. R. Civ. P. 3(a); *see also, e.g.,* Local
Smith Cty. R. of Civ. Trial.[2] Aside from District Courts, which are state trial courts
of general jurisdiction, the Texas judiciary also includes County Courts at Law,
Constitutional County Courts, justice courts, and municipal courts, which are courts
of limited jurisdiction.[3]

　　The Texas Rules of Civil Procedure require a civil action to be commenced by
a petition filed with the clerk, who "shall" document the filing. Tex. R. Civ. P. 22, 24.
Each clerk "shall" keep a file docket and a court docket for each case. Tex. R. Civ. P.
25, 26. "Upon the filing of the petition, the clerk, when requested, shall forthwith
issue a citation and deliver the citation as directed by the requesting party . . . The

---

[1] *See, e.g.*, Funding of the Texas Judicial Branch, https://www.txcourts.gov
/media/1437891/about-texas-courts-2016.pdf ("Counties pay the operating costs of
district courts, as well as the base salary of judges, full salaries of other staff, and
operating costs for constitutional county courts, county courts at law, and justice
courts.")

[2] Available at https://www.smith-county.com/government/courts/local-rules-of-civil-trial.

[3] *See* Court Structure of Texas, Feb. 2021, https://www.txcourts.gov/media/
1452084/court-structure-chart-february-2021.pdf.

clerk must retain a copy of the citation in the court's file." Tex. R. Civ. P. 99(a). The contents of the citation the Clerk "shall" issue upon request are prescribed by the Rules. Tex. R. Civ. P. 99(b), 99(c). The citation is similar to a summons in federal court and is issued so that the party commencing the action can serve the defendant with the lawsuit. *Compare* Tex. R. Civ. P. 99, 106 *with* Fed. R. Civ. P. 4.

### B.   Senate Bill 8

On May 19, 2021, Governor Abbott signed Senate Bill 8 (S.B. 8),[4] which prohibits abortion after the fetus has a detectable heartbeat and creates a private right of action in Texas courts for enforcement. *See* Compl. Ex. 1 at 4, 6–7 (Dkt. 1-1). The law also provides an affirmative defense which allows defendants to avoid liability if it would impose an undue burden on a woman or group of women seeking a prohibited abortion. Compl. Ex. 1 at 10. The law contains no provisions pertaining directly to district clerks. In fact, the law expressly states that public officials may not enforce the law in their official capacity:

> No enforcement of this subchapter, and no enforcement of Chapters 19 and 22, Penal Code, in response to violations of this subchapter, may be taken or threatened by this state, a political subdivision, a district or county attorney, or an executive or administrative officer or employee of this state or a political subdivision against any person . . .

Compl. Ex. 1 at 5. The law specifies that the enforcement of the law's prohibition on abortions performed after a detectable fetal heartbeat is "exclusively" through the private right of action. Compl. Ex. 1 at 5.

---

[4] *See* Tex. Senate Journal 1612 (Weds. May 19, 2021), https://journals.senate. texas.gov/sjrnl/87r/pdf/87RSJ05-19-F.PDF#page=23.

### C.   Plaintiffs' suit and allegations against Defendant Clarkston

On July 13, 2021, Plaintiffs filed the instant lawsuit challenging S.B. 8. Compl. 48 (Dkt. 1). Plaintiffs sued Defendant Penny Clarkston "in her official capacity as Clerk for the District Court of Smith County," Texas, and "and on behalf of a class of all Texas court clerks similarly situated." Compl. 2. Plaintiffs' allegations concerning Ms. Clarkston are limited. Plaintiffs allege that

> Defendant Penny Clarkston is the Clerk for the District Court of Smith County, and in that role is charged with accepting civil cases for filing and issuing citations for service of process upon the filing of a civil lawsuit. She is served [sic] in her official capacity and as a representative of a putative class of all court clerks in the State of Texas for courts with jurisdiction over the civil actions created by the Act.

