**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| WHOLE WOMAN'S HEALTH, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No.: 1:21-cv-00616-RP |
| AUSTIN REEVE JACKSON, in his official capacity as Judge of the 114th District Court, and on behalf of a class of all Texas judges similarly situated, *et al.*, | |
| *Defendants*. | |

**PLAINTIFFS' OPPOSITION TO STATE AGENCY DEFENDANTS'**
**MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

    A.    State Agency Defendants' Role in Enforcing S.B. 8's Restrictions on
        Providing and Assisting Abortion.......................................................................... 2

    B.    State Agency Defendants' Role in Enforcing S.B. 8's Fee-Shifting
        Provision ................................................................................................................. 5

ARGUMENT ..................................................................................................................... 6

I.    State Agency Defendants Do Not Have Sovereign Immunity in This Case..................... 6

    A.    State Agency Defendants have a particular duty to enforce S.B. 8. ..................... 7

    B.    *Ex parte Young* does not require Plaintiffs to demonstrate Defendants'
        willingness to enforce, but Defendants have nonetheless shown it. .................... 11

II.    Plaintiffs Have Standing to Sue State Agency Defendants ............................................ 14

    A.    All Plaintiffs have Article III standing to challenge S.B. 8's fee-shifting
        provision as applied to State Agency Defendants................................................. 14

    B.    Provider Plaintiffs have Article III and, to the extent necessary, third-party
        standing to bring their remaining claims against State Agency Defendants. ...... 16

CONCLUSION................................................................................................................. 21

CERTIFICATE OF SERVICE ....................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                  *Page(s)*

*In re Abbott*,
    956 F.3d 696 (5th Cir. 2020), *vacated as moot by Planned Parenthood Ctr.*
    *for Choice v. Abbott*, 141 S. Ct. 1261 (2021) .........................................................................13

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*,
    851 F.3d 507 (5th Cir. 2017) ................................................................................. *passim*

*Babbitt v. United Farm Workers Nat'l Union*,
    442 U.S. 289 (1979) ................................................................................................16

*Campbell v. Louisiana*,
    523 U.S. 392 (1998) ................................................................................................19

*City of Austin v. Paxton*,
    943 F.3d 993 (5th Cir. 2019) ................................................................................. *passim*

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ................................................................................................16

*Crawford v. Marion Cty. Election Bd.*,
    553 U.S. 181 (2008) ................................................................................................18

*Dallas Merch.'s & Concessionaire's Ass'n v. City of Dallas*,
    852 S.W.2d 489 (Tex. 1993) ....................................................................................10

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l*,
    695 F.3d 330 (5th Cir. 2012) ..................................................................................14

*Gajon Bar & Grill, Inc. v. Kelly*,
    508 F.2d 1317 (2d Cir. 1974) ..................................................................................19

*Green Valley Special Util. Dist. v. City of Schertz, Texas*,
    969 F.3d 460 (2020) (en banc) ..............................................................................6, 7

*Hang On, Inc. v. City of Arlington*,
    65 F.3d 1248 (5th Cir. 1995) ..................................................................................19

*Harris Cty. Comm'rs Ct. v. Moore*,
    420 U.S. 77 (1975) ..............................................................................................10, 11

*Horne v. Flores*,
    557 U.S. 433 (2009) ................................................................................................18

*J.L. Spoons, Inc. v. City of Brunswick*,
    49 F. Supp. 2d 1032 (N.D. Ohio 1999) ....................................................................19

*Johnson v. City of Shelby, Mississippi*,
   574 U.S. 10 (2014) (per curiam) ............................................................................6

*K.P. v. LeBlanc*,
   627 F.3d 115 (5th Cir. 2010) ...........................................................8, 9, 11, 12

*Kowalski v. Tesmer*,
   543 U.S. 125 (2004) ............................................................................................18

*Lipscomb v. Columbus Mun. Separate Sch. Dist.*,
   145 F.3d 238 (5th Cir. 1998) ...........................................................................10

*Morris v. Livingston*,
   739 F.3d 740 (5th Cir. 2014) ...........................................................................12

*NiGen Biotech, L.L.C. v. Paxton*,
   804 F.3d 389 (5th Cir. 2015) ...........................................................................15

*Okpalobi v. Foster*,
   244 F.3d 405 (5th Cir. 2001) (en banc) ...................................................12, 13

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
   748 F.3d 583 (5th Cir. 2014) ...........................................................................18

*Planned Parenthood Se., Inc. v. Strange*,
   33 F. Supp. 3d 1330 (M.D. Ala. 2014) ..........................................................20

*Planned Parenthood of Wis., Inc. v. Van Hollen*,
   94 F. Supp. 3d 949 (W.D. Wis. 2015), *aff'd sub nom. Planned Parenthood of*
   *Wis., Inc. v. Schimel*, 806 F.3d 908 (7th Cir. 2015) ..................................20

*Railroad Commission of Texas v. Pullman Co.*,
   312 U.S. 496 (1941) ............................................................................................10

*Roark & Hardee LP v. City of Austin*,
   522 F.3d 533 (5th Cir. 2008) ...........................................................................17

*Rumsfeld v. Forum for Acad. & Inst'l Rights, Inc.*,
   547 U.S. 47 (2006) ..............................................................................................18

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ......................................................................................16, 17

*United States v. Marshall*,
   798 F.3d 296 (5th Cir. 2015) ...........................................................................10

*United States v. Westinghouse Elec. Corp.*,
   638 F. 2d 570 (3d Cir. 1980) ...........................................................................19

*Whole Woman's Health All. v. Paxton*,
  No. 1:18-CV-00500-LY (W.D. Tex. June 14, 2018)................................................................6

*Whole Woman's Health v. Paxton*,
  978 F.3d 896 (5th Cir. 2020), *reh'rg en banc granted, vacated by* 978 F.3d
  974 (5th Cir. 2020).................................................................................................................13

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989)...................................................................................................................6

*Ex parte Young*,
  209 U.S. 123 (1908).......................................................................................... *passim*

**Statutes & Regulations**

22 Tex. Admin. Code § 176.2(a)(3)............................................................................................3

22 Tex. Admin. Code § 179.4(e)................................................................................................3

22 Tex. Admin. Code § 190.14(9)..............................................................................................4

