**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| WHOLE WOMAN'S HEALTH, *et al.*,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>AUSTIN REEVE JACKSON, in his official capacity as Judge of the 114th District Court, and on behalf of a class of all Texas judges similarly situated, *et al.*,<br><br>    *Defendants*. | Civil Action No.: 1:21-cv-00616-RP |

**PLAINTIFFS' OPPOSITION TO DEFENDANT MARK LEE DICKSON'S
MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ......................................................................................................... 1

BACKGROUND .......................................................................................................... 2

ARGUMENT ............................................................................................................... 6

I.      Plaintiffs Have Standing to Bring Claims Against Defendant Dickson Relating to
        S.B. 8's Ban and Enforcement Mechanism ...................................................... 6

        A.      Dickson's credible threat to sue Plaintiffs imposes an injury that satisfies
                Article III. ................................................................................................ 6

        B.      Plaintiffs' injury is caused in part by Dickson and would be redressed by
                declaratory and injunctive relief against him. ........................................ 9

II.     Plaintiffs Have Standing to Bring Claims Against Dickson over S.B. 8's
        Draconian Fee-Shifting Provision ................................................................... 12

III.    Defendant Dickson Is Properly Sued Under Section 1983 as a Private Individual
        Acting Under Color of State Law .................................................................... 13

IV.     Defendant Dickson Lacks Third-Party Standing to Assert Defenses for
        Defendants Jackson and Clarkston .................................................................. 17

V.      Dickson's Severability and Other Arguments Are Baseless............................ 18

CONCLUSION .......................................................................................................... 19

CERTIFICATE OF SERVICE ..................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Cases** **_Page(s)_**

*Allstate Ins. Co. v. Abbott,*
   495 F.3d 151 (5th Cir. 2007) ...............................................................................................11

*Ayotte v. Planned Parenthood of N. New England,*
   546 U.S. 320 (2006) ............................................................................................................18

*Babbitt v. United Farm Workers Nat'l Union,*
   442 U.S. 289 (1979) ..........................................................................................................7, 8

*Berry v. Jefferson Par.,*
   326 F. App'x 748 (5th Cir. 2009) (per curiam) ...................................................................17

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,*
   531 U.S. 288 (2001) ............................................................................................................15

*Bryant v. Woodall,*
   1 F.4th 280 (4th Cir. 2021), *as amended* (June 23, 2021) ...................................................9

*Christiansburg Garment Co. v. EEOC,*
   434 U.S. 412 (1978) ............................................................................................................13

*City of Austin v. Paxton,*
   943 F.3d 993 (5th Cir. 2019) ................................................................................................7

*In re Clarkston,*
   No. 21-50708 (5th Cir. Aug. 7, 2021) ..................................................................................6

*Conn v. Gabbert,*
   526 U.S. 286 (1999) ............................................................................................................17

*Craig v. Boren,*
   429 U.S. 190 (1976) ............................................................................................................17

*Daigle v. Opelousas Health Care, Inc.,*
   774 F.2d 1344 (5th Cir. 1985) ............................................................................................13

*Dickson v. Afiya Ctr.,*
   No. 05-20-00988-CV, 2021 WL 3412177 (Tex. Ct. App. 5th Dist. Aug. 4,
   2021) ................................................................................................................................4, 13

*Doe v. Bolton,*
   410 U.S. 179 (1973) ..............................................................................................................9

*Dombrowski v. Pfister,*
   380 U.S. 479 (1965) ............................................................................................................14

*Edmonson v. Leesville Concrete Co., Inc.*,
    500 U.S. 614 (1991)................................................................................16

*Finch v. Miss. State Med. Ass'n, Inc.*,
    585 F.2d 765 (5th Cir. 1978) ..............................................................15

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992)................................................................................11

*Green Party of Tenn. v. Hargett*,
    791 F.3d 684 (6th Cir. 2015) ..................................................................8

*Hawkins v. N.C. Dental Soc'y*,
    355 F.2d 718 (4th Cir. 1966) ..............................................................15

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)................................................................................12

*Holder v. Humanitarian L. Project*,
    561 U.S. 1 (2010)....................................................................................8

*Hollis v. Itawamba Cty. Loans*,
    657 F.2d 746 (5th Cir. Unit A 1981) ..................................................16

*Howery v. Allstate Ins. Co.*,
    243 F.3d 912 (5th Cir. 2001) ..............................................................18

*Jackson v. Metro. Edison Co.*,
    419 U.S. 345 (1974)................................................................................14

*June Med. Servs. L.L.C. v. Russo*,
    140 S. Ct. 2103 (2020)..........................................................................17

*K.P. v. LeBlanc*,
    627 F.3d 115 (5th Cir. 2010) ........................................................10, 11

*K.P. v. LeBlanc*,
    729 F.3d 427 (5th Cir. 2013) ..........................................................9, 11

*Kesler v. King*,
    29 F. Supp. 2d 356 (S.D. Tex. 1998) ..................................................15

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004)................................................................................17

*Lugar v. Edmundson Oil Company, Inc.*,
    457 U.S. 922 (1982)................................................................................16

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)................................................................6

*Manhattan Cmty. Access Corp. v. Halleck*,
  139 S. Ct. 1921 (2019)..........................................................14

*Massachusetts v. EPA*,
  549 U.S. 497 (2007)..............................................................10

*McCartney v. First City Bank*,
  970 F.2d 45 (5th Cir. 1992) ...................................................16

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)................................................................9

*Nixon v. Condon*,
  286 U.S. 73 (1932)...........................................................14, 15

*Okpalobi v. Foster*,
  244 F.3d 405 (2001) (en banc).................................................9

*Palm v. Marr*,
  174 F. Supp. 2d 484 (N.D. Tex. 2001) ...................................15

*Perez v. Ledesma*,
  401 U.S. 82 (1971)................................................................14

*Planned Parenthood of Se. Pa. v. Casey*,
  505 U.S. 833 (1992)..............................................................16

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. City of Lubbock*,
  No. 5:21-CV-114-H, 2021 WL 2385110 (N.D. Tex. June 1, 2021), *mot. for
  reconsideration filed* (N.D. Tex. June 29, 2021) .......................3

