**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

WHOLE WOMAN'S HEALTH, *et al.*,

    *Plaintiffs*,

    v.

AUSTIN REEVE JACKSON, in his official capacity as
Judge of the 114th District Court, and on behalf of a
class of all Texas judges similarly situated, *et al.*,

    *Defendants*.

Civil Action No.: 1:21-cv-00616-RP

**PLAINTIFFS' CONSOLIDATED OPPOSITION TO
THE MOTIONS TO DISMISS THE CLAIMS AGAINST
DEFENDANTS JUDGE JACKSON AND PENNY CLARKSTON**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.     PLAINTIFFS ARE ENTITLED TO PROSPECTIVE RELIEF NOW, WITHOUT HAVING TO EXPOSE THEMSELVES TO ENFORCEMENT UNDER S.B. 8 ........... 2

     A.    Plaintiffs Are Entitled to Bring a Pre-Enforcement Challenge in Federal Court to Redress the Constitutional Harms That S.B. 8 Imposes ......................... 2

     B.    The Pre-Enforcement Challenge Must Be Brought Against the Public Officials with the Requisite Connection to S.B. 8's Direct Enforcement: the Defendant Classes of Judges and Clerks ......................................................... 3

     C.    Forcing Plaintiffs to Wait to Litigate Their Constitutional Claims Until After They Have Violated S.B. 8 and Are in the Statute's Rigged Enforcement Proceedings Would Impose Its Own Constitutional Harm ............. 6

II.    PLAINTIFFS HAVE STANDING TO ASSERT THEIR CLAIMS AGAINST THE JUDICIAL AND CLERK DEFENDANT CLASSES ......................................... 8

     A.    Plaintiffs Satisfy the Injury, Causation, and Redressability Requirements for Standing ........................................................................................................ 8

           1.    Plaintiffs have an injury in fact ........................................................... 8

           2.    Plaintiffs' injuries are causally connected to the Defendant classes of judges and clerks ............................................................... 12

                 a.    Plaintiffs' injuries are fairly traceable to clerks' and judges' performance of their duties ......................................................... 12

                 b.    Private parties' involvement in S.B. 8 enforcement actions does not negate the judges' and clerks' role in causing Plaintiffs' injuries ..................................................................... 15

                 c.    The decisions on which Defendant Clarkston relies support causation here ...................................................................... 16

           3.    The relief Plaintiffs seek against the Defendant classes of judges and clerks would redress Plaintiffs' injury ............................. 18

     B.    Plaintiffs and Defendants Have Clearly Adverse Legal Interests ....................... 21

           1.    There is no separate "adversity" element of standing ............................. 21

           2.    Even if there were a separate "adversity" requirement, it would easily be met here ................................................................................. 22

           3.    The decisions involving suits against judges supports naming judges and clerks as defendants here ...................................... 23

**TABLE OF CONTENTS**
(continued)

**Page**

III.   THE JUDICIAL AND CLERK DEFENDANT CLASSES HAVE NO
       COLORABLE CLAIM TO SOVEREIGN IMMUNITY HERE ................................... 30

IV.    PLAINTIFFS HAVE CLAIMS UNDER BOTH SECTION 1983 AND THE
       EQUITABLE CAUSE OF ACTION RECOGNIZED IN *EX PARTE YOUNG*.............. 32

CONCLUSION......................................................................................................................... 36

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aetna Life Ins. Co. v. Haworth*,
   300 U.S. 227 (1937)..........................................................................................22

*Agredano v. State Farm Lloyds*,
   975 F.3d 504 (5th Cir. 2020) ............................................................................34

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*,
   851 F.3d 507 (5th Cir. 2017) ........................................................18, 20, 30, 31

*Allstate Ins. Co. v. Abbott*,
   495 F.3d 151 (5th Cir. 2007) .......................................................................20 n.5

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979)..............................................................................2, 8, 10

*Bennett v. Spear*,
   520 U.S. 154 (1997)..........................................................................................16

*Blackwell v. The Lilith Fund for Reprod. Equity*,
   No. 2020-147 (Tex. Dist. Ct. Rusk Cnty., filed July 16, 2020) .........................11 n.4

*Blick v. Dudley*,
   356 F. Supp. 945 (S.D.N.Y. 1973) .................................................................27 n.9

*Bryant v. Woodall*,
   1 F.4th 280 (4th Cir. 2021) ................................................................................7

*Byrn v. The Lilith Fund for Reprod. Equity*,
   No. 12184-D (Tex. Dist. Ct. Taylor Cnty., filed July 16, 2020).........................11 n.4

*Caliste v. Cantrell*,
   Civ. No. 17-6197, 2017 WL 6344152 (E.D. La. Dec. 12, 2017),
   *aff'd*, 937 F.3d 525 (5th Cir. 2019).................................................................27 n.9

*Campaign for S. Equality v. Bryant*,
   197 F. Supp. 3d 905 (S.D. Miss. 2016)..............................................................20

*Chancery Clerk of Chickasaw Cnty. v. Wallace*,
   646 F.2d 151 (5th Cir. Unit A 1981) ...............................................6, 24, 25 n.7, 33

*Ciudadanos Unidos de San Juan v. Hidalgo Cnty. Grand Jury Comm'rs*,
   622 F.2d 807 (5th Cir. 1980) ........................................................................26 n.8, 33

*City of Austin v. Paxton*,
   943 F.3d 993 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 1047 (2021) ........................................ 31

*Cutrer v. Tarrant Cty. Local Workforce Development Bd.*,
   943 F.3d 265 (5th Cir. 2019) ................................................................................................. 31

*Daves v. Dallas Cnty.*,
   984 F.3d 381, 405 (2020), *vacated and reh'g en banc granted,* 988 F.3d 834
   (5th Cir. 2021) ...................................................................................................................... 31

*De Leon v. Perry*,
   975 F. Supp. 2d 632 (W.D. Tex. 2014), *aff'd* 791 F.3d 619 (5th Cir. 2015) ......................... 13

*Dombrowski v. Pfister*,
   380 U.S. 479 (1965) .......................................................................................................... 7, 27

*Durham v. Martin*,
   905 F.3d 432 (6th Cir. 2018) ................................................................................ 13, 14, 18, 33

*Enge v. The Lilith Fund for Reprod. Equity*,
   No. 20-1581-C (Tex. Dist. Ct. Smith Cnty., filed July 16, 2020) ..................................... 11 n.4

*Finberg v. Sullivan*,
   634 F.2d 50 (3d Cir. 1980) (en banc) ............................................................................ *passim*

*Gentry v. The Lilith Fund for Reprod. Equity*,
   No. CV2045746 (Tex. Dist. Ct. Eastland Cnty., filed July 17, 2020) .............................. 11 n.4

*Green Valley Special Utility Dist. v. City of Schertz, Tex.*,
   969 F.3d 460 (5th Cir. 2020) (en banc) (Oldham, J., concurring) ....................... 30, 32, 34, 35

*Hafer v. Melo*,
   502 U.S. 21 (1991) ................................................................................................................. 33

*Idaho v. Coeur d'Alene Tribe of Idaho*,
   521 U.S. 261 (1997) ............................................................................................................... 32

*Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*,
   946 F.3d 649 (5th Cir. 2019) ............................................................................................. 18, 21

*In re Justs. of Sup. Ct. of P.R.*,
   695 F.2d 17 (1st Cir. 1982) ........................................................................................ 19, 23, 27, 28

*K.P. v. LeBlanc*,
   627 F.3d 115 (5th Cir. 2010) ......................................................................................... *passim*

*K.P. v. LeBlanc*,
   729 F.3d 427 (5th Cir. 2013) ................................................................................................. 17

*Kendall v. True*,
  391 F. Supp. 413 (W.D. Ky. 1975) ..................................................................27 n.9

*Kitchen v. Herbert*,
  755 F.3d 1193 (10th Cir. 2014) .........................................................13, 14, 18, 33

*LeClerc v. Webb*,
  419 F.3d 405 (5th Cir. 2005) .......................................................................28, 35

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)............................................................................................22

*Loggerhead Turtle v. Cnty. Council of Volusia Cnty.*,
  148 F.3d 1231 (11th Cir. 1998) ........................................................................16

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..................................................................................8, 9, 12

*Maxwell v. The Lilith Fund for Reprod. Equity*,
  No. C 2020135 (Tex. Dist. Ct. Hood Cnty., filed July 16, 2020) .....................11 n.4

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)........................................................................................3, 10

*Mireles v. Waco*,
  502 U.S. 9 (1991) (per curiam)........................................................................5, 25

*Mitchum v. Foster*,
  407 U.S. 225 (1972)................................................................................5, 24, 35

*Moore v. The Lilith Fund for Reprod. Equity*,
  No. 2020-216 (Tex. Dist. Ct. Panola Cnty., filed July 16, 2020) .....................11 n.4

*Morris v. The Lilith Fund for Reprod. Equity*,
  No. 200726270 (Tex. Dist. Ct. Hockley Cnty., filed July 16, 2020) ................11 n.4

*Morris v. Livingston*,
  739 F.3d 740 (5th Cir. 2014) ......................................................................5, 6, 33

*Nashville Cmty. Bail Fund v. Gentry*,
  446 F. Supp. 3d 282 (M.D. Tenn. 2020)............................................................20

*Okpalobi v. Foster*,
  244 F.3d 405 (5th Cir. 2001) (en banc) ......................................................... *passim*

*Orangeburg, v. FERC*,
  862 F.3d 1071 (D.C. Cir. 2017) .........................................................................16

*Perez v. Ledesma*,
   401 U.S. 82 (1971)....................................................................................................26

*Planned Parenthood of Greater Texas Surgical Health Services. v. City of Lubbock*,
   No. 5:21-CV-114-H, 2021 WL 2385110 (N.D. Tex. June 1, 2021)........................19

*Planned Parenthood Gulf Coast, Inc. v. Phillips*,
   No. 18-30699, --- F.4th ---, 2021 WL 2980702 (5th Cir. July 15, 2021) ........................ 30, 34

*Pulliam v. Allen*,
   466 U.S. 522 (1984)................................................................................................5, 35

*Roark & Hardee LP v. City of Austin*,
   522 F.3d 533 (5th Cir. 2008) .......................................................................................8

*Roe v. Wade*,
   410 U.S. 113 (1973)..................................................................................................19

*Shelley v. Kraemer*,
   334 U.S. 1 (1948)..................................................................................................3, 29

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998)..............................................................................................18, 21

*Steffel v. Thompson*,
   415 U.S. 452 (1974)..............................................................................................2, 19

*Stephens v. The Lilith Fund for Reprod. Equity*,
   No. 12678 (Tex. Dist. Ct. Franklin Cnty, filed July 16, 2020) ........................11 n.4

*Strawser v. Strange*,
   100 F. Supp. 3d 1276 (S.D. Ala. 2015)...................................................................27 n.9

*Strickland v. Alexander*,
   772 F.3d 876 (11th Cir. 2014) .......................................................................12, 14, 16, 18

*Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*,
   446 U.S. 719 (1980)..........................................................................................3, 5, 34

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014)................................................................................... *passim*

