# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

September 10, 2021

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

No. 21-50792   Whole Woman's Health v. Jackson
USDC No. 1:21-CV-616

Enclosed is an order entered in this case.

An expedited briefing schedule will issue separately once all transcripts have been filed, and the electronic record has been received.

Sincerely,

LYLE W. CAYCE, Clerk

By: _____
Whitney M. Jett, Deputy Clerk
504-310-7772

Ms. Brigitte Adrienne Amiri
Ms. Lorie Ann Chaiten
Ms. Jeannette Clack
Mrs. Molly Rose Duane
Ms. Heather Gebelin Hacker
Mr. Marc A. Hearron
Ms. Julia Kaye
Ms. Beth Ellen Klusmann
Mr. Joseph Alexander Lawrence
Ms. Jamie A. Levitt
Mr. Jonathan F. Mitchell
Mr. Richard Muniz
Ms. Julie A. Murray
Mr. Andre Segura
Mr. Andrew Bowman Stephens
Mr. Judd Edward Stone II
Mrs. Natalie Deyo Thompson
Ms. Stephanie Toti
Mr. Benjamin Walton

# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 10, 2021

Lyle W. Cayce
Clerk

No. 21-50792

WHOLE WOMAN'S HEALTH, *on behalf of itself, its staff, physicians, nurses, and patients*; ALAMO CITY SURGERY CENTER, P.L.L.C., *on behalf of itself, its staff, physicians, nurses, and patients, doing business as Alamo Women's Reproductive Services*; BROOKSIDE WOMEN'S MEDICAL CENTER, P.A., *on behalf of itself, its staff, physicians, nurses, and patients, doing business as Brookside Women's Health Center and Austin Women's Health Center*; HOUSTON WOMEN'S CLINIC, *on behalf of itself, its staff, physicians, nurses, and patients*; HOUSTON WOMEN'S REPRODUCTIVE SERVICES, *on behalf of itself, its staff, physicians, nurses, and patients*; PLANNED PARENTHOOD CENTER FOR CHOICE, *on behalf of itself, its staff, physicians, nurses, and patients*; PLANNED PARENTHOOD OF GREATER TEXAS SURGICAL HEALTH SERVICES, *on behalf of itself, its staff, physicians, nurses, and patients*; PLANNED PARENTHOOD SOUTH TEXAS SURGICAL CENTER, *on behalf of itself, its staff, physicians, nurses, and patients*; SOUTHWESTERN WOMEN'S SURGERY CENTER, *on behalf of itself, its staff, physicians, nurses, and patients*; WHOLE WOMEN'S HEALTH ALLIANCE, *on behalf of itself, its staff, physicians, nurses, and patients*; MEDICAL DOCTOR ALLISON GILBERT, *on behalf of herself and her patients*; MEDICAL DOCTOR BHAVIK KUMAR, *on behalf of himself and his patients*; THE AFIYA CENTER, *on behalf of itself and its staff*; FRONTERA FUND, *on behalf of itself and its staff*; FUND TEXAS CHOICE, *on behalf of itself and its staff*; JANE'S DUE PROCESS, *on behalf of itself and its staff*; LILITH FUND, INCORPORATED, *on behalf of itself and its staff*; NORTH TEXAS EQUAL ACCESS FUND, *on behalf of itself and its staff*; REVEREND ERIKA FORBES; REVEREND DANIEL KANTER; MARVA SADLER,

*Plaintiffs—Appellees*,

*versus*

JUDGE AUSTIN REEVE JACKSON; PENNY CLARKSTON; MARK LEE
DICKSON; STEPHEN BRINT CARLTON; KATHERINE A. THOMAS;
CECILE ERWIN YOUNG; ALLISON VORDENBAUMEN BENZ; KEN
PAXTON,

*Defendants—Appellants.*

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-cv-616

_____

Before JONES, DUNCAN, and ENGELHARDT, *Circuit Judges*.

PER CURIAM:

This case presents a challenge to a recently enacted Texas law, S.B. 8, which authorizes private civil actions against persons who abort an unborn child with a detectable fetal heartbeat. The plaintiffs, a coalition of Texas abortion providers, principally seek an injunction against the Texas court system—judges, clerks, and a hypothetical private litigant—to prevent any Texas court from entertaining suits under S.B. 8. The unusual nature of the law and of the challenge to it raise "complex and novel antecedent procedural questions." *Whole Woman's Health v. Jackson*, No. 21A24, 2021 WL 3910722, at *1 (U.S. Sept. 1, 2021). Our panel must address some of those questions in order to decide a flurry of motions filed as the law took effect last Wednesday, September 1.