Compl. ¶ 49. Plaintiffs allege that Ms. Clarkston is an adequate class representative for a class including "all clerks for courts with authority to hear civil suits under S.B. 8." Compl. ¶¶ 128–30. Plaintiffs request that the Court enjoin Ms. Clarkston from "participating in the enforcement of S.B. 8 in any way, including by accepting for filing or taking any other action in the initiation of a lawsuit brought under S.B. 8." Compl. 46. Plaintiffs do not allege that any private enforcement actions under S.B. 8 will, or are likely to be, brought in the District Court of Smith County. *See generally* Compl. 1–47. The only individual the complaint identifies as potentially likely to bring a private enforcement action, Defendant Mark Lee Dickson, is a resident of Longview, Texas, which is not in Smith County. Compl. ¶ 50.

## ARGUMENT

I.  **Plaintiffs' Claims Against Defendant Clarkston Fail to Satisfy Article III's Case-Or-Controversy Requirement According to Binding Fifth Circuit Precedent.**

"The case or controversy requirement of Article III of the Constitution requires a plaintiff to show that he and the defendants have adverse legal interests." *Bauer v. Texas*, 341 F.3d 352, 359 (5th Cir. 2003). Plaintiffs have sued Judge Jackson and Ms. Clarkston, who are judicial officers of the Texas judiciary. But the Fifth Circuit has held that "the requirement of a justiciable controversy is not satisfied where a judge acts in his adjudicatory capacity." *Id.* Thus, "a section 1983 due process claim is not actionable against a state judge acting purely in his adjudicative capacity because he is not a proper party in a section 1983 action challenging the constitutionality of a state statute." *Id.* As explained below, the same is true of a court clerk.

The Fifth Circuit explained the reasons for this:

> First, 'judges sit as arbiters without a personal or institutional stake on either side of the constitutional controversy.' Second, 'almost invariably, they have played no role in the statute's enactment.' Third, 'they have not initiated its enforcement.' Finally, 'they do not even have an institutional interest in following their prior decisions (if any) concerning its constitutionality if an authoritative contrary legal determination has subsequently been made.'

*Id.* (quoting *In re Justices of The Supreme Court of Puerto Rico,* 695 F.2d 17, 21 (1st Cir.1982) (Breyer, J.)); *accord Allen v. DeBello*, 861 F.3d 433, 442 (3d Cir. 2017), (holding state judges are not proper parties to a § 1983 suit challenging the constitutionality of state custody dispute procedures because the judges could not initiate the actions themselves, had no administrative function under the statute, and did not promulgate the procedures); *Grant v. Johnson*, 15 F.3d 146, 148 (9th Cir.

1994) (holding that "judges adjudicating cases pursuant to state statutes may not be sued under § 1983 in a suit challenging the state law").

The same is true here. Neither Judge Jackson nor Ms. Clarkston have a personal stake in the outcome of S.B. 8 enforcement suits, neither of them were involved in the statute's enactment, and they are barred by state law from initiating S.B. 8's enforcement in their official capacity—nor have Plaintiffs pleaded otherwise. Thus, "[s]ection 1983 will not provide any avenue for relief against judges 'acting purely in their adjudicative capacity, any more than, say, a typical state's libel law imposes liability on a postal carrier or telephone company for simply conveying a libelous message.'" *Bauer*, 341 F.3d at 361. (quoting *In re Justices*, 695 F.2d at 22.). As a District Clerk merely docketing a petition and issuing citation, as she is required to do under state law and the Texas Rules of Civil Procedure, Ms. Clarkston is even more like the "postal carrier"—and less adverse to the plaintiffs—than the judge is.