22 Tex. Admin. Code § 217.11(1)(A).........................................................................................4

22 Tex. Admin. Code § 281.7(a)................................................................................................5

25 Tex. Admin. Code § 139.60(c), (*l*)........................................................................................4

42 U.S.C. § 1983......................................................................................................................6

Tex. Health & Safety Code §§ 243.011–.015...........................................................................4

Tex. Health & Safety Code §§ 245.012–.017...........................................................................4

Tex. Occ. Code § 164.052(a)(5) ...............................................................................................3

Tex. Occ. Code § 164.055(a)....................................................................................................3

Tex. Occ. Code § 165.101 ........................................................................................................5

Tex. Occ. Code § 301.453(a) ...................................................................................................4

Tex. Occ. Code § 565.001(a)....................................................................................................5

Tex. Occ. Code § 565.002 ........................................................................................................5

**Other Authorities**

Br. in Opp., *City of Austin v. Paxton*,
  No. 19-1441, 2020 WL 7211771 (U.S. Dec. 2020)...............................................................11

## INTRODUCTION

Texas abortion providers ("Provider Plaintiffs") and groups and individuals who support abortion patients ("Advocate Plaintiffs") each filed this action against one or more of five Texas agency officials ("State Agency Defendants" or "Defendants") to enjoin those officials' enforcement of Senate Bill 8 ("S.B. 8" or "the Act"), the law challenged in this case.

State Agency Defendants have a sufficient connection to S.B. 8's enforcement to satisfy *Ex parte Young*, 209 U.S. 123 (1908), and sovereign immunity is no bar to their suit. First, these Defendants have a particular duty under Texas law to indirectly enforce S.B. 8's restriction on providing or aiding abortion, and to do so against the Provider Plaintiffs and their staff. Second, these Defendants are expressly authorized to directly enforce S.B. 8's attorney fee-shifting provision against one or more of the Provider Plaintiffs and Advocate Plaintiffs (collectively, "Plaintiffs") in any case where these plaintiffs challenge an abortion restriction seeking declaratory or injunctive relief and have one or more of their claims dismissed.[1]

Plaintiffs also clearly have Article III standing to bring their claims. The Defendants' ability to indirectly enforce S.B. 8's restriction on providing or assisting with abortion against the Provider Plaintiffs means that the injuries to the Provider Plaintiffs and their patients are certainly impending for the purpose of Article III standing and would be redressed by the relief that Provider Plaintiffs seek. It is black-letter law that Provider Plaintiffs need not violate S.B. 8 and wait for

___

[1] The Provider Plaintiffs assert all Claims against officials from State Agency Defendants because (1) these plaintiffs or their staff hold licenses issued through these agencies or are subject to enforcement actions by the Attorney General, and (2) these plaintiffs face a credible threat that officials from these agencies will seek to recover attorney's fees and costs against them under S.B. 8's fee-shifting provision. The Advocate Plaintiffs do not assert Claims 1–5 against State Agency Defendants because they and their staff do not have licenses implicated by State Agency Defendants' regulatory authority. They do, however, bring Claims 6–7 against the Attorney General in light of ongoing and likely future litigation with that official to challenge abortion restrictions subject to S.B. 8's fee-shifting provision.

Defendants to bring enforcement proceedings against them before they can challenge S.B. 8; Plaintiffs face a credible threat of enforcement now, and thus have standing on their own behalf and on behalf of their closely aligned patients, physicians, and staff. Moreover, both the Provider Plaintiffs and Advocate Plaintiffs have standing to bring their claims against S.B. 8's draconian fee-shifting provision. They have challenged and will continue to need to challenge abortion restrictions covered by that provision (including in this very case), and therefore face the possibility of fee awards that will divert their limited resources and chill the exercise of their First Amendment rights.

## BACKGROUND

A.    **State Agency Defendants' Role in Enforcing S.B. 8's Restrictions on Providing and Assisting Abortion**

Although State Agency Defendants cannot directly enforce S.B. 8's restriction on providing or assisting with abortion, they are authorized and potentially required to bring administrative and civil enforcement actions under *other* laws for violations of S.B. 8, including actions for civil penalties. Compl. ¶¶ 51–55. These officials may bring actions against the organizational Provider Plaintiffs, based on their state licenses to operate abortion facilities, ambulatory surgical centers ("ASCs"), and pharmacies, and against the individual Provider Plaintiffs and the organizational Provider Plaintiffs' staff, based on Texas professional licenses issued to them as physicians, nurses, and pharmacists. *Id.* ¶¶ 24–35.

**Defendant Carlton.** Each of the Provider Plaintiffs is either an individual physician licensed by the Texas Medical Board ("TMB"), or an organization that has TMB-licensed physicians on its staff to provide abortion. *Id.* ¶¶ 24–35. The Provider Plaintiffs sued Mr. Carlton, the Executive Director of TMB, because under the Texas Medical Practice Act, TMB "*shall* take an appropriate disciplinary action against a physician who violates . . . Chapter 171, Health and

2

Safety Code." Tex. Occ. Code § 164.055(a) (emphasis added). The Medical Practice Act further provides that the TMB "*shall* . . . refuse to issue a license or renewal license to a person who violates that . . . chapter." *Id.* (emphasis added). Chapter 171 of the Texas Health and Safety Code, in turn, will house S.B. 8's newly created subchapter H, including the six-week abortion ban that will be codified at Section 171.204. *See* S.B. 8, § 3.

The Medical Practice Act also provides that a physician "commits unprofessional or dishonorable conduct that is likely to deceive or defraud the public," Tex. Occ. Code § 164.052(a)(5), if that physician "commits an act that violates any state or federal law if the act is connected with the physician's practice of medicine," *id.* § 164.053(a)(1). The TMB, "on determining that a person committed an act described by Sections 164.051 through 164.054, *shall* enter an order" of discipline, which may include suspension, limitation, or revocation of a physician's license. *Id.* § 164.001(b)(2)–(3) (emphasis added); *see also id.* § 164.051(a) (authorizing TMB to "take disciplinary action" based on prohibited act).