*Pruett v. Harris Cty. Bail Bond Bd.*,
  356 S.W.3d 103 (Tex. App. 2011)..........................................12

*Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urb. Dev.*,
  980 F.2d 1043 (5th Cir. 1993) ...............................................13

*Roe v. Wade*,
  410 U.S. 113 (1973)....................................................11, 13, 14

*Rosborough v. Mgmt. & Training Corp.*,
  350 F.3d 459 (5th Cir. 2003) (per curiam)..........................14, 15

*Rose v. Doctors Hosp.*,
  801 S.W.2d 841 (Tex. 1990)..................................................18

*Seals v. McBee,*
    898 F.3d 587 (5th Cir. 2018), *as revised* (Aug. 9, 2018)........................................................8

*Smith v. Allwright,*
    321 U.S. 649 (1944)..........................................................................................................14, 15

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016).............................................................................................................6

*State, Cty. of Bexar v. Southoaks Dev. Co.,*
    920 S.W.2d 330 (Tex. App. 1995)........................................................................................12

*Steffel v. Thompson,*
    415 U.S. 452 (1974)..............................................................................................................11

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014)............................................................................................................7, 8

*Terry v. Adams,*
    345 U.S. 461 (1953)........................................................................................................15, 16

*Tex. Ass'n of Mfs. v. U.S. Consumer Prot. Safety Comm'n,*
    989 F.3d 368 (5th Cir. 2021) ...............................................................................................11

*Vantage Trailers, Inc. v. Beall Corp.,*
    567 F.3d 745 (5th Cir. 2009) .................................................................................................8

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP,*
    549 F.3d 100 (2d Cir. 2008)..................................................................................................17

*Wyatt v. Cole,*
    994 F.2d 1113 (5th Cir. 1993) ..............................................................................................16

**Statutes**

42 U.S.C. § 1983........................................................................................................ *passim*

42 U.S.C. § 1988........................................................................................................1, 12, 13

**Other Authorities**

Wright and Miller, 13D Fed. Prac. & Proc. Juris. § 3573.2 (3d ed.).............................................15

Mark Lee Dickson, Facebook (June 1, 2021 2:07 PM),
    https://www.facebook.com/markleedickson/videos/509724865/videos/
    10159259661094866/ ...........................................................................................................3

# INTRODUCTION

Plaintiffs, who are Texas abortion providers and groups and individuals who support abortion patients, filed this action against Defendant Mark Lee Dickson (among others) because the Texas Legislature deputized him to enforce Texas Senate Bill 8, 87th Leg., Reg. Sess. (Tex. 2021) ("S.B. 8" or "the Act"), the law challenged in this case. Plaintiffs face a credible threat that he will submit enforcement petitions against them for providing or assisting with abortions that are constitutionally protected under federal law, but restricted by S.B. 8. *See* Pls.' Mot. for Summ. J. & Mem. of Law in Supp. ("MSJ") 22–24, ECF No. 19. They also face a credible threat that, if Plaintiffs do not prevail on every claim against Dickson in this case, Dickson will seek abusive attorney's fees and costs from Plaintiffs that are forbidden by federal civil-rights law and the First Amendment, yet authorized by S.B. 8.

The Court should deny Dickson's motion to dismiss. Dickson's arguments that Plaintiffs lack standing to pursue claims against him are foreclosed by Supreme Court precedent. As to the Act's restriction on providing and assisting with abortion, Article III does not require that a litigant declare their intent to violate the law, or actually do so, in order to seek pre-enforcement judicial review of an unconstitutional mandate. U.S. Const. art. III. Nor must Plaintiffs show that injunctive and declaratory relief against Dickson would redress their *every* injury attributable to S.B. 8— though such relief would go a significant way. It is enough that this relief would address the clear and irreparable harm that Dickson's threatened enforcement actions will impose on Plaintiffs, their staff, and their patients—not to mention such relief would also stand as a warning to other would-be enforcers and the State of Texas that S.B. 8 is patently unconstitutional.

Plaintiffs likewise have standing to pursue claims against Dickson with respect to S.B. 8's draconian attorney's-fee provision. Indeed, he makes clear that he *will* seek fees should Plaintiffs

not prevail on any one of their claims, and although he suggests that fees under Section 1988 would instead be available to him because he views Plaintiffs' claims as unfounded, that assertion is plainly wrong.

Dickson's related suggestion that Plaintiffs cannot assert Section 1983 claims against him based on his submission of S.B. 8 enforcement petitions is likewise incorrect. Section 1983 provides a cause of action against any person, including private individuals acting under color of state law, who deprives another person of their federal constitutional rights. Under S.B. 8, Dickson is performing a traditional state function and using the courts to carry out his unconstitutional conduct. Under these circumstances, precedent is clear that Plaintiffs may seek relief against him under Section 1983.

Finally, the majority of Dickson's other objections pertain not to his own jurisdictional defenses, but to jurisdictional defenses that purportedly belong to Judge Jackson and Ms. Clarkston, and to non-jurisdictional quibbles with Plaintiffs' pleading—none of which come close to warranting dismissal. Dickson plainly lacks third-party standing to bring any defenses on behalf of these other defendants, and even as to the jurisdictional issues, would lack Article III standing to appeal on them. Moreover, contrary to Dickson's suggestion, Plaintiffs need not demonstrate standing with respect to S.B. 8 provisions that they do not directly challenge. Whether these provisions are ultimately severable is a question related to the scope of an appropriate remedy, not to the merits of Plaintiffs' claims. As detailed below, Dickson's motion to dismiss fails on all counts and should be rejected.