*Terry v. Adams*,
   345 U.S. 461 (1953).....................................................................................................1

*Tesmer v. Granholm*,
  114 F. Supp. 2d 603 (E.D. Mich. 2000), *aff'd in part and rev'd in part on other grounds*, 333 F.3d 683 (6th Cir. 2003) (en banc), *rev'd on other grounds sub nom Kowalski v. Tesmer*, 543 U.S. 125 (2004)..........................................27 n.9

*Texas Dem. Party v. Abbott*,
  978 F.3d 168 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1124 (2021).......................................31

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
  535 U.S. 635 (2002)..........................................................................................30

*Warnock v. Pecos Cnty.*,
  88 F.3d 341 (5th Cir. 1996) ..............................................................................30

*Wooley v. Maynard*,
  430 U.S. 705 (1977)........................................................................................2, 6

*WXYZ, Inc. v. Hand*,
  658 F.2d 420 (6th Cir. 1981) ......................................................................27 n.9

*Ex parte Young*,
  209 U.S. 123 (1908).................................................................................. *passim*

## Statutes

42 U.S.C. § 1983 ......................................................................................... *passim*

Tex. Health & Safety Code § 171.207(a) ........................................................4

## Other Authorities

13A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3531.5
  (3d ed.) ......................................................................................... 15-16

15 James Wm. Moore, et al., Moore's Federal Practice § 101.41[1] (3d ed. 2008)....................16

Senate Bill 8, 87th Leg., Reg. Sess. (Tex. 2021) .................................................. *passim*

Tex. R. Civ. P. 22–27, 99.......................................................................................4

Tex. R. Civ. P. 99(b) .........................................................................................14

**INTRODUCTION**

In enacting Senate Bill 8, 87th Leg., Reg. Sess. (Tex. 2021) ("S.B. 8"), the Texas Legislature banned nearly all abortions in the State beginning September 1, in flagrant defiance of nearly fifty years of unbroken Supreme Court precedent.  If this Court were to accept Defendant Judge Jackson's and Defendant Clarkston's arguments for why their motions to dismiss should be granted, pregnant Texans would lose their constitutionally protected right to abortion.

Indeed, *every* individual right in the Bill of Rights is at risk if Defendants' theory is credited.  The import of Defendants' arguments is that federal courts are powerless to stop any State from stripping its residents of their federal rights, so long as the State is cunning enough.  Any state or local government could pick a disfavored federal right, make the exercise of that right illegal, and then allow private citizens to initiate actions in court to halt its exercise.  Defendants make this explicit, stating outright that if a State follows this path, federal courts lack any jurisdiction to grant relief; instead, the only option is for citizens to either (1) forfeit their constitutional rights by complying with the law, or (2) violate the law, expose themselves to enforcement actions and potentially ruinous liability, and then try to assert their constitutional rights "in state court if and when they are sued there."  Jackson Mot. to Dismiss 9, ECF No. 49; *accord* Clarkston Mot. to Dismiss 12, ECF No. 51.  If that were correct, the Bill of Rights would become a nullity.

At bottom, the question in this case is whether Texas may adopt a scheme allowing it "to do precisely that which the [Constitution] forbids." *Terry v. Adams*, 345 U.S. 461, 469–70 (1953) (striking down a Texas law attempting to insulate white-only political primaries from federal court review).  The answer to that question must be no.

This Court plainly has jurisdiction over Plaintiffs' claims against the Defendant classes of judges and clerks.  Plaintiffs have named as defendants the government officials whom the Texas

Legislature has tasked with directly enforcing S.B. 8: the judges and clerks of the courts in which petitions for enforcement will be filed.  S.B. 8 targets Plaintiffs, and the Defendant classes of judges and clerks enforce S.B. 8, as Defendant Judge Jackson acknowledged during a recent press conference.  Plaintiffs thus have standing to sue those Defendants, and those Defendants lack any colorable claim to sovereign immunity.  Defendants' motions to dismiss should be denied.

**ARGUMENT**

## I.   PLAINTIFFS ARE ENTITLED TO PROSPECTIVE RELIEF NOW, WITHOUT HAVING TO EXPOSE THEMSELVES TO ENFORCEMENT UNDER S.B. 8

Under more than 100 years of Supreme Court precedent, Plaintiffs are entitled to bring a pre-enforcement challenge to the constitutionality of S.B. 8.  If not blocked before its effective date, S.B. 8 will prohibit the provision of abortions beginning at approximately six weeks of pregnancy; subject Plaintiffs to unconstitutional, costly, and abusive court actions designed to intimidate and bankrupt them; and expose Plaintiffs to the threat of ruinous monetary penalties and injunctions ordering them to stop providing constitutionally protected health care and to stop supporting abortion patients.  *See generally* Compl., ECF No. 1; Pls.' Mot. Summ. J., ECF No. 19.

### A.   Plaintiffs Are Entitled to Bring a Pre-Enforcement Challenge in Federal Court to Redress the Constitutional Harms That S.B. 8 Imposes

Where, as here, "a genuine threat of prosecution exists, a litigant is entitled to resort to a federal forum to seek redress for an alleged deprivation of federal rights."  *Wooley v. Maynard*, 430 U.S. 705, 710 (1977).  "'[I]t is not necessary that the plaintiff first expose himself to actual arrest or prosecution to be entitled to challenge the statute that he claims deters the exercise of his constitutional rights.'"  *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (brackets omitted) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)).

As the Supreme Court explained in *Ex parte Young*, parties cannot be forced "[t]o await proceedings against [them] in a state court, grounded upon a disobedience of the act," because it

2

would place them "in peril of large loss" and "in great risk of fines"—risks that parties "ought not to be required to take." 209 U.S. 123, 165 (1908). And forty years ago, the Court reiterated—in a decision holding that a Section 1983 suit may be brought against state judges to obtain prospective equitable relief against those judges' enforcement of state law—that plaintiffs need not "await the institution of state-court proceedings against them in order to assert their federal constitutional claims." *Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 737 (1980).

By now, it is a bedrock principle that the actual initiation of an "enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List v. Driehaus* ("*SBA List*"), 573 U.S. 149, 158 (2014); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) (that Plaintiffs have not yet "violate[d] the law . . . does not eliminate Article III jurisdiction").

### B.   The Pre-Enforcement Challenge Must Be Brought Against the Public Officials with the Requisite Connection to S.B. 8's Direct Enforcement: the Defendant Classes of Judges and Clerks

With the understanding that a pre-enforcement challenge can be brought for prospective equitable relief against enforcement of a law, the question is: against whom? The Fifth Circuit instructs that the suit must be brought against the officials who have the requisite connection to the challenged statute's enforcement. *K.P. v. LeBlanc* ("*K.P. I*"), 627 F.3d 115, 124 (5th Cir. 2010). There must be some government official connected to S.B. 8's enforcement: private parties cannot unilaterally bring the State's coercive power to bear on abortion providers and patient supporters to effectuate a ban on nearly all abortions in the state of Texas. Private parties cannot, without governmental assistance, force individuals to appear and defend themselves in state courts, pay monetary penalties of at least $10,000 per prohibited abortion, and refrain from further violating S.B. 8. *Some* government officials must be involved for that coercion to occur.

As to who those officials are, "'[a] state acts by its legislative, its executive, or its judicial authorities. It can act in no other way.'" *Shelley v. Kraemer*, 334 U.S. 1, 14 (quoting *Ex parte*

*Virginia*, 100 U.S. 339, 347 (1880)).  Here, although the Texas Legislature enacted S.B. 8, the Legislature plays no role in enforcing it.  As for executive officials, S.B. 8 bars them from directly enforcing the six-week ban.  S.B. 8, § 3 (adding Tex. Health & Safety Code § 171.207(a)) (hereinafter S.B. 8, § 3 citations are to the newly added sections of Tex. Health & Safety Code only); *see also* State Agency Defs.' Mot. to Dismiss 3, ECF No. 48 ("S.B. 8 expressly prohibits state executive and administrative officers from enforcing its requirements . . . .").  Under Fifth Circuit precedent, executive officials are therefore not proper defendants in a challenge to direct enforcement of the ban.  *See Okpalobi v. Foster*, 244 F.3d 405, 422–24 (5th Cir. 2001) (en banc) (lead opinion); *id.* at 426–29 (majority opinion); *see also* Pls.' Opp'n to State Agency Defs.' Mot. 2–6 (explaining the limited indirect enforcement that remains).

That leaves one option: the courts—precisely the government authorities whom the Texas Legislature specially charged with enforcing S.B. 8.  *See* S.B. 8 §§ 171.207, 171.208(a)–(b). Private parties seeking to have S.B. 8 enforced must present petitions for enforcement to the members of the Defendant class of clerks, asking the clerks to exert their official power to open the actions in the docket and issue citations compelling those sued under S.B. 8 to respond to the lawsuit.  *See* Tex. R. Civ. P. 22–27, 99; *see also* Clarkston Mot. 2–3 (discussing citations issued by clerks, which are akin to summonses issued in federal court).  Private parties must also ask the members of the Defendant class of judges to exert the compulsive power of the state to force those sued under S.B. 8 to comply with the statute through an injunction and other penalties.  *See* S.B. 8 § 171.208(a)–(b).  Because the members of those classes are the lone government officials responsible for directly coercing compliance with S.B. 8, they are proper defendants in this pre-enforcement challenge.

A federal lawsuit naming state-court judges as defendants and seeking prospective

equitable relief from constitutional violations is far from "unprecedented." *Contra* Clarkston Mot. 1. The Supreme Court has held for over a century that judges can be sued under the federal civil rights laws for such relief, "long ago recogniz[ing] that federal injunctive relief against a state court proceeding can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972); *see also Mireles v. Waco*, 502 U.S. 9, 10 n.1 (1991) (per curiam) (judges are not immune from suits for prospective equitable relief); *Pulliam v. Allen*, 466 U.S. 522, 536–43 (1984) (same); *Sup. Ct. of Va.*, 446 U.S. at 736–37 (same). In fact, "[t]he very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, *or judicial*.'" *Mitchum*, 407 U.S. at 242 (emphasis added) (quoting *Ex parte Virginia*, 100 U.S. at 346). And in 1996, Congress confirmed that judges can be proper defendants in federal civil rights claims by amending the text of Section 1983 to expressly state that an action may be "brought against a judicial officer for an act or omission taken in such officer's judicial capacity." 42 U.S.C. § 1983.