The motions arise out of the defendants' appeal of the district court's denial of their motions to dismiss the case on jurisdictional grounds. Due to the compressed timeframe, we had to decide some of those motions without giving reasons. We give them now. Two other motions concerning the private individual, Mark Lee Dickson, are still pending. We decide those today. At the outset, we provide a summary of our ruling.

No. 21-50792

First, as to the state officials' appeal. The district court denied the officials' Eleventh Amendment immunity defenses, and they immediately appealed under the collateral-order doctrine. The district court properly stayed proceedings against those defendants. However, the plaintiffs then sought an emergency motion for injunction pending appeal, premised on their argument that the district court's Eleventh Amendment immunity ruling was correct. We previously DENIED that motion and now explain why. S.B. 8 emphatically precludes enforcement by any state, local, or agency officials. The defendant officials thus lack any "enforcement connection" to S.B. 8 and are not amenable to suit under *Ex parte Young*, 209 U.S. 123 (1908).

Second, as to Dickson's appeal. The district court denied Dickson's motion to dismiss, which relied on standing and other jurisdictional grounds, and Dickson appealed. But the district court declined to stay proceedings against Dickson and proposed to go forward against him alone. Dickson then asked us for a stay, and we temporarily stayed proceedings while considering his request. In the meantime, the plaintiffs moved to dismiss Dickson's appeal. We conclude that jurisdictional issues presented in the proceedings against Dickson are related to the issues presented in the state officials' collateral-order appeal. The notice of appeal therefore divested the district court of jurisdiction over Dickson as well as the officials. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). Accordingly, we DENY the plaintiffs' motion to dismiss Dickson's appeal, and we GRANT Dickson's motion to stay the district court proceedings pending appeal.

Finally, we EXPEDITE the appeal to the next available oral argument panel.

No. 21-50792

## Background

A group of Texas abortion providers and others ("Plaintiffs")[1] brought a pre-enforcement challenge under 42 U.S.C. § 1983 to Senate Bill 8 ("S.B. 8"), a Texas abortion law that took effect on September 1, 2021. S.B. 8, 87th Leg., Reg. Sess. (Tex. 2021) (codified at Tex. Health & Safety Code § 171.201, *et seq.*). Plaintiffs named as defendants several Texas agency heads and a putative class of all Texas state judges and clerks of court ("State Defendants") as well as a private Texas citizen, Mark Lee Dickson ("Dickson") (collectively "Defendants").[2] They sought injunctive and declaratory relief to prevent enforcement of the law.

S.B. 8 prohibits a physician from performing an abortion on "a pregnant woman"[3] if her unborn child has a detectable fetal heartbeat, absent

---

[1] Plaintiffs (Appellees here) are Whole Woman's Health, Alamo City Surgery Center P.L.L.C. d/b/a Alamo Women's Reproductive Services; Brookside Women's Medical Center, P.A. d/b/a Brookside Women's Health Center and Austin Women's Health Center; Houston Women's Clinic; Houston Women's Reproductive Services; Planned Parenthood Center for Choice; Planned Parenthood of Greater Texas Surgical Health Services; Planned Parenthood South Texas Surgical Center; Southwestern Women's Surgery Center; Whole Women's Health Alliance; Medical Doctor Allison Gilbert; Medical Doctor Bhavik Kumar; The Afiya Center; Frontera Fund; Fund Texas Choice; Jane's Due Process; Lilith Fund, Inc.; North Texas Equal Access Fund; Reverend Erika Forbes; Reverend Daniel Kanter; Marva Sadler.

[2] Defendants (Appellants here) are Judge Austin Reeve Jackson, a state district judge in Smith County, Texas; Penny Clarkston, a clerk for the district court of Smith County; Mark Lee Dickson, the prolife activist; Stephen Brint Carlton, the county judge of Orange County, Texas; Katherine A. Thomas, Executive Director of the Texas Board of Nursing; Cecile Erwin Young, Executive Commissioner of the Texas Health and Human Services Commission; Allison Vordenbaumen Benz, Executive Director of the Texas State Board of Pharmacy; and Ken Paxton, Texas Attorney General.