Despite the plain language of S.B. 8 prohibiting enforcement by state or local officials, Compl. Ex. 1 at 5, Plaintiffs allege that Ms. Clarkston and other clerks are "charged with playing a role in the enforcement of S.B. 8," Compl. ¶ 130. But if neutrally adjudicating any cases brought before them fails to satisfy the case-or-controversy requirement as to judges, a clerk's action in simply receiving a petition, docketing it, and issuing citation falls far shorter of Article III requirements. In fact, the Fifth Circuit has long held that court clerks, like judges, lack adversity to plaintiffs challenging the constitutionality of a state law, and therefore such claims fail to satisfy Article III's case-or-controversy requirement.

In *Chancery Clerk of Chickasaw County v. Wallace*, 646 F.2d 151 (5th Cir. 1981), the Fifth Circuit held that a plaintiff challenging the state's commitment

procedures for the mentally ill could not bring a class action against judges and chancery clerks as defendants because there was no adversity between the plaintiffs and the putative defendant class. The Court noted that "because of the judicial nature of their responsibility, the chancery clerks and judges do not have a sufficiently 'personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues on which the court so largely depends for illumination of difficult constitutional questions.'" *Id.* at 160 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)); *see also Mendez v. Heller*, 530 F.2d 457 (2d Cir.1976) (state court judges and clerks joined as defendants in a suit challenging New York's durational residency requirement for divorce found to lack the requisite interest in defending the allegedly unconstitutional statutes)).

The fact that judges (and clerks) are not proper parties under § 1983 when acting in an adjudicatory capacity does not leave the Plaintiffs without a remedy. Plaintiffs have several defenses available to them under the statute—including a constitutional defense incorporating the undue burden standard—should they face a suit under S.B. 8. Compl. Ex. 1 at 10. This Court should "reject[] any suggestion by the plaintiffs that when presiding over a lawsuit asserted under the private-enforcement provision, state courts would not adequately consider any constitutional defenses raised. To the contrary, state courts can and do consider constitutional issues effectively." *Planned Parenthood of Greater Tex. Surg. Health Servs. v. City of Lubbock, Tex.* (PPGTSHS), No. 5:21-CV-114-H, 2021 WL 2385110, at *16 (N.D. Tex. June 1, 2021). Regardless, binding precedent compels this Court to dismiss Plaintiffs' claims against Ms. Clarkston for lack of jurisdiction because there is no Article III case-or-controversy.

## II.  Plaintiffs Lack Standing to Sue Defendant Clarkston Under Binding Fifth Circuit Precedent.

Aside from the lack of adversity, the Fifth Circuit in *Bauer* rejected a § 1983 suit against state judges for another reason: lack of standing.

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). This requirement "is built on separation-of-powers principles," which serve to "prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Id.* at 409 (citation omitted). Plaintiffs' claims fail on all three counts, though even the lack of one element defeats standing, and therefore, subject-matter jurisdiction. *See Lujan*, 504 U.S. at 560 (The Supreme Court has "established that the irreducible constitutional minimum of standing contains three elements."). Further, "[b]eyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing. Prudential standing limitations help courts identify proper questions of judicial adjudication, and further define the judiciary's role in the separation of powers." *McClure v. Ashcroft*, 335 F.3d 404, 411 (5th Cir. 2003) (citations omitted). The doctrine of prudential standing counsels that the Court should not find standing in a case like this, where the Court is being asked to commandeer the entire Texas judiciary to prevent unknown private parties from suing Plaintiffs under a state-law cause of action.

### A. The Fifth Circuit dismissed a similar claim due to lack of imminent injury-in-fact and the prudential standing doctrine.

The Supreme Court has "repeatedly reiterated that 'threatened injury must be certainly *impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). In *Bauer*, the Fifth Circuit held that dismissal of a § 1983 claim against state judges challenging the constitutionality of a state statute was also proper because the plaintiff failed to show immediate injury and prudential standing considerations counseled against relief, even if standing requirements were minimally met. Because there were no currently pending actions under the challenged statute before the defendant judge, the Fifth Circuit held that there was no