TMB is required to undertake certain investigations. For instance, Texas physicians (and/or their insurers) must report to TMB the filing of any health-care-related lawsuit against them, *id.* §§ 160.052–.053; 22 Tex. Admin. Code § 176.2(a)(3), and TMB must investigate and "*shall* . . . review the medical competency" of licensees who have been named in three or more such lawsuits within a five-year period, *id.* § 176.8(b) (emphasis added). A physician must cooperate in the investigation and respond to any request from TMB or face additional discipline. 22 Tex. Admin. Code § 179.4(e); *id.* § 187.15; *id.* § 190.8(2)(B), (D).

TMB rules also prescribe the minimum and maximum sanctions TMB will impose. For example, the regulation states that Section 164.055 of the Occupations Code "*requires* 'appropriate disciplinary action' against a physician who violates Health and Safety Code . . . Chapter 171,"

3

which carries, at a minimum, a public reprimand and a $5,000 penalty, and, at a maximum, license revocation. 22 Tex. Admin. Code § 190.14(9) (emphasis added).

**Defendant Thomas.** The organizational Provider Plaintiffs have nurses on staff who assist with the provision of abortion and are licensed by the Texas Board of Nursing ("TBN"). Compl. ¶¶ 24–33. These plaintiffs sued Ms. Thomas, the Executive Director of TBN, because if TBN finds that a nurse violated the Nursing Practice Act or its rules, "the board *shall* enter an order imposing" discipline. Tex. Occ. Code § 301.453(a) (emphasis added); *id.* § 301.452(b)(1). TBN's regulations, in turn, require nurses to "conform to . . . all federal, state, or local laws, rules or regulations affecting the nurse's current area of nursing practice." 22 Tex. Admin. Code § 217.11(1)(A). Under TBN's rule, discipline for violating the Nursing Practice Act or rules includes, at a minimum, a fine of $250 per violation. *Id.* § 213.33(b).

**Defendant Young.** The organizational Provider Plaintiffs hold licenses issued by the Health and Human Services Commission ("HHSC") for operation of abortion facilities and/or ASCs that provide abortion. Compl. ¶¶ 24–33. These plaintiffs sued Ms. Young, the Executive Commissioner of HHSC, because that agency may take disciplinary or civil action against its licensed abortion facilities and ASCs based on a violation of Chapter 171 or a failure to ensure physicians working in those facilities comply with the Medical Practice Act. Tex. Health & Safety Code §§ 243.011–.015, 245.012–.017; 25 Tex. Admin. Code § 139.60(c), (*l*); *see also id.* § 135.4(*l*) (requiring abortion-providing ASCs to comply with rules for abortion facilities).

**Defendant Benz.** The Provider Plaintiffs sued Ms. Benz, the Executive Director of the Texas Board of Pharmacy ("TBP"), because TBP may take disciplinary, administrative, and civil action against the organizational Provider Plaintiffs' pharmacies and their staff pharmacists who assist with the provision of abortion if those pharmacies or pharmacists violate the Texas Pharmacy

4

Act or its rules, including through "unprofessional" conduct or "gross immorality." Tex. Occ. Code §§ 565.001(a), 565.002; Compl. ¶¶ 25, 29–32. TBP defines "unprofessional conduct" to include "engaging in behavior or committing an act that fails to conform with the standards of the pharmacy profession." 22 Tex. Admin. Code § 281.7(a).

**Defendant Paxton.** As the Attorney General of Texas, Defendant Paxton is empowered to "institute an action for a civil penalty" against physicians licensed in Texas who are "in violation of or threatening to violate" any provision of the Medical Practice Act, including provisions triggered by a violation of S.B. 8. Tex. Occ. Code § 165.101.

Provider Plaintiffs request declaratory and injunctive relief that prevents State Agency Defendants "from enforcing S.B. 8 in any way, including by applying S.B. 8 as a basis for enforcement of laws or regulations in their charge." Compl. 46 (Request for Relief (C)(3), (D)). Stated differently, Provider Plaintiffs seek an order prohibiting State Agency Defendants from using S.B. 8 as a basis for disciplinary or civil enforcement action pursuant to the Medical Practice Act, the Nursing Practice Act, and the Pharmacy Act (or any other law).

**B.**      **State Agency Defendants' Role in Enforcing S.B. 8's Fee-Shifting Provision**

All Plaintiffs have sued State Agency Defendants because S.B. 8 makes Plaintiffs (and their attorneys) liable to State Agency Defendants for attorney's fees and costs in this and any other action in which Plaintiffs seek declaratory or injunctive relief preventing Defendants from "enforcing any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts abortion." S.B. 8, § 4 (adding Tex. Civ. Prac. & Rem. Code § 30.022); *see* Compl. ¶¶ 51–55; *supra* n.1. This fee-shifting provision would apply to any claim brought by Plaintiffs on which a court grants judgment against them, or even where a court dismisses a claim for lack of standing or rejects one of two claims pleaded in the alternative. *See* Pls.' Mot. for Summ. J. & Mem. of Law in Supp. 42–48, ECF No. 19. Plaintiffs must frequently resort to litigation against these Defendants

to protect their interests and those of their patients and clients and are likely to continue to do so. *See* Compl. ¶¶ 47, 51–55; Lambrecht Decl. ¶ 28; Miller Decl. ¶ 32–33; Gilbert Decl. ¶ 37; Klier Decl. ¶ 17; Braid Decl. ¶ 21; Compl., *Whole Woman's Health All. v. Paxton*, No. 1:18-CV-00500-LY (W.D. Tex. June 14, 2018), ECF No. 1 (pending suit against Defendant Paxton for unconstitutional abortion restrictions involving Plaintiffs Whole Woman's Health Alliance, Dr. Kumar, The Afiya Center, Fund Texas Choice, Lilith Fund, and North Texas Equal Access ("TEA") Fund).