## BACKGROUND

By his own admission, Defendant Dickson is a "prospective plaintiff[]" in private enforcement lawsuits under S.B. 8. *See* Def. Mark Lee Dickson's Mot. to Dismiss for Lack of Subject-Matter Jurisdiction ("Dickson MTD") 1, ECF No. 50. He concedes that S.B. 8 grants him

a "state-law right to sue abortion providers and their enablers," including Plaintiffs, and he argues that Plaintiffs' request for relief would "strip" him of that right. *Id.*

As the Director of Right to Life East Texas, Dickson has pushed for the adoption of state and local laws that impose liability on abortion providers and individuals who assist in the provision or obtainment of constitutionally protected abortion. Compl. ¶ 50; MSJ 19. His efforts were successful in the City of Lubbock, Texas, which enacted an ordinance earlier this year prohibiting abortions within the city. Lambrecht Decl. ¶ 14. Plaintiff Planned Parenthood of Greater Texas Surgical Health Services ("PPGTSHS") operates a licensed abortion facility in Lubbock. Compl. ¶ 29; Lambrecht Decl. ¶¶ 2, 14. After the ordinance became effective, Mr. Dickson posted on Facebook that "[i]f abortions do end up being performed this week or next week or any week thereafter, I will be suing Planned Parenthood for the murder of unborn children under the provisions allowed in the Lubbock Ordinance Outlawing Abortion." Ex. 1 to Lambrecht Decl., Mark Lee Dickson, Facebook (June 1, 2021, 7:45 AM). He also posted a video of himself and another individual calling PPGTSHS's Lubbock health center and using misleading tactics to test whether the center would schedule an abortion despite the ordinance's ban. Mark Lee Dickson, Facebook (June 1, 2021, 2:07 PM), https://www.facebook.com/markleedickson/videos/ 10159259661094866.

Such threats forced PPGTSHS to stop providing abortions in Lubbock while it challenges the Lubbock ordinance in another federal lawsuit. Lambrecht Decl. ¶ 15; *PPGTSHS v. City of Lubbock*, No. 5:21-CV-114-H, 2021 WL 2385110 (N.D. Tex. June 1, 2021) (dismissing case for lack of jurisdiction), *mot. for reconsideration filed* (N.D. Tex. June 29, 2021), ECF No. 51; *see also* Dickson Decl. ¶ 5 (stating that the "mere threat of civil lawsuits" caused PPGTSHS to cease providing abortions in Lubbock and that "Planned Parenthood complied immediately when the

Lubbock ordinance took effect on June 1, 2021, rather than expose itself and its employees and volunteers to ruinous civil liability and potential criminal prosecution").

Defendant Dickson has been a proponent of S.B. 8 and has trumpeted it as "mak[ing] everyone in Texas an attorney general" to "go[] after" abortion providers for purposes of intimidation. Mark Lee Dickson, Facebook (May 5, 2021, 11:31 AM), *attached hereto as* Ex. 1 at 3; *see also* Conner Decl. ¶ 14; Williams Decl. ¶ 14. Dickson has also made clear his intent to conspire with other individuals to bring enforcement actions under S.B. 8 against Plaintiffs. Mark Lee Dickson, Facebook (Mar. 29, 2021, 11:15 PM), *attached hereto as* Ex. 2 at 7 ("[B]ecause of [S.B. 8] you will be able to bring many lawsuits later this year against any abortionists who are in violation of this bill. Let me know if you are looking for an attorney to represent you if you choose to do so. Will be glad to recommend some."); *id.* at 4 (stating with respect to the then-pending S.B. 8 that "because of this bill you will be able to bring many lawsuits later this year against any at WWH [i.e., Plaintiff Whole Woman's Health] who are in violation of this law"); *see also* Dickson Decl. ¶ 8 (declaring personal knowledge of "many" "individuals who intend to sue the abortion-provider plaintiffs and the abortion-fund plaintiffs if they defy [S.B.] 8").

Additionally, Dickson has drafted local ordinances branding the Plaintiffs as "criminal organizations" and seeking to bar them from operating in towns that adopt the ordinances. Conner Decl. ¶ 14; Jones Decl. ¶ 25; Williams Decl. ¶ 14; *see also* Mark Lee Dickson, Facebook (June 11, 2019, 7:58 PM), *attached hereto as* Ex. 3 (announcing that "[a]ll organizations that perform abortions and assist others in obtaining abortions (including Planned Parenthood and any of its affiliates, Jane's Due Process, The Afiya Center, The Lilith Fund for Reproductive Equality [sic], . . . Whole Woman's Health and Woman's Health Alliance, Texas Equal Access Fund, and others like them) are now declared to be criminal organizations in Waskom, Texas"); *Dickson v. Afiya*

*Ctr.*, No. 05-20-00988-CV, 2021 WL 3412177, at *13 (Tex. Ct. App. 5th Dist. Aug. 4, 2021) (describing Dickson's targeting of Plaintiffs The Afiya Center and Texas Equal Access Fund as "criminal organizations whose conduct amounts to murder" and permitting defamation claims against Dickson to proceed).

Dickson has also demonstrated a willingness to target individual staff members and even patients who enter health centers that provide abortion, including by posting pictures of their license plates online. *See* Mark Lee Dickson, Facebook (Apr. 6, 2019, 8:50 PM), *attached hereto as* Ex. 4; Mark Lee Dickson, Facebook (Mar. 29, 2019, 2:05 PM), *attached hereto as* Ex. 5. He has taken other steps to purportedly monitor abortion providers' compliance with abortion restrictions. *See* Mark Lee Dickson, Facebook (Apr. 6, 2020, 12:26 PM), attached hereto as Ex. 6 (post regarding compliance by Plaintiff Houston Women's Clinic with an executive order prohibiting abortion early in the COVID pandemic); Mark Lee Dickson, Facebook (Mar. 23, 2020, 4:49 PM), *attached hereto as* Ex. 7 (post regarding same executive order and stating "what we need to be doing is documenting, compiling, and reporting evidence [that Dickson viewed as indicating clinics' non-compliance] . . . . We have several people high up working on this, but what we really need is very detailed and accurate information. If you would like to help me with this process, feel free to reach out.").