At the end of the day, Plaintiffs have scrupulously followed the Fifth Circuit's instructions in naming the defendants for this pre-enforcement challenge to S.B. 8. The Fifth Circuit has held that when challenging an enforcement action that is exclusively initiated by private litigants in the state courts, the State's governor and attorney general are not proper defendants because they play no role in the statute's direct enforcement. *See Morris v. Livingston*, 739 F.3d 740, 745–46 (5th Cir. 2014); *Okpalobi*, 244 F.3d at 422, 426–29. But "[t]here are plenty of state actors." *K.P. I*, 627 F.3d at 124. Plaintiffs therefore identified and named the government officials who are immediately connected to S.B. 8's direct enforcement and against whom prospective equitable

relief would preclude direct enforcement of the unconstitutional abortion prohibition: the Judicial and Clerk Defendant Classes.  If those are not the correct government officials to be named over S.B. 8's direct enforcement, then Defendants should identify for the Court who the correct officials are so that they may be substituted as defendants.  *See Morris*, 739 F.3d at 745–46 (where the governor was not the proper defendant because he did not play any role in the challenged statute's enforcement, the district court correctly substituted the official connected to the enforcement); *Chancery Clerk of Chickasaw Cnty. v. Wallace*, 646 F.2d 151, 160 (5th Cir. Unit A 1981) (allowing the plaintiffs to substitute as defendants the executive officials with responsibility for defending the challenged statute).[1]

The answer cannot be that there is *no one* who can be sued to block enforcement of this blatantly unconstitutional statute before it takes effect.  *See Wooley*, 430 U.S. at 710.  While each Defendant is attempting to point to someone else as the true party responsible for enforcing S.B. 8, the fact is that each is connected to S.B. 8's enforcement.  *See* Pls.' Opp'n to State Agency Defs.' Mot. 2–6; Pls.' Opp'n to Dickson Mot. 7–12; *infra*, pp. 15–16.  That is why Plaintiffs have named them all as defendants in this action.

## C. Forcing Plaintiffs to Wait to Litigate Their Constitutional Claims Until After They Have Violated S.B. 8 and Are in the Statute's Rigged Enforcement Proceedings Would Impose Its Own Constitutional Harm

Nor is it an answer to say that Plaintiffs must violate the law, expose themselves to the statute's severe penalties and abusive enforcement actions, and then "litigate their constitutional challenges in state court if and when they are sued there."  Jackson Mot. 9; *see* Clarkston Mot. 7.

---

[1] Plaintiffs have sued the Texas Attorney General, and he is a proper defendant based on his authority to enforce collateral statutes in response to S.B. 8 violations and to seek costs and fees under S.B. 8 Section 4.  Plaintiffs further assert that they would have standing to sue him and that he would be a proper defendant even in the absence of that collateral enforcement authority and Section 4's fee-shifting provision.  This standing theory is currently foreclosed by the Fifth Circuit's decision in *Okpalobi*, but Plaintiffs assert it here to preserve it for any appeal.

That runs headlong into firmly rooted Supreme Court precedent, which allows parties to obtain relief blocking enforcement proceedings from beginning at all. *See supra* pp. 2–3; *see also Bryant v. Woodall*, 1 F.4th 280 (4th Cir. 2021).

Moreover, the burden of having to litigate these abusive enforcement actions in state court is itself one of the harms that this pre-enforcement challenge is brought to remedy. *See* Compl. ¶¶ 7–10, 103, 111–12, 137, 142. Where a state law aims at "discourag[ing] [a party's] civil rights activities," the outcome of state court proceedings to enforce that law cannot "alter the impropriety of . . . invoking the statute" in those enforcement proceedings in the first place. *Dombrowski v. Pfister*, 380 U.S. 479, 490 (1965). Because anyone can file a petition for enforcement of S.B. 8, abortion opponents are sure to abuse the S.B. 8 enforcement process "to achieve maximum disruption of their political opponents," forcing abortion providers and patient supporters "to divert significant time and resources to hire legal counsel and respond" to enforcement petitions. *SBA List*, 573 U.S. at 165. It is thus no answer to say that Plaintiffs can raise their constitutional challenges in the enforcement actions when having to do just that is its own severe harm.

What is more, as Plaintiffs explained in their complaint and motion for summary judgment, the enforcement proceedings are rigged against them such that they have no opportunity to fairly defend themselves. *See* Compl. ¶¶ 80–85, 137, 142–43; Pls.' Mot. Summ. J. 10–13, 26–42. And even if Plaintiffs are able to win in a handful of enforcement actions, the enforcement petitions are likely to keep coming, absent relief from this Court against the Defendant classes of judges and clerks. S.B. 8 allows multiple suits to be filed over the same abortion; it purports to eliminate non-mutual issue preclusion and claim preclusion; and it precludes reliance on precedent not binding on the court where the action is filed, meaning that a victory in one enforcement action is intended to have little or no preclusive or precedential value in others. *See* Compl. ¶¶ 83, 85; Pls.' Mot.

Summ. J. 28, 30.

Granting the motions to dismiss and "denying prompt judicial review" of S.B. 8 "would impose a substantial hardship" on abortion providers, patients, and patient supporters, "forcing them to choose between refraining from" exercising their constitutionally protected rights "on the one hand, or engaging" in those activities "and risking costly [enforcement] proceedings . . . on the other." *SBA List*, 573 U.S. at 167–68. The only way to provide full relief against this blatantly unconstitutional abortion ban is to issue prospective equitable relief against the Defendant classes of judges and clerks.

## II.   PLAINTIFFS HAVE STANDING TO ASSERT THEIR CLAIMS AGAINST THE JUDICIAL AND CLERK DEFENDANT CLASSES

### A.   Plaintiffs Satisfy the Injury, Causation, and Redressability Requirements for Standing

To establish that they have standing, Plaintiffs must show: (1) that they have suffered, or are about to suffer, an "injury in fact," (2) that there is "a causal connection between the injury and the conduct complained of," and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). All three criteria are easily satisfied here.

#### 1.   Plaintiffs have an injury in fact

For a pre-enforcement challenge, a plaintiff suffers an injury in fact where the plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat" of enforcement. *SBA List*, 573 U.S. at 160 (quoting *Babbitt*, 442 U.S. at 298). As long as the threat of enforcement is not "'imaginary or wholly speculative,'" a pre-enforcement challenge to a statutory prohibition "present[s] an Article III case or controversy." *Id.* (quoting *Babbitt*, 442 U.S. at 302); *see also Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 542 (5th Cir. 2008) ("[A] plaintiff can meet

the standing requirements when suit is brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, by establishing actual present harm or a significant possibility of future harm." (internal quotation marks omitted)).  Where "the suit is one challenging the legality of government action," and "the plaintiff is himself an object of the action," "there is ordinarily little question that the action . . . has caused him injury."  *Lujan*, 504 U.S. at 561–62.

Fifth Circuit decisions, including ones on which Defendants rely, establish that the threat of lawsuits initiated by private parties is an injury in fact.  In *Okpalobi*, because the challenged state statute "expose[d] plaintiffs to unlimited tort liability by individual" litigants, the en banc court did "not challenge that the plaintiffs [were] suffering a threatened injury."  244 F.3d at 426–27.  And in *K.P. I*, the Fifth Circuit concluded that the "probability of future suits" created an imminent threat even though those suits "ha[d] not yet materialized."  627 F.3d at 122–23.

Here, Plaintiffs easily meet the injury-in-fact requirement:  they are the "target" of S.B. 8. *See Lujan*, 504 U.S. at 561.  Plaintiffs currently engage in and desire to continue to engage in activities that S.B. 8 will proscribe if it takes effect on September 1.  The Provider Plaintiffs provide abortions in Texas that will be prohibited under S.B. 8, which will deny their patients' constitutional right to pre-viability abortion; and the Provider Plaintiffs would continue to provide those abortions absent the statutory prohibition.  *See* Compl. ¶¶ 24–36, 102–03; S.B. 8 §§ 171.204(a), 171.208(a)(1).[2]  The Advocate Plaintiffs engage in activities—such as providing or coordinating financial assistance, transportation, counseling, and legal representation—that may

---

[2] *See also* Gilbert Decl. Supp. Pls.' Mot. Summ. J. ¶ 34, ECF No. 19-1; Kumar Decl. Supp. Pls.' Mot. Summ. J. ¶ 32, ECF No. 19-2; Ferrigno Decl. Supp. Pls.' Mot. Summ. J. ¶ 15, ECF No. 19-3; Klier Decl. Supp. Pls.' Mot. Summ. J. ¶ 15, ECF No 19-4; Lambrecht Decl. Supp. Pls.' Mot. Summ. J. ¶ 21, ECF No. 19-5; Linton Decl. Supp. Pls.' Mot. Summ. J. ¶¶ 16, 18, ECF No. 19-6; Hagstrom Miller Decl. Supp. Pls.' Mot. Summ. J. ¶¶ 2, 22, ECF No. 19-7; Braid Decl. Supp. Pls.' Mot. Summ. J.  ¶ 12, ECF No. 19-8; Rosenfeld Decl. Supp. Pls.' Mot. Summ. J. ¶¶ 6–8, ECF No. 19-9; Barraza Decl. Supp. Pls.' Mot. Summ. J. ¶ 18, ECF No. 19-10.

be alleged to aid and abet abortions prohibited by S.B. 8, and they would continue to do so absent the enforcement threat. *See* Compl. ¶¶ 37–46, 110–13.[3] These are all injuries. *See SBA List*, 570 U.S. at 160; *Babbitt*, 442 U.S. at 298; *see also SBA List*, 570 U.S. at 162 (intended conduct need only be "arguably proscribed"). Moreover, as discussed, having to defend themselves in S.B. 8 enforcement actions is an injury in itself. *See supra* pp. 6–8.

Defendant Dickson incorrectly suggests that Plaintiffs must "allege[] that they intend to violate Senate Bill 8." Dickson Mot. to Dismiss 15, ECF No. 50. The Supreme Court says otherwise: "Nothing in this Court's decisions requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law." *SBA List*, 573 U.S. at 163. Plaintiffs can bring a pre-enforcement challenge to remedy the dilemma of "putting the challenger to the choice between abandoning his rights or risking prosecution." *MedImmune*, 549 U.S. at 129; *see also* Pls.' Opp'n to Dickson Mot. 8–9.

The threat of enforcement if Plaintiffs were to violate S.B. 8 is far from "[h]ypothetical," Clarkston Mot. 10, or "rank speculation," Dickson Mot. 12. Defendant Dickson's own motion to dismiss identifies Texas Right to Life—via a declaration from the organization's legislative director—as one of the organizations actively facilitating the filing of lawsuits against Plaintiffs to block abortion access across the state immediately on September 1. Seago Decl. ¶ 5, ECF No. 50-2 ("[W]e are encouraging individuals to sue abortion providers and abortion funds . . . ."). Nor is it speculative to conclude that those intending to file S.B. 8 petitions will do so in as many Texas

---

[3] *See also* Sadler Decl. Supp. Pls.' Mot. Summ. J. ¶ 23, ECF No. 19-11; Zamora Decl. Supp. Pls.' Mot. Summ. J. ¶ 2, ECF No. 19-12; Jones Decl. Supp. Pls.' Mot. Summ. J. ¶ 8, ECF No. 19-13; Rupani Decl. Supp. Pls.' Mot. Summ. J. ¶ 2, ECF No. 19-14; Conner Decl. Supp. Pls.' Mot. Summ. J. ¶ 1, ECF No. 19-15; Williams Decl. Supp. Pls.' Mot. Summ. J. ¶ 1, ECF No. 19-16; Kanter Decl. Supp. Pls.' Mot. Summ. J. ¶ 11, ECF No. 19-17; Forbes Decl. Supp. Pls.' Mot. Summ. J. ¶ 10, ECF No. 19-18; Mariappuram Decl. Supp. Pls.' Mot. Summ. J. ¶¶ 1-2, ECF No. 19-19.

counties as possible.  In a single day last year, Defendant Dickson's counsel, Jonathan Mitchell, filed eight lawsuits on behalf of different individuals against some of the Plaintiffs here, all in different counties, including Smith County, where Defendants Judge Jackson and Clarkston are located.[4]

As in *SBA List*, where the Supreme Court found injury in fact based on the possibility that private actors would file complaints against the plaintiffs in the future, "[t]he credibility of th[e] threat [here] is bolstered by the fact that" S.B. 8 enforcement actions can be initiated by "'any person'"—meaning that "there is a real risk of complaints from, for example, political opponents." 573 U.S. at 164; *see id.* at 156.  The risk to plaintiffs here is, in fact, far *more* certain than in *SBA List*, with Defendant Dickson's declarations *promising* that such suits are coming.  Seago Decl. ¶ 6, ECF No. 50-2 ("I have personal knowledge that there are several individuals who intend to sue . . . ."); Dickson Decl. ¶ 8, ECF No. 50-1 ("I have personal knowledge that there are many other individuals who intend to sue the abortion-provider plaintiffs and the abortion-fund plaintiffs if they defy Senate Bill 8 . . . ."); *see also* Pls.' Opp'n to Dickson Mot. 3–6, 7–8 (describing efforts by Dickson and others to monitor Plaintiffs' compliance with abortion laws).