[3] The district court felt moved to "note that people other than those who identify as 'women' may also become pregnant and seek abortion services." Order at 2 n.2. This notion, whatever it might mean, ignores that the law applies only to "an abortion on a pregnant *woman*." Tex. Health & Safety Code § 171.204(a) (emphasis added).

a medical emergency. Tex. Health & Safety Code §§ 171.204(a); 171.205(a). Conspicuously, the law limits enforcement to "private civil actions." Section 171.207, entitled "Limitations on Public Enforcement," provides in relevant part:

> Notwithstanding Section 171.005 or any other law, the requirements of this subchapter shall be enforced exclusively through the private civil actions described in Section 171.208. No enforcement of this subchapter, and no enforcement of Chapters 19 and 22, Penal Code, in response to violations of this subchapter, may be taken or threatened by this state, a political subdivision, a district or county attorney, or an executive or administrative officer or employee of this state or a political subdivision against any person, except as provided in Section 171.208.

*Id.* § 171.207(a).[4] In turn, section 171.208 provides that "any person" other than state officials may bring a civil action against persons who perform prohibited abortions and those who aid and abet them. *Id.* § 171.208(a). If a violation is found, courts shall award injunctive relief, damages "not less than $10,000" for each abortion, and costs and attorney's fees. *Id.* § 171.208(b). Among other affirmative defenses, a defendant may prove that the relief sought "will impose an undue burden" on a woman or women the defendant has standing to represent. *Id.* § 171.209(b); *see also id.* § 171.208(f).

In light of S.B. 8's enforcement mechanism, Plaintiffs have adopted a novel strategy for their pre-enforcement challenge. Principally, they seek to enjoin the entire Texas judiciary to prevent any court from entertaining S.B. 8 lawsuits. *See* Compl. for Decl. and Inj. Relief—Class Action ("Compl."),

---

[4] *See also id.* § 171.005 (providing S.B. 8 "shall be enforced exclusively through the private civil enforcement actions described by Section 171.208 and may not be enforced by the commission").

No. 21-50792

at 35 (seeking to certify a class "of all non-federal judges in the State of Texas with jurisdiction over civil actions and the authority to enforce S.B. 8"). To that end, they have sued a putative class of all state judges and clerks of court, as well as Dickson, who they allege is likely to bring a future S.B. 8 civil action. *But see Whole Woman's Health*, 2021 WL 3910722, at *1 (observing "the sole private-citizen defendant before us has filed an affidavit stating that he has no present intention to enforce the law"). Following the logic of that strategy, their complaint groups these defendants—judges, clerks, and Dickson—together.[5] The complaint refers to Dickson as "a private individual deputized to bring S.B. 8 enforcement actions under color of state law." Compl. at 7.[6]

As relevant here, all Defendants moved to dismiss the lawsuit on the grounds of sovereign immunity and Article III standing. The district court denied those motions. Defendants appealed and sought from our court an emergency stay of all district court proceedings, including an impending preliminary injunction hearing, as well as a temporary administrative stay pending our resolution of the emergency stay motion. While those motions were pending, the district court granted a stay as to the State Defendants, allowing proceedings to continue against Dickson alone. In our court, Plaintiffs filed an opposition to Dickson's stay motion along with a motion to

---

[5] *See* Compl. at 7 (stating Plaintiffs bring claims "against a putative class of Texas state-court judges who will be called upon to enforce S.B. 8's terms; a putative class of Texas court clerks who will participate in the enforcement scheme by . . . accepting S.B. 8 enforcement actions for filing and issuing service of process; [and] Mark Lee Dickson, a private individual deputized to bring S.B. 8 enforcement actions under color of state law, from whom Plaintiffs face a credible threat of enforcement").

[6] Plaintiffs also sued various state agency officials, claiming that they "indirectly" enforce S.B. 8 through after-the-fact investigations and licensing decisions. We address the claims against those defendants *infra*.

dismiss his appeal. We then administratively stayed all district court proceedings and requested a response from Dickson, which he filed.[7]

## Discussion

### I. State Defendants' Appeal

We denied multiple requests for emergency relief filed by Plaintiffs after 1 a.m. on Sunday, August 29, 2021. We now briefly explain the grounds for our actions, as they relate to the State Defendants' appeal (we separately address the motions related to Dickson's appeal, *infra*).

Plaintiffs sought an injunction pending appeal to prevent Defendants from enforcing S.B. 8. They also filed emergency motions asking us to (a) vacate our stay of all district court proceedings pending appeal of the State Defendants' Eleventh Amendment immunity claims; (b) vacate the district court's self-imposed stay of proceedings involving the State Defendants in order to obtain rulings on class action status and a temporary or preliminary injunction of S.B. 8; or (c) vacate the district court's denial of the sovereign immunity claims and remand, purportedly to restore district court jurisdiction over the entire controversy. As the emergency motions' viability is contingent on Plaintiffs' motion for injunction pending appeal, we address only that request.