> "substantial likelihood" and a "real and immediate" threat that [plaintiff] will face injury from [the defendant judge] in the future. This court has often held that plaintiffs lack standing to seek prospective relief against judges where the likelihood of future encounters is speculative. *Adams v. McIlhany*, 764 F.2d 294, 299 (5th Cir.1985); *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283 (5th Cir.1992). Furthermore, there is the danger that excessive superintending of state judicial functions "would constitute a form of monitoring of the operation of state court functions that is antipathetic to established principles of comity." *O' Shea v. Littleton*, 414 U.S. 488, 501 (1974). Because there is no ongoing injury to [plaintiff] and any threat of future injury is neither imminent or likely, there is not a live case or controversy for this court to resolve and a declaratory judgment would therefore be inappropriate. Even assuming, *arguendo*, that the requirements of Article III standing in this respect are minimally met, prudential standing considerations similarly dictate the impropriety of declaratory relief for those reasons.

*Bauer*, 341 F.3d at 358–59.

The same is true here. There are no currently pending actions under S.B. 8 in Smith County, nor has Ms. Clarkston docketed any. Plaintiffs claim to be injured by the threat of potential litigation, but Plaintiffs do not plead that such private

enforcement is imminent enough that Ms. Clarkston would have to docket such a petition anytime soon. This is fatal. The plaintiff "must 'clearly … allege facts demonstrating' each element" of Article III standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted). Hypothetical injuries are insufficient to establish Article III jurisdiction. *Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 468 (2017). And Plaintiffs, who do not even have an abortion clinic or operation in Smith County, *see* Compl. ¶¶ 24–46, offer nothing to suggest private enforcement is "certainly impending" there. *Glass v. Paxton*, 900 F.3d 233, 241 (5th Cir. 2018) (quoting *Whitmore*, 495 U.S. at 158). Because S.B. 8 "at most *authorizes*—but does not *mandate* or *direct*" civil lawsuits, much less in Smith County specifically, Plaintiffs' fears regarding any lawsuits that would even tangentially involve Ms. Clarkston are "necessarily conjectural." *Clapper*, 568 U.S. at 412. And as the Supreme Court just reaffirmed, the fact that Plaintiffs ask for declaratory relief does not give them a pass to standing requirements. "Instead, just like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (citation omitted). Thus, "'[t]he declaratory judgment device does not . . . permit litigants to invoke the power of this Court to obtain constitutional rulings in advance of necessity.'" *Id.* (quoting *Poe v. Ullman*, 367 U.S. 497, 506 (1961)).

Further, like the request for declaratory relief in *Bauer*, Plaintiffs' request for this Court to enter an order against Ms. Clarkston declaring the law unconstitutional and preventing her from docketing any S.B. 8 enforcement action asks this Court to impermissibly "monitor[] the operation of state court functions." *Bauer*, 341 F.3d at 358. Thus, even if Plaintiffs had established the elements of standing, that relief

would be improper according to the Fifth Circuit. *Id. Bauer* thus forecloses jurisdiction in an additional way.

**B.    Plaintiffs lack standing because they cannot establish causation and redressability under Fifth Circuit precedent.**

Even if Plaintiffs had a sufficiently imminent injury-in-fact and could overcome prudential standing considerations, they still lack standing to sue because they cannot establish the remaining elements according to Fifth Circuit case law. "Fifth Circuit precedent makes clear that fidelity to Article III standing is particularly important—and difficult to establish—when the plaintiff raises a pre-enforcement challenge to laws that establish private-enforcement provisions." *PPGTSHS*, 2021 WL 2385110, at *8. As the Northern District of Texas recently noted when deciding it lacked jurisdiction to entertain a challenge to a city ordinance creating a private right of action similar to S.B. 8's for lack of redressability, "Fifth Circuit precedent compels this result." *Id.* at *1. Indeed, the Fifth Circuit has held multiple times that plaintiffs have no standing to sue public officials to challenge laws creating private rights to sue abortion providers. *See Okpalobi v. Foster*, 244 F.3d 405, 426–27 (5th Cir. 2001) (en banc); *K.P. v. LeBlanc*, 729 F.3d 427, 437 (5th Cir. 2013).