**ARGUMENT**

## I.   STATE AGENCY DEFENDANTS DO NOT HAVE SOVEREIGN IMMUNITY IN THIS CASE

State Agency Defendants argue that sovereign immunity bars Plaintiffs' claims because these defendants do not have a "sufficient connection [to] the enforcement" of S.B. 8 to satisfy *Ex parte Young*, a longstanding exception to the general rule that a state cannot be sued in federal court.[2] *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019) (quoting *Ex parte Young*, 209 U.S. at 157; *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519

---

[2] State Agency Defendants suggest this Section 1983 action cannot proceed because Plaintiffs' complaint did not "mention *Ex parte Young*'s equitable cause of action." State Agency Defs.' Rule 12(b)(1) Mot. to Dismiss ("State Defs.' MTD") 5 n.2, ECF No. 48. But a plaintiff can bring an action under 42 U.S.C. § 1983 against "a state official in his or her official capacity, when sued for injunctive relief" to prevent unconstitutional action, because in that circumstance, the official "would be a person under [Section] 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (citing *Ex parte Young*, 209 U.S. at 159–60)). Moreover, even if Plaintiffs needed to also plead an equitable cause of action, they did. *See* Compl. ¶ 21 (invoking "equitable powers of the Court"); *Green Valley Special Util. Dist. v. City of Schertz, Texas*, 969 F.3d 460, 475 n.27 (2020) (en banc) (stating that "in a proper case, relief may be given in a court of equity to prevent an injurious act by a public officer"); *see also id.* at 493 n.2 (Elrod, J., concurring) (noting that "a complaint need not include 'magic words'" (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 434 (5th Cir. 2000)); *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam) (summarily reversing dismissal based on failure to plead Section 1983, because the federal rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted").

(5th Cir. 2017)). As these defendants effectively concede, however, they *do* have authority under other Texas laws to enforce S.B. 8's terms against Provider Plaintiffs. *See* State Defs.' MTD 8 n.5. And with respect to S.B. 8's fee-shifting provision, each of the Defendants is expressly authorized to seek fees if any claim against them that challenges an abortion restriction is dismissed, regardless of reason. *See* S.B. 8, § 4 (adding Tex. Civ. Prac. & Rem. Code § 30.022(a), (b)(1)). Under *Ex Parte Young* and its progeny, this connection to enforcement of S.B. 8 is sufficient to overcome the barrier of sovereign immunity.

> **A.    State Agency Defendants have a particular duty to enforce S.B. 8.**

**1.**    The *Ex parte Young* exception involves a "straightforward inquiry," *Green Valley Special Util. Dist.*, 969 F.3d at 471 (quoting *Air Evac EMS*, 851 at 517), which asks whether (1) "the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective," *City of Austin*, 943 F.3d at 998 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)), and (2) "the official in question has a sufficient connection to the enforcement of the challenged act," *id.* (internal quotation marks and alterations omitted). Plaintiffs' claims readily meet these conditions.

*First*, Plaintiffs' complaint clearly alleges an ongoing violation of federal law and seeks prospective relief, *see, e.g.*, Compl. ¶¶ 131–63 (Claims 1–7); *id.* at 46–47 (Request for Relief), as State Agency Defendants themselves admit, State Defs.' MTD 9 ("Plaintiffs seek prospective relief."). Plaintiffs' complaint specifically contains "a request to restrain state officials from enforcing an unlawful" law. *Green Valley Special Util. Dist.*, 969 F.3d at 473; *see id.* at 472 (holding that the plaintiff had alleged ongoing violations of law because the "pleadings ask us to prohibit [the state officials] from taking two actions going forward").

*Second*, State Agency Defendants plainly have a sufficient connection to the enforcement of S.B. 8. The second prong of the *Ex parte Young* standard is not a stringent requirement; the

Fifth Circuit's decisions require only "some scintilla of 'enforcement' by the relevant state official with respect to the challenged law." *City of Austin*, 943 F.3d at 1002. The term "enforcement" sweeps broadly, involving "compulsion or constraint." *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010). And the Fifth Circuit has expressly held that a defendant's "*direct* enforcement" of a "challenged law [is] not required" to demonstrate that the defendant has some connection to enforcement under *Ex parte Young*. *City of Austin*, 943 F.3d at 1001; *accord Air Evac EMS*, 851 F.3d at 518–19.

In *K.P.*, for example, the plaintiffs challenged a Louisiana statute that excludes abortion-related procedures from coverage under a state-created compensation fund for medical malpractice claims. 627 F.3d at 119–20, 124. Because the law required members of the board overseeing the fund to decide whether an abortion-related claim should be reviewed and funded, the board members constrained abortion providers' participation in the fund and thus, "[b]y virtue of these responsibilities, [b]oard members [we]re delegated some enforcement authority." *Id.* at 125; *Air Evac EMS*, 851 F.3d at 518–19 (observing that the board members in *K.P.* "had a specific means through which to apply the abortion statute").

Similarly, in *Air Evac EMS*, the Fifth Circuit found the *Ex parte Young* exception applied to claims against state officials, although the challenged rate-setting law was not enforced by those officials directly against the plaintiff, because the officials determined the amount that third-party insurers could pay the plaintiff to reimburse it. 851 F.3d at 512, 516. *Ex parte Young* applied because the officials "obviously *constrain[ed]*" the plaintiff's "ability to collect more than the maximum-reimbursement rate." *Id.* at 519. It made no difference that the law did not directly constrain the plaintiff, because via the "administrative process," the officials could "effectively ensure the maximum-reimbursement scheme is enforced from start to finish." *Id.*

Under these authorities, State Agency Defendants plainly have "some connection with the enforcement" of S.B. 8, albeit indirectly, "by virtue of [their] office[s]." *Ex parte Young*, 209 U.S. at 157. Under Texas law, these officials may force Provider Plaintiffs to comply with the Act by bringing an enforcement action to constrain the Provider Plaintiffs and their physicians, nurses, and pharmacists from violating S.B. 8's restrictions on providing and assisting with abortion. *See K.P.*, 627 F.3d at 124. These other laws establish a process that effectively ensures that Provider Plaintiffs and their physicians and staff are compelled to comply with S.B. 8 and thus deny their patients' access to abortion at or after six weeks of pregnancy, because any violation jeopardizes their professional, facility, and pharmacy licenses, in addition to the threat of civil penalties. *Air Evac EMS*, 851 F.3d at 520.

 For these same reasons, the *Ex parte Young* exception applies to all Plaintiffs' claims against the fee-shifting provision in Section 4 of S.B. 8. Indeed, Defendants do not dispute that they can directly enforce that provision. *See* S.B. 8, § 4 (adding § 30.022, making Plaintiffs liable for fees to any "public official in this state" who defends a Texas abortion restriction). They argue, instead, that Plaintiffs do not have standing to challenge this provision, though—for the reasons discussed below—all Plaintiffs do. *See infra* Part II(A).