Dickson has endorsed the use of unconstitutional abortion restrictions to impose irreparable harm on abortion providers, forcing them to shut down before they can vindicate their patients' constitutional rights. His willingness to use such unconstitutional tactics to harm abortion providers and supporters is, therefore, evident. Dickson has lauded, for example, that two 2013 abortion restrictions later ruled unconstitutional forced roughly half of the abortion providers in Texas to close, and many never reopened. *See* Ex. 8, Mark Lee Dickson, Facebook (Nov. 27, 2019,

12:02 AM) ("We went from over 40 baby murdering facilities in the State of Texas to less than 20 . . . in just a few years. Even with the win for abortion advocates with *Whole Woman's Health v. Hellerstedt*, how many . . . facilities have opened back up? Not very many at all.").

As a defendant in this case, Dickson has not disclaimed future suit against any of the Plaintiffs if they violate S.B. 8. To the contrary, he states that he has "no intention of suing any of the plaintiffs under the private civil-enforcement lawsuits described in [S.B.] 8, *because* [he] expect[s] each of the plaintiffs to comply with the Texas Heartbeat Act when it takes effect on September 1, 2021" in light of the "threat of civil lawsuits." Dickson Decl. ¶ 5 (emphasis added). Should Plaintiffs violate S.B. 8, he expressly leaves open his authority "to bring a civil-enforcement lawsuit under [S.B.] 8." *Id.* ¶ 12. Indeed, in Dickson's Fifth Circuit mandamus filing in this case, Dickson argued that he has third-party standing to seek mandamus relief on behalf of Defendants Judge Jackson and Ms. Clarkston because the relief sought "will strip [him] . . . of [his] state-law right to sue abortion providers and their enablers." Pet. for Writ of Mandamus ("Pet."), at 7 n.6, *In re Clarkston*, No. 21-50708 (5th Cir. Aug. 7, 2021); *see also id.* (describing Plaintiffs' complaint in this case as "alleging a 'credible threat' that that [sic] Mr. Dickson will sue them when the Texas Heartbeat Act takes effect" (citing Compl. ¶¶ 17, 50)).

**ARGUMENT**

**I.   PLAINTIFFS HAVE STANDING TO BRING CLAIMS AGAINST DEFENDANT DICKSON RELATING TO S.B. 8'S BAN AND ENFORCEMENT MECHANISM**

Article III standing has three elements: a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the [defendant's] challenged conduct," and "(3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of*

*Wildlife*, 504 U.S. 555, 560–61 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

> **A.     Dickson's credible threat to sue Plaintiffs imposes an injury that satisfies Article III.**

A plaintiff suffers injury-in-fact for purposes of "bring[ing] a preenforcement suit when he has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus* ("*SBA List*"), 573 U.S. 149, 160 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). A credible threat of enforcement exists when it is not "imaginary or wholly speculative." *Babbitt*, 442 U.S. at 302; *see also City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019) (recognizing that a plaintiff suffers injury-in-fact to seek declaratory relief when there is "actual present harm or a *significant possibility of future harm*").

Plaintiffs have readily established a credible threat of enforcement actions against them by Dickson. Plaintiffs provide and assist with abortions prohibited by S.B. 8 and would continue to do so but for the law's restrictions. *See* Compl. ¶¶ 2, 9, 36, 67, 102–03, 110–11; Gilbert Decl. ¶¶ 13–14, 34–35; Kumar Decl. ¶¶ 4, 24, 34; Klier Decl. ¶¶ 10–12; Lambrecht Decl. ¶¶ 7, 9, 11– 14; Linton Decl. ¶¶ 6, 8; Miller Decl. ¶¶ 8–10, 14, 21–23; Braid Decl. ¶¶ 5–6; Rosenfeld Decl. ¶¶ 5–6; Barraza Decl. ¶¶ 6, 8, 10. As detailed above, there is extensive evidence that Dickson seeks to brandish S.B. 8 against Plaintiffs to stop abortions after six weeks and shutter as many abortion clinics in the state as possible. Compl. ¶¶ 15, 50 & n.4, 106, 111; *see also supra*, Background.

Defendant Dickson nevertheless argues that Plaintiffs will not suffer an injury-in-fact traceable to him because he has no present intent to sue them. Dickson MTD 5–6, 8. However, Dickson's declaration makes clear that whether he intends to sue the Providers is wholly contingent on whether the Providers actually "comply with the Texas Heartbeat Act when it takes

effect on September 1, 2021." Dickson Decl. ¶¶ 5, 7; *see also* Dickson MTD 1 (admitting Dickson is a "prospective plaintiff[]" in private enforcement lawsuits under S.B. 8 and arguing that he is the "real party in interest" in this action brought by Plaintiffs). These sworn statements, coupled with his past actions, *see supra* Background, and failure to "disavow[] any intention" of enforcement if Plaintiffs violate S.B. 8, clearly demonstrate that Dickson's threats are not "imaginary or wholly speculative." *Babbitt*, 442 U.S. at 302; *see also Seals v. McBee*, 898 F.3d 587, 592 (5th Cir. 2018), *as revised* (Aug. 9, 2018) (recognizing that "disavow[al] [of] prosecution is a factor in finding a credible threat of prosecution"); *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 696 (6th Cir. 2015) (recognizing in civil context that a failure to disavow planned enforcement if a litigant violates a challenged statute is sufficient to demonstrate standing). Dickson conceded as much when he told the Fifth Circuit that Plaintiffs' request for relief would "strip" him "of [his] state-law right to sue abortion providers and their enablers." Pet. 7 n.6.[1]

Dickson further argues that Plaintiffs must have "*specifically allege[d]*" an intent to violate the law in order to establish standing. Dickson MTD 5. This argument is flatly foreclosed by precedent. "Nothing in [the Supreme] Court's decisions requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law." *SBA List*, 573 U.S. at 163 (citing *Babbitt*, 442 U.S. at 301, which found standing even though plaintiffs disavowed any intent to "propagate untruths" prohibited by the statute); *Holder v. Humanitarian L. Project*, 561 U.S. 1, 15–16 (2010) (finding standing in a pre-enforcement action based on plaintiffs' allegation that "they would provide similar support [to groups designated as terrorist organizations] again if the statute's allegedly unconstitutional bar were lifted"); *accord Vantage*

---

[1] Dickson also notably does not address whether he will sue any of Plaintiffs' physicians and other staff if they were to violate S.B. 8. *See supra*, Background (describing evidence that Dickson has a history of targeting individuals who provide abortion).

*Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009).

Accordingly, to demonstrate standing, Plaintiffs need not allege here that they *will* violate S.B. 8. In fact, doing so would itself provide grounds for the initiation of S.B. 8 enforcement proceedings as soon as the law takes effect, since S.B. 8 prohibits even an "inten[t]" to violate the statute. *See* S.B. 8, § 3 (adding Tex. Health & Safety Code § 171.208). And in that respect, precedent is equally clear that Plaintiffs need not "expose [themselves] to liability before" challenging a law's constitutionality. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007); *see also id.* at 134 (plaintiff need not "bet the farm" or risk "the loss of 80 percent of its business before seeking" court relief); *Doe v. Bolton*, 410 U.S. 179, 188 (1973) (a doctor "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief" from a ban on abortion); *cf.* Dickson Decl. ¶ 7 (stating that "the risk of private civil liability under [S.B.] 8" is too great for a person to violate the law).

Put simply, Plaintiffs are not required to "fly as a canary into a coal mine before [they] may" bring their claims against Dickson in this Court. *Bryant v. Woodall*, 1 F.4th 280, 286 (4th Cir. 2021), *as amended* (June 23, 2021). Their injury is sufficient to satisfy Article III.

## B. Plaintiffs' injury is caused in part by Dickson and would be redressed by declaratory and injunctive relief against him.

Plaintiffs' injury is "fairly traceable" to Dickson because they face a credible threat that Dickson will bring S.B. 8 enforcement actions against them if they violate S.B. 8. *K.P. v. LeBlanc* ("*K.P. II*"), 729 F.3d 427, 436 (5th Cir. 2013) (quoting *Davis v. FEC*, 554 U.S. 724, 733 (5th Cir. 2008)). Moreover, a "favorable ruling" from this Court declaring S.B. 8 unconstitutional and enjoining Dickson from enforcing this law would redress Plaintiffs' injury by preventing Dickson "from filing and prosecuting a cause of action" against them under S.B. 8. *Okpalobi v. Foster*, 244 F.3d 405, 427 (2001) (en banc) (plurality opinion).

Dickson disputes redressability because "there are countless others that will sue to recover the $10,000 for each illegal abortion that the plaintiffs perform or assist." Dickson MTD 7. In his view, an injunction against him would "do[] nothing to reduce the monetary exposure that the plaintiffs face under the statute." *Id.* at 7–8.

Dickson again misunderstands the law. A plaintiff "need not show that a favorable decision will relieve his *every* injury.'" *Massachusetts v. EPA*, 549 U.S. 497, 525 (2007) (quoting *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982)). The redressability requirement is satisfied when the plaintiff shows that "a favorable decision will relieve a discrete injury to himself." *Id.* (quoting *Larson*, 456 at 243 n.15); *see K.P. v. LeBlanc* ("*K.P. I*"), 627 F.3d 115, 123–24 (5th Cir. 2010) (citing *Larson* to hold abortion providers had Article III standing to sue state compensation-fund board over constitutionality of law subjecting providers to liability for any damage occasioned by abortion even though "the [b]oard [was] far from the sole participant in the application of the challenged statute"). An injunction would prevent Dickson from suing and imposing significant litigation costs on Plaintiffs, an injury invited by S.B. 8 through its authorization of unlimited, simultaneous suits against Plaintiffs. *See, e.g.*, S.B. 8, § 3 (adding Tex. Health & Safety Code § 171.208(i)) (prohibiting individuals sued under S.B. 8 from recouping their attorney's fees and costs from these frivolous lawsuits, even if they ultimately prevail). Meanwhile, if Plaintiffs comply with S.B. 8, as Dickson expects them to do, Plaintiffs' patients will face irreparable injury because they will be denied access to abortion from the earliest weeks of pregnancy. Dickson ignores these harms completely.

Moreover, relief against Dickson would prevent him, if successful in S.B. 8's rigged enforcement proceedings, from obtaining an injunction in his favor, an award of at least $10,000 per prohibited abortion, and his attorney's fees and costs. Plaintiffs would clearly benefit from a

ruling enabling them to avoid those outcomes, particularly because a ruling in Dickson's favor would serve only to line the pockets and otherwise empower someone whose goal is to shutter Plaintiffs and harm their patients. *Cf. Tex. Ass'n of Mfs. v. U.S. Consumer Prot. Safety Comm'n*, 989 F.3d 368, 380 (5th Cir. 2021) (recognizing a "stigmatic effect" as a basis for standing). An order from this Court would, therefore, redress at least some of Plaintiffs' injuries by allowing Plaintiffs and their staff "to avoid these [private] penalties and lawsuits" by Dickson. *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 159 (5th Cir. 2007); *see also K.P. I*, 627 F.3d at 123 (considering whether defendants' authority placed them "among those who would contribute to [p]laintiffs' harm"). That alone is sufficient to show redressability for purposes of Article III.

But there is more. Plaintiffs also ask this Court, in resolving their claims, to declare that S.B. 8 is unconstitutional. The potential practical effects of a declaratory judgment are manifold, not only with respect to Dickson himself (and the other defendants), but also persons not before the court. These effects include admonishing judges not to apply the offending law, and discouraging other private enforcers from invoking the offending law. As the Supreme Court has explained:

> Even where a declaration of [a state law's] unconstitutionality is [rendered by a lower federal court], the declaration may still be able to cut down the deterrent effect of an unconstitutional state statute. The persuasive force of the [lower court's] opinion and judgment may lead . . . courts[] and legislators to reconsider their respective responsibilities toward the statute. Enforcement policies or judicial construction may be changed, or the legislature may repeal the statute and start anew.

*Steffel v. Thompson*, 415 U.S. 452, 470 (1974).

Consistent with these principles, the Supreme Court has repeatedly found that a declaratory judgment resolving a live dispute would provide meaningful relief, including through persons who were not before the court. *See, e.g.*, *Roe v. Wade*, 410 U.S. 113, 166 (1973) (crediting the assumption that, even without an injunction, Texas prosecutorial authorities "[would] give full

11

credence to this decision that the present criminal abortion statutes of that State are unconstitutional"); *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992) (determining that "an authoritative interpretation of the census statute and constitutional provision by the District Court" would redress an injury involving reapportionment because it would pressure other government actors "not [] directly bound" by the judgment).