---

[4] *Blackwell v. The Lilith Fund for Reprod. Equity*, No. 2020-147 (Tex. Dist. Ct. Rusk Cnty., filed July 16, 2020); *Byrn v. The Lilith Fund for Reprod. Equity*, No. 12184-D (Tex. Dist. Ct. Taylor Cnty., filed July 16, 2020); *Enge v. The Lilith Fund for Reprod. Equity*, No. 20-1581-C (Tex. Dist. Ct. Smith Cnty., filed July 16, 2020); *Gentry v. The Lilith Fund for Reprod. Equity*, No. CV2045746 (Tex. Dist. Ct. Eastland Cnty., filed July 17, 2020); *Maxwell v. The Lilith Fund for Reprod. Equity*, No. C 2020135 (Tex. Dist. Ct. Hood Cnty., filed July 16, 2020); *Moore v. The Lilith Fund for Reprod. Equity*, No. 2020-216 (Tex. Dist. Ct. Panola Cnty., filed July 16, 2020); *Morris v. The Lilith Fund for Reprod. Equity*, No. 200726270 (Tex. Dist. Ct. Hockley Cnty., filed July 16, 2020); *Stephens v. The Lilith Fund for Reprod. Equity*, No. 12678 (Tex. Dist. Ct. Franklin Cnty, filed July 16, 2020).

**2.      Plaintiffs' injuries are causally connected to the Defendant classes of judges and clerks**

To meet the causation requirement for standing, Plaintiffs' injuries need only be "fairly traceable" to Defendants' actions. *Lujan*, 504 U.S. at 560. That standard is readily met here.

**a.      Plaintiffs' injuries are fairly traceable to clerks' and judges' performance of their duties**

*i.*      Courts regularly find that plaintiffs have standing to challenge the constitutionality of statutes by suing the public officials who, by virtue of executing their public duties, will contribute to the plaintiffs' harm—including where private parties also contribute to that harm.

For example, in *SBA List*, the challenged statute allowed "[a]ny person" to "file a complaint with the Ohio Elections Commission" "alleging a violation" of the statute, and the Commission's role was to act as a neutral arbiter to determine whether, "by 'clear and convincing evidence,' . . . a party has violated" the statute and then to either issue a reprimand or refer the matter for prosecution. 573 U.S. at 152–53. The Court held that the plaintiffs had standing to sue the Commission over the statute's constitutionality. *Id.* at 157–67.

In *Strickland v. Alexander*, a court clerk was sued in a challenge to the constitutionality of Georgia's post-judgment garnishment statute. 772 F.3d 876, 879–81 (11th Cir. 2014). The clerk had the "responsibility to process garnishments" that were filed by creditors to initiate garnishment proceedings, including by "docketing the garnishment affidavit" and "issuing the summons of garnishment." *Id.* at 885. The Eleventh Circuit concluded that these procedures, which the clerk was "required to follow," meant that the plaintiff's future "inability to access his exempt funds [would] be 'fairly traceable' to [the clerk's] actions, not to 'the independent action of some third party not before the court.'" *Id.* at 886. The court rejected the clerk's argument that "the fact that 'his duties are ministerial in nature' somehow render[s] [the plaintiff's] injury not fairly traceable to [the clerk]," explaining that conduct need not "be 'unlawful' for a resulting constitutional

12

deprivation to be 'fairly traceable' to that conduct." *Id.*; *accord Finberg v. Sullivan*, 634 F.2d 50, 53–54 (3d Cir. 1980) (en banc) (holding that court clerk (prothonotary) and sheriff were proper defendants in challenge to post-judgment garnishment procedures because performance of their ministerial duties is "the immediate cause[]" of the plaintiff's injury).

Similarly, in *Durham v. Martin*, a former state legislator expelled by the Tennessee House sued the state administrators who denied him retirement and healthcare benefits, claiming that the House "unconstitutionally expelled him" and that the administrators "'enforced the denial of [his] benefits' based on his unconstitutional expulsion." 905 F.3d 432, 433 (6th Cir. 2018). The Sixth Circuit held that even if the administrators "were only implementing the consequences of others' actions—that is, Durham's expulsion by the legislature—Durham still ha[d] standing to sue the administrators for their actions in carrying out those consequences." *Id.* at 434. The court rejected the administrators' argument that the plaintiff had "not alleged that their actions [were] illegal," explaining that there was "no reason to think that plaintiffs lack[ed] standing to sue lawful actors." *Id.* at 435.

And in *Kitchen v. Herbert*, the plaintiffs had standing to challenge Utah's statutory prohibition on same-sex marriage by suing the clerk who denied the plaintiffs' marriage licenses, even though—indeed, *because*—the clerk was just following Utah law. 755 F.3d 1193, 1201–02 (10th Cir. 2014). The Tenth Circuit had "no doubt" that the plaintiffs had standing to sue the clerk "based on their inability to obtain marriage licenses from the Clerk's office." *Id.* at 1201. Because the "clerks are responsible under Utah law for issuing marriage licenses and recording marriage certificates," the clerk defendant "possessed the requisite nexus to plaintiffs' injuries." *Id.* at 1201–02; *accord De Leon v. Perry*, 975 F. Supp. 2d 632, 646 (W.D. Tex. 2014) (in suit against clerk and other officials, holding that plaintiffs had shown causation based on denial of marriage license),

13

*aff'd* 791 F.3d 619 (5th Cir. 2015).

*ii.* Here, the defendant clerks and judges are likewise causally connected to injuries that will befall Plaintiffs from enforcement of S.B. 8.

Defendant Clarkston's motion describes exactly how the members of the Defendant class of clerks will cause Plaintiffs' injuries. Petitions seeking enforcement of S.B. 8 will be "filed with the clerk" who will open the action and keep the docket. Clarkston Mot. 2 (citing Tex. R. Civ. P. 22, 24–26). The clerk then "'shall forthwith issue a citation'" which is "similar to a summons in federal court." *Id.* at 2–3 (quoting Tex. R. Civ. P. 99(a)). Clerks' authority to issue citations is among their "authority to compel action" by those sued under S.B. 8. *Id.* at 14. Citations "direct the defendant to file a written answer to the plaintiff's petition" for enforcement and notify them that failure to respond may result in a default judgment. Tex. R. Civ. P. 99(b). Performance of the clerks' duties will thus injure Plaintiffs by forcing them into unconstitutional enforcement actions. *See Strickland*, 772 F.3d at 886; *Finberg*, 634 F.2d at 53–54.

It makes no difference that the clerks' particular duty arises from other state laws. *Contra* Clarkston Mot. 13–14. Whether the duty "'arises out of the general law, or is specially created by the act itself, is not material so long as it exists.'" *K.P. I*, 627 F.3d at 124 (quoting *Ex parte Young*, 209 U.S. at 157); *see also Okpalobi*, 244 F.3d at 419 (enforcement power "can be found implicitly elsewhere in the laws of the state, apart from the challenged statute"). An otherwise lawful, ministerial act can be fairly traceable to Plaintiffs' injuries. *Strickland*, 772 F.3d at 886; *Durham*, 905 F.3d at 435; *Kitchen*, 755 F.3d at 1201–02; *Finberg*, 634 F.2d at 54. Indeed, the ministerial nature of the clerks' duties to docket petitions and issue citations bolsters Plaintiffs' standing: absent relief from this Court, clerks *will* perform these duties. *See* Tex. R. Civ. P. 99(a) ("Upon the filing of the petition, the clerk … shall forthwith issue a citation"); Dickson Mot. 7; Dickson

14

Decl. ¶ 8, ECF No. 50-1; Seago Decl. ¶ 6, ECF No. 50-2.  Performance of the clerks' duties will force Plaintiffs to defend against countless enforcement actions under a blatantly unconstitutional law that will drain Plaintiffs' resources and potentially force them to close their doors, regardless of whether the enforcement actions are ultimately successful.  *See* Compl. ¶¶ 103, 111–13.

The members of the Defendant class of judges are the public officials responsible for, among other things, issuing the coercive sanctions under S.B. 8.  If S.B. 8 is violated, judges in enforcement proceedings "shall award" "injunctive relief sufficient to prevent" future violations, as well as monetary penalties of "not less than $10,000 for each abortion" performed in violation of S.B. 8 and "costs and attorney's fees."  S.B. 8 § 171.208(b).  Those are indisputably acts of coercive enforcement that will injure Plaintiffs and patients.

> **b.    Private parties' involvement in S.B. 8 enforcement actions does not negate the judges' and clerks' role in causing Plaintiffs' injuries**

It is immaterial that "it is only private parties who may initiate enforcement actions under S.B. 8," Clarkston Mot. 13, and that judges and clerks "ha[ve] no control over whether" a private party initiates actions to enforce S.B. 8, Jackson Mot. 6.  Nor does there need to be certainty that petitions for enforcement of S.B. 8 will be filed in Smith County and submitted personally to Defendant Clarkston and Defendant Judge Jackson.  *Contra* Clarkston Mot. 4, 9–10; Dickson Mot. 14–15.  The clerks' and judges' state-law duty to act on enforcement petitions submitted to them makes them part of the injurious causal chain.  *See K.P. I*, 627 F.3d at 122–23 (finding causation where, even though claims for benefits had "not yet materialized," the "Defendant Board is *responsible* for administering the benefits" (emphasis added)); *Okpalobi*, 244 F.3d at 426 (inquiring whether the state official defendants had "coercive power" or any "power to enforce the complained-of statute"); 13A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3531.5 (3d ed.) (causal connection shown by "identify[ing] an official defendant with authority

to enforce a challenged state statute").