To obtain an injunction pending appeal pursuant to Federal Rule of Appellate Procedure 8(a)(2)(A)(i), Plaintiffs must show (1) a strong likelihood of success on the merits; (2) irreparable injury in the absence of an

---

[7] In the interim, we denied Plaintiffs' emergency motions for an injunction pending appeal, to vacate both courts' stays, and to vacate the district court's order denying Defendants' motion to dismiss. We also denied Plaintiffs' request to decide the underlying appeal on an expedited basis that would have required full briefing and a decision over one weekend. Plaintiffs then sought emergency injunctive relief in the United States Supreme Court, which was denied. *See Whole Woman's Health*, 2021 WL 3910722, at *1.

injunction; (3) that the balance of hardships weighs in their favor if injunctive relief is granted; and (4) that the public interest favors such relief. *Fla. Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 957 (5th Cir. 1981).[8] Our denial turned on the first prerequisite: Plaintiffs' inability to demonstrate a likelihood of success on the pending immunity appeals.

Plaintiffs sued several categories of state officers: the Texas Attorney General; certain state professional licensing officials; a state district judge, and a court clerk.[9] Along with various standing and justiciability principles likely to preclude federal court jurisdiction, the State Defendants claim immunity under the Eleventh Amendment, which forbids suits against non-consenting states in federal court absent other (here inapplicable) exceptions. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996). Plaintiffs seek to avoid the Eleventh Amendment bar by asserting that each type of State Defendant has "some connection" with enforcing S.B. 8 that permits an injunction against the officer in his or her official capacity. *See Young*, 209 U.S. at 157. If a state officer is a proper party under *Ex parte Young*, prospective injunctive relief is available to order that officer not to enforce state law that violates federal law. We must therefore consider the quality of connection between each State Defendant and the enforcement of S.B. 8.

This court is no stranger to suits testing the limits of the *Young* doctrine. In fact, Louisiana's previous attempts to regulate abortion practice resulted in an en banc case and a subsequent panel decision. *See Okpalobi v.*

---

[8] We agree with Plaintiffs that it was "impracticable" first to seek a stay in the district court. *See* Fed. R. App. P. 8(a)(2)(A)(i). Our previously issued stay of district court proceedings, including but not limited to a preliminary injunction hearing originally scheduled to commence on Monday, August 30, made district court action impracticable.

[9] Pending in the district court is a motion to certify a class of all Texas state judges and court clerks, but that motion has yet to be decided.

*Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc); *K.P. v. LeBlanc*, 627 F.3d 115, 125 (5th Cir. 2010). In *Okpalobi*, a state statute created private tort claims against doctors who perform abortions. 244 F.3d at 409. This court held en banc that plaintiffs, abortion providers covered by the law, lacked Article III standing to sue the state's governor and attorney general, who had no more than a "general duty" to enforce the law in question. *Id.* at 418. A significant plurality also concluded that the plaintiffs failed to show that those officers had a sufficient "enforcement connection" to enable relief under *Young*. *Okpalobi*, 244 F.3d at 423 (plurality op.); *see also id.* at 416 (describing the required connection as a "particular duty to enforce the statute . . . and a demonstrated willingness to exercise that duty").

A few years later, this court held that abortion providers did state an actionable *Young* claim against the members of the state board responsible for overseeing the Louisiana Patient's Compensation Fund, where state law denied abortion providers the benefit of participating in the Fund. *K.P.*, 627 F.3d at 125. The *K.P.* court refused to speculate whether our precedent requires a "special relationship," as urged by the *Okpalobi* plurality, or merely "some connection" with state law to justify injunctive relief against the state officer. *Id.* at 124. Instead, the court emphasized that "[e]nforcement [of the challenged law] typically involves compulsion or constraint." *Id.* at 124 (internal quotations omitted). Under the facts presented, the board members exercised the responsibility to approve or deny claims pursuant to the law. *Id.* at 123. These decisions bookend our analysis.[10] Plaintiffs fail to show any enforcement connection between any of

---

[10] *See also City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (articulating the "some connection" requirement).

No. 21-50792

the State Defendants and S.B. 8, and therefore cannot satisfy either understanding of *Ex parte Young*.