In *Okpalobi*, abortion doctors and clinics preemptively sued government officials—Louisiana's Governor and Attorney General—to block a law which created a private tort remedy. 244 F.3d at 409. The law provided for unlimited tort liability for abortion doctors injuring women and their unborn children. *Id.* Those plaintiffs, like these plaintiffs, argued that the law would force them to cease providing abortions because of the potential exposure to civil damages claims under the law,

and that the law created an undue burden on women's right to abortion. *Id.* at 410.
A majority of the *en banc* Fifth Circuit held that the plaintiffs lacked standing and
remanded the case for dismissal. *Id.* at 429.

The *Okpalobi* plaintiffs lacked standing because no "act of the defendants has
caused, will cause, or could possibly cause any injury to [plaintiffs]" because neither
the Governor nor Attorney General had (or would) initiate any of the private suits.
*Id.* at 426. Even assuming an injury-in-fact, the court concluded that plaintiffs could
not satisfy the other elements of Article III standing. *Id.* at 428. It was not the
government "who inflicts the claimed injury—it is the private plaintiff, bringing a
private lawsuit . . . who *causes* the injury of which the plaintiffs complain." *Id.* And
the claimed injury could not be redressed because the government defendants "cannot
prevent purely private litigants from filing and prosecuting a cause of action under
[the law]." *Id.* at 427.

Relying on *Okpalobi*, the Fifth Circuit reached the same result in *LeBlanc*.
There, abortion providers challenged the constitutionality of the private-enforcement
provision of a Louisiana law in a lawsuit against board members of a medical-
malpractice patient fund that excluded participation with respect to abortion-related
procedures. *LeBlanc*, 729 F.3d at 433. Addressing standing "against the backdrop of
*Okpalobi*," the Fifth Circuit held that because only a private plaintiff could bring suit
under the private cause of action, the board defendants were not charged with
enforcing the provision. Therefore, the board did not cause the complained-of injury
arising from that provision. *Id.* at 437 (citing *Okpalobi*, 244 F.3d at 428 ("[I]t is the
private plaintiff, bringing a private lawsuit . . . who causes the injury of which the
plaintiffs complain." (emphasis omitted))). The court further held that because

"enjoining the Board Parties from 'enforcing' the cause of action would not address their role in administering the Fund[,] . . . declaratory and injunctive relief directed to the Board Parties will not redress the [p]roviders' injury." *Id.* (citing *Okpalobi*, 244 F.3d at 431–32 (Higginbotham, J., concurring)). Thus, the providers lacked standing to challenge the private cause of action against the board members because they had no authority to enforce or bring suit under that provision. *Id.*

Applying *Okpalobi* and *LeBlanc*, Plaintiffs have no standing to sue Ms. Clarkston in their challenge to S.B. 8.

### 1.    Defendant Clarkston has not, and will not, cause any constitutional harm to Plaintiffs.

The causation element of Article III standing requires that a plaintiff's injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. Assuming Plaintiffs have a cognizable injury-in-fact from potential private litigation, that injury has nothing to do with Ms. Clarkston.

It is a "long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute." *Id.* As in *Okpalobi* and *LeBlanc*, it is only private parties who may initiate enforcement actions under S.B. 8. Compl. Ex. 1 at 5–7. S.B. 8 expressly prohibits government officials from enforcing or threatening to enforce the S.B. 8's prohibition on abortion after a detectable fetal heartbeat. Compl. Ex. 1 at 5. Ms. Clarkston, by docketing a case, does not "enforce" the statute and acts only in an adjudicatory capacity. *See* Part I *supra*. "If the official sued is not 'statutorily tasked with enforcing the challenged law,' then the requisite

connection is absent.'" *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2021)[5] (quoting *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019)). In this Circuit, enforcement is "typically" found where the defendant official has state-granted authority to compel action by the plaintiff or to constrain the plaintiff's actions. *City of Austin*, 943 F.3d at 1000. Ms. Clarkston has neither—her only connection to S.B. 8 is that she might someday docket a private suit brought by someone else under the statute in Smith County District Court.