    **2.**    State Agency Defendants' objections to *Ex parte Young*'s application here, largely made in footnotes, should be rejected. First, they posit that S.B. 8's prohibition on their direct enforcement of the law's restriction on providing or assisting with abortion "may arguably override State Agency Defendants' general authority to discipline licensees." State Defs.' MTD 6–7 n.3. But State Agency Defendants provide no basis for this contention, and there is none. S.B. 8 limits *direct* enforcement of its requirements to the private-enforcement actions it creates. S.B. 8, § 3 (adding Tex. Health & Safety Code § 171.207(a)). It also specifically bars "enforcement of

Chapters 19 and 22, Penal Code, in response to violations of this subchapter." *Id.* But the Act does not bar any other *indirect* enforcement actions—i.e., actions brought under *other* sections of the Texas code "in response to violations" of S.B. 8's requirements—such as those under the Medical Practice Act, Nursing Practice Act, and Pharmacy Act.

Given S.B. 8's clarity, State Agency Defendants' reliance on the rule of construction that "a more specific statute will be given precedence over a more general one," is beside the point. State Defs.' MTD 6–7 n.3 (citation omitted). "Where possible, statutes must be read in harmony with one another so as to give meaning to each provision." *United States v. Marshall*, 798 F.3d 296, 309 (5th Cir. 2015) (internal quotation marks omitted); *see also Dallas Merch.'s & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 495 (Tex. 1993) ("Where possible, courts are to construe language used in statutes so as to harmonize all relevant laws, not create conflict."). If State Agency Defendants believe they have no authority to enforce S.B. 8 indirectly against Plaintiffs and their staff, they could of course provide specific, binding assurances to that effect, but their motion to dismiss only confirms that such assurances will not be forthcoming.

Further, State Agency Defendants equally err by suggesting in a footnote that *Pullman* abstention applies. Abstention under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), is allowed only "when a federal constitutional claim is premised on an unsettled question of state law" and state-court resolution of "the underlying state-law question [would] avoid the possibility of unnecessarily deciding a constitutional question." *Harris Cty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 83 (1975). As discussed above, S.B. 8 leaves in place the authority for State Agency Defendants to act. And even if S.B. 8 were ambiguous, abstention would be unwarranted here. Before abstaining, "a district court must carefully assess the totality of circumstances presented by a particular case. This requires a broad inquiry which should include consideration of the rights at

stake and the costs of delay pending state court adjudication." *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 145 F.3d 238, 243 (5th Cir. 1998). Here, "because of the delays inherent in the abstention process," it is a certainty "that valuable federal rights [would] be lost in the absence of expeditious adjudication in the federal court." *Moore*, 420 U.S. at 83. Moreover, any such proceeding would have to overcome S.B. 8's purported provision of official immunity for agency defendants sued in state court over S.B. 8's constitutionality, *see* S.B. 8, § 3 (adding Tex. Health & Safety Code § 171.211(b)), an S.B. 8 provision that State Agency Defendants ignore.

State Agency Defendants' unequivocal authority to enforce S.B. 8's fee-shifting provisions, as well as professional discipline and penalties based on violations of S.B. 8, provides a sufficient connection for the purpose of *Ex parte Young*.

**B.    *Ex parte Young* does not require Plaintiffs to demonstrate Defendants' willingness to enforce, but Defendants have nonetheless shown it.**

State Agency Defendants contend Plaintiffs have failed to show a "demonstrated willingness" on their part to enforce S.B. 8. State Defs.' MTD 7. They argue that their disciplinary authority is discretionary, and that Plaintiffs cannot show enforcement is "likely." *Id.* at 8.

While the Fifth Circuit's statements in this area have not always been clear, *see City of Austin*, 943 F.3d at 999 (discussing threads of circuit precedent); Br. in Opp., *City of Austin v. Paxton*, No. 19-1441, 2020 WL 7211771, at *14 (U.S. Dec. 2020) (Texas Attorney General stating that "[t]he Fifth Circuit's precedent has reflected confusion about the 'connection' test"), Plaintiffs need not show a "demonstrated willingness" on the part of a government official to enforce a challenged law before *Ex parte Young* may apply. As discussed above, *K.P.* and *Air Evac EMS* interpreted enforcement to mean some "compulsion or constraint." *K.P.*, 627 F.3 at 124; *Air Evac EMS*, 851 F.3d at 518. The lead plurality opinion in *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc), however, construed the required connection to mean a "particular duty to enforce

11

the statute in question and a demonstrated willingness to exercise that duty." *Id.* at 416. The latter standard was then repeated in *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014), but its inclusion there was dicta, as the case ultimately involved a situation in which the named defendant had not been tasked at all with enforcement, *see City of Austin*, 943 F.3d at 998 (discussing the rationale of *Morris*).

The Court need not resolve precisely where the Fifth Circuit's decisions stand because State Agency Defendants' portrayal of what constitutes a "demonstrated willingness" goes far beyond even the most stringent, non-binding formulation of that requirement in the Fifth Circuit. In *Okpalobi*, for example, the non-binding plurality opinion explained that *Ex parte Young* "requires that the defendant state official be acting, threatening to act, *or at least have the ability to act*" in the unconstitutional manner at issue. 244 F.3d at 421 (emphasis added). The "ability to engage in the unconstitutional conduct" makes the official "no longer a representative of the sovereign" and therefore subject to suit. *Id.*

Defendants' attempt to stretch *City of Austin* to support their misreading of the *Ex parte Young* standard finds no support in the facts of that case. *See* State Defs.' MTD 8. There, the City of Austin sued the Texas Attorney General over a state statute that prohibited Austin and other localities from requiring landlords to accept tenants with housing vouchers. 943 F.3d at 996. Although it was undisputed that the Attorney General had discretion to intervene in lawsuits brought by the City against landlords in an attempt to "enforce the supremacy of state law," the Court acknowledged that this was an "odd type of enforcement authority" that could only be raised "as a *defense* in a private suit." *Id.* at 1000 & n.1. And there were no penalties if the Attorney General enforced in this way: the City did not "face[] [any] consequences" if it attempted to force landlords to comply with its local ordinance. *Id.* at 1002. Under those circumstances, and where

the City could not show that the Attorney General had ever previously intervened in a matter with "any overlapping facts with this case or . . . even remotely related" to Austin's housing voucher ordinance, the Court concluded that there was no "compulsion or constraint" sufficient to satisfy *Ex parte Young*. *Id.* at 1001–02.