Here, the State of Texas has authorized Dickson and other private individuals to enforce S.B. 8, and a declaration against Dickson under Section 1983 would stand as a strong deterrent to all would-be bounty-hunters. That is particularly true because a declaration in Plaintiffs' favor would reaffirm that any person sued under S.B. 8 in state court could bring Section 1983 counterclaims against the S.B. 8 claimant, *see, e.g.*, *State, Cty. of Bexar v. Southoaks Dev. Co.*, 920 S.W.2d 330, 337 (Tex. App. 1995), and recover their attorney's fees after prevailing on those claims, 42 U.S.C. § 1988(b); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *Pruett v. Harris Cty. Bail Bond Bd.*, 356 S.W.3d 103, 108 (Tex. App. 2011) (reversing state district court denial of fees under Section 1988).

In sum, Dickson's threats are causing Plaintiffs and their patients an injury-in-fact and could be redressed by a favorable decision from this Court. His arguments to the contrary should be rejected.

## II.   PLAINTIFFS HAVE STANDING TO BRING CLAIMS AGAINST DICKSON OVER S.B. 8'S DRACONIAN FEE-SHIFTING PROVISION

Dickson argues that Plaintiffs lack standing to assert claims against him over Section 4 of the Act because he allegedly has no present intent to seek attorney's fees and costs under S.B. 8's extreme fee-shifting scheme. He does not dispute, however, that S.B. 8 purports to allow him to make a claim for fees and costs if he is successful at final judgment in this case—indeed, if Plaintiffs here are unsuccessful on even one claim—nor does he dispute that he *will* seek attorney's

fees. He specifically declares that he "will seek and expect to recover attorneys' fees from the plaintiffs under 42 U.S.C. § 1988(b) . . . , which will obviate the need for me to seek recovery of fees under section 30.022 of the Texas Civil Practice and Remedies Code." Dickson Decl. ¶ 9.

Similar to his threats to bring enforcement actions under S.B. 8, Dickson's purported present intent not to seek fees under S.B. 8 is contingent on the availability of fees under Section 1988. And Dickson has no colorable basis for fees under Section 1988, because Plaintiffs' claims against him under Section 1983 are well founded. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) (providing that a prevailing defendant is entitled to fees under 42 U.S.C § 1988 only if the court finds the action is "frivolous, unreasonable, or without foundation"). Although Dickson claims in passing that a private individual's "filing [of] a lawsuit authorized by a state statute" cannot constitute state action, Dickson MTD 9, he is badly mistaken, as detailed below. Because Dickson evidently would not be entitled to fees against plaintiffs under Section 1988, regardless of outcome, *see infra* Section III, the threat that he would instead seek fees specially authorized by S.B. 8 is plainly credible.

## III.   DEFENDANT DICKSON IS PROPERLY SUED UNDER SECTION 1983 AS A PRIVATE INDIVIDUAL ACTING UNDER COLOR OF STATE LAW

Whether Defendant Dickson is a person subject to suit under Section 1983 is not a question of this court's *jurisdiction*, but rather goes to the merits of Plaintiffs' claims. *See Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1346–47 (5th Cir. 1985); *Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urb. Dev.*, 980 F.2d 1043, 1047 (5th Cir. 1993). Nevertheless, Plaintiffs address here why Dickson's threat to enforce S.B. 8 is undoubtedly action under color of state law based on decades of precedent, including cases involving similar (unsuccessful) schemes by states to violate federal rights while evading judicial review.

Section 1983 provides a mechanism for civil-rights claimants to seek relief from *any* "person" acting "under color of" state law, where that person has deprived the claimants of their federal constitutional rights. 42 U.S.C. § 1983. Here, there is no question that by threatening to act as an S.B. 8 enforcer who initiates private civil actions, Dickson will subject Plaintiffs, their staff, and their patients to a deprivation of their federal constitutional rights. *See* Compl. ¶¶ 10, 50, 111, 162; MSJ 5–26, 28–45. Dickson knows that the Federal Constitution is a defense to liability under the Act and that it would require dismissal. *See, e.g.*, *Dickson*, 2021 WL 3412177, at *9 ("[I]t is clear that Dickson understood the penalties [of an abortion restriction] would only 'come crashing down' *after*" *Roe v. Wade* were overturned (quoting Dickson interview with CNN)); *cf.* Ex. 8 at 2 (Dickson lauding a prior Texas law's success at forcing more than half of the state's abortion providers to close, and emphasizing that many never reopened even after a Supreme Court decision invalidated the law). Accordingly, any lawsuits that he files against Plaintiffs would necessarily be "undertaken . . . in bad faith without hope of obtaining a valid [judgment]," *Perez v. Ledesma*, 401 U.S. 82, 85 (1971), which alone imposes a constitutional deprivation on Plaintiffs, *id.* at 117–18 (Brennan, J., concurring in part and dissenting in part); *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965).

In addition, Dickson's credible threat of submitting S.B. 8 enforcement petitions against Plaintiffs and their staff provides a "sufficiently close nexus" between him and the State such that the action "may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974); *see also, e.g.*, *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). By assigning to Dickson the traditional public responsibility of ensuring statewide compliance with a ban on abortion, Texas has cloaked Dickson and other private parties with authority "traditionally and exclusively" reserved to the state. *See Halleck*, 139 S. Ct. at 1928–29

14

(2019) (citing *Jackson*, 419 U.S. at 352–53); *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 460 (5th Cir. 2003) (per curiam); *see also Roe*, 410 U.S. at 138–41 (explaining that, since the nineteenth century and beyond, the regulation of abortion has been a state function, largely enforced through state criminal law). This history is consistent with S.B. 8 itself, S.B. 8, § 2 (confirming Legislature's desire to "criminalize" abortion), and with statements of its sponsor, *see* Lawrence Decl., Ex. A, at 3, Tr. of Press Conference at Living Alternatives in Tyler, Texas (Aug. 4, 2021), ECF No. 53-1 (S.B.8-sponsor Tex. Sen. Bryan Hughes stating that the Act "takes a different [enforcement] approach" because local prosecutors had stated they would "not enforce" early abortion bans).[2]