Nor will Plaintiffs' injuries result solely "from the independent actions of third parties not before the Court," Dickson Mot. 15, namely the individuals who will file petitions for enforcement of S.B. 8. Those individuals cannot independently force Plaintiffs to respond to their petitions, enjoin Plaintiffs, or force them to pay monetary penalties. Those actions can be taken only by clerks and judges. *See Strickland*, 772 F.3d at 886 (rejecting similar argument). In any event, Defendant Dickson is one of those "third parties," yet he, too, is resisting this Court's jurisdiction. He cannot have it both ways.

Additionally, the clerks and judges need not be the sole parties who will cause Plaintiffs' injuries, nor do they need to take every step in the causal chain. *See Bennett v. Spear*, 520 U.S. 154, 168–69 (1997). Causation is established where, as here, Defendants are "among those who would contribute to Plaintiffs' harm." *K.P. I*, 627 F.3d at 123. In *Strickland* and *Finberg*, for example, the clerks' actions could occur only once private parties filed garnishment actions with the clerks, but garnishment could occur only with the clerks' involvement. *See Strickland*, 772 F.3d at 879, 885–86; *Finberg*, 634 F.2d at 52, 54. "[T]he fact that the defendant is only one of several persons who caused the harm does not preclude a finding of causation sufficient to support standing." 15 James Wm. Moore, et al., Moore's Federal Practice § 101.41[1] (3d ed. 2008) (citation omitted); *see also Orangeburg v. FERC*, 862 F.3d 1071, 1080 (D.C. Cir. 2017) (even where "a non-party" is "an equally important player in the story," that "does not erase" the defendant's role); *Loggerhead Turtle v. Cnty. Council of Volusia Cnty.*, 148 F.3d 1231, 1253 (11th Cir. 1998) (same).

        **c.**      **The decisions on which Defendant Clarkston relies support causation here**

Defendant Clarkston contends that the Fifth Circuit has held "that plaintiffs have no

standing to sue public officials to challenge laws creating private rights to sue abortion providers." Clarkston Mot. 11 (citing *Okpalobi*, 244 F.3d at 426–27; *K.P. v. LeBlanc* ("*K.P. II*"), 729 F.3d 427, 437 (5th Cir. 2013)).  Far from such a broad-sweeping rule, the Fifth Circuit in those decisions held only "that the challengers of [the statute] had sued the wrong defendants"—defendants without connection to the statute's enforcement.  *K.P. II*, 729 F.3d at 437.  The Fifth Circuit never said, and indeed could not say, that proper defendants do not exist at all.

In *Okpalobi*, abortion providers sued the Louisiana governor and attorney general to challenge the constitutionality of a statute creating tort liability against physicians who provide abortions.  244 F.3d at 409.  The court held that the plaintiffs had "no case or controversy with these defendants" because they played no role in the private tort lawsuits.  *Id.* at 429.

In *K.P. II*, the Fifth Circuit held that abortion providers could not challenge the same tort-liability provisions by suing the members of an oversight board that reviewed patient tort claims to determine whether they would be covered by a medical-malpractice fund.  The court held that physicians had no standing to sue the board members over the constitutionality of the underlying tort action because the board was not charged with enforcing that tort action.  729 F.3d at 437.

But in *K.P. I*—a decision that Clarkston ignores—the court held that the physicians had standing to sue the board members to enjoin the board from using the claimed unconstitutional abortion statute to deny them coverage.  The causation requirement was met because the board members were "responsible for administering the benefits" and "serve[d] as initial arbiters of compensable claims."  627 F.3d at 123.  "Although the Board cannot prevent a private litigant from pursuing relief in Louisiana court," it has the "authority to disburse or withhold the benefits associated with Fund membership."  *Id.*

17

Reconciling these decisions, the Fifth Circuit later explained that the difference in "defendants in the respective actions provided the determinative distinction." *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 518 (5th Cir. 2017). Here, for the reasons discussed, Plaintiffs have sued the right defendants: among others, the public officials who will have coercive power over Plaintiffs in the S.B. 8 enforcement actions. *Okpalobi*, *K.P. I*, and *K.P. II* thus support Plaintiffs' standing here.

### 3. The relief Plaintiffs seek against the Defendant classes of judges and clerks would redress Plaintiffs' injury

Redressability is satisfied if the "plaintiff 'personally would benefit in a tangible way from the court's intervention.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 n.5 (1998) (quoting *Warth v. Seldin,* 422 U.S. 490, 508 (1975)). "The relief sought needn't completely cure the injury"; "it's enough if the desired relief would lessen it." *Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019); *see also Air Evac EMS*, 851 F.3d at 514–15.

Here, enjoining the clerks from docketing or issuing citations for any petitions for enforcement brought under S.B. 8 would help redress Plaintiffs' injuries. Such an injunction would prevent injurious private-enforcement actions from ever beginning. *See, e.g.*, *Air Evac EMS*, 851 F.3d at 514 (injunction against the state defendants involved in causing the plaintiffs' injuries "would remove a 'discrete injury' caused by state defendants' enforcement"); *Strickland*, 772 F.3d at 886 (injury could be redressed if the court were to "declare the Georgia garnishment process unconstitutional or enjoin any future similar actions that lacked adequate due process protections"); *Durham*, 905 F.3d at 434 ("[W]ere the district court to order the administrators to pay him those benefits, as requested by the complaint, that remedy would redress Durham's claimed injury."); *Kitchen*, 755 F.3d at 1201–02 (injuries caused by the clerk "would be cured by an injunction prohibiting the enforcement of Amendment 3").

18

A judgment declaring S.B. 8 unconstitutional would likewise satisfy redressability, lessening the injury to Plaintiffs by deterring would-be private claimants and directing the Defendant classes not to open S.B. 8 actions or enforce S.B. 8's penalties in violation of federal rights. *See Steffel v. Thompson*, 415 U.S. 452, 469–70 (1974) ("Of course, a favorable declaratory judgment may . . . be valuable to the plaintiff . . . ." (citation and internal quotation marks omitted)); *see also In re Justs. of Sup. Ct. of P.R.*, 695 F.2d 17, 23 (1st Cir. 1982) ("[I]t is ordinarily presumed that judges will comply with a declaration of a statute's unconstitutionality without further compulsion."). For example, in *Roe v. Wade*, the Court issued declaratory relief only, stating: "We find it unnecessary to decide whether the District Court erred in withholding injunctive relief, for we assume the Texas prosecutorial authorities will give full credence to this decision that the present criminal abortion statutes of that State are unconstitutional." 410 U.S. 113, 166 (1973).

Contrary to Defendant Clarkston's suggestion, Clarkston Mot. 11, redressability here is not contradicted by the district court's decision in *Planned Parenthood of Greater Texas Surgical Health Services v. City of Lubbock*, No. 5:21-CV-114-H, 2021 WL 2385110 (N.D. Tex. June 1, 2021). While that case also involved a challenge to a law permitting private lawsuits against abortion providers, the defendant was the city that enacted the ordinance—not, as here, the judges and clerks who will play an essential role in enforcing the law. Indeed, the court specifically observed that redressability would have been met if relief against the city would have bound the judges who have jurisdiction over the private enforcement actions. *Id.* at *11–12.[5]

---

[5] Moreover, as detailed in the plaintiffs' pending motion for reconsideration in that case, the court's general suggestion that redressability is difficult to establish in a "pre-enforcement challenge to laws that establish private-enforcement provisions," *id.* at *1, *8, is contradicted by controlling Fifth Circuit precedent, *see* Pls.' Mot. for Reconsid. at 8–27, *Planned Parenthood of Greater Tex. Surgical Health Servs.*, No. 5:21-CV-114-H (N.D. Tex. June 29, 2021), ECF No. 52. In *Allstate Ins. Co. v. Abbott*, which also involved a challenge to a law enforceable only through a

Defendant Clarkston argues that redressability is lacking because state law requires clerks to docket petitions, and clerks lack authority to reject them.  Clarkston Mot. at 14–16.  If that argument were accepted, it would doom every federal constitutional challenge to a government official's performance of their state-law obligations.  "[T]he premise of a § 1983 case such as this one is that, by acting according to [a state] statute, rule, or policy that is not constitutional in origin, the defendant official has violated the U.S. Constitution, which takes precedence in the event that the two types of law conflict."  *Nashville Cmty. Bail Fund v. Gentry*, 446 F. Supp. 3d 282, 301 (M.D. Tenn. 2020).  An injunction against the clerks would not tell them "how to conform their conduct to *state* law," Clarkston Mot. 15 (emphasis added and citation omitted); it would compel them to conform their conduct to *federal* law.  Obviously, "a federal court does not violate state sovereignty when it orders a state official to do nothing more than uphold federal law."  *Air Evac EMS*, 851 F.3d at 516.

Defendant Clarkston also complains that clerks may not be able to identify which petitions are seeking enforcement of S.B. 8.  But solutions abound, including, for instance, requiring filers to aver whether their petition is brought under S.B. 8.  Of course, clerks could also seek guidance from legal authorities.  *See Campaign for S. Equal. v. Bryant*, 197 F. Supp. 3d 905, 909 (S.D. Miss. 2016) (discussing how clerks obtained guidance from state attorney general as to how to implement district court injunction prohibiting clerks from enforcing the state's same-sex-marriage ban).  This plainly does not present a jurisdictional hurdle.

---

private cause of action, the Fifth Circuit concluded that redressability was "*easily satisfied*" by a "declaration of unconstitutionality directed against the state," because declaratory relief "would allow [the plaintiff] to avoid the[] penalties and lawsuits" that the challenged law "threaten[ed]." 495 F.3d 151, 159 (5th Cir. 2007) (emphasis added).

Finally, Defendant Clarkston is wrong to suggest that awarding relief here would require the Court to "commandeer the entire Texas judiciary," Clarkston Mot. 8, or to "impermissibly monitor the operation of state court functions," *id.* at 10 (brackets omitted).  To the contrary, it is the Texas Legislature that is "us[ing] the judicial branch in the political battle over abortion" by conscripting the entire Texas judiciary into enforcing an abortion ban in flagrant violation of federal law.[6]  Relief from this Court would relieve the massive burdens on the State's judiciary that are sure to come from a flood of frivolous, harassing, abusive petitions filed by attorneys and pro se litigants alike to enforce this unconstitutional law.

### B.    Plaintiffs and Defendants Have Clearly Adverse Legal Interests

#### 1.    There is no separate "adversity" element of standing

Notwithstanding Plaintiffs' showing on injury, causation, and redressability, Defendants argue that Plaintiffs must separately show that the parties have "adverse" legal interests.  *See* Clarkston Mot. 8 (characterizing "adversity" and "standing" as separate inquiries); *see also id.* 5– 7; Jackson Mot. 4–5; Dickson Mot. 10–11.  But the three-prong test for standing *is* the test for adversity of legal interests:  "'Th[e] triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement' . . . ."  *Inclusive Cmtys. Project*, 946 F.3d at 655 (quoting *Steel Co.*, 523 U.S. at 103–04).  A "conflict between state officials empowered to enforce a law and private parties subject to prosecution under that law is a classic 'case' or 'controversy' within the meaning of Art. III."  *Diamond v. Charles*, 476 U.S. 54, 64 (1986).  Once the three standing criteria are met, as they are here, "a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging."  *SBA List*, 573 U.S. at 167 (quotation marks

---

[6] Letter from Hon. Steve Adler et al., to Tex. House of Representatives, *Open letter in opposition to HB 1515 and SB 8 from the Texas legal community* 2 (Apr. 28, 2021), https:// documentcloud.adobe.com/link/review?uri=urn%3Aaaid%3Ascds%3AUS%3A38eff803-3fd3- 498b-a6b4-658305bf6beb.

omitted) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014)).