The district court, following the Plaintiffs' lead, read section 171.207(a) *not* to preclude enforcement by the State Defendants. This ignores the statute's plain language: "*Notwithstanding Section 171.005 or any other law*, the requirements of this subchapter shall be enforced *exclusively* through the private civil actions . . . ." § 171.207(a) (emphasis added). And the provision continues, prohibiting civil or criminal enforcement by "this state, a political subdivision, a district or county attorney, or an executive or administrative officer or employee of this state or a political subdivision against any person." *Ibid*. Indeed, along with S.B. 8, the enforcement powers of the Texas Health and Human Services Commission were amended to provide that, unlike other chapters of the code, S.B. 8 "shall be enforced *exclusively* through the private civil enforcement actions described by Section 171.208 and may not be enforced by the commission." § 171.005 (eff. Sept. 1, 2021) (emphasis added). This language could not be plainer. Exclusive means exclusive, and notwithstanding any other law means notwithstanding any other law.[11] When the district court imputed "indirect" S.B. 8 enforcement authority to other agency provisions, it ran the multiple red lights in S.B. 8's text.

Confirming that none of the State Defendants has an "enforcement connection" with S.B. 8 is not difficult in light of the statute's express language and our case law. To begin, the Texas Attorney General has no official connection whatsoever with the statute. No enforcement power means no enforcement power. *Okpalobi* teaches that state law enforcement

---

[11] In the same vein, section 171.208(a) authorizes civil suits by any person "*other than* an officer or employee of a state or local government entity . . . ."

10

No. 21-50792

officials' general duty to enforce state law cannot render them suable under *Young*. It follows *a fortiori* that the doctrine cannot apply where state law specifically forecloses them from acting.

Based on the same principle, Plaintiffs have no *Young* claim against the state licensing officials, namely the Executive Directors of the Texas Medical Board, Texas Nursing Board, or the Texas Board of Pharmacy, or the state Health and Human Services Commissioner. The district court suggested these officials would have authority to "indirectly" enforce S.B. 8 by, for example, suspending the license of a physician found to have violated S.B. 8. But the law's plain language is in tension with that conclusion. It provides that "[n]o enforcement . . . in response to violations of this subchapter . . . may be taken or threatened by . . . an executive or administrative officer or employee of this state . . . except as provided in Section 171.208." Tex. Health & Safety Code § 171.207(a). But even assuming such agency actions could follow an S.B. 8 judgment, it is speculative whether those actions would ever occur, given the vicissitudes of litigation. And even then, the agencies' roles would bear little resemblance to agencies we have found suable under *Young*. Take *K.P.*, which found board members proper defendants because they *themselves* administered a fund from which a challenged law purported to exclude abortion providers. *See K.P.*, 627 F.3d at 124–25 (explaining "the Board's role starts with deciding whether to have a medical review panel consider abortion claims and ends with deciding whether to pay them," thus "delegat[ing] [to Board members] some enforcement authority"). The agency officials sued here have no comparable "enforcement" role under S.B. 8. Under the terms of S.B. 8, then, no prospective injunctive relief is authorized against these officials.

Finally, Plaintiffs' claims against a state judge and court clerk are specious. *Young* explicitly excludes judges from the scope of relief it authorizes:

> [T]he right to enjoin an individual, even though a state official, from commencing suits . . . does not include the power to restrain a court from acting in any case brought before it, either of a civil or criminal nature. . . . [A]n injunction against a state court would be a violation of the whole scheme of our government.

209 U.S. at 163. Moreover, it is well established that judges acting in their adjudicatory capacity are not proper Section 1983 defendants in a challenge to the constitutionality of state law. *Bauer v. Texas*, 341 F.3d 352, 359 (5th Cir. 2003); *Just. Network Inc. v. Craighead Cty.*, 931 F.3d 753, 763 (8th Cir. 2019); *Allen v. DeBello*, 861 F.3d 433, 440 (3d Cir. 2017).