As is clear from the face of the statute, Ms. Clarkston does not "enforce" S.B. 8, and any harm to Plaintiffs caused by third parties choosing to bring suit under S.B. 8 is not traceable to Ms. Clarkston's docketing and record-keeping responsibilities. Thus, Plaintiffs failed to establish this element of standing as well.

### 2. This Court cannot redress any alleged harm inflicted on Plaintiffs by Defendant Clarkston.

Plaintiffs also lack standing to sue Ms. Clarkston because their alleged injury is not redressable by any relief this Court could grant against her. Section 1983 itself cautions against enjoining judicial officials: "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Plaintiffs recognize this, asserting that "only declaratory relief is available at this time against the defendant class of judges." Pls.' MSJ at 4 (Dkt. 19). Regardless, injunctive relief is unavailable against Ms. Clarkston because it is an "elemental fact that a state official cannot be enjoined to act in any way that is beyond

---

[5] *Vacated on other grounds by Planned Parenthood Ctr. for Choice v. Abbott*, 141 S.Ct. 1261 (2021).

his authority to act in the first place." *Okpalobi*, 244 F.3d at 427. A court clerk is not responsible for judging the merits of a lawsuit, *see* Tex. Const. art. V, § 9; Tex. Gov't Code § 51.303; Tex. R. Civ. P. 22–26, and a clerk "shall" file documents submitted by litigants, Tex. R. Civ. P. 22–26. A court clerk like Ms. Clarkston does not have the authority to reject petitions, even when the filing is frivolous, harassing, improper, malicious, or based on an unconstitutional statute.

But granting Plaintiffs' requested relief against Ms. Clarkston would require her—a non-lawyer—to do something she otherwise never does: evaluate the legal basis for *every single case* filed in Smith County so that she can root out and reject any lawsuits filed under S.B. 8. Aside from gumming up the procedural workings of the Smith County District Court, such relief would require her to exceed her responsibilities as an elected official under state law—essentially requiring her to violate state law by acting *ultra vires*.[6] A federal court has no power to command that. *Okpalobi*, 244 F.3d at 427. Nor may a federal court instruct Ms. Clarkston that her official duties under State law *include* rooting out and rejecting S.B. 8 lawsuits. "Under the Eleventh Amendment, federal courts cannot tell state officials 'how to conform their conduct to state law'—for one can hardly imagine 'a greater intrusion on state sovereignty.'" *Planned Parenthood Gulf Coast, Inc. v. Phillips*, No. 18-30699, 2021 WL 2980702, at *6 (5th Cir. July 15, 2021) (quoting *Pennhurst State Sch. &*

---

[6] Further, if this Court were to grant the class-wide relief Plaintiffs demand against every non-federal court clerk in Texas, this Court would be imposing an extra-legal duty on hundreds of non-lawyers, requiring them to review *every single case filed in Texas* to root out S.B. 8 cases. The burden that such an order would impose on the state judiciary is staggering, and such relief is really nothing less than completely commandeering the state judiciary. It is difficult to think of a situation where the comity doctrine would be implicated in a stronger way.

*Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)). A federal court telling state officials how to act under state law would "conflict[ ] directly with the principles of federalism that underlie the Eleventh Amendment." *Id.*[7]