Here, by contrast, State Agency Defendants have both the ability and the duty to enforce S.B. 8 against Provider Plaintiffs through proceedings brought under other statutes clearly in their charge, which carry the threat of severe professional discipline as well as civil fines. *See supra* Background(A). And their longstanding defense of their enforcement authority under other abortion restrictions simply confirms the likelihood of enforcement here. *See, e.g.*, *In re Abbott*, 956 F.3d 696 (5th Cir. 2020), *vacated as moot by Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021) (mem.) (COVID abortion ban); *Whole Woman's Health v. Paxton*, 978 F.3d 896 (5th Cir. 2020), *reh'rg en banc granted, vacated by* 978 F.3d 974 (5th Cir. 2020) (mem.) (ban on common method of abortion); *see also supra* p. 6. State Agency Defendants also retain the "ability to act" in an unconstitutional manner by seeking attorney's fees and costs against all Plaintiffs under S.B. 8's Section 4. *Okpalobi*, 244 F.3d at 421 (plurality opinion). Plaintiffs' claims against State Agency Defendants are thus proper under *Ex parte Young*, even under the more stringent standard wrongly advanced by Defendants.

## II.   PLAINTIFFS HAVE STANDING TO SUE STATE AGENCY DEFENDANTS

### A.   All Plaintiffs have Article III standing to challenge S.B. 8's fee-shifting provision as applied to State Agency Defendants.

All Plaintiffs have standing to bring their claims against the fee-shifting provision in S.B. 8's Section 4, which is designed to deter any challenges to abortion restrictions. As Plaintiffs have demonstrated, they are frequently forced to resort to the courts and bring claims against State

13

Agency Defendants over the legality of abortion restrictions. *See supra* p. 6 (record evidence and case showing Plaintiffs' extensive abortion litigation against Defendants).

Defendants argue that Plaintiffs have not shown injury because "[n]o State Agency Defendant has sought an award of attorney's fees under S.B. 8's provisions" yet. State Defs.' MTD 13. But the credible threat of a future action for fees under S.B. 8's draconian fee-shifting provision will *immediately* chill Plaintiffs' First Amendment rights to free speech and to petition, and thus deter Plaintiffs from bringing claims that challenge Texas abortion restrictions. *See* Compl. ¶ 162; *see also id.* ¶¶ 11, 86, 108, 155–61; Gilbert Decl. ¶ 38; Ferrigno Decl. ¶ 33; Klier Decl. ¶ 18; Lambrecht Decl. ¶¶ 30–31; Linton Decl. ¶ 28; Miller Decl. ¶ 32; Braid Decl. ¶ 22; Rosenfeld Decl. ¶ 11; Barraza Decl. ¶¶ 24–25; Sadler Decl. ¶ 18; Zamora Decl. ¶ 18; Jones Decl. ¶ 24; Rupani Decl. ¶¶ 18–19; Conner Decl. ¶¶ 15–16; Williams Decl. ¶¶ 15–16. An order from this Court declaring S.B. 8's fee-shifting provision unlawful and enjoining its enforcement by State Agency Defendants would redress those injuries.

Defendants' argument to the contrary rests on a misunderstanding of the basis for Plaintiffs' standing. Defendants cite cases holding that a plaintiff's injury for purposes of Article III cannot stem from a "byproduct" of the litigation, such as an award of fees or the costs of bringing the suit. State Defs.' MTD 14 (citing *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772–73 (2000); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998); *Diamond v. Charles*, 476 U.S. 54, 70 (1986)). But where a fee award is related to the "statute whose constitutionality is at issue," the plaintiff's injury is not a byproduct of the suit, and the plaintiff does have standing. *Diamond*, 476 U.S. at 70; *cf. Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 341 (5th Cir. 2012) ("The interest at issue (mandatory attorneys' fees and costs) is related to this injury-in-fact because the plain language and undisputed purpose of

the mandatory attorneys' fees and costs provision (to discourage potential defendants from violating antitrust laws) helps prevent the violation of the legally protected right . . . .").

Here, Plaintiffs' basis for standing does not stem solely from a possible future award of fees to Defendants. Instead, Plaintiffs also base their standing on the immediate injury that arises from the chilling effect of S.B. 8's fee-shifting provision on their constitutionally protected activities, since that provision attempts to insulate abortion restrictions from judicial review. Plaintiffs thus have standing to bring their claims against State Agency Defendants.

**B.    Provider Plaintiffs have Article III and, to the extent necessary, third-party standing to bring their remaining claims against State Agency Defendants.**

**1.    *Article III:*** Just as they satisfy *Ex parte Young*, the Provider Plaintiffs also have Article III standing to sue State Agency Defendants on their remaining claims involving S.B. 8's restrictions on providing or assisting with abortions after six weeks of pregnancy. *Air Evac EMS*, 851 F.3d at 520 (recognizing "the significant overlap between Article III jurisdiction, *Ex parte Young*, and equitable relief"); *see also City of Austin*, 943 F.3d at 1002; *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 n.5 (5th Cir. 2015). State Agency Defendants nevertheless argue that administrative actions related to S.B. 8's restrictions against Provider Plaintiffs and their staff are discretionary, and therefore Plaintiffs have not shown an imminent and ripe injury from those portions of S.B. 8. This argument is doubly wrong.

*First*, as outlined above, such actions do not appear to be wholly discretionary. *See supra* Background(A). Moreover, State Agency Defendants' suggestion that a plaintiff must show with certainty that an enforcement proceeding *will* be brought in order to have standing is wrong. The Supreme Court has long recognized that a plaintiff suffers injury-in-fact for purposes of "bring[ing] a preenforcement suit when he has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists *a*

*credible threat* of prosecution thereunder." *Susan B. Anthony List v. Driehaus* ("*SBA List*"), 573 U.S. 149, 160 (2014) (quotation marks omitted) (emphasis added); *see also id.* at 152–53 (making clear that "prosecutions" in this sense include administrative actions). A credible threat of enforcement exists when it is not "imaginary or wholly speculative." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979). In particular, a plaintiff has "some reason in fearing prosecution" when "the State has not disavowed any intention" of enforcement against the plaintiff. *Id.*; *see also SBA List*, 573 U.S. at 165.