States, including Texas, have unsuccessfully tried these ploys before, particularly during the era of Jim Crow. In *Terry*, for example, the Supreme Court considered whether a Texas political organization called the Jaybird Association engaged in unconstitutional state action by organizing white-only primaries. 345 U.S. at 462. The Jaybirds argued that they were "not regulated by the state at all" and thus could not be held accountable as state actors, *id.* at 463, but as the Supreme Court explained, it is "apparent that Jaybird activities follow a plan purposefully

---

[2] Courts have found state action by nominally private entities performing traditional government functions in a broad range of contexts. *See, e.g., Terry v. Adams*, 345 U.S. 461, 463–64, 469–70 (1953) (holding that private political organization sponsoring racially discriminatory primaries was liable under Fifteenth Amendment); *Nixon v. Condon*, 286 U.S. 73, 82–85, 89 (1932) (same under Fourteenth Amendment); *Smith v. Allwright*, 321 U.S. 649, 660, 663–65 (1944) (same under Fifteenth Amendment); *Finch v. Miss. State Med. Ass'n, Inc.*, 585 F.2d 765, 778–79 (5th Cir. 1978) (holding a private state medical association constitutionally liable under public-function test); *Rosborough*, 350 F.3d at 460–61 (same as to private prison); *Hawkins v. N.C. Dental Soc'y*, 355 F.2d 718, 722–23 (4th Cir. 1966) (same as to private dental society); *Palm v. Marr*, 174 F. Supp. 2d 484, 487–88 (N.D. Tex. 2001); *Kesler v. King*, 29 F. Supp. 2d 356, 370–71 (S.D. Tex. 1998). While *Nixon*, *Smith*, and *Terry*—the "white-primary" cases—assessed state action under the Fourteenth and Fifteenth Amendments, not Section 1983, the public-function test applies equally to the state-action requirement and Section 1983's "under[-]color[-]of[-]law" requirement. *See, e.g.*, Wright and Miller, 13D Fed. Prac. & Proc. Juris. § 3573.2 (3d ed.); *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 n.2 (2001).

designed to exclude" Black people from voting "and at the same time to escape the Fifteenth Amendment's command," *id.* at 463–64. Because "[e]veryone concede[d] that [a white-only] proviso in the county-operated primaries would be unconstitutional," the Jaybird Party thus produced "the equivalent of the prohibited election." *Id.* at 469. The Supreme Court held that the Jaybird primary constituted state action, and admonished Texas for its "flagrant abuse of [election] processes to defeat the purposes of" the Constitution. *Id.*

As in *Terry*, it is apparent that S.B. 8's ban and private-enforcement mechanism follow a plan purposefully designed to violate federal constitutional rights, including the right to abortion. Dickson makes no argument that S.B. 8's ban on abortion, if enforced directly by state officials, would be constitutional, nor could he. Texas's attempt to slip the yoke of federal law by instead producing the equivalent of this prohibited ban through private enforcement should be rejected for the "flagrant abuse" of the state court processes that it is. *Id.*

Moreover, "[a]lthough private use of state-sanctioned private remedies or procedures does not rise, by itself, to the level of state action," the Supreme Court's cases have, for example, found state action when private parties make extensive use of state procedures with the overt, significant assistance of state officials. *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 622 (1991) (quotation marks omitted); *see also, e.g.*, *Lugar v. Edmundson Oil Company, Inc.*, 457 U.S. 922, 942 (1982); *Wyatt v. Cole*, 994 F.2d 1113, 1117–18 (5th Cir. 1993). In this case, Dickson is "significantly encouraged" by the Texas Legislature to submit enforcement petitions. *Howard Gault Co.*, 848 F.2d at 555; *see* MSJ 9–10 (outlining ways that S.B. 8 attempts to change civil rules and federal defenses to incentivize claimants). And he will do so knowing full well that "the statute upon which" he "relies [is] unconstitutional." *Wyatt*, 994 F.2d at 1118; *see* MSJ 22–24 (citing myriad cases establishing unconstitutionality of six-week abortion ban cases).

Given these facts, Dickson is plainly a proper Section 1983 plaintiff based on his credible threat to submit S.B. 8 petitions against Plaintiffs. None of the Fifth Circuit case law he cites, *see* Dickson MTD 9 n.6, is to the contrary, his remarkable misrepresentation of those cases notwithstanding. In all three decisions, the court of appeals held that a Section 1983 claim against a private individual based on a resort to some court process was, in fact, *proper*, and it did so on grounds that favor Plaintiffs here. *See McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992) (Section 1983 claim against defendant bank that "obtain[ed] unlawful entry of the subject default [j]udgment against [p]laintiff" as part of an "unlawful campaign of intimidation and harassment"); *Howard Gault Co.*, 848 F.2d at 557 (agricultural growers, through an ex parte procedure to obtain a temporary restraining order against strikers, engaged in state action); *Hollis v. Itawamba Cty. Loans*, 657 F.2d 746, 749–50 (5th Cir. Unit A 1981) (recognizing "presumptively valid" claim against private individual for "improper abuse of the statutory [replevin] procedure" so as to deprive the plaintiff "of federal due process rights" and noting that a Section 1983 claim could lie against a private party where resort to court process was based on "improper motive").

## IV. DEFENDANT DICKSON LACKS THIRD-PARTY STANDING TO ASSERT DEFENSES FOR DEFENDANTS JACKSON AND CLARKSTON

Ordinarily, a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Conn v. Gabbert*, 526 U.S. 286, 292–93 (1999) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). There is, of course, an exception where a statute directly regulates the conduct of a litigant, and if enforced, would violate the rights of third parties not before the court. *See, e.g.*, *June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2118–20 (2020) (plurality opinion) (standing for abortion providers on behalf of patients); *id.* 2133–34 (Roberts, C.J., concurring) (same); *Craig v. Boren*, 429 U.S. 190, 194–96 (1976) (standing for retailer on behalf of consumers). A party may also assert third-party standing when

"the party asserting the right has a 'close' relationship with the person who possesses the right" and "there is a 'hindrance' to the possessor's ability to protect his own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (quoting *Powers v. Ohio*, 499 U.S. 400, 311 (1991)).