### 2.     Even if there were a separate "adversity" requirement, it would easily be met here

Even assuming there were a separate "adversity" requirement, it would easily be met here. Defendant Clarkston has taken the position that under state law she "does not have the authority to reject petitions" and has no choice but to open dockets and issue citations.  Clarkston Mot. 15. Once she defends by saying she is following state-law procedures, she cannot claim she lacks an interest in defending the constitutionality of those procedures.  *Finberg*, 634 F.2d at 54.  Moreover, as Plaintiffs have explained, *see supra* pp. 6–8, 14–15, this very act of opening dockets and issuing citations violates federal law by infringing on the constitutional rights of Plaintiffs and pregnant Texans, and so, under the Federal Constitution, Defendant Clarkson *cannot* open the dockets and issue citations in S.B. 8 enforcement actions.  Thus, there is a "dispute between parties who face each other in an adversary proceeding" over the "legal rights and obligations" of clerks vis-à-vis petitions for enforcement of S.B. 8, in which "the parties ha[ve] taken adverse positions with respect to their existing obligations."  *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 242 (1937).  "Such a dispute is manifestly susceptible of judicial determination."  *Id.*

Defendant Judge Jackson has also publicly stated that he has a stake in the outcome of this case and that he will vigorously defend S.B. 8 against this constitutional challenge.  In an August 4, 2021, press conference about this lawsuit that Judge Jackson held at an anti-abortion crisis pregnancy center with State Senator Bryan Hughes, the author of S.B. 8, Judge Jackson stated that he is "willing to answer the fight," that he would "take on this challenge," and that he is "one hundred percent committed to seeing this frivolous lawsuit dismissed . . . and the voice and the vote of pro-life Texans defended."  Lawrence Decl., Ex. A, at 1, ECF No. 53-1.  "On this front of

the culture war," Judge Jackson emphasized, "I will yield no further." *Id.* Judge Jackson's avowed "interest in defending the constitutionality" of S.B. 8 makes him an adverse party. *Finberg*, 634 F.2d at 54.

### 3. The decisions involving suits against judges support naming judges and clerks as defendants here

Defendants rely heavily on a line of decisions concerning the propriety of suits against judges in a challenge to a statute's constitutionality. *See* Jackson Mot. 4–5; Clarkston Mot. 5–7; Dickson Mot. 10–11. But those decisions only reinforce that Plaintiffs have identified the proper defendants here, where the Texas Legislature deliberately removed all executive branch officials from S.B. 8's direct enforcement and instead conscripted judges and clerks to enforce the Act.

**a.** The seminal decision in this line is *In re Justices of the Supreme Court of Puerto Rico*, 695 F.2d 17 (1st Cir. 1982). There, the First Circuit concluded that in constitutional challenges to statutes, judges generally cannot be sued if there is an official in another branch of government tasked with enforcing the statute—while leaving the door open to suits against judges in the kind of extraordinary circumstances the Texas Legislature created here.

The *Puerto Rico* court explained that "one seeking to enjoin the enforcement of a statute on constitutional grounds *ordinarily* sues the enforcement official authorized to bring suit under the statute . . . . One *typically* does not sue the court or judges who are supposed to adjudicate the merits of the suit that the enforcement official may bring." *Id.* at 21–22 (emphasis added). "[O]rdinarily, no 'case or controversy' exists between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute." *Id.* at 21 (emphasis added). So "a court should not enjoin judges from applying statutes when complete relief can be afforded by enjoining all other parties with the authority to seek relief under the statute." *Id.* at 23.

But *Puerto Rico* also explains that in non-typical circumstances, such as these, a litigant *does* have a genuine "case or controversy" with a judge. Judges can be sued where it is not possible to enjoin all "other parties with the authority to seek relief under the statute," *id.*—which was precisely the Texas Legislature's intent in devising S.B. 8's enforcement scheme. Here, the typical defendant in a challenge to a statute's direct enforcement—the "enforcement official authorized to bring suit under the statute," *id.* at 21—does not exist. So there is a "relief-related basis for including the judges in [the] law suit," and "it is . . . *necessary* to enjoin a judge to ensure full relief to the parties." *Id.* at 23 (emphasis added). This carve-out within *Puerto Rico* accords with the Supreme Court's recognition "that federal injunctive relief against a state court proceeding can in some circumstances be *essential* to prevent great, immediate, and irreparable loss of a person's constitutional rights." *Mitchum*, 407 U.S. at 242 (emphasis added).

The Fifth Circuit decisions on which Defendants rely, *see* Jackson Mot. 2, 4; Clarkston Mot. 11–16; Dickson Mot. 16, 19, were not the unusual cases in which there was a relief-related basis for naming judges as defendants. Instead, they were the ordinary cases in which plaintiffs could have obtained full relief by bringing another type of affirmative legal action. Defendants do not dispute that S.B. 8 is far from ordinary, nor do they identify any other avenue of affirmative relief beyond that taken by Plaintiffs in this case. *See* S.B. 8, § 171.211 (attempting to reimpose immunity in state court for any state official sued over the law's constitutionality).

*Chancery Clerk of Chickasaw County, Mississippi v. Wallace* was a challenge to Mississippi's involuntary-commitment procedures, and the named defendants were the state's chancery judges and clerks. 646 F.2d 151, 153 (5th Cir. Unit A 1981). The court explained that it understood that "plaintiffs undertook to bring suit against government officials of the State of Mississippi enforcing and applying the Mississippi commitment procedures." *Id.* at 160. But the

plaintiffs should have sued "the Mississippi officials with executive responsibility for defending the challenged civil commitment procedures."  *Id.*  The court allowed the plaintiffs to "substitut[e] as defendants those state officials with the requisite 'personal stake' in defending the state's interests."  *Id.*[7]

In *Bauer v. Texas*, the defendant Judge Olsen had placed the plaintiff Bauer in guardianship proceedings and appointed a temporary guardian and a guardian ad litem for her.  341 F.3d 352, 354 (5th Cir. 2003).  Bauer sued Judge Olsen, challenging the constitutionality of the Texas guardianship statutes.  *Id.* at 357.  Relying on *Puerto Rico*, the court concluded that Judge Olsen was not the correct defendant because he played a solely adjudicatory role.  *Compare id.* at 361, *with infra* pp. 28–30 (discussing the enforcement role the defendant judicial class must play under S.B. 8's rigged procedures and mandatory penalties).  Significantly, *Bauer* left open the possibility that a plaintiff in a proper case could name judges as defendants to challenge the constitutionality of a statute: like *Puerto Rico*, *Bauer* said only that "[o]rdinarily" no case or controversy exists in a suit against a judge.  341 F.3d at 361.  The court also explained that Bauer had another option available in which to affirmatively raise her constitutional claims: she could have sought "to dissolve either temporary guardianship or the guardianship ad litem on the ground that the statutes

_____

[7] One fair reading of *Wallace* is that the court recognized that the defendant judges and clerks were the officials who "enforc[e] the [challenged] statute," yet the court nevertheless instructed the plaintiffs to substitute executive-branch officials who would "defend[] the challenged" procedures but who played no role in their actual enforcement.  *Wallace*, 646 F.2d at 160.  If that reading is correct, then *Wallace* has been implicitly overruled by the en banc *Okpalobi* decision, which holds that executive-branch officials who play no role in a challenged statute's enforcement are not proper defendants.  *Okpalobi*, 244 F.3d at 426–28.  Regardless, Plaintiffs have standing because they named both judges and the relevant executive-branch officials who could defend the law.

authorizing their creation were unconstitutional." *Id.* at 362.[8]

This is not an ordinary case like *Puerto Rico*, *Wallace*, and *Bauer* where there is someone else to sue with authority to directly enforce S.B. 8 (i.e., everyone "in the world," all of whom S.B. 8 invites to bring claims, Dickson Mot. 7) or another legal vehicle in which to adequately vindicate constitutional claims. Had the Texas Legislature given executive officials the power to directly enforce S.B. 8 (as opposed to just indirectly, *see* Pls.' Opp'n to State Agency Defs.' Mot. 7–11), Plaintiffs would not have sued judges and clerks but would have sued solely those executive officials—as abortion providers have successfully done in every other challenge to six-week abortion bans across the country. But as S.B. 8's prime legislative sponsor explained at the aforementioned press conference, the Texas Legislature deliberately designed S.B. 8 so that there would be no executive official who could be sued as a direct enforcer. Lawrence Decl., Ex. A, at 3, ECF No. 53-1; *see also* Compl. ¶ 6 n.1; S.B. 8 § 171.207.

Additionally, as already explained, the enforcement proceedings created by S.B. 8 are not remotely an adequate vehicle to vindicate Plaintiffs' rights. They are inherently abusive and designed to thwart the exercise of constitutional rights. *See supra* pp. 6–8; *Perez v. Ledesma*, 401 U.S. 82, 85 (1971); *id.* at 117–18 (Brennan, J., concurring in part and dissenting in part);

---

[8] Notably, *Bauer* found "distinguishable," 314 F.3d at 361, the court's earlier decision in *Ciudadanos Unidos de San Juan v. Hidalgo Cnty. Grand Jury Comm'rs*, 622 F.2d 807 (5th Cir. 1980). There, the Fifth Circuit held that the district court had jurisdiction over a Section 1983 suit against a Texas district judge in his official capacity, as well as grand jury commissioners appointed by the judge, challenging the system for selecting grand jurors. 622 F.2d at 810–13 & nn.11–12, 813 n.16, 822. Reasoning that the *system itself*—just like S.B. 8—"invite[d] discrimination" and was "susceptible to abuse," the court allowed the litigation to proceed even in the absence of allegations that new officials intended to perpetuate the patterns alleged in the complaint. *Id.* at 821–23 & n.28. The court also rejected other jurisdictional objections because— just as here—"if these arguments were credited, the operation of [the challenged legal process] would be effectively insulated from federal equitable relief to protect those in appellants' situation from denial of their constitutional rights." *Id.* at 823.

*Dombrowski*, 380 U.S. at 486; *see also* Pls.' Mot. Summ. J. 34–54 (explaining why S.B. 8 enforcement proceedings are themselves violative of the Federal Constitution).   Moreover, S.B. 8's ruinous penalties are designed to ensure that no one violates the law in the first place, thus preventing enforcement proceedings from ever beginning.   *See* Dickson Decl. ¶ 7, ECF No. 50-1; Lambrecht Decl. ¶ 14, ECF No. 19-5.