Since 1996, Section 1983 precludes injunction actions against judicial officers acting in their judicial capacity.[12] Plaintiffs cite no cases to the contrary that postdate this amendment. They do, however, focus on this proviso to Section 1983, which states that where declaratory relief is "unavailable," an injunction may be ordered against state judges. The proviso has no force here because temporary unavailability, which is all the Plaintiffs assert, is not "unavailability." More broadly, the Declaratory Judgment Act requires an "actual controversy" between plaintiffs and defendants, 28 U.S.C. § 2201(a), but no such controversy exists. *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980). The Plaintiffs are not "adverse" to the state judges. *See Bauer*, 341 F.3d at 359. When acting in their adjudicatory capacity, judges are disinterested neutrals who lack a personal interest in the outcome of the controversy. It is absurd to contend, as Plaintiffs do, that the way to challenge an unfavorable state law is to sue

---

[12] *See* 42 U.S.C. § 1983 (providing in relevant part that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable").

state court judges, who are bound to follow not only state law but the U.S. Constitution and federal law.[13] Plaintiffs' position is antithetical to federalism, violates the Eleventh Amendment and *Ex parte Young*, and ignores state separation of powers. Further, although not expressly covered by the judicial exception to 1983, the court clerks act under the direction of judges acting in their judicial capacity. Their duty within the court is to accept and file papers in lawsuits, not to classify "acceptable" pleadings. Accordingly, the clerks are improper defendants against whom injunctive relief would be meaningless. *See Chancery Clerk of Chickasaw Cty. v. Wallace*, 646 F.2d 151, 160 (5th Cir. 1981).[14]

We are mindful that S.B. 8 applies to pre-viability abortions, which may "raise[] serious questions regarding the constitutionality of the Texas law." *Whole Woman's Health*, 2021 WL 3910722, at *1. *But see also ibid.* (noting the Court's order "in no way limits other procedurally proper challenges to the Texas law, including in Texas state courts"); Tex. Health & Safety Code § 171.209(b)–(c) (providing "affirmative defense to liability" if defendant shows that relief sought "will impose an undue burden" on a properly represented woman or group of women). But we must respect the limits of our jurisdiction. Based on a suit against the State Defendants, to reach the merits a federal court would have to exercise "hypothetical jurisdiction," a long-rejected technique by which some courts had "assum[ed] the existence" of jurisdiction in doubtful cases because they

---

[13] In fact, several lawsuits challenging S.B. 8 are currently pending in state court.

[14] We do not even take into account the many other justiciability defenses Defendants have raised beyond *Young*. Defendants have argued powerfully that, not only do they enjoy Eleventh Amendment immunity, but federal jurisdiction is also lacking under Article III. Related doctrines of standing, ripeness, and justiciability are also likely to prevail because these Plaintiffs have no present or imminent injury from the enactment of S.B. 8. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992).

thought an adverse ruling on the merits was easier. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998). No version of hypothetical jurisdiction could enable this court to grant Plaintiffs affirmative relief in the absence of jurisdiction. *See id.* at 98–101.[15] The Supreme Court "decline[d] to endorse such an approach because it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." *Id.* at 94. A court would do precisely that if, in its zeal to reach the merits, it hurdled the obvious jurisdictional defects present here.

## II. Dickson's Appeal

We next address the two related motions pending before us related to the appeal by Dickson, the hypothetical private litigant sued by Plaintiffs.

Recall that Plaintiffs sued Dickson as part of their pre-enforcement strategy to enjoin the Texas court system from entertaining any S.B. 8 suits. Their complaint treats their claims against Dickson together with the putative class of state judges and court clerks. *See* Compl. at 7. In seeking dismissal, Dickson raised standing defenses as well as broader justiciability issues. The district court denied Dickson's motion and, along with the State Defendants, he appealed. In light of that appeal, the district court stayed further proceedings as to the State Defendants but not as to Dickson. The court reasoned that Dickson did not assert a claim to sovereign immunity nor "provide . . . a legitimate independent basis for staying the proceedings as to him." We then temporarily stayed district court proceedings while considering whether Dickson was entitled to a stay. Plaintiffs opposed Dickson's stay request and also moved to dismiss his appeal.

---

[15] *Cf. Norton v. Mathews*, 427 U.S. 524 (1976); *Secretary of Navy v. Avrech*, 418 U.S. 676 (1974) (per curiam); *United States v. Augenblick*, 393 U.S. 348 (1969).