Declaratory relief does not work either. Ms. Clarkston has "no authority to prevent a private plaintiff from invoking the statute in a civil suit." *Okpalobi*, 244 F.3d at 427 (footnote omitted). Nor does Ms. Clarkston have any authority to "order what cases the judiciary of [Texas] may hear or not hear." *Id*. As the Northern District of Texas recently affirmed (and as Plaintiff Planned Parenthood admitted), a declaratory judgment against government officials cannot prevent private litigants from bringing suit under S.B. 8. *PPGTSHS*, 2021 WL 2385110, at *11. And even if this Court declares S.B. 8 unconstitutional, if such a suit is nevertheless brought in Smith County, Ms. Clarkston will still have to docket that case pursuant to her duties just like every other case. Put simply, there is no relief this Court can grant against Ms. Clarkston that will redress the injury supposedly caused to Plaintiff by Ms. Clarkston's exercise of her legal duties. And if Plaintiffs instead seek through their request for declaratory relief to compel Ms. Clarkston to root out and reject S.B. 8

---

[7] Further, whether state law permits Ms. Clarkston to take on such additional responsibilities outside the scope of her statutory duties (including whether it permits her to serve as a class representative) is a question of state law that should be decided in the first instance by Texas courts, not this Court. Thus, if the Court's ruling on plaintiffs' claims requires the determination of this state-law issue, it should abstain under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 500 (1941), because that "clarification of" state law "may have a considerable impact on the posture and ultimate resolution of … federal issues." *Brooks v. Walker Cty. Hosp. Dist.*, 688 F.2d 334, 338 (5th Cir. 1982); see also *Moore v. Hosemann*, 591 F.3d 741, 745 (5th Cir. 2009); *PPGTSHS*, 2021 WL 2385110, at *17–24. As the Fifth Circuit recently noted, a "district court's decision to forge ahead despite an intimately intertwined—and, at that time, unresolved—state-law issue was not well considered." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020).

cases, it runs into the same problems as their request for injunctive relief. *See Phillips*, 2021 WL 2980702, at *9.

Thus, "the question of standing in this case is easily framed. We should ask whether enjoining defendants from enforcing the statute complained of will bar its application to these plaintiffs. The answer is no." *Okpalobi*, 244 F.3d at 430 (Higginbotham, J., concurring). Ms. Clarkston has no "responsibility for enforcing [S.B. 8]," and "whether that is so ought to be the beginning and the end of this [case]." *Id.*

### III. Sovereign Immunity Bars Plaintiffs' Claims Against Defendant Clarkston.

Plaintiffs do not allege that Ms. Clarkston is a state actor for purposes of section 1983. While Ms. Clarkston is an employee of Smith County, not the State of Texas, *see* note 1 *supra*, Ms. Clarkston does assist in the administration of the Texas court system pursuant to her official duties under State law, *see* Tex. Const. art. V, § 9; Tex. Gov't Code § 51.303. Ms. Clarkston is a state actor under these circumstances. *See Echols v. Parker*, 909 F.2d 795, 801 (5th Cir. 1990) ("A county official pursues his duties as a state agent when he is enforcing state law or policy.") Thus, Ms. Clarkston is entitled to sovereign immunity for the same reasons as Judge Jackson, and Judge Jackson's and Defendant Mark Lee Dickson's arguments as to sovereign immunity are incorporated herein. *See* Def. Jackson's MTD at 6–8 (Dkt. 49); Def. Dickson's MTD at 11–14 (Dkt. 50).

17

## CONCLUSION

This Court should dismiss this case for lack of jurisdiction.

                    Respectfully submitted.

                    <u>/s/ Heather Gebelin Hacker</u>
                    HEATHER GEBELIN HACKER
                    Texas Bar No. 24103325
                    heather@hackerstephens.com
                    ANDREW B. STEPHENS
                    Texas Bar No. 24079396
                    andrew@hackerstephens.com
                    HACKER STEPHENS LLP
                    108 Wild Basin Rd. South, Suite 250
                    Austin, Texas 78746
                    Tel: (512) 399-3022

                    *Attorneys for Defendant Penny Clarkston*

## CERTIFICATE OF SERVICE

I certify that on August 5, 2021, this document was served through the Court's CM/ECF Document Filing System or through electronic mail, upon all counsel of record.

<u>/s/ Heather Gebelin Hacker</u>
HEATHER GEBELIN HACKER