Provider Plaintiffs' injuries are sufficiently imminent to establish standing. Provider Plaintiffs currently provide abortions that S.B. 8 prohibits: if Provider Plaintiffs stop providing abortions prohibited by S.B. 8, their patients will suffer immediate injury, and if instead Provider Plaintiffs violate S.B. 8, State Agency Defendants are then authorized to take enforcement action against them and the staff on whom they depend. Provider Plaintiffs' and their patients' injuries are thus neither imaginary nor speculative but "*certainly* impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). That conclusion is bolstered by the fact that State Agency Defendants have "not disavowed any intention" to take enforcement action against the Provider Plaintiffs and their staff for providing abortions in violation of S.B. 8. *Babbitt*, 442 U.S. at 302.

Were State Agency Defendants' contrary position correct, Plaintiffs would need to violate S.B. 8 and await enforcement proceedings before they could sue. But in *MedImmune, Inc. v. Genentech, Inc.*, the Supreme Court made clear "that, where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced. The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction." 549

U.S. 118, 128–29 (2007) (emphasis omitted); *see also, e.g.*, *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 542 (5th Cir. 2008) (holding that a plaintiff has standing to seek declaratory relief based on "actual present harm or a significant possibility of future harm" (quoting *Bauer v. Texas*, 341 F.3d 352, 357–58 (5th Cir. 2003)).

*Second*, State Agency Defendants are wrong to contend that Provider Plaintiffs' claims are not ripe with respect to TMB because they turn on "multiple future events." State Defs.' MTD 12–13. The Provider Plaintiffs' injuries are not so contingent. TMB need not wait for a citizen complaint to discipline a physician who violates S.B. 8. Indeed, State Agency Defendants do not dispute that physicians or their insurers must report health-care-related lawsuits to TMB. *See supra* Background(A). In addition, even if TMB had to await a complaint, "the fact that authority to file a complaint with the [agency] is not limited to a prosecutor or an agency" bolsters the credibility of threatened enforcement even if Provider Plaintiffs did not, in fact, violate S.B. 8. *SBA List*, 573 U.S. at 164 (emphasizing that statute allowed "any person" to file a complaint). That fact applies with special force to the Provider Plaintiffs. They already face harassment by "[i]ndividuals opposed to abortion" who "regularly file false complaints with licensing agencies to trigger government investigations." Compl. ¶ 104; *see also* Linton Decl. ¶¶ 13, 17; Ferrigno Decl. ¶ 10; Kumar Decl. ¶ 34.

   2.   ***Third-Party Standing:*** State Agency Defendants argue that Provider Plaintiffs lack third-party standing to vindicate the rights of their staff who face credible threats of administrative proceedings initiated by Defendants, as well as the private enforcement actions that S.B. 8

authorizes.[3] This argument, which involves a prudential, not jurisdictional, consideration, *see Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004), is largely irrelevant and, in any event, unavailing.[4]

*First*, many of Provider Plaintiffs' claims against State Agency Defendants do not depend on the licenses of third-party staff. The organizational Provider Plaintiffs are themselves threatened with adverse licensing action by HHSC and TBP. *See supra* Background(A). Moreover, three of the plaintiffs are clinic staff members, including physicians who could face adverse action by TMB and the Attorney General for violating S.B. 8. *See* Gilbert Decl. ¶¶ 1, 35; Kumar Decl. ¶¶ 2, 34; Sadler Decl. ¶¶ 1, 7. Accordingly, at least one Provider Plaintiff has standing to seek relief in its own right against each of the State Agency Defendants other than TBN. And it is well settled that, where one plaintiff has standing to assert a claim for declaratory or injunctive relief, a federal court need not consider the standing of other plaintiffs asserting that same claim. *See, e.g.*, *Horne v. Flores*, 557 U.S. 433, 446 (2009); *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 189 n.7 (2008); *Rumsfeld v. Forum for Acad. & Inst'l Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006). The one-plaintiff rule, which promotes judicial economy, has been faithfully applied by the Fifth Circuit, including in abortion cases. *See, e.g.*, *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 748 F.3d 583, 589 (5th Cir. 2014).

*Second*, to the extent required, the organizational Provider Plaintiffs *do* have third-party standing to bring claims on behalf of their staff, as demonstrated by decades of binding precedent and extensive record evidence. As Defendants concede, it is well established that third-party standing is proper where, among other circumstances, "'the party asserting the right has a close

---

[3] Defendants' assertion that "there is no allegation [Plaintiffs] employ pharmacists" is simply wrong. *See* Compl. ¶¶ 25, 29–32 (Provider Plaintiffs suing on behalf of pharmacists who are on staff); *see also* Lambrecht Decl. ¶¶ 7–8; Linton Decl. ¶ 7; Barraza Decl. ¶¶ 3, 7.

[4] Notably, State Agency Defendants do not contest that Plaintiffs' have third-party standing to vindicate the rights of the patients.

relationship with the person who possesses the right' and 'there is a hindrance to the possessor's ability to protect his own interests.'" State Defs.' MTD 18 (quoting *Kowalski*, 543 U.S. at 130). Closeness for these purposes focuses on shared interests and the likelihood of effective advocacy. *See, e.g.*, *Campbell v. Louisiana*, 523 U.S. 392, 397–98 (1998) (third-party standing where defendant and excluded jurors had "common interest in eliminating discrimination" and the defendant had "an incentive to serve as an effective advocate" for the jurors' rights).