Dickson cannot demonstrate third-party standing here, no matter the standard. He makes no claim that enforcement of Section 1983 against him will violate the rights of Judge Jackson and Ms. Clarkston. Likewise, Dickson cannot show that Judge Jackson and Ms. Clarkston are in any way hindered in protecting their own interests. *See, e.g.*, *Berry v. Jefferson Par.*, 326 F. App'x 748, 750 (5th Cir. 2009) (per curiam). To the contrary, Judge Jackson and Ms. Clarkston are represented here by counsel (including government counsel), and have filed their own motions to dismiss. Accordingly, Dickson has no right to raise defenses for Judge Jackson and Ms. Clarkston, and would have no right to appeal from any adverse decision with respect to those defenses that this Court may issue, irrespective of whether the defenses are jurisdictional in nature.[3]

## V.   DICKSON'S SEVERABILITY AND OTHER ARGUMENTS ARE BASELESS

Dickson argues the Court should dismiss all "current claims" against him, because Plaintiffs failed to take account of the Act's severability provisions. Dickson MTD 2–3. But Dickson's severability argument puts the cart before the horse: severability is a question of remedy, considered only *after* a legal violation has been established on the merits. *See Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328–29 (2006). If accepted, Dickson's position would turn the concept of severability on its head, forcing courts to leave statutory provisions in place even when they have already determined the provisions are not "capable of being executed

---

[3] Because this Court has an obligation to consider its own jurisdiction, even if not raised by the parties, *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001), Plaintiffs respond to Dickson's arguments regarding claims against Ms. Clarkston and Judge Jackson to the extent they implicate jurisdictional defenses that are non-waivable. They do so, however, in the oppositions applicable to these other defendants.

in accordance with the apparent legislative intent, wholly independent" of the unconstitutional material. *See Rose v. Doctors Hosp.*, 801 S.W.2d 841, 844 (Tex. 1990) (quoting *W. Union Telegraph Co. v. State*, 62 Tex. 630, 634 (1884)). This Court should reject Dickson's invitation to create such a bewildering outcome, which is neither required by law nor consistent with common sense. Similarly, there is no basis for reaching at the motion-to-dismiss stage Dickson's objections to the scope of a remedy that might be appropriate here, and his quibbles with how it should be denominated. *See* Dickson MTD 16–20.

## CONCLUSION

For all these reasons, the Court should deny Defendant Dickson's motion to dismiss.


Dated:  August 11, 2021

Respectfully submitted,

/s/ Marc Hearron

Christie Mason Hebert
JOHNS & HEBERT PLLC
2028 East Ben White Blvd
Suite 240-1000
Austin, TX 78741
(512) 399-3150
chebert@johnshebert.com

*Attorneys for All Plaintiffs*

Marc Hearron*
CENTER FOR REPRODUCTIVE RIGHTS
1634 Eye St., NW, Suite 600
Washington, DC 20006
(202) 524-5539
mhearron@reprorights.org

Molly Duane*
Kirby Tyrrell*
Melanie Fontes*
CENTER FOR REPRODUCTIVE RIGHTS
199 Water Street, 22nd Floor
New York, NY 10038
(917) 637-3631
mduane@reprorights.org
ktyrrell@reprorights.org
mfontes@reprorights.org

Jamie A. Levitt*
J. Alexander Lawrence*
MORRISON & FOERSTER LLP
250 W. 55th Street
New York, NY 10019
(212) 468-8000
jlevitt@mofo.com
alawrence@mofo.com

*Attorneys for Whole Woman's Health, Whole Woman's Health Alliance, Marva Sadler, Southwestern Women's Surgery Center, Allison Gilbert, M.D., Brookside Women's Medical Center PA d/b/a Brookside Women's Health Center and Austin Women's Health Center, Alamo City Surgery Center*

Julie Murray*
Richard Muniz*
PLANNED PARENTHOOD FEDERATION OF AMERICA
1110 Vermont Ave., NW Ste. 300
Washington, DC 20005
(202) 973-4997
julie.murray@ppfa.org
richard.muniz@ppfa.org

*Attorneys for Planned Parenthood of Greater Texas Surgical Health Services, Planned Parenthood South Texas Surgical Center, Planned Parenthood Center for Choice, and Dr. Bhavik Kumar*

Julia Kaye*
Brigitte Amiri*
Chelsea Tejada*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2633
jkaye@aclu.org
bamiri@aclu.org
ctejada@aclu.org

Lorie Chaiten*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
1640 North Sedgwick Street
Chicago, IL 60614
(212) 549-2633
rfp_lc@aclu.org

Adriana Pinon (Texas Bar No. 24089768)
David Donatti (Texas Bar No. 24097612)
Andre Segura (Texas Bar No. 24107112)
ACLU FOUNDATION OF TEXAS, INC.
5525 Katy Freeway, Suite 350
Houston, TX 77077
(713) 942-8146
apinon@aclutx.org
ddonatti@aclutx.org
asegura@aclutx.org

*Attorneys for Houston Women's Clinic*

*PLLC d/b/a Alamo Women's Reproductive Services, Houston Women's Reproductive Services, Reverend Daniel Kanter, and Reverend Erika Forbes*

Rupali Sharma
LAWYERING PROJECT
197 Pine Street, Apt. 23
Portland, ME 04102

Stephanie Toti
LAWYERING PROJECT
41 Schermerhorn Street, No. 1056
Brooklyn, NY 11201

*Attorneys for The Afiya Center, Frontera Fund, Fund Texas Choice, Jane's Due Process, Lilith Fund for Reproductive Equity, North Texas Equal Access Fund*

*\* Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I certify that, on the 11th day of August, 2021, a copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Marc Hearron