The Texas Legislature's cynical scheme to evade review by removing the ordinary defendants in abortion litigation makes this case nothing remotely like the decisions on which Defendants rely, and instead precisely the case where it is necessary to issue prospective equitable relief against judges and clerks to ensure full relief to the Plaintiffs.   *See Puerto Rico*, 695 F.2d at 23.   Indeed, federal courts have issued prospective relief against state judges in numerous cases to protect federal constitutional rights.[9]

---

[9] *See, e.g.*, *WXYZ, Inc. v. Hand*, 658 F.2d 420, 427 (6th Cir. 1981) (affirming issuance of permanent injunction against Michigan state court judge who was required by statute to issue a suppression order in a criminal proceeding that barred media from publishing the defendant's identity); *Caliste v. Cantrell*, Civ. No. 17-6197, 2017 WL 6344152, at *3 (E.D. La. Dec. 12, 2017) (awarding declaratory relief and later entering a consent decree against a magistrate judge of Orleans Parish who under Louisiana state law received a set percentage of any bond amount collected from a for-profit surety for the court's discretionary use and who had an active role in setting bail and managing generated funds), *aff'd*, 937 F.3d 525 (5th Cir. 2019); *Strawser v. Strange*, 100 F. Supp. 3d 1276 (S.D. Ala. 2015) (awarding declaratory and injunctive relief against a defendant class of Alabama probate judges who were directed by Alabama law to refuse to issue marriage licenses to same-sex couples or recognize their out-of-state marriages); *Tesmer v. Granholm*, 114 F. Supp. 2d 603, 616–18, 622 (E.D. Mich. 2000) (awarding declaratory relief initially, and injunctive relief subsequently, against a defendant class of state court judges who were directed by a state statute to deny appellate counsel to indigent criminal defendants who plead guilty), *aff'd in part and rev'd in part on other grounds*, 333 F.3d 683 (6th Cir. 2003) (en banc), *rev'd on other grounds sub nom Kowalski v. Tesmer*, 543 U.S. 125 (2004); *Kendall v. True*, 391 F. Supp. 413, 420 (W.D. Ky. 1975) (awarding declaratory and injunctive relief against a class of county circuit court judges who oversaw civil commitment proceedings pursuant to procedures set forth by Kentucky law); *Blick v. Dudley*, 356 F. Supp. 945, 953–54 (S.D.N.Y. 1973) (awarding injunctive relief against Administrative Judge and Chief Clerk of New York criminal court requiring expungement of all records of plaintiffs' unconstitutional arrests because only the clerks could expunge the records).

**b.**      In any event, any limitation that exists on naming judges as defendants in constitutional challenges applies only where the judges are "acting *purely* in their adjudicative capacity." *Bauer*, 341 F.3d at 361 (emphasis added and citation omitted); *Puerto Rico*, 695 F.2d at 22 (emphasis added). When acting in an "enforcement capacity," judges and clerks are plainly "not immune from suits for declaratory or injunctive relief." *LeClerc v. Webb*, 419 F.3d 405, 414 (5th Cir. 2005). "Thus, to the extent that the plaintiffs seek declaratory and injunctive relief against the *enforcement* of [S.B. 8] only, the [judges and clerks] are subject to the instant suit[]." *Id.*

Here, the Defendant classes of judges and clerks will act in an enforcement capacity for several reasons.

*First*, for all the reasons discussed, judges and clerks are the government officials that the Texas Legislature has charged with directly enforcing "violation[s]" of S.B. 8's "prohibit[ion]", *see* S.B. 8, §§ 171.204, 171.208(a)–(b). *See supra* pp. 14–15. There are no others. *See* S.B. 8, § 171.207. Indeed, at his press conference, Defendant Judge Jackson acknowledged that he is one of "the judges who enforce the law [i.e., S.B. 8] in east Texas." Lawrence Decl., Ex. A, at 1.

*Second*, S.B. 8 rigs the courthouse rules to virtually ensure that any purported "adjudication" of an S.B. 8 enforcement action results in the intended outcome: the judge awarding the claimant the financial penalties, "injunctive relief sufficient to prevent" future violations, and attorney's fees and costs that the statute mandates to coerce compliance with the six-week ban. S.B. 8 § 171.208(b). Unlike in *Bauer*, where the court concluded that the judge's role was "purely" adjudicatory in part because of the procedural "safeguards" built into the statute before a guardianship could be imposed, 341 F.3d at 359, 361, the Texas Legislature did everything in its power to ensure that judges *cannot* perform a genuine adjudication. *See* Pls.' Mot. Summ. J. 10–14, 28–31. For instance, S.B. 8 purports to eliminate non-mutual issue preclusion and claim

28

preclusion; purports to modify federal constitutional defenses; and precludes a court from relying on non-binding precedent or even assessing whether a claimant has been injured by those they sue. *See* Compl. ¶¶ 80–85.   Awarding S.B. 8's mandatory penalties in the context of such rigged proceedings hardly counts as adjudication, much less *pure* adjudication.   Rather, the judges are bound to enforce adherence to S.B. 8 through "compulsion or constraint."  *K.P. I*, 627 F.3d at 124; *see also Shelley*, 334 U.S. at 20 ("We hold that in granting judicial enforcement of the restrictive agreements in these cases, the States have denied petitioners the equal protection of the laws and that, therefore, the action of the state courts cannot stand.").   Likewise, the clerk would enforce S.B. 8 by issuing citations compelling defendants to respond to enforcement petitions.

*Third*, every act that judges and clerks take that furthers a private party's enforcement petition is itself an act of enforcing S.B. 8's unconstitutional enforcement provisions.   As discussed, *see supra* pp. 6–8, 26–27, S.B. 8 was transparently designed in bad faith to inflict harm, regardless of whether any enforcement action is ultimately successful.   One intent of the enforcement provisions is to divert abortion providers and supporters away from providing constitutionally protected health care and instead to spend all their time and resources defending themselves in hundreds of baseless and unconstitutional enforcement proceedings simultaneously all across the State, with the aim of bankrupting them.  *See* Compl. ¶¶ 102–113; Pls.' Mot. Summ. J. 9–13; Pls.' Opp'n to Dickson Mot., Ex. 8 (lauding the fact that few abortion providers forced to close by an unconstitutional 2013 statute were ever able to reopen).   That is why the harms alleged in this suit flow not just from the abortion ban, but also from the enforcement actions themselves.

So, for example, a clerk issuing a citation compelling a response to an enforcement petition will be enforcing Section 171.208 of S.B. 8, a provision challenged in this lawsuit.  And a judge forcing individuals sued under S.B. 8 to present evidence in S.B. 8 enforcement actions will

enforce Sections 171.208–171.210 of S.B. 8, provisions also challenged in this lawsuit. Indeed, forcing Plaintiffs to take *any* action to respond to S.B. 8's rigged enforcement actions is itself enforcement of S.B. 8's unconstitutional provisions.

In short, because judges and clerks will enforce S.B. 8, they are proper defendants.

## III.   THE JUDICIAL AND CLERK DEFENDANT CLASSES HAVE NO COLORABLE CLAIM TO SOVEREIGN IMMUNITY HERE

Defendants' assertions of sovereign immunity are completely baseless. *Ex parte Young* "allows plaintiff[s] to sue a state official, in his official capacity, in seeking to enjoin enforcement of a state law that conflicts with federal law." *Air Evac EMS*, 851 F.3d at 515. "In determining whether the doctrine of *Ex parte Young* applies, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Planned Parenthood Gulf Coast, Inc. v. Phillips*, No. 18-30699, --- F.4th ---, 2021 WL 2980702, at *7 (5th Cir. July 15, 2021) (quotation marks and brackets omitted) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, all agree that Defendant Judge Jackson is a state official sued in his official capacity. Plaintiffs allege that S.B. 8 is unconstitutional and thus enforcing it prospectively would be an ongoing violation of federal law. *See Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 472–73 & n.22 (5th Cir. 2020) (en banc). And the sole relief being sought here is prospective equitable relief. Compl. 46–47 (Request for Relief). Because Plaintiffs "request[] relief prospectively requiring" the Defendant class of judges "to refrain from taking future actions to enforce an unlawful" law, their request satisfies *Ex parte Young* "[o]n its face." *Green Valley*, 969 F.3d at 472; *see also Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996) (claims against Texas judges seeking prospective relief against violations of federal law are not barred by sovereign immunity).

As to Defendant Clarkston, to the extent that in her role as a county official she performs a state function by enforcing state law or policy as she contends, *see* Clarkston Mot. 17, she falls within the *Ex parte Young* exception for the same reasons as Defendant Judge Jackson. Alternatively, if as a county official she is not serving in a state role, she has no entitlement to sovereign immunity. *See Cutrer v. Tarrant Cnty. Loc. Workforce Dev. Bd.*, 943 F.3d 265, 270 (5th Cir. 2019). Either way, she lacks immunity. *See Daves v. Dallas Cnty.*, 984 F.3d 381, 405 (2020), *vacated and reh'g en banc granted*, 988 F.3d 834 (5th Cir. 2021).

The only real question here under *Ex parte Young* is whether the Defendant classes of judges and clerks have "some connection" with S.B. 8's enforcement. *Air Evac EMS*, 851 F.3d at 517; *K.P. I*, 627 F.3d at 124. "A scintilla of enforcement by the relevant state official with respect to the challenged law will do." *Tex. Dem. Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (citation and internal quotation marks omitted), *cert. denied*, 141 S. Ct. 1124 (2021); *see also* Pls.' Opp'n to State Agency Defs.' Mot. 11–13 (describing Fifth Circuit decisions in the *Ex parte Young* context). Here, for the same reasons that the clerks and judges are causally connected to Plaintiffs' injuries, they have the requisite connection to S.B. 8's enforcement. *See City of Austin v. Paxton*, 943 F.3d 993, 1002–03 (5th Cir. 2019) (explaining the close similarity between the causation element of standing and the connection requirement for *Ex parte Young*), *cert. denied*, 141 S. Ct. 1047 (2021). The clerks have authority under state law to compel Plaintiffs to respond to S.B. 8 enforcement petitions, and the judges have authority under S.B. 8 to issue injunctions constraining Plaintiffs' conduct and awarding monetary penalties, all of which readily establishes the requisite connection to enforcement. *See supra* pp. 14–15.