Consequently, the matters now before us are Dickson's motion for a stay pending appeal and Plaintiffs' motion to dismiss Dickson's appeal. The parties join argument on the basis of appellate jurisdiction. Plaintiffs argue that we lack jurisdiction to review the district court's non-final order denying Dickson dismissal on the basis of standing and that Dickson's appeal must therefore be dismissed. *See, e.g.*, *Netsphere, Inc. v. Baron*, 799 F.3d 327, 331 (5th Cir. 2015) ("Our appellate jurisdiction is normally limited to 'final decisions of the district courts of the United States.'") (quoting 28 U.S.C. § 1291). Dickson counters that our appellate jurisdiction over the State Defendants' collateral-order appeal encompasses issues implicated by his appeal. Therefore, he argues, the notice of appeal divested the district court of jurisdiction over him as well as the State Defendants, and his appeal therefore should not be dismissed. This is also the ground on which Dickson argues he merits a stay pending appeal.[16]

Our court has jurisdiction under the collateral-order doctrine to immediately review the State Defendants' appeal contesting the order denying their Eleventh Amendment immunity defenses. *See, e.g.*, *Haverkamp v. Linthicum*, 6 F.4th 662, 669 (5th Cir. 2021) (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 143 (1993)). Furthermore, the notice appealing that order "divest[ed] the district court of its control over those aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58; *see also Weingarten Realty Invs. v. Miller*, 661 F.3d 904, 908 (5th Cir. 2011) ("Although appeals transfer jurisdiction from the district court to the appellate court concerning 'those aspects of the case involved in the appeal,' the district court is nonetheless free to adjudicate matters that are not

---

[16] Dickson makes no separate argument that he is entitled to a stay under the familiar four-part test applying Federal Rule of Appellate Procedure 8. *See Nken v. Holder*, 556 U.S. 418, 426 (2009).

involved in that appeal." (citations omitted)). The district court implicitly found such a divestiture of jurisdiction over the State Defendants, which explains why it granted a stay as to them. But the court concluded it was not similarly divested of jurisdiction over Dickson, whose defenses it found distinct from the State Defendants' sovereign immunity defenses. The court therefore denied a stay as to Dickson and—if we dismiss Dickson's appeal or deny his stay motion—proposes to go forward with preliminary injunction and summary judgment proceedings as to Dickson alone.

We must therefore address whether the district court's proceedings as to Dickson encompass "aspects of the case involved in the [State Defendants'] appeal." *Griggs*, 459 U.S. at 58; *see also Weingarten*, 661 F.3d at 907–10 (applying *Griggs*). We ask whether "the [State Defendants'] appeal and the claims before the district court [as to Dickson] address the same legal question." *Weingarten*, 661 F.3d at 909. If they do, then the district court was divested of jurisdiction over Dickson by the filing of the notice of appeal, and Dickson is therefore entitled to a stay of proceedings pending appeal and a denial of the Plaintiffs' motion to dismiss. In this inquiry, sovereign immunity issues "call for a broader reading of the *Griggs* jurisdictional transfer" than other issues. *Ibid.*; *see also Alice L. v. Dusek*, 492 F.3d 563, 565 (5th Cir. 2007) (per curiam) ("How broadly a court defines the aspects of the case on appeal depends on the nature of the appeal.").

Dickson makes various arguments as to why we should rule in his favor, but we need address only one to dispose of the present motions. As Dickson points out, on an interlocutory appeal reviewing the denial of Eleventh Amendment immunity, "we may first determine whether there is federal subject matter jurisdiction over the underlying case." *Hospitality House, Inc. v. Gilbert*, 298 F.3d 424, 429 (5th Cir. 2002) (citations omitted); *see also Planned Parenthood Gulf Coast, Inc. v. Phillips*, 5 F.4th 568, 581 (5th Cir. 2021) (same). The State Defendants' appeal, in addition to Eleventh

No. 21-50792

Amendment immunity, encompasses other jurisdictional issues that also pertain to Dickson. For instance, a significant issue is whether a federal court has subject matter jurisdiction to enjoin state officers acting in their adjudicatory capacity, an issue raised repeatedly in the district court by all parties.[17] Indeed, the Supreme Court has already questioned, in this very case, the propriety of "issu[ing] an injunction against state judges asked to decide a lawsuit under Texas's law." *Whole Woman's Health*, 2021 WL 3910722, at *1 (citing *Young*, 209 U.S. at 163). In addition to his own standing arguments, Dickson raised precisely these same jurisdictional issues in the district court.[18]

It is therefore evident that the claims as to Dickson implicate "aspects of the case involved in the [State Defendants'] appeal." *Griggs*, 459 U.S. at 58. This follows from the underlying theory of Plaintiffs' suit, which, as noted, seeks to enjoin the Texas judiciary from entertaining S.B. 8 filings. Having sought injunctive relief against Texas judges and Texas clerks of court, Plaintiffs also logically sought relief against a possible Texas litigant, Dickson. Plaintiffs' complaint makes the connection between judges, clerks, and Dickson impossible to miss. As to the clerks, Plaintiffs sued them because they are "directed to accept filing of and issue citations for service of process

---

[17] *See Bauer v. Texas*, 341 F.3d 352, 359 (5th Cir. 2003) ("The requirement of a justiciable controversy [under Article III of the Constitution] is not satisfied where a judge acts in his adjudicatory capacity." (citations omitted)); *Ex parte Young*, 209 U.S. at 163 ("The difference between the power to enjoin an individual from doing certain things, and the power to enjoin courts from proceeding in their own way to exercise jurisdiction, is plain, and no power to do the latter exists because of a power to do the former.").

[18] Moreover, standing issues raised both in the appeal and the district court pertain to all parties. For instance, whether relief against any Defendant would redress the Plaintiffs' claimed injuries cuts across every Defendant in the litigation, including Dickson. This is the kind of subject-matter jurisdiction issue that our court may properly consider in a collateral-order appeal. *See Hospitality House*, 298 F.3d at 429.

No. 21-50792

in S.B. 8 civil actions." Compl. at 38. As to the judges, Plaintiffs sued them because S.B. 8 actions "may be brought in the . . . [courts] where they preside" and they are "directed to enforce compliance with the Act by implementing the remedies mandated by S.B. 8." *Id.* at 36. And Plaintiffs sued Dickson because of "a credible threat that he will sue them under S.B. 8." *Id.* at 16.[19] Indeed, the complaint describes Dickson as "a private individual *deputized to bring S.B. 8 enforcement actions under color of state law.*" *Id.* at 7 (emphasis added); *see also Whole Woman's Health*, 2021 WL 3910722, at *3 (Sotomayor, J., dissenting) (arguing that "the Texas Legislature has deputized the State's citizens as bounty hunters").

We therefore conclude that jurisdictional issues in Dickson's appeal are "inextricably intertwined" with the same issues in the State Defendants' appeal, over which we indisputably have appellate jurisdiction. *Escobar v. Montee*, 895 F.3d 387, 391 (5th Cir. 2018) (quoting *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 51 (1995)). From this, it follows that the notice of appeal divested the district court of jurisdiction over Dickson as well as the State Defendants. *See Griggs*, 459 U.S. at 58; *Weingarten*, 661 F.3d at 908.

We are not blind to the "serious questions regarding the constitutionality of the Texas law at issue." *Whole Woman's Health v. Jackson*, 2021 WL 3910722, at *1. We are also mindful of the real-world effects while courts resolve these vexing procedural questions. But we point out, as did the Supreme Court, that potential S.B. 8 defendants will be able to raise defenses before state courts that are bound to enforce the

---

[19] *See also id.* at 7 (stating that Plaintiffs bring claims "against a putative class of Texas state-court judges who will be called upon to enforce S.B. 8's terms; a putative class of Texas court clerks who will participate in the enforcement scheme by . . . accepting S.B. 8 enforcement actions for filing and issuing service of process; [and] Mark Lee Dickson, a private individual deputized to bring S.B. 8 enforcement actions under color of state law, from whom Plaintiffs face a credible threat of enforcement").

No. 21-50792

Constitution. *See ibid.* (noting the Court's "order . . . in no way limits other procedurally proper challenges to the Texas law, including in Texas state courts").[20] Nonetheless, for a federal court to proceed to the merits without certainty of jurisdiction "would threaten to grant unelected judges a general authority to conduct oversight of decisions of the elected branches of Government." *California v. Texas*, 141 S. Ct. 2104, 2116 (2021) (citation omitted). In light of that nonnegotiable principle, we cannot allow proceedings to go forward while our court considers whether the federal judiciary has any power to entertain this novel lawsuit to begin with.

## CONCLUSION

IT IS ORDERED that Plaintiffs' motion to dismiss Dickson's appeal is DENIED.

IT IS FURTHER ORDERED that Dickson's motion for stay of district court proceedings pending appeal is GRANTED.

IT IS FURTHER ORDERED that this appeal is EXPEDITED to the next available oral argument panel.

---

[20] *See also* Temporary Restraining Order, *Planned Parenthood of Greater Tex. Surgical Health Servs. et al. v. Texas Right to Life et al.*, No. D-1-GN-21-004632 (53rd Dist. Ct., Travis County, Tex. Sept. 3, 2021) (entering TRO against putative S.B. 8 plaintiffs). We also note that United States recently challenged S.B. 8 by suing Texas in federal district court. *See United States v. State of Texas*, No. 1:21-cv-796 (W.D. Tex. Sept. 9, 2021).