The Fifth Circuit and other courts have thus held that employers may properly assert the rights of their employees where there is a congruence of interests. *Hang On, Inc. v. City of Arlington*, 65 F.3d 1248, 1252 (5th Cir. 1995); *see also United States v. Westinghouse Elec. Corp.*, 638 F. 2d 570, 574 (3d Cir. 1980) (finding employer had standing to assert employees' privacy interests in attempt to quash subpoena for employees' medical records); *Gajon Bar & Grill, Inc. v. Kelly*, 508 F.2d 1317, 1322 (2d Cir. 1974) (noting standing of bar to assert First Amendment rights of its employees); *J.L. Spoons, Inc. v. City of Brunswick*, 49 F. Supp. 2d 1032, 1043 (N.D. Ohio 1999) (finding same). Here, the organizational Provider Plaintiffs and their physicians, nurses, and other staff are fully aligned, as evidenced by the fact that individual physicians and a clinic staff member are included among the plaintiffs who have brought this case: all seek to avoid S.B. 8's devastating penalties, including adverse licensing actions, which will force them to turn away patients and, in many cases, close clinic doors permanently. *See, e.g.*, Lambrecht Decl. ¶¶ 13, 21; Miller Decl. ¶¶ 21–22; Sadler Decl. ¶ 19; Kumar Decl. ¶ 34; Braid Decl. ¶ 10; Rosenfeld Decl. ¶ 6. Closeness is readily satisfied.

The record evidence likewise demonstrates multiple barriers that impede every single member of Provider Plaintiffs' staff from bringing this litigation directly. As an initial matter, the long history of anti-abortion violence and harassment in this country deters many abortion

providers and clinic staff from being public about their work. *See, e.g.*, *Planned Parenthood Se., Inc. v. Strange*, 33 F. Supp. 3d 1330, 1333 (M.D. Ala. 2014); *Planned Parenthood of Wis., Inc. v. Van Hollen*, 94 F. Supp. 3d 949, 982–83 (W.D. Wis. 2015), *aff'd sub nom. Planned Parenthood of Wis., Inc. v. Schimel*, 806 F.3d 908 (7th Cir. 2015); *accord* Linton Decl. ¶ 17; Barraza Decl. ¶ 17. That two physicians and one clinic staff member were willing to incur this risk by becoming plaintiffs in this case does not mean that others could reasonably make the same decision for themselves and their families.

S.B. 8 also imposes unique burdens on Plaintiffs that further hinder physicians' and clinic staff's participation in litigation. Any publicity makes abortion providers and supporters more likely to be targeted in costly and abusive S.B. 8 enforcement lawsuits. *See, e.g.*, Lambrecht Decl. ¶ 19; Linton Decl. ¶ 19; Barraza Decl. ¶ 16.

Although Defendants cite *MD II Entertainment, Inc. v. City of Dallas, Texas*, there the plaintiffs gave "no reason to think that there is any practical obstacle to its [employees] asserting their own rights," 28 F.3d 492, 497 (5th Cir. 1994). Here, there are abundant and compelling reasons why it is proper for the Provider Plaintiffs to stand in the shoes of their staff. Defendants' argument to the contrary is unavailing.

## CONCLUSION

For all these reasons, the Court should deny State Agency Defendants' motion to dismiss.

Dated:  August 11, 2021

Respectfully submitted,

/s/ Marc Hearron

Christie Mason Hebert
JOHNS & HEBERT PLLC
2028 East Ben White Blvd
Suite 240-1000
Austin, TX 78741
(512) 399-3150
chebert@johnshebert.com

*Attorneys for All Plaintiffs*

Marc Hearron*
CENTER FOR REPRODUCTIVE RIGHTS
1634 Eye St., NW, Suite 600
Washington, DC 20006
(202) 524-5539
mhearron@reprorights.org

Molly Duane*
Kirby Tyrrell*
Melanie Fontes*
CENTER FOR REPRODUCTIVE RIGHTS
199 Water Street, 22nd Floor
New York, NY 10038
(917) 637-3631
mduane@reprorights.org
ktyrrell@reprorights.org
mfontes@reprorights.org

Jamie A. Levitt*
J. Alexander Lawrence*
MORRISON & FOERSTER LLP
250 W. 55th Street
New York, NY 10019
(212) 468-8000
jlevitt@mofo.com
alawrence@mofo.com

*Attorneys for Whole Woman's Health, Whole
Woman's Health Alliance, Marva Sadler,
Southwestern Women's Surgery Center,
Allison Gilbert, M.D., Brookside Women's
Medical Center PA d/b/a Brookside Women's
Health Center and Austin Women's Health
Center, Alamo City Surgery Center PLLC*

Julie Murray*
Richard Muniz*
PLANNED PARENTHOOD FEDERATION OF AMERICA
1110 Vermont Ave., NW Ste. 300
Washington, DC 20005
(202) 973-4997
julie.murray@ppfa.org
richard.muniz@ppfa.org

*Attorneys for Planned Parenthood of Greater Texas
Surgical Health Services, Planned Parenthood South
Texas Surgical Center, Planned Parenthood Center
for Choice, and Dr. Bhavik Kumar*

Julia Kaye*
Brigitte Amiri*
Chelsea Tejada*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2633
jkaye@aclu.org
bamiri@aclu.org
ctejada@aclu.org

Lorie Chaiten*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
1640 North Sedgwick Street
Chicago, IL 60614
(212) 549-2633
rfp_lc@aclu.org

Adriana Pinon (Texas Bar No. 24089768)
David Donatti (Texas Bar No. 24097612)
Andre Segura (Texas Bar No. 24107112)
ACLU FOUNDATION OF TEXAS, INC.
5525 Katy Freeway, Suite 350
Houston, TX 77077
(713) 942-8146
apinon@aclutx.org
ddonatti@aclutx.org
asegura@aclutx.org

*Attorneys for Houston Women's Clinic*

*d/b/a Alamo Women's Reproductive Services,*
*Houston Women's Reproductive Services,*
*Reverend Daniel Kanter, and Reverend Erika*
*Forbes*

Rupali Sharma*
LAWYERING PROJECT
197 Pine Street, Apt. 23
Portland, ME 04102

Stephanie Toti
LAWYERING PROJECT
41 Schermerhorn Street, No. 1056
Brooklyn, NY 11201

*Attorneys for The Afiya Center, Frontera Fund, Fund*
*Texas Choice, Jane's Due Process, Lilith Fund for*
*Reproductive Equity, North Texas Equal Access Fund*

* *Admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I certify that, on the 11th day of August, 2021, a copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Marc Hearron*