Defendant Dickson argues that the *Ex parte Young* exception does not apply because a judge does not violate federal law by "presiding over a lawsuit" and "does not become a federal

31

lawbreaker unless and until he enters an actual ruling that violates someone's federally protected rights." Dickson Mot. 13.  But Plaintiffs allege that S.B. 8's enforcement proceedings themselves violate the Federal Constitution, *see supra* pp. 6–8, 28–30, and that allegation of a prospective violation of federal law suffices under the "straightforward inquiry" that courts must follow to determine whether the exception to sovereign immunity applies.  *Green Valley*, 969 F.3d at 471–73; *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997) ("An allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction.").  Nor does the official sued need to be presently violating federal law; if that were a requirement, then *no* pre-enforcement challenge could ever be brought.  The requirement of an "ongoing" alleged violation is met because Plaintiffs' request for relief looks prospectively to vindicate their "ongoing legal right[s]."  *Green Valley*, 969 F.3d at 473 n.22.  It also does not matter whether one might consider it "illegal" for a court clerk to accept an S.B. 8 filing.  *Contra* Dickson Mot. 13.  "Under *Ex Parte Young* the inquiry is not into the nature of an official's duties but into the effect of the official's performance of his duties on the plaintiff's rights."  *Finberg*, 634 F.2d at 54.  Indeed, "courts often have allowed suits to enjoin the performance of ministerial duties in connection with allegedly unconstitutional laws."  *Id.*

## IV.   PLAINTIFFS HAVE CLAIMS UNDER BOTH SECTION 1983 AND THE EQUITABLE CAUSE OF ACTION RECOGNIZED IN *EX PARTE YOUNG*

This suit for prospective equitable relief is brought against state and county government officials acting in their official capacity.  It is well established that Plaintiffs can bring such an action under 42 U.S.C. § 1983.  In more recent decisions, the Fifth Circuit has suggested that such claims are in fact separate equitable causes of action recognized in *Ex parte Young*.  Plaintiffs, therefore, assert both types of claims in this case.  *See* Compl. ¶¶ 20–21.

A.       Defendants incorrectly argue that Plaintiffs cannot sue state officials in their official capacity under 42 U.S.C. § 1983 but instead can proceed *solely* "under the equitable cause of action recognized in *Ex parte Young*."  Jackson Mot. 6 (citation omitted).  That argument is foreclosed by decades of Supreme Court precedent.  In *Will v. Michigan Department of State Police*, the Supreme Court held that Section 1983 suits *for damages* against state officials in their official capacity cannot be brought because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  491 U.S. 58, 71 (1989).  The Court reasoned that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and "[a]s such, it is no different from a suit against the State itself."  *Id.*  Thus, Section 1983 suits for damages against state officials are brought against the officials in their individual capacities.  *See Hafer v. Melo*, 502 U.S. 21, 31 (1991).

But *Will* made clear that official-capacity suits against state officials may be brought under Section 1983 *for prospective equitable relief*:  "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"  *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985), and citing *Ex parte Young*, 209 U.S. at 159–60).  When a state official is sued in their official capacity for prospective relief, they "become[] a private person subject to suit."  *K.P. I*, 627 F.3d at 124.  For this reason, Section 1983 suits seeking prospective relief against state officials acting in their official capacity are legion.  *See, e.g.*, *Durham*, 905 F.3d at 433; *Kitchen*, 755 F.3d at 1200–01; *Morris*, 739 F.3d at 743; *Wallace*, 646 F.2d at 153; *Finberg*, 634 F.2d at 52; *Ciudadanos Unidos de San Juan v. Hidalgo Cnty. Grand Jury Comm'rs*, 622 F.2d 807, 812 & n.11 (5th Cir. 1980).

In any event, Plaintiffs here are not proceeding solely under Section 1983; they also bring their claims under the equitable cause of action that the Fifth Circuit has held arises from *Ex parte Young*. *See Green Valley*, 969 F.3d at 475. In their complaint, Plaintiffs expressly invoked the "equitable powers of the Court, including the Court's inherent authority to enforce the supremacy of federal law." Compl. ¶ 21; *Planned Parenthood Gulf Coast*, 2021 WL 2980702, at *6 ("*Ex parte Young*'s purpose is to 'give[] life to the Supremacy Clause' and prevent violations of federal rights." (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985))); *Agredano v. State Farm Lloyds*, 975 F.3d 504, 506 (5th Cir. 2020) (pleading standard does not require "magic words").[10]

**B.**   Defendants point to a passage in *Ex parte Young* suggesting that federal courts do not have "the power to restrain a [state] court from acting in any case brought before it." Jackson Mot. 7 (emphasis omitted) (quoting *Ex parte Young*, 209 U.S. at 163). Ignoring subsequent binding precedent interpreting *Ex parte Young*, Defendants apparently believe this passage alone forecloses all of Plaintiffs' claims. *See id.*; Dickson Mot. 11–12. They are mistaken for several reasons.

***First***, in the decades since *Ex parte Young*, the Supreme Court has made it abundantly clear that judges can be sued under Section 1983 and *Ex parte Young*. For example, in *Supreme Court of Virginia*, the Court expressly discussed "§ 1983 injunctive suits" and "a myriad of . . . cases since *Ex parte Young* . . . decid[ing] that suits against state officials in federal courts are not barred by the Eleventh Amendment." 446 U.S. at 736–37. Reasoning that this rationale also applied

---

[10] Regardless of whether the complaint expressly invoked the equitable cause of action, Plaintiffs' claims "may go forward" under that equitable theory. *Green Valley*, 969 F.3d at 475. And even if there were a pleading defect (which there is not), Defendant Jackson acknowledges it could be cured. *See* Jackson Mot. 7 n.3. To resolve any ambiguity, Plaintiffs clarify now that their complaint asserts claims under both 42 U.S.C. § 1983 and the *Ex parte Young* equitable cause of action, and if required by the Court, Plaintiffs would amend their complaint to make this even more explicit.

when the state officials were judges, the Court concluded that judges are not immune from suits for prospective relief. *Id.* at 737 & n.16 ("[P]rospective relief was properly awarded against the chief justice in his official capacity."); *see also Mireles*, 502 U.S. at 10 n.1; *Pulliam*, 466 U.S. at 536–543. Indeed, the Court "long ago recognized that federal injunctive relief against a state court proceeding can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights." *Mitchum*, 407 U.S. at 242; *see id.* at 234 ("[T]he Court through the years found that federal courts were empowered to enjoin state court proceedings.").

*Second*, the passage of *Ex parte Young* on which Defendants rely is in a portion of the Court's discussion that does not involve sovereign immunity. *See Ex parte Young*, 209 U.S. at 163; *see also Green Valley*, 969 F.3d at 496 (Oldham, J., concurring) (discussing two separate parts and holdings of *Ex parte Young*). It could thus be read at most as a limitation on obtaining injunctive relief when *not* proceeding under Section 1983. Where, as here, claims are brought under Section 1983, Congress has dictated when declaratory and injunctive relief are available against judges acting in their judicial capacity, and the statutory authority to award such relief cannot be nullified through subsequent interpretation of a court's inherent equitable authority. *See* 42 U.S.C. § 1983; *see also Pulliam*, 466 U.S. at 536–543; *LeClerc*, 419 F.3d at 414. Moreover, even under Defendants' reading of this passage, it could at most, preclude an "injunction," *Ex parte Young*, 209 U.S. at 163, not declaratory relief.[11]

*Third*, this passage would not apply to injunctive and declaratory relief against the Defendant class of clerks. The purpose of relief against the clerks is to preclude S.B. 8 enforcement actions from being brought in the state courts at all. The *Ex parte Young* passage

---

[11] Defendant Jackson is wrong to suggest that "Plaintiffs have not even attempted to invoke the Declaratory Judgment Act." Jackson Mot. 7. Plaintiffs did so explicitly. Compl. ¶ 21 (citing 28 U.S.C. §§ 2201, 2202).

discusses "the power to restrain a court from acting in any case brought before it." 209 U.S. at 163. But federal courts have authority to "enjoin an individual," including a government official, from commencing suits" at all. *Id.*

**Fourth**, this passage from *Ex parte Young* is premised on there being other government officials connected to enforcing the challenged statute who could be enjoined instead of enjoining the judges and clerks. Here, however, the judges and clerks are the only government officials charged with directly enforcing S.B. 8. *See supra* pp. 4–6, 14–15.

## CONCLUSION

Plaintiffs respectfully request that the motions to dismiss Plaintiffs' claims against Defendants Judge Jackson and Clarkston be denied.

Dated: August 11, 2021

Respectfully submitted,

*/s/ Marc Hearron*

Christen Mason Hebert
(Texas Bar No. 24099898)
Johns & Hebert PLLC
2028 East Ben White Blvd
Suite 240-1000
Austin, TX 78741
(512) 399-3150
chebert@johnshebert.com

*Attorney for all Plaintiffs*

Marc Hearron (Texas Bar No. 24050739)*
Center for Reproductive Rights
1634 Eye St., NW, Suite 600
Washington, DC  20006
(202) 524-5539
mhearron@reprorights.org

Molly Duane*
Kirby Tyrrell*
Melanie Fontes*
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
(917) 637-3631
mduane@reprorights.org
ktyrrell@reprorights.org
mfontes@reprorights.org

Jamie A. Levitt*
J. Alexander Lawrence*
Morrison & Foerster LLP
250 W. 55th Street
New York, NY 10019
(212) 468-8000
jlevitt@mofo.com
alawrence@mofo.com

*Attorneys for Whole Woman's Health, Whole
Woman's Health Alliance, Marva Sadler,
Southwestern Women's Surgery Center, Allison
Gilbert, M.D., Brookside Women's Medical*

Julie Murray*
Richard Muniz*
Planned Parenthood Federation of
America
1110 Vermont Ave., NW Ste. 300
Washington, DC 20005
(202) 973-4997
julie.murray@ppfa.org
richard.muniz@ppfa.org

*Attorneys for Planned Parenthood of
Greater Texas Surgical Health Services,
Planned Parenthood South Texas Surgical
Center, Planned Parenthood Center for
Choice, and Dr. Bhavik Kumar*

Julia Kaye*
Brigitte Amiri*
Chelsea Tejada*
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2633
jkaye@aclu.org
bamiri@aclu.org
ctejada@aclu.org

Lorie Chaiten*
American Civil Liberties Union
Foundation
1640 North Sedgwick Street
Chicago, IL 60614
(212) 549-2633
rfp_lc@aclu.org

Adriana Pinon (Texas Bar No. 24089768)
David Donatti (Texas Bar No. 24097612)
Andre Segura (Texas Bar No. 24107112)
ACLU Foundation of Texas, Inc.
5225 Katy Freeway, Suite 350
Houston, TX 77007

*Center PA d/b/a Brookside Women's Health*
*Center and Austin Women's Health Center,*
*Alamo City Surgery Center PLLC d/b/a Alamo*
*Women's Reproductive Services, Houston*
*Women's Reproductive Services, Reverend*
*Daniel Kanter, and Reverend Erika Forbes*

Tel. (713) 942-8146
Fax: (713) 942-8966
apinon@aclutx.org
ddonatti@aclutx.org
asegura@aclutx.org

*Attorneys for Houston Women's Clinic*

Stephanie Toti
LAWYERING PROJECT
41 Schermerhorn Street #1056
Brooklyn, NY 11201
(646) 490-1083
stoti@lawyeringproject.org

Rupali Sharma*
LAWYERING PROJECT
197 Pine Street, Apt. 23
Portland, ME 04102
(908) 930-6445
rsharma@lawyeringproject.org

*Attorneys for The Afiya Center, Frontera*
*Fund, Fund Texas Choice, Jane's Due*
*Process, Lilith Fund for Reproductive*
*Equity, North Texas Equal Access Fund*

*Admitted *pro hac vice*

38

**CERTIFICATE OF SERVICE**

I certify that on this 11th day of August 2021, I electronically filed a copy of the above

document with the Clerk of the Court using the CM/ECF system.


_/s/ Marc Hearron_____ _____
Marc